Allison H. Goddard (211098)
  ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Defendant,*
*Wi-LAN Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO

|  |  |
|---|---|
| APPLE INC., | ) No. 3:14-cv-2235-DMS-BLM (Lead |
| *Plaintiff,* | ) Case); Consolidated with 3:14-cv-01507- |
| | ) DMS-BLM |
| vs. | ) DEMAND FOR JURY TRIAL |
| WI-LAN INC., | ) |
| *Defendant.* | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| ——————————————— | ) **DEFENDANT WI-LAN INC.'S** |
| WI-LAN INC., | ) **MOTION TO COMPEL** |
| *Plaintiff,* | ) |
| | ) **Department: 13A** |
| vs. | ) **Judge: Hon. Dana M. Sabraw** |
| APPLE INC., | ) **Magistrate: Hon. Barbara L. Major** |
| | ) |
| *Defendant.* | ) |
| | ) |

## REDACTED VERSION FOR PUBLIC FILING

## **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................. 1

II.   WI-LAN'S ATTEMPTS TO NARROW ITS DISCOVERY AND APPLE'S
REFUSAL TO NEGOTIATE ............................................................. 4

   A.   RFP Nos. 1-7, 11-16, and 18-20: Technical Documents Relating to the
Operation of the Accused LTE Products ...................................... 4

   B.   RFP  Nos. 51-60: Documents Relating to the *CCE* Litigation ............. 5

   C.   RFP Nos. 40-41 and Interrogatory No. 11: The Qualcomm Agreement with
Apple ............................................................................................ 8

   D.   Interrogatory No. 13: Apple's Communications With Third Parties
Regarding Apple's or the Third Parties' Decision Whether  to Use 4G WiMAX ....... 9

III.  LEGAL STANDARD ........................................................................ 10

IV.  ARGUMENT ..................................................................................... 10

   A.   RFPs 1-7, 11-16, and 18-20 ......................................................... 10

   B.   RFP Nos. 51-60 ............................................................................ 14

   C.   RFP Nos. 40-41 and Interrogatory No. 11 .................................. 16

   D.   Interrogatory No. 13 .................................................................... 18

V.   CONCLUSION .................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alloc, Inc. v. Unilin Beheer B.V.*,
  No. 03-C-1266, 2006 WL 757871 (E.D. Wis. Mar. 24, 2006)..........................16

*Cellular Communications Equipment LLC v. Apple Inc. et al,* No.
  6:14-cv-251 (E.D. Tex. 2014) ....................................................1-3, 5, 7, 14-16

*Carrillo v. Schneider Logistics, Inc.,* No. CV 11-8557-CAS DTBX,
  2012 WL 4791614, at *11 (C.D. Cal. Oct. 5, 2012) ..........................................13

*Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF,
  2015 WL 8482256, at *4 (N.D. Cal. Dec. 10, 2015) ..........................................13

*Mora v. Zeta Interactive Corp.*,
  No. 1:16-cv-00198-DAD-SAB, 2017 WL 1187710 (E.D. Cal. Feb.
  10, 2017) ...........................................................................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)............................................................................................10

*TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14-cv-2021-W
  (BLM), 2017 WL 1008788 (S.D. Cal. Mar. 15, 2017) .......................................13

*VirnetX, Inc. v. Apple Inc.*, No. 14-MC-80013 RS (NC), 2014 WL
  6979427 (N.D. Cal. Mar. 21, 2014) ...................................................................13

OTHER AUTHORITIES

Federal Rule of Civil Procedure 26 ........................................................................10

Federal Rule of Civil Procedure 37 ........................................................................10

1   **I.     INTRODUCTION**

2       Wi-LAN respectfully requests that the Court order Apple to produce the

3   following three categories of documents: (1) technical documents and training materials

4   that Apple was ordered to produce by September 22, 2017, which describe the operation

5   of the technology at issue in the accused 4G LTE products (RFPs 1-7, 11-16, and 18-

6   20); (2) previous representations by Apple in the *CCE* litigation regarding the operation

7   of the same technology at issue in this lawsuit (RFP Nos. 51-60); and (3) an

8   Apple/Qualcomm agreement and communications regarding 4G WiMAX which Apple

9   itself asserts is relevant to the instant dispute (Wi-LAN's RFP Nos. 40-41 and Wi-LAN

10  Interrogatories Nos. 11 and 13).

11      Apple refuses to produce technical documents and training materials that are

12  responsive to RFPs 1-7, 11-16, and 18-20 that Apple was under Court order to have

13  produced by September 22, 2017.  (ECF No. 161 at 2.)  More specifically, at the

14  deposition of Apple's 30(b)(6) witness on September 21, 2017, sworn testimony was

15  provided that ███████████████████████████████████████████████

16  █████████████████  ██████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ███████   Apple refuses to search these readily available repositories and argues that Wi-

21  LAN should pursue non-parties Intel and Qualcomm for these documents with

22  subpoenas.  At bottom, Apple has access to the materials in the repositories and should

23  immediately search and produce this highly relevant information.

24      RFP Nos. 51-60 reflect Wi-LAN's narrowed discovery requests relating to

25  argument and testimony from the *Cellular Communications Equipment LLC v. Apple*

26  *Inc. et al*, No. 6:14-cv-251 (E.D. Tex.) ("*CCE*") litigation regarding Apple's use of LTE

buffer status reports ("BSR").  Apple's use of BSR is highly relevant to this lawsuit, as Apple infringes four of the six patents-in-suit because of its use of BSR. Despite Wi-LAN's express identification of BSR in its infringement contentions, Apple refuses production of any documents reflecting the representations Apple made regarding BSR in the *CCE* litigation. Wi-LAN, in an effort to resolve this issue, offered to withdraw its requests if Apple agreed not to make any non-infringement arguments regarding its use of BSR. Apple refused. Apple cannot have it both ways.  If Apple wants to reserve the right to make non-infringement arguments regarding BSR, then BSR is relevant to this lawsuit and the jury should be permitted to see any inconsistent positions Apple took in the *CCE* case regarding its use of BSR technology.[1]

RFP Nos. 40-41 and Interrogatory No. 11 request discovery regarding a single highly relevant agreement between Apple and Qualcomm (the "Marketing Incentive Agreement," or "Qualcomm Agreement") in which Apple agreed not to support the 4G WiMAX standard in its iPhones in exchange for payment from Qualcomm. The Qualcomm Agreement contradicts Apple's argument that the technology of the patents-in-suit is incompatible with mobile communication. Specifically, Apple argued in its opening claim construction brief that "the Patents-in-Suit relate to the *fixed* Wi-MAX Standard developed in the late 1990s, not the more recent *mobile* VoLTE." (ECF No. 164 at 1 (emphasis added).) Apple also argued that 4G WiMAX, and by extension the patents-in-suit, was in a different industry from the cellular communication industry and therefore used different technology: "At that time, the fixed-wireless industry, on one hand, and the mobile-cellular-telephony industry, on the other, were developing on diverging paths. Both industries focused generally on wireless communication, but the

---

[1] For the avoidance of any doubt, Wi-LAN would present any inconsistent statements by Apple in a neutral format that would not disclose to the jury that Apple had been sued in a separate litigation.

differences in the technological and business needs of each industry were vast, leading to distinct technologies." (*Id*. at 3.) Apple concludes that devices using 4G WiMAX and the patents-in-suit "do not allow for mobile communications." (*Id*.)

But if 4G WiMAX and 4G LTE were so fundamentally different and 4G WiMAX could not support mobile communication, there would be no reason for Qualcomm to pay Apple (presumably millions of dollars) not to use the 4G WiMAX Standard for its iPhones. The Qualcomm Agreement also contradicts Apple's argument that 4G WiMAX was technically inferior to 4G LTE, because it shows that major industry players like Qualcomm and Apple excluded 4G WiMAX from the market for reasons unrelated to its technical viability. Apple should not be allowed to withhold discovery of the Qualcomm Agreement which is premised upon the fact that 4G WiMAX and 4G LTE were directly competing for the mobile cellular communication market, and then argue that 4G WiMAX (and, by extension, Wi-LAN's patents) did not support mobile communication and was rejected by the mobile cellular communication market due to its inferior and inapplicable technology.

Interrogatory No. 13 is related to the same issue, and requests communications between Apple and any third party, like Qualcomm, relating to Apple's or the third party's decision whether to use the 4G WiMAX standard. If Apple had similar deals with other industry participants or otherwise encouraged them not to adopt the 4G WiMAX standard for non-technical reasons, this would further undercut Apple's argument that 4G WiMAX and 4G LTE are fundamentally different and incompatible technologies and that 4G WiMAX was not adopted because it was technically inferior to 4G LTE.

Wi-LAN repeatedly met and conferred in good faith with Apple to narrow its requests, but Apple refuses to provide *any* discovery regarding the Qualcomm Agreement, Apple's communications with third parties regarding the decision whether to use the 4G WiMAX standard, the positions Apple took in the *CCE* litigation relating

to its implementation of the same technology accused in this case, and refuses to produce documents from ███████████   █████   ███████████. Thus, Wi-LAN respectfully requests the Court compel Apple to produce the requested documents and respond to Wi-LAN's interrogatories related to the same.

## II.   WI-LAN'S ATTEMPTS TO NARROW ITS DISCOVERY AND APPLE'S REFUSAL TO NEGOTIATE

### A.   RFP Nos. 1-7, 11-16, and 18-20: Technical Documents Relating to the Operation of the Accused LTE Products

Wi-LAN served a First Set of RFPs, which included RFP Nos. 1-7, 11-16, and 18-20, on May 23, 2017.  (Ex. 1.) Broadly speaking, these RFPs requested technical documents, including any training materials, relating to the operation of the accused LTE Products. After much discussion between Wi-LAN and Apple (*see* ECF No. 135 at 4-6), motions practice (ECF No. 135; ECF No. 146; ECF No. 153), and the August 30, 2017 hearing with the Court, the Court ordered that "Apple must produce documents responsive to these RFPs, independent from any searches performed pursuant to the Electronically Stored Information ('ESI') Order, on or before September 22, 2017." (ECF No. 161 ¶ 2.) The Order also required counsel for Wi-LAN and counsel for Apple to "meet and confer on or before September 5, 2017 to discuss compliance with RFP numbers 1-7, 11-16, 18-20, 25,-29, 34-35, and 37-38." (*Id.*) Counsel did so and specifically discussed that these RFPs seek "documents that Qualcomm and Intel provided to Apple relating to the at-issue technology. This includes communications between Apple and Qualcomm and Intel to help Apple understand how to integrate the Qualcomm/Intel processors into the iPhones." (Ex. 2 at 4-5.)

On September 21, 2017, the day before Apple's Court ordered production of technical documents was due, Wi-LAN learned for the first time at the deposition of Apple's corporate witness ██████████████████████████████████



On October 12, 2017, Wi-LAN responded that these repositories should have been searched and requested a meet and confer. (Ex. 6.) On October 16, 2017, the parties met and conferred, but Apple was unprepared to identify its basis for not producing these documents. (Ex. 7.) On October 17, 2017, the parties held a conference with the Court, and the Court granted Wi-LAN permission to include this issue in this briefing.

**B.**   **RFP Nos. 51-60: Documents Relating to the *CCE* Litigation**

Wi-LAN sought a broader set of discovery relating to the *CCE* lawsuit in its previous motion to compel, specifically requesting four categories of documents in response to Wi-LAN's RFP No. 17: (1) technical expert reports and exhibits; (2) deposition transcripts and exhibits from Apple witnesses and technical experts; (3) all sealed pleadings and exhibits; and (4) Apple's pre-trial exhibit list and exhibits. (ECF No. 135 at 18.) At the hearing regarding Wi-LAN's motion to compel, the Court ruled that Wi-LAN's requests were too broad but gave Wi-LAN permission to serve narrower requests:

THE COURT:  Then there were some specific disputes. RFP 17 requested a list of types of documents from cellular communications, a specific case in the Eastern District. I've reviewed both sides' arguments. I'm going to deny your request on that. I think it's inappropriate to ask for any and all documents coming out of another litigation. If there are specific documents that you want, ask for those but not everything that was produced in -- in another litigation. I find that it includes irrelevant information, and I'm denying that request.

MR. YIM: Your Honor, may I seek clarification on that ruling? We narrowed our request down to --

THE COURT: To three categories.

MR. YIM: Yes. And --

THE COURT: And it's denied.

MR. YIM: Yes, Your Honor.

THE COURT: What's your – what's your question?

MR. YIM: Well, Apple's experts in those cases took positions as to how functionalities, which are common in this case, work. And so we are seeking what Apple was saying about the functionality and making sure Apple wasn't changing its position in this case. That was the purpose of this request.

THE COURT: No. This request is much broader than that. So if it becomes relevant, you can ask an appropriate request that isn't "Give me everything from that case."

MR. YIM: Okay.

THE COURT: 'Give me every exp[e]rt' – 'expert report from that case.'

MR. YIM:  Okay. May we reserve the request to narrow it down, Your Honor?

THE COURT: You can serve another -- a new one, yeah.

(ECF No. 162 at 43:14-44:20.) The Court denied Wi-LAN's motion to compel regarding RFP No. 17 without prejudice. (ECF No. 161 ¶ 4.)

Accordingly, Wi-LAN served narrowed RFP Nos. 51-60 on September 1, 2017. (Ex. 8.) Wi-LAN no longer sought sealed pleadings and exhibits, Apple's pre-trial exhibit list and exhibits, or deposition transcripts for every Apple witness deposed in the lawsuit. Rather Wi-LAN seeks only (1) the expert reports and testimony (and related exhibits) of specifically identified witnesses that Wi-LAN determined, based on publicly available information, to have testified regarding Apple's use of BSR in the *CCE* litigation, and (2) Apple's closing argument regarding BSR. On October 2, 2017, Apple served its objections, indicating that it would not produce anything from the *CCE* litigation. (Ex. 9.)

The parties exchanged correspondence regarding Apple's refusal to produce responsive documents on October 3, 2017 and October 6, 2017, and met and conferred on October 9, 2017. (Ex. 10; Ex. 11; Ex. 12.) Apple argued that *any* request for *CCE* documents would contravene the Court's denial of Wi-LAN's motion to compel production in response to RFP No. 17. Wi-LAN explained that the Court's statement at the hearing and denial of Wi-LAN's motion was *without prejudice* and that Wi-LAN was permitted to serve narrowed requests as reflected in the transcript. Apple also argued that Wi-LAN's requests were too broad because the requested documents include testimony regarding other technologies, in addition to BSR. In an effort to accommodate Apple's concerns, Wi-LAN agreed to narrow its request to only the *portions* of documents including argument or testimony regarding Apple's use of BSR (which could be located by a simple search for the term "BSR" or "buffer status report" in the requested materials). (Ex. 13.) Apple still refused to produce any documents in response to RFP Nos. 51-60. (Ex. 14.)

**C.    RFP Nos. 40-41 and Interrogatory No. 11: The Qualcomm Agreement with Apple**

Wi-LAN served RFP Nos. 40-41 and Interrogatory No. 11 on July 27, 2017. (Ex. 15; Ex. 16.) Wi-LAN's RFP No. 40 requests agreements between Apple and Qualcomm relating to the 4G standards, and specifically named six agreements Apple identified in a complaint that it filed against Qualcomm. (Ex. 15 at 9.) RFP No. 41 requests documents reflecting the negotiations for and payments made pursuant to the Qualcomm agreements identified in response to RFP No. 40. (*Id.*) Interrogatory No. 11 requests that Apple identify persons involved in the negotiations for and payments made pursuant to such Qualcomm agreements. (Ex. 16 at 9.)

Apple's relationship with Qualcomm is a critical issue in this case, as Qualcomm supplies 4G LTE chips that are used in Apple's accused iPhones and provide part of the accused functionality. Despite the fact that these agreements contain highly relevant information, such as Apple's agreement to receive payment in exchange for not using the 4G WiMAX standard, the amount Apple pays Qualcomm in patent royalties, and the process by which Qualcomm supplies its 4G LTE chipsets to Apple, Apple objected to producing any of its agreements with Qualcomm. (*See* Ex. 12; Ex. 17 ¶¶ 99-112.)

On September 14, 2017, Wi-LAN sent Apple a letter explaining the relevance of this discovery and requesting a meet and confer. (Ex. 18.) The parties met and conferred on September 22, 2017, but Apple's counsel was unprepared to discuss the requested agreements. (Ex. 19.) On September 26, 2017, Wi-LAN met and conferred with Apple again and the parties conducted a conference with the Court's chambers, but Apple again refused production. Nevertheless, in an effort to work with Apple and narrow disputes, Wi-LAN sent Apple correspondence on October 8, 2017, agreeing to limit its discovery as follows:

- **RFP No. 40:** Wi-LAN agreed to limit this RFP to the *single* Qualcomm Agreement in which Apple agreed not to use the 4G WiMAX standard in exchange for payment.

- **RFP No. 41:** Wi-LAN agreed to limit this RFP to the negotiations for the particular provisions in the single Qualcomm Agreement in which Apple agreed not to use the 4G WiMAX standard in exchange for payment, and any payments made pursuant to the same.

- **Interrogatory No. 11:** Wi-LAN agreed to limit this interrogatory to identification of a *single* Apple employee knowledgeable about the particular provisions of the Qualcomm Agreement in which Apple agreed not to use the 4G WiMAX standard in exchange for payment.

(Ex. 20.) On October 9, 2017, Apple notified Wi-LAN that it would not produce any documents in response to RFP Nos. 40 and 41 or respond to Interrogatory No. 11. (Ex. 12.)

### D.   Interrogatory No. 13: Apple's Communications With Third Parties Regarding Apple's or the Third Parties' Decision Whether to Use 4G WiMAX

Wi-LAN served Interrogatory No. 13 on July 27, 2017. (Ex. 16.) Interrogatory No. 13 sought Apple's communications with third parties, such as Qualcomm, regarding the WiMAX standard. Apple objected to producing any such communications. (*See* Ex. 12 at 1.) On September 14, 2017, Wi-LAN sent Apple a letter requesting a meet and confer and limiting this request to communications with third parties regarding Apple's or the third parties' decision whether to use the WiMAX standard. (Ex. 18.)

The parties met and conferred on September 22, 2017. (Ex. 19.) Wi-LAN informed Apple's counsel that Wi-LAN was at least aware, based on the Qualcomm

Agreement, of communications between Apple and Qualcomm relating to Apple's decision to use the WiMAX standard, and that such information would be responsive to Wi-LAN's request. Apple's counsel stated that he was unprepared to discuss Apple's position on this interrogatory, but that Apple would consider Wi-LAN's request.  (*Id.*) The parties met and conferred again on September 26, 2017, and Apple's counsel stated that Apple was still considering its position. On October 10, 2017, Apple notified Wi-LAN that it would not respond to interrogatory No. 13. (Ex. 14.)

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A party seeking discovery may move for an order compelling production if a party fails to answer and interrogatory or produce documents as requested. Fed. R. Civ. P. 37(a)(3)(B). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Mora v. Zeta Interactive Corp.*, No. 1:16-cv-00198-DAD-SAB, 2017 WL 1187710, at *3 (E.D. Cal. Feb. 10, 2017) (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## IV.   ARGUMENT

### A.   RFPs 1-7, 11-16, and 18-20

Wi-LAN requests that the Court order Apple to collect and produce documents from two repositories that Wi-LAN recently learned about in deposition from which Apple should have collected documents long ago.  Indeed, this Court has already ordered Apple to produce responsive documents to RFPs 1-7, 11-16, and 18-20, which

relate to technical documents regarding the operation of the accused 4G LTE products,
by September 22, 2017.  (ECF No. 161 at 2.)  At the deposition of Apple's 30(b)(6)
witness on September 21, 2017, the witness testified that





Wi-LAN should have the opportunity to review these documents and to ask Apple's witnesses questions about them.

As in any patent case, the parties are likely to dispute whether the source code operates in such a manner as to satisfy the terminology recited in the claims.

Apple also cannot dispute that Apple has access to these documents. 

*TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.,* No. 14-cv-2021-W (BLM), 2017 WL 1008788, *4 (S.D. Cal. Mar. 15, 2017) ("Documents are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand.").[3] Finally, as the party in this action, Apple should produce the documents from these repositories, not third parties Qualcomm or Intel.[4] Moreover, Wi-LAN issued a subpoena to Qualcomm for technical documents, and

---

[3] *See also Carrillo v. Schneider Logistics, Inc.,* No. CV 11-8557-CAS DTBX, 2012 WL 4791614, at *11 (C.D. Cal. Oct. 5, 2012) ("Here, the fact that Schneider does not physically possess the server that stores the Wal-Mart emails is immaterial. The electronically stored information is within Schneider's control by virtue of the fact the Schneider employees use the Wal-Mart email accounts as their primary work email….").

[4] *VirnetX, Inc. v. Apple Inc.*, No. 14-MC-80013 RS (NC), 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21, 2014) ("Such discovery is obtainable from a source more direct, convenient, and less burdensome—Apple. Thus, there is no reason to burden non-party RPX when the documents sought should be in the possession of the party defendant."); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *4 (N.D. Cal. Dec. 10, 2015) ("Stevens Creek argues that Chrysler should have to subpoena information from AVV directly [for documents in the AVV database], but the burden of a non-party subpoena is unnecessary when the information sought lies within Stevens Creek's legal control.").

Qualcomm has refused to produce anything that was also in Apple's possession.[5] (*See, e.g.*, Ex. 21  at 8 ("Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.").)

Accordingly, this Court should again compel Apple to provide a complete production of documents responsive to Wi-LAN's RFPs 1-7, 11-16, and 18-20, including a search of the Qualcomm and Intel shared repositories for documents responsive to these RFPs.

## B.    RFP Nos. 51-60

Apple should be compelled to produce the requested discovery from the *CCE* litigation related to BSR, including (1) the portions of the expert reports and testimony (and any related exhibits) of the specifically identified witnesses who testified regarding Apple's use of BSR in that case, and (2) Apple's closing argument regarding BSR. Wi-LAN's request is as narrow is it can possibly be, requesting only the *portions* of documents having argument or testimony regarding Apple's use of BSR, yet Apple refuses to produce a single document from the *CCE* litigation.[6]

Apple cannot dispute that the entire *CCE* trial revolved around BSR and that two of the products accused in that case, the iPhone 6 and iPhone 6 Plus, are also accused in this case. (Ex. 23 at 45:12-19.) ███████████████████████████

---

[5] Wi-LAN also recently issued a subpoena to Intel for source code and documents Apple does not have in its possession. ████████████████████████████████ Intel has not yet responded to the subpoena.

[6] Compare Wi-LAN's targeted request for relevant portions of documents from the *CCE* litigation to Apple's RFP No. 39, which requested "[a]ll Documents, Electronically Stored Information, and Things concerning or relating to any foreign or U.S. litigation, opposition proceeding, interference, reexamination, reissue proceeding, nullity proceeding, revocation proceeding, arbitration, conflict or dispute involving any of the Patents-in-Suit or any Related Patent." (Ex. 22 at 12.)

1

2 ████████████████████. Thus, any statements Apple made with respect to BSR in

3 the *CCE* litigation are highly relevant here and would be informative to the jury with

4 respect to *all* of the accused products in this lawsuit.

5 Further, BSR is a central issue to this lawsuit, as Wi-LAN alleges that four of the

6 six patents-in-suit, U.S. Patent Nos. 8,462,723, 8,462,761, 8,457,145, 8,615,020, are

7 infringed *because of* Apple's implementation of BSR. Wi-LAN's infringement

8 contentions directly accuse BSR functionality, as shown below in this example for the

9 '723 patent:

10 ### 8,462,723 Patent Infringement Chart

11

| (Elements) | Evidence |
|---|---|
| 1e. transmitting a bandwidth request within the amount of UL bandwidth, the bandwidth request specifying a requested amount of UL bandwidth pertaining to at least a queue at the subscriber unit. | **5.4.5    Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-   UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>-   *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

22 This bandwidth request element is also claimed in the '020, '761, and '145 patents and

23 is satisfied by the use of BSR in Apple's accused products. (*See* Ex. 24.)

24 Apple may make non-infringement arguments with respect to the "bandwidth

25 request" limitations discussed above. For example, though these arguments would be

26 completely without merit, Apple may argue that (1) BSR is not a bandwidth request, (2)

27

28

does not specify a requested amount of bandwidth pertaining to a queue, or (3) does not specify a requested amount of bandwidth pertaining to a connection. To the extent Apple wants to reserve the right to make these or any other non-infringement arguments regarding the above BSR limitations, it must produce the relevant BSR documents from the *CCE* litigation so Wi-LAN and the jury can hold Apple accountable for its prior representations on BSR functionality. *See Alloc, Inc. v. Unilin Beheer B.V.*, No. 03-C-1266, 2006 WL 757871, at *5 (E.D. Wis. Mar. 24, 2006) (granting motion to compel documents "concerning the development, operation, function, design changes, manufacture, sales and marketing of the accused products" from another patent infringement suit where the same products were at issue).

### C.    RFP Nos. 40-41 and Interrogatory No. 11

Apple should be compelled to (1) produce, in response to RFP No. 40, the Qualcomm Agreement in which it agreed not to use the 4G WiMAX standard in exchange for payment, (2) produce, in response to RFP No. 41, documents reflecting negotiations regarding and payments made pursuant to the provisions relating to Apple's agreement not to use 4G WiMAX in exchange for payment, and (3) identify, in response to Interrogatory No. 11, a single witness who can testify regarding the same. In 2007, Apple signed the Qualcomm Agreement which provided that Apple would not market wireless devices (*e.g.*, iPhones, such as the Accused Products) implementing the 4G WiMAX standard. (Ex. 17 ¶ 109.) Apple recently admitted in a complaint filed against Qualcomm that it agreed to receive this payment not to use 4G WiMAX "just as WiMAX was gaining traction in the marketplace" and that "Qualcomm acted to eliminate the competitive threat posed by WiMAX by ensuring that Apple would not market wireless devices with WiMAX technology." (*Id.*)

This evidence is critical to rebut Apple's theme in this case: that the patents-in-suit are 4G WiMAX patents, and that 4G WiMAX was technically inferior to 4G LTE

and incompatible with mobile communication. Indeed, in Apple's opening claim construction brief it argued that "the purported inventions claimed in the Patents-in-Suit relate to the *fixed* Wi-MAX Standard developed in the late 1990s, not the more recent *mobile* VoLTE." (ECF No. 164 at 1 (emphasis added).) Apple further argued that 4G WiMAX was in a different industry from the cellular communication industry and therefore used different technology: "At that time, the fixed-wireless industry, on one hand, and the mobile-cellular-telephony industry, on the other, were developing on diverging paths. Both industries focused generally on wireless communication, but the differences in the technological and business needs of each industry were vast, leading to distinct technologies." (*Id.* at 3.) Apple concludes that devices using 4G WiMAX and the patents-in-suit "do not allow for mobile communications." (*Id.*)

Most importantly, the mere existence of the Qualcomm Agreement contradicts each of these arguments. If 4G WiMAX were a fixed standard that could not support mobile communication, there would be no reason for Qualcomm to pay Apple not to market 4G WiMAX products with the intent "to eliminate the competitive threat posed by WiMAX" just as "WiMAX was gaining traction in the marketplace." (Ex. 17 ¶ 109.) Apple should not be allowed to argue to the jury that the patents-in-suit (via 4G WiMAX) are fundamentally incompatible with 4G LTE and keep from the jury that Apple itself agreed to a contract premised upon the fact that 4G WiMAX and 4G LTE both relate to mobile cellular communications.

Moreover, producing the Qualcomm Agreement and corresponding negotiations and payments will impose absolutely no burden on Apple, as Apple has already identified these documents for its litigation against Qualcomm, in which the same provisions within the same Agreement are at issue. (Ex. 17.)

Apple's arguments that Wi-LAN's claims cover only WiMAX systems are improper. Claims are not limited to the patentee's commercial embodiments. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often

describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Thus, Apple should not be allowed to make such arguments to the jury.  Wi-LAN will therefore agree to withdraw its requests under this Section (IV(C)) if Apple stipulates that it will not present any evidence, argument, or testimony that Wi-LAN's patent claims are limited or only related to WiMAX.

### D.    Interrogatory No. 13

For these same reasons, Apple should be compelled to produce communications between Apple and any third party regarding Apple's or the third party's decision whether to use the 4G WiMAX standard. If Apple attempted to convince others to use 4G LTE over 4G WiMAX for non-technical reasons, that would further undercut Apple's argument that 4G WiMAX was technically inferior to 4G LTE and incompatible with mobile communication in products such as the accused iPhones.

## V.    CONCLUSION

For the foregoing reasons, Wi-LAN respectfully requests that the Court grant this motion, and compel Apple to:

1) In response to RFP Nos. 40 and 41, produce the Qualcomm Agreement and any negotiations regarding and payments made pursuant to the provisions in which Apple agreed not to use the 4G WiMAX standard in exchange for payment;

2) In response to Interrogatory No. 11, identify an Apple employee knowledgeable about negotiations regarding and payments made pursuant to the provisions in the Qualcomm Agreement in which Apple agreed not to use the 4G WiMAX standard in exchange for payment;

3) In response to Interrogatory No 13, produce any communications between Apple and any third party regarding Apple or the third party's decision whether to use the 4G WiMAX standard.

4) In response to RFP Nos. 51-60, produce from the *CCE* litigation, the portions of expert reports, trial testimony, deposition testimony, and exhibits relating to the same, relating to Apple's use of BSR, and Apple's closing argument regarding its use of BSR.

5) In response to RFP Nos. 1-7, 11-16, and 18-20, produce responsive documents from ████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ████████████

Dated: October 18, 2017                    Respectfully submitted,


By:   */s/ Allison Goddard*
      Allison H. Goddard (211098)
       ali@pattersonlawgroup.com
      PATTERSON LAW GROUP
      402 West Broadway, 29th Floor
      San Diego, CA 92101
      (619) 398-4760
      (619) 756-6991 (facsimile)



      Robert Cote
       rcote@mckoolsmith.com
      Brett Cooper
       bcooper@mckoolsmith.com
      Kevin Schubert
       kschubert@mckoolsmith.com
      McKOOL SMITH, P.C.
      One Bryant Park, 47th Floor
      New York, NY 10036
      (212) 402-9400
      (212) 402-9444 (facsimile)

      Seth Hasenour
       shasenour@mckoolsmith.com
      MCKOOL SMITH, P.C.
      300 W. 6th Street, Suite 1700
      Austin, TX 78701
      (512) 692-8700
      (512) 692-8744 (facsimile)

      *Attorneys for Defendant,*
      *Wi-LAN Inc.*

## **PROOF OF SERVICE**

I hereby certify that on October 18, 2017, I caused a copy of this pleading to be delivered via electronic mail on the counsel of record.


Dated: October 18, 2017

By:   */s/ Allison Goddard*

Allison H. Goddard (211098)
ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorney for Defendant,*
*Wi-LAN Inc.*