Allison H. Goddard (211098)
  ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorney for Defendant,*
*Wi-LAN Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO

| | | |
|---|---|---|
| APPLE INC., | ) | No. 3:14-cv-2235-DMS-BLM (Lead Case); Consolidated with 3:14-cv-01507-DMS-BLM |
| | *Plaintiff,* ) | |
| | ) | |
| vs. | ) | DEMAND FOR JURY TRIAL |
| WI-LAN INC., | ) | |
| | *Defendant.* ) | **APPENDIX OF EXHIBITS IN SUPPORT OF DEFENDANT WI-LAN INC.'S MOTION TO COMPEL** |
| ―――――――――――――― | ) | |
| WI-LAN INC., | ) | **Department: 13A** |
| | *Plaintiff,* ) | **Judge: Hon. Dana M. Sabraw** |
| | ) | **Magistrate: Hon. Barbara L. Major** |
| vs. | ) | |
| APPLE INC., | ) | |
| | *Defendant.* ) | |

## REDACTED VERSION FOR PUBLIC FILING

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS:**

PLEASE TAKE NOTICE THAT Defendant Wi-LAN Inc. ("Wi-LAN") will submit the following exhibits in support of its Motion to Compel:

| Exhibit | Description | Pages |
|---|---|---|
| 1 | Wi-LAN's First Set of RFPs (Nos. 1-39). | 1-17 |
| 2 | Letter from J. Yim to C. Gaspar regarding outstanding discovery issues, sent on Sept. 6, 2017. ***Lodged Conditionally Under Seal – Confidential.*** | 18-28 |
| 3 | Excerpts of S. Kodali deposition, taken on Sept. 21, 2017. ***Lodged Conditionally Under Seal – Confidential.*** | 29-41 |
| 4 | Email from K. Schubert to A. Lin regarding outstanding discovery issues, sent on Oct. 6, 2017. ***Lodged Conditionally Under Seal – Confidential.*** | 42-45 |
| 5 | Email from A. Lin to K. Schubert regarding outstanding discovery issues, sent on Oct. 11, 2017. ***Lodged Conditionally Under Seal – Confidential.*** | 46-50 |
| 6 | Email from K. Schubert to A. Lin regarding outstanding discovery issues, sent on Oct. 12, 2017. ***Lodged Conditionally Under Seal – Confidential.*** | 51-55 |
| 7 | Email from K. Schubert to A. Lin summarizing the Oct. 16, 2017 meet and confer, sent on Oct. 16, 2017. ***Lodged Conditionally Under Seal – Confidential.*** | 56-63 |
| 8 | Wi-LAN's Third Set of RFPs (51-60). | 64-73 |
| 9 | Apple's Responses to Wi-LAN's Third Set of RFPs. | 74-90 |
| 10 | Email from N. Dang to W. Lipschitz regarding outstanding discovery issues, sent on Oct. 3, 2017. | 91-93 |
| 11 | Email from N. Dang to W. Lipschitz regarding outstanding discovery issues, sent on Oct. 6, 2017. | 94-98 |
| 12 | Email from N. Dang to W. Lipschitz regarding outstanding discovery issues, sent on Oct. 9, 2017. | 99-106 |
| 13 | Email from S. Hasenour to A. Lin summarizing the Oct. 9, 2017 meet and confer, sent on Oct. 9, 2017. | 107-113 |
| 14 | Email from N. Dang to S. Hasenour regarding outstanding discovery issues, sent on Oct. 10, 2017. | 114-121 |
| 15 | Wi-LAN's Second Set of RFPs to Apple (Nos. 40-50). | 122-134 |
| 16 | Wi-LAN's Second Set of ROGs to Apple (Nos. 11-15). | 135-147 |
| 17 | Excerpts from Apple's Complaint against Qualcomm. | 148-154 |
| 18 | Letter from W. Lipschitz to C. Gaspar regarding outstanding discovery issues, sent on Sept. 14, 2017. | 155-157 |
| 19 | Email from W. Lipschitz to N. Dang summarizing the Sept. 22, 2017 meet and confer, sent on Sept. 22, 2017. | 158-163 |

| 20 | Email from W. Lipschitz to N. Dang regarding outstanding discovery issues, sent on Oct. 8, 2017. | 164-171 |
| 21 | Qualcomm's response to Wi-LAN's subpoena. | 172-199 |
| 22 | Apple's First Set of RFPs (Nos. 1-85). | 200-221 |
| 23 | Excerpts from the *CCE* trial transcript. | 222-225 |
| 24 | Excerpts from Wi-LAN's claim charts. | 226-243 |

Dated: October 18, 2017                    Respectfully submitted,


                                           By:   */s/ Allison Goddard*

                                              Allison H. Goddard (211098)
                                              ali@pattersonlawgroup.com
                                              PATTERSON LAW GROUP
                                              402 West Broadway, 29th Floor
                                              San Diego, CA 92101
                                              (619) 398-4760
                                              (619) 756-6991 (facsimile)

                                              Robert Cote
                                              rcote@mckoolsmith.com
                                              Brett Cooper
                                              bcooper@mckoolsmith.com
                                              Kevin Schubert
                                              kschubert@mckoolsmith.com
                                              McKOOL SMITH, P.C.
                                              One Bryant Park, 47th Floor
                                              New York, NY 10036
                                              (212) 402-9400
                                              (212) 402-9444 (facsimile)

                                              Seth Hasenour
                                              shasenour@mckoolsmith.com
                                              MCKOOL SMITH, P.C.
                                              300 W. 6th Street, Suite 1700
                                              Austin, TX 78701
                                              (512) 692-8700
                                              (512) 692-8744 (facsimile)

                                           *Attorneys for Defendant,*
                                           *Wi-LAN Inc.*

**PROOF OF SERVICE**

I hereby certify that on October 18, 2017, I caused a copy of this pleading to be delivered via electronic mail on the counsel of record.

Dated: October 18, 2017

By:    */s/ Allison Goddard*

Allison H. Goddard (211098)
ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorney for Defendant,*
*Wi-LAN Inc.*

# Exhibit 1

Exhibit 1
Page 1

1  Allison H. Goddard (211098)
      ali@pattersonlawgroup.com
2  PATTERSON LAW GROUP
   402 West Broadway, 29th Floor
3  San Diego, CA  92101
   (619) 398-4760
4  (619) 756-6991 (facsimile)

5  *Attorneys for Defendant,*
   *WI-LAN INC.*

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10                        **SAN DIEGO**

11  APPLE INC.,                           )   CASE NO. 14cv2235 DMS (BLM)
                                          )
12                     Plaintiff,         )   **DEFENDANT'S FIRST SET OF**
                                          )   **REQUESTS FOR PRODUCTION**
13          vs.                           )   **(NOS. 1-39)**
                                          )
14  WI-LAN, INC.,                         )
                                          )   Department: 13A
15                     Defendant.         )   Judge: Hon. Dana M. Sabraw
                                          )   Magistrate Judge: Hon. Barbara L.
16                                        )   Major
                                          )
17                                        )
                                          )
18                                        )
                                          )
19  ——————————————————————————————        )

20

21        Defendant Wi-LAN, Inc. ("Wi-LAN"), by and through their undersigned

22  counsel, hereby request, pursuant to Rule 26 and 34 of the Federal Rules of Civil

23  Procedure and Local Rule 26.1, that Plaintiff Apple Inc. ("Apple") produce each of

24  the following documents, which are in its possession, custody or control within 30

25  days from the date of service hereof and continuing on each date thereafter until

26  completed at the offices of McKool Smith, P.C., One Bryant Park, 47th Floor, New

27  York, New York 10036, or at such other reasonable time and place as counsel for the

28  respective parties may hereafter designate by agreement.

                                -1-

Exhibit 1
Page 2

## **DEFINITIONS**

1.      The Definitions, Rules and Instructions set forth in FED. R. CIV. P. 34(a) are incorporated herein by reference.

2.      "Apple" or "You" or "Your" shall mean Apple Inc., including any officers, directors, partners, associates, employees, staff members, agents, representatives, divisions, predecessors-in-interest, affiliated partnerships and/or corporations, or any other related entities, whether or not still in existence.

3.      "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

4.      "Agent" shall mean any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

5.      The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

6.      "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

7.      The terms "relating to," and "relate to" shall mean concerning, regarding, constituting, containing, dealing with, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, stating, summarizing, analyzing, supporting, or in any way pertaining to the subject matter of the relevant request.

8.      "And" and "or" shall each mean both the conjunctive and the disjunctive; "all" or "any" shall mean "any and all"; "including" shall mean "including without limitation." In construing these Requests, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders.

Exhibit 1
Page 3

9. The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Request information that might otherwise be construed as outside its scope.

10. "Document(s)" shall have the broadest possible meaning afforded under the Federal Rules of Civil Procedure and shall include, but is not limited to, any writing, recording, electronically stored information or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, diaries, source code, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings. For purposes of these requests, any document that contains a note, comment, addition, deletion, modification, translation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to identification. All references to documents include, but are not limited to any audio and/or visual materials.

11. The word "identify", when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

-3-

Exhibit 1
Page 4

12.     "Patents-in-Suit" shall mean U.S. Patent Nos. 8,457,145, 8462,723, 8,462,761, 8,537,757, 8,615,020, and 8,311,040.

13.     "3GPP LTE standard" shall mean Release 8 and all subsequent Releases of the Third Generation Partnership Project ("3GPP") standard, as available at: http://www.3gpp.org/Release-8.

14.     "LTE" means "Long Term Evolution," and refers to the technology defined by 3GPP Release 8 and subsequent Releases.

15.     "User Equipment" for purposes of the interrogatories only shall mean any device used by an end-user to communicate with a base station, including but not limited to a hand-held telephone, a laptop computer equipped with a mobile broadband adapter, or any other LTE-enabled end-user device.

16.     "VoLTE" shall mean Voice Over LTE.

17.     "VoLTE data" shall mean voice and control data, such as Session Initiation Protocol (SIP) data and Real-time Transport Protocol (RTP) data, related to a VoLTE call.

18.     "Application data" or "application data" shall mean non-VoLTE data related to various application services, such as video, email, and web browsing.

19.     "VoLTE Products" shall include User Equipment which are or have been designed, sold, manufactured, marketed or advertised by you as supporting the 3GPP LTE standard and VoLTE, including but not limited to the iPhone 7, iPhone 7 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 6, iPhone 6 Plus, as well as other products which are reasonably similar in structure and/or operation.

20.     "Date of first sale" with respect to a product means the date on which you first sold that product.

21.     "Lawsuit" shall refer to *Apple Inc. v. Wi-LAN, Inc.*, Civil Action No. 14cv2235 DMS (BLM) and/or *Wi-LAN, Inc. v. Apple, Inc.*, Civil Action No.

-4-

Exhibit 1
Page 5

14cv1507 DMS (BLM), which have been consolidated and are pending in the United States District Court for the Southern District of California.

22. "Comply," "Compliance," and "Complies", with reference to a standard, specification or feature described in a standard or specification, refers to implementation or support of the functionality listed in that standard, specification or feature description.

23. "3GPP Standard Specification Reference" shall refer individually and collectively to:

(a) 3GPP TS 36.300 V8.12.0 (2010-03) Technical Specification 3rd Generation Partnership Project; Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA) and Evolved Universal Terrestrial Radio Access Network (E-UTRAN); Overall description; Stage 2 (Release 8) [hereinafter, "TS 36.300"], including, but not limited to, sections 4.1, 6.1, 6.1.1, 6.2, Fig. 6-2, Fig. 6.2.2-1, 11, 11.1, 11.1.2, 11.2, 11.3, and 11.4.2.;

(b) 3GPP TS 36.321 V8.9.0 (2010-06) Technical Specification 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Medium Access Control (MAC) protocol specification (Release 8) [hereinafter, "TS 36.321"], including, but not limited to sections 4.4, Fig. 4.2.1-1, 5.4.1, 5.4.3.1 , 5.4.4, 5.4.5, and 6.1.3, 6.1.3.1, 6.1.2, 6.2.1, Fig. 6.1.2-1, Fig. 6.2.1-1, Table 6.2.1-1, and Table 6.2.1-2;

(c) 3GPP TS 36.322 V8.8.0 (2010-06) Technical Specification 3rd Generation Partnership Project; Evolved Universal Terrestrial Radio Access (EUTRA); Radio Link Control (RLC) protocol specification (Release 8), [hereinafter "TS 36.322"], including, but not limited to sections 4.2.1, 4.2.1.2.2; 4.2.1.3.2; Fig. 4.2.1-1; and 6; and

-5-

Exhibit 1
Page 6

(d)     3GPP TS 36.331 V8.17.0 (2012-06) Technical Specification 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Radio Resource Control (RRC) protocol specification (Release 8), [hereinafter "TS 36.331"], including, but not limited to sections 4.2.1 and 5.3.3, and 5.3.3.1.

-6-

Exhibit 1
Page 7

## **INSTRUCTIONS**

1.      In the event that more than one copy of a document exists, you shall produce the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of your agents, attorneys, accountants, employees or representatives.

2.      Each request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail.  If an objection pertains only to a portion of a request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the request, using your best efforts to do so.

3.      If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information:

(a)      the identity of the document, including the exact name and title of the document, the number of pages, attachments, or appendices to the document, and all  serial or identification numbers appearing on the document;

(b)      the nature of the privilege claimed (including work product);

(c)      if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(d)      the date of the document, electronically stored information or oral communication;

(e)      if a document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS   Excel Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

-7-

Exhibit 1
Page 8

(f)     if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

(g)     the general subject matter of the document, electronically stored information or oral communication; and

(h)     the number of the request for production to which the document relates.

4.     All requested documents produced to Wi-LAN shall be organized in accordance with FED. R. CIV. P. 34(b)(E).

5.     Pursuant to FED. R. CIV. P. 26(e), these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure.  If further responsive documents come into the possession or to the attention of you or your attorneys at any time during the course of this proceeding, such documents must be produced as required by the Federal Rules of Civil Procedure.

6.     To the extent that any document is produced in response to one of the following requests and is also responsive to a subsequent request, an additional copy of the document need not be supplied.

7.     If any documents referred to in your response were, but are no longer in your possession, custody, or control, state what disposition was made of them, and when.  If any documents referred to in your response to these interrogatories have been lost or destroyed, describe in detail the circumstances of such loss or destruction and identify each lost or destroyed document (and all files that contained such documents).

-8-

Exhibit 1
Page 9

## **REQUESTS FOR PRODUCTION**

1.     Source code, specifications, schematics, technical documents, flow charts, and other documents sufficient to show how each VoLTE Product communicates VoLTE data and application data from the application processor to the baseband processor and how the VoLTE data and application data are recognized as different, or handled differently, at each of the application processor and the baseband processor, including through the use of any separate protocols, channels, interfaces, IP addresses, radio bearers, data tags, and quality of service (QoS).

2.     Source code, specifications, schematics, technical documents, flow charts, and other documents sufficient to show how each VoLTE Product requests and allocates bandwidth for VoLTE data and application data.

3.     Source code, specifications, schematics, technical documents, flow charts, and other documents sufficient to show how each VoLTE Product determines and reports a Channel Quality Indicator (CQI).

4.     Source code, specifications, schematics, technical documents, flow charts, and other documents sufficient to show how each VoLTE Product receives a selected modulation format and code rate from a base station.

5.     Documents sufficient to provide the organizational structure of the source code used in the VoLTE Products.

6.     Documents sufficient to show the differences, if any, between the source code, architecture, design, structure, function or operation, of each VoLTE Product.

7.     All documents you intend to rely upon to demonstrate or support your contention that any VoLTE Product does not infringe the Patents-in-Suit.

8.     All documents you intend to rely upon to demonstrate or support your contention that any of the Patents-in-Suit is invalid or unenforceable, including but not limited to any prior art references and translations of those prior art references in English.

Exhibit 1
Page 10

9.     All documents evidencing any secondary considerations (or lack thereof) relating to the obviousness or nonobviousness of any asserted claim of the Patents-in-Suit.

10.     All documents you intend to rely upon to demonstrate or support your construction or interpretation of any asserted claim of any of the Patents-in-Suit.

11.     All documents or communications exchanged with Qualcomm, Intel Corporation, or any third party, regarding how each VoLTE Product communicates VoLTE data and application data from the application processor to the baseband processor and how the VoLTE data and application data are recognized as different, or handled differently, at each of the application processor and the baseband processor, including through the use of any separate protocols, channels, interfaces, IP addresses, radio bearers, data tags, and quality of service (QoS).

12.     All documents or communications exchanged with Qualcomm, Intel Corporation, or any third party, regarding this Lawsuit, Wi-LAN, the Patents-in-Suit, or the LTE standard, including all Qualcomm University documents.

13.     All documents or communications asserting that the VoLTE Products comply in whole or in part with the 3GPP LTE Standard, including but not limited to documents indicating which sections and versions of the 3GPP LTE Standard the VoLTE Products comply with.

14.     Documents identifying each piece of hardware, software, firmware or other component in each VoLTE Product necessary to perform the following functions: establish an RRC connection with a base station (as described in TS 36.331 sections 4.2.1 and 5.3.3), prepare and send Scheduling Requests to a base station (as described in TS 36.321 section 5.4.4), prepare and transmit Buffer Status Reports to a base station (as described in TS 36.321 sections 5.4.5 and 6.1.3.1), receive and process an uplink grant on the PDCCH (as described in TS 36.321 section 5.4.1; TS 36.300

-10-

Exhibit 1
Page 11

section 11.1.2), and perform Logical Channel Prioritization (as described in TS 36.321 sections 4.4 and 5.4.3.1).

15.    All communications, minutes, meeting notes, internal or external correspondence, and agendas relating to actions of, proposed actions of, or meetings held by 3GPP or 3GPP Partners.

16.    Documents relating to FaceTime, including all documents showing how FaceTime data, including video and audio data, is communicated from the application processor to the baseband processor, all documents showing how the VoLTE Products request and allocate bandwidth for the FaceTime data, and all other technical documents regarding the design of FaceTime.

17.    All documents produced or exchanged in *Cellular Communications Equipment LLC v. Apple Inc. et al*, No. 6:14-cv-251 (E.D. Tex.), including but not limited to all Bates numbered productions, discovery, sealed pleadings, deposition transcripts, and expert reports.

18.    Documents sufficient to identify the person(s) most knowledgeable about the design, research and development, testing, manufacture, distribution, marketing and advertising, sale, use, and/or importation of the VoLTE Products.

19.    All documents relied upon to prepare your responses to any Interrogatory or Request for Admission served by Wi-LAN, which are hereby incorporated by reference.

20.    All instructions, manuals and or other documents which you have provided or made available to third parties, including but not limited to any wireless carriers, relating to the operation of the VoLTE Products.

21.    Documents sufficient to identify the date of first sale and price charged for each of the VoLTE Products.

22.    Documents sufficient to show the U.S. sales and worldwide sales of each of your VoLTE Products, on a monthly basis, including documents sufficient to

Exhibit 1
Page 12

explain any acronyms or terminology employed by your accounting system, from the date of the first sale to present, and with respect to those sales:

      a.  the price per unit sold;

      b.  customer;

      c.  gross revenue;

      d.  net revenue;

      e.  the cost of goods sold;

      f.  gross profit margin;

      g.  net operating profit;

      h.  net profit margin; and

      i.  incremental profit margin.

23.    Documents sufficient to show the amount of any patent royalties that contribute to the cost of each VoLTE Product, including the amount of such royalties paid per unit and the person(s) to whom such patent royalties are paid.

24.    Documents sufficient to show the amount of any accounting reserves for patent royalty payments for each VoLTE Product, including the amount of such royalties reserved per unit and the person(s) for whom such reserves are kept.

25.    Pricing models, sales projections, market studies, marketing reports, demographic studies, and forecasts relating to VoLTE and sales of each VoLTE Product.

26.    Documents relating to the marketing of VoLTE and the VoLTE Products, including advertisements, customer surveys and research, and promotional literature.

27.    Documents relating to any appraisal or valuation of any patent or technology that relates to VoLTE and VoLTE Products.

28.    All inbound patent license agreements to which you are a party that cover all or any component of a VoLTE product.

-12-

Exhibit 1
Page 13

29.     All inbound licenses, outbound licenses, cross licenses, and other patent license agreements which you contend relate to technology comparable to the Patents-in-Suit.

30.     All licenses and any amendments, supplements, or extensions thereto between you and Nokia, as well as all documentation, including correspondence, relating to payment or nonpayment of royalties thereunder.

31.     All licenses and any amendments, supplements, or extensions thereto between you and Ericsson, as well as all documentation, including correspondence, relating to payment or nonpayment of royalties thereunder.

32.     All Qualcomm licenses and any amendments, supplements, or extensions thereto regarding your VoLTE Products, as well as all documentation, including correspondence, relating to payment or nonpayment of royalties thereunder.

33.     All documents relating to the documents produced pursuant to requests for production 28, 29, 30, 31, and 32, including communications exchanged with counterparties.

34.     Documents concerning your policies or practices concerning patent clearances, right to use opinions, or other mechanisms to avoid infringement of third-party patents, including patents and patent applications held by or assigned to Wi-LAN.

35.     All documents you intend to rely upon to demonstrate or support your calculation of reasonable royalties pursuant to 35 U.S.C. § 284 for any infringement of the Patents-in-Suit.

36.     All expert reports, deposition transcripts and exhibits, trial transcripts and exhibits and demonstratives, briefing, and orders relating to John R. Hauser's involvement in *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 12-cv-00630 (N.D. Cal.).

-13-

Exhibit 1
Page 14

37.     All documents reflecting any efforts to design any products around the Patents-in-Suit.

38.     All documents you intend to rely upon to demonstrate or show any noninfringing alternatives to the Patents-in-Suit for the sale of the VoLTE Products.

39.     Documents sufficient to identify:

    a.  the location(s) where the VoLTE Products are or have been manufactured and who manufactured those Products; and

    b.  the location(s) where the VoLTE Products are or have been assembled and who assembled those Products.

-14-

Exhibit 1
Page 15

| | | | |
|---|---|---|---|
| 1 | Dated: | May 23, 2017 | By: */s/ Kevin Schubert* |

Robert Cote
  rcote@mckoolsmith.com
Brett Cooper
  bcooper@mckoolsmith.com
Kevin Schubert
  kschubert@mckoolsmith.com
McKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY  10036
(212) 402-9400
(212) 402-9444 (facsimile)

Seth Hasenour
  shasenour@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX  78701
(512) 692-8700
(512) 692-8744 (facsimile)

Allison H. Goddard (211098)
  ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA  92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Defendant,*
*WI-LAN, INC.*

-15-

Exhibit 1
Page 16

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2017, I caused a copy of the foregoing **DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-39)** to be served by electronic mail on the following counsel of record for Plaintiff, Apple Inc.:

> Mark C. Scarsi
>     mscarsi@milbank.com
> Ashlee N. Lin
>      anlin@milbank.com
> Katie Pierucci
>     kpierucci@milbank.com
> MILBANK, TWEED, HADLEY & McCLOY LLP
> 2029 Century Park East, 33rd Floor
> Los Angeles, CA 90067-3019

Dated:        May 23, 2017

By:    */s/ Kevin Schubert*
Kevin Schubert
  kschubert@mckoolsmith.com
McKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY  10036
(212) 402-9400
(212) 402-9444 (facsimile)

*Attorneys for Defendant,*
*WI-LAN, INC.*

-16-

Exhibit 1
Page 17

# Exhibit 8

Exhibit 8
Page 64

Allison H. Goddard (211098)
  ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA  92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Defendant,*
*WI-LAN INC.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO

| | |
|---|---|
| APPLE INC., | CASE NO. 14cv2235 DMS (BLM) |
| Plaintiff, | **DEFENDANT'S THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 51-60)** |
| vs. | |
| WI-LAN INC., | Department: 13A |
| Defendant. | Judge: Hon. Dana M. Sabraw |
| | Magistrate Judge: Hon. Barbara L. Major |

Defendant Wi-LAN Inc. ("Wi-LAN"), by and through its undersigned counsel, hereby requests, pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure and Local Rule 26.1, that Plaintiff Apple Inc. ("Apple") produce each of the following documents, which are in its possession, custody or control within 30 days from the date of service hereof and continuing on each date thereafter until completed at the offices of McKool Smith, P.C., One Bryant Park, 47th Floor, New York, New York 10036, or at such other reasonable time and place as counsel for the respective parties may hereafter designate by agreement.

-1-

Exhibit 8
Page 65

## **DEFINITIONS**

1.      The Definitions, Rules and Instructions set forth in FED. R. CIV. P. 34(a) are incorporated herein by reference.

2.      "Apple" or "You" or "Your" shall mean Apple Inc., including any officers, directors, partners, associates, employees, staff members, agents, representatives, divisions, predecessors-in-interest, affiliated partnerships and/or corporations, or any other related entities, whether or not still in existence.

3.      "And" and "or" shall each mean both the conjunctive and the disjunctive; "all" or "any" shall mean "any and all"; "including" shall mean "including without limitation." In construing these Requests, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders.

4.      The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Request information that might otherwise be construed as outside its scope.

5.      "Lawsuit" shall refer to *Apple Inc. v. Wi-LAN, Inc.*, Civil Action No. 14cv2235 DMS (BLM) and/or *Wi-LAN, Inc. v. Apple, Inc.*, Civil Action No. 14cv1507 DMS (BLM), which have been consolidated and are pending in the United States District Court for the Southern District of California.

6.      "BSR" shall mean buffer status report.

7.      The "*CCE* Litigation" shall mean *Cellular Communications Equipment LLC v. Apple Inc. et al*, No. 6:14-cv-251 (E.D. Tex.), including related cases at Case Nos. 6:13-cv-00507-KNM, 6:13-cv-00509-KNM, 6:13-cv-00511-KNM, 6:16-cv-00476-KNM, 6:16-cv-00475-KNM, and 6:17-cv-00225-RWS-KNM.   The *CCE* Litigation dealt with BSRs as implemented by Apple products and, according to Apple counsel, "whether or not those BSRs are generated and sent according to the

-2-

Exhibit 8
Page 66

1  [CCE patent] claims."  (*CCE* Litigation Pretrial Hearing, ECF 262 at 162:21-23 (Sept.

2  2, 2016).)

3       8.     "CCE" shall mean Cellular Communications Equipment LLC, plaintiff in

4  the *CCE* Litigation.

-3-

Exhibit 8
Page 67

## __INSTRUCTIONS__

1.    In the event that more than one copy of a document exists, you shall produce the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of your agents, attorneys, accountants, employees or representatives.

2.    Each request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail.  If an objection pertains only to a portion of a request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the request, using your best efforts to do so.

3.    If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information:

(a)    the identity of the document, including the exact name and title of the document, the number of pages, attachments, or appendices to the document, and all  serial or identification numbers appearing on the document;

(b)    the nature of the privilege claimed (including work product);

(c)    if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(d)    the date of the document, electronically stored information or oral communication;

(e)    if a document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS   Excel Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

-4-

Exhibit 8
Page 68

(f)     if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

(g)     the general subject matter of the document, electronically stored information or oral communication; and

(h)     the number of the request for production to which the document relates.

4.     All requested documents produced to Wi-LAN shall be organized in accordance with FED. R. CIV. P. 34(b)(E).

5.     Pursuant to FED. R. CIV. P. 26(e), these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure.  If further responsive documents come into the possession or to the attention of you or your attorneys at any time during the course of this proceeding, such documents must be produced as required by the Federal Rules of Civil Procedure.

6.     To the extent that any document is produced in response to one of the following requests and is also responsive to a subsequent request, an additional copy of the document need not be supplied.

7.     If any documents referred to in your response were, but are no longer in your possession, custody, or control, state what disposition was made of them, and when.  If any documents referred to in your response to these interrogatories have been lost or destroyed, describe in detail the circumstances of such loss or destruction and identify each lost or destroyed document (and all files that contained such documents).

Exhibit 8
Page 69

## **REQUESTS FOR PRODUCTION**

51.     Deposition testimony and sealed trial testimony of Madhu Chaudhary in the *CCE* Litigation, and related exhibits.  Mr. Chaudhary testified as an engineer at Apple regarding the implementation of the source code in the Apple products at issue in the *CCE* Litigation, including the BSR functionality, which is also at issue in this Lawsuit.  (*CCE* Litigation Afternoon Trial Transcript, ECF 308 at 16:17-17:6, 25:1-16 (Sept. 12, 2016).)

52.     Deposition testimony and sealed trial testimony of Mr. Mark Frappier in the *CCE* Litigation, and related exhibits.  Mr. Frappier testified on behalf of Apple as an expert in source code.  (*CCE* Litigation Afternoon Trial Transcript, ECF 308 at 39:23-24 (Sept. 12, 2016).)  Mr. Frappier reviewed the source code and testified regarding BSR, which is also at issue in this Lawsuit.  (*Id.* at 40:5-9.)

53.     Expert report(s) of Mr. Mark Frappier and related exhibits.

54.     Deposition testimony and sealed trial testimony of Dr. Michael Caloyannides in the *CCE* Litigation, and related exhibits.  Dr. Caloyannides testified on behalf of CCE regarding Apple's infringement of CCE's patents through the Apple products accused in the *CCE* Litigation, including through implementation of BSR functionality, which is also at issue in this Lawsuit.  (*CCE* Litigation Morning Trial Transcript, ECF 304 at 17:15-19, 22:5-12 (Sept. 8, 2016).)

55.     Expert report(s) of Dr. Michael Caloyannides and related exhibits.

56.     Deposition testimony and sealed trial testimony of Dr. Nigel Jones in the *CCE* Litigation, and related exhibits.  Dr. Jones testified on behalf of CCE regarding his review of the source code.  (*CCE* Litigation Pretrial Hearing, ECF 262 at 75:22-23 (Sept. 2, 2016).)  Through his review of source code and other produced Apple documents, Dr. Jones determined how BSR functioned in the accused devices,

-6-

Exhibit 8
Page 70

including the iPhone 6s Plus, which is also at issue in this Lawsuit.  (*CCE* Litigation Afternoon Trial Transcript, ECF 303 at 14:16-15:2, 19:1-24 (Sept. 7, 2016).)

57.    Expert report(s) of Dr. Nigel Jones and related exhibits.

58.    Deposition testimony and sealed trial testimony of Dr. Anthony Acampora in the *CCE* Litigation, and related exhibits.  Dr. Acampora testified on behalf of Apple regarding his opinion of noninfringement, including his analysis of BSR implementation, which is also at issue in this Lawsuit.  (*CCE* Litigation Morning Trial Transcript, ECF 309 at 32:21-25, 40:13-41:25 (Sept. 13, 2016).)

59.    Expert report(s) of Dr. Anthony Acampora and related exhibits.

60.    Sealed closing statement by Apple in the *CCE* Litigation.  (*CCE* Litigation Morning Session, ECF 323 (Sept. 14, 2016).)

Dated:        September 1, 2017              By:    */s/ Kevin Schubert*
                                                    Robert Cote
                                                       rcote@mckoolsmith.com
                                                    Brett Cooper
                                                       bcooper@mckoolsmith.com
                                                    Kevin Schubert
                                                       kschubert@mckoolsmith.com
                                                    McKOOL SMITH, P.C.
                                                    One Bryant Park, 47th Floor
                                                    New York, NY  10036
                                                    (212) 402-9400
                                                    (212) 402-9444 (facsimile)

                                                    Seth Hasenour
                                                       shasenour@mckoolsmith.com
                                                    McKOOL SMITH, P.C.
                                                    300 W. 6th Street, Suite 1700
                                                    Austin, TX  78701
                                                    (512) 692-8700
                                                    (512) 692-8744 (facsimile)

                                                    Allison H. Goddard (211098)
                                                       ali@pattersonlawgroup.com
                                                    PATTERSON LAW GROUP
                                                    402 West Broadway, 29th Floor
                                                    San Diego, CA  92101
                                                    (619) 398-4760
                                                    (619) 756-6991 (facsimile)

                                                    *Attorneys for Defendant,*

-7-

Exhibit 8
Page 71

1

*WI-LAN INC.*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-

Exhibit 8
Page 72

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2017, I caused a copy of the foregoing **DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 51-60)** to be served by electronic mail on the following counsel of record for Plaintiff, Apple Inc.:

>        Mark C. Scarsi
>            mscarsi@milbank.com
>        Ashlee N. Lin
>             anlin@milbank.com
>        Katie Pierucci
>            kpierucci@milbank.com
>        MILBANK, TWEED, HADLEY & McCLOY LLP
>        2029 Century Park East, 33rd Floor
>        Los Angeles, CA 90067-3019


Dated:        September 1, 2017

>                                        By:    */s/ Kevin Schubert*
>                                        Kevin Schubert
>                                           kschubert@mckoolsmith.com
>                                        McKOOL SMITH, P.C.
>                                        One Bryant Park, 47th Floor
>                                        New York, NY  10036
>                                        (212) 402-9400
>                                        (212) 402-9444 (facsimile)
>
>                                        *Attorneys for Defendant,*
>                                        *WI-LAN INC.*

-9-

Exhibit 8
Page 73

# Exhibit 9

Exhibit 9
Page 74

Mark C. Scarsi (SBN 183926)
mscarsi@milbank.com
Ashlee N. Lin (SBN 275267)
anlin@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
Telephone:  (424) 386-4000
Facsimile:  (213) 629-5063

Christopher J. Gaspar (*admitted pro hac vice*)
cgaspar@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, New York 10005
Telephone:  (212) 530-5000
Facsimile:  (212) 822-5019

*Attorneys for Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO

| | |
|---|---|
| APPLE INC.,<br><br>      Plaintiff,<br><br>v.<br><br><br>WI-LAN, INC.,<br><br>      Defendant.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS<br><br>_____ | Case No. 3:14-cv-2235-DMS-BLM<br><br>(lead case);<br><br>Case No. 3:14A-cv-1507-DMS-BLM<br>(consolidated)<br><br>**PLAINTIFF APPLE INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 51-60)**<br><br>Department:  13A<br>Judge:      Hon. Dana M. Sabraw<br>Magistrate Judge:<br>          Hon. Barbara L. Major |

Exhibit 9
Page 75

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Apple Inc. ("Apple") hereby objects and responds to Defendant Wi-LAN, Inc.'s ("Wi-LAN") Third Set of Requests for Production.  Preceding Apple's responses and specific objections below, Apple provides its General Objections applicable to each of its responses.  Accordingly, each of Apple's responses is subject to and without waiver of its general and specific objections below.

## GENERAL OBJECTIONS

All of Apple's specific responses are subject to and without waiver of the following general objections:

1.      Apple objects to any request, definition, or instruction to the extent that it seeks to impose any obligations or burdens upon Apple different from or in addition to what is required by the Federal Rules of Civil Procedure, the Local Rules of this Court, or any governing case law.

2.      Apple's discovery and investigation in connection with this case are ongoing.  As a result, Apple's responses concern information obtained and reviewed to date, and are given without prejudice to its right to amend or supplement its responses after considering information obtained or reviewed through further discovery and investigation.

3.      Apple objects to any request to the extent it seeks information that is protected by the attorney-client privilege, work-product doctrine, or any other common law or statutory privilege or protection, including common interest or joint defense privileges or protections, or seeks other information that is otherwise protected from discovery or disclosure.  Nothing contained in these responses is intended to be nor should be considered to be a waiver of any attorney-client communication privilege, common interest privilege or protection, work-product privilege or protection, or any other applicable privilege, protection or doctrine, and to the extent that any request may be construed as calling for disclosure of

Exhibit 9
Page 76

information, documents, and/or things protected by such privileges or doctrines, a continuing objection to each and every such request is hereby asserted.

4.     Apple objects to the extent that the answer to any request may be derived or ascertained from publicly available documents or documents and things to be produced by the parties, where the burden of deriving or ascertaining the responsive information from those documents is substantially the same for Wi-LAN as it is for Apple.

5.     Apple objects to any request that is overly broad, unduly burdensome, and/or directed to matters that are not relevant to any party's claim or defense and/or not proportional to the needs of the case.

6.     Apple objects to each request to the extent it exceeds the scope of permissible discovery by calling for information that is neither relevant to any party's claim or defense and/or not proportional to the needs of the case.

7.     Apple objects to any request that is vague, ambiguous, or confusing, by failing to adequately define terms or by using terms the meaning of which is not readily available or decipherable.

8.     Apple objects to each request to the extent it seeks information outside of Apple's possession, custody, or control, or calls for Apple to prepare documents and/or things that do not already exist.

9.     Apple objects to each request to the extent it calls for legal conclusions or present questions of pure law.

10.     Apple objects to each request to the extent it purports to require that Apple provide responses on matters that are or may be the subject of expert witness testimony.  All of the following responses are given without prejudice to Apple's right to procure, rely on, and introduce expert witness testimony, and such expert's right to rely on any documents or information deemed appropriate by that

Exhibit 9
Page 77

expert in formulating the expert's opinion, whether or not identified in these responses.

11.     Apple objects to each request to the extent it seeks confidential and proprietary information, including trade secrets and competitively sensitive business information, where any purported marginal benefits of production of the requested information are outweighed by the burden associated with producing such highly sensitive materials.

12.     Apple objects to each request to the extent it is not limited to any specified geographic jurisdiction, calls for information related to products that are not yet commercialized, extraterritorial products, or products that are not relevant to any issue in the instant matter, and to the extent it seeks information beyond the allowable time period for purposes of 35 U.S.C. § 286.

13.     Apple objects to each request to the extent it seeks confidential, financial, and/or proprietary information (including trade secrets) that, if disclosed, would invade the proprietary rights of third parties.  Apple further objects to each request to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party.

14.     Apple objects to the definitions of "Apple," "you," and "your" as set forth in paragraph 2 of the Definitions to the extent it purports to impose discovery obligations on persons or entities other than Apple and/or purports to impose on Apple any discovery obligation inconsistent with or outside the scope of its obligations under the Federal Rules of Civil Procedure or the Local Rules of this Court.  Subject to and without waiving its objection to this definition, Apple will respond to a request using any such defined term by diligently conducting its investigation and responding to discovery in light of those persons affiliated with Apple during the relevant time period who are likely to have information relevant

Exhibit 9
Page 78

to the subject matter of this action, but without assuming any obligations to determine all of the information required under Wi-LAN's definition.

15.     Apple objects to each request to the extent multiple subparts are asserted as a single request.

16.     Apple objects to these requests to the extent that they seek to impose an obligation to identify or search for information or documents at any location or from any source other than where they would reasonably be expected to be stored in the ordinary course of business.

17.     Apple's responses to these requests shall not be construed in any way as an admission that any definition provided by Wi-LAN is either factually correct or legally binding upon Apple, or as a waiver of any of Apple's objections, including but not limited to objections regarding discoverability of documents or other evidence.

18.     By identifying or producing any information, documents, or things in response to any request, Apple does not stipulate, and expressly reserves all objections, to the authenticity, relevance, materiality, and admissibility of any such documents or things.

19.     Apple objects to the definition of "BSR" in paragraph 6 of the Definitions as being vague, ambiguous, overly broad, and unduly burdensome.

20.     Apple objects to the definition of "*CCE* Litigation" in paragraph 7 of the Definitions as being vague, ambiguous, overly broad, and unduly burdensome, including at least because it purports to encompass litigation to which Apple was not a party.

21.     Apple further objects to each of these requests as inconsistent with the Court's Order Granting in Part and Denying in Part Defendant's Motion to Compel (ECF No. 161), and in particular, the Court's denial of Wi-LAN's motion to compel RFP number 17.

Exhibit 9
Page 79

22.     Apple reserves the right to assert additional objections to these requests as appropriate.

23.     Apple's responses are subject to the Court's Order Governing Discovery of Electronically Stored Information (ECF No. 130), including paragraphs 6 and 11 setting forth procedures for meeting and conferring regarding custodians and ESI terms.

24.     Apple's investigation and discovery are ongoing.  Apple reserves all rights to amend, modify, and/or supplement its responses and objections.

Exhibit 9
Page 80

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR PRODUCTION NO. 51:

Deposition testimony and sealed trial testimony of Madhu Chaudhary in the *CCE* Litigation, and related exhibits. Mr. Chaudhary testified as an engineer at Apple regarding the implementation of the source code in the Apple products at issue in the *CCE* Litigation, including the BSR functionality, which is also at issue in this Lawsuit. (*CCE* Litigation Afternoon Trial Transcript, ECF 308 at 16:17-17:6, 25:1-16 (Sept. 12, 2016).)

### RESPONSE TO REQUEST FOR PRODUCTION NO. 51:

Apple incorporates by reference its General Objections set forth above. Apple further objects to the terms "CCE Litigation," "BSR functionality," "source code," and "Apple products" because those terms are vague, ambiguous, overly broad, unduly burdensome, and/or not relevant to any party's claim or defense and not proportional to the needs of the case.  Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party.  Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.  Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

Exhibit 9
Page 81

**REQUEST FOR PRODUCTION NO. 52:**

Deposition testimony and sealed trial testimony of Mr. Mark Frappier in the *CCE* Litigation, and related exhibits. Mr. Frappier testified on behalf of Apple as an expert in source code. (*CCE* Litigation Afternoon Trial Transcript, ECF 308 at 39:23-24 (Sept. 12, 2016).) Mr. Frappier reviewed the source code and testified regarding BSR, which is also at issue in this Lawsuit. (*Id.* at 40:5-9.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Apple incorporates by reference its General Objections set forth above. Apple further objects to the terms "CCE Litigation," "BSR," and "source code" because those terms are vague, ambiguous, overly broad, unduly burdensome, and/or not relevant to any party's claim or defense and not proportional to the needs of the case.  Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party. Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.  Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

**REQUEST FOR PRODUCTION NO. 53:**

Expert report(s) of Mr. Mark Frappier and related exhibits.

Exhibit 9
Page 82

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Apple incorporates by reference its General Objections set forth above. Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party. Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case. Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

**REQUEST FOR PRODUCTION NO. 54:**

Deposition testimony and sealed trial testimony of Dr. Michael Caloyannides in the *CCE* Litigation, and related exhibits. Dr. Caloyannides testified on behalf of CCE regarding Apple's infringement of CCE's patents through the Apple products accused in the *CCE* Litigation, including through implementation of BSR functionality, which is also at issue in this Lawsuit. (*CCE* Litigation Morning Trial Transcript, ECF 304 at 17:15-19, 22:5-12 (Sept. 8, 2016).)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Apple incorporates by reference its General Objections set forth above. Apple further objects to the terms "CCE Litigation," "implementation," "BSR functionality," "source code," and "Apple products" because those terms are vague, ambiguous, overly broad, unduly burdensome, and/or not relevant to any

Exhibit 9
Page 83

party's claim or defense and not proportional to the needs of the case.  Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party.  Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.  Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

**REQUEST FOR PRODUCTION NO. 55:**

Expert report(s) of Dr. Michael Caloyannides and related exhibits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Apple incorporates by reference its General Objections set forth above. Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party.  Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.  Apple further objects to this request as

Exhibit 9
Page 84

inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

**REQUEST FOR PRODUCTION NO. 56:**

Deposition testimony and sealed trial testimony of Dr. Nigel Jones in the *CCE* Litigation, and related exhibits. Dr. Jones testified on behalf of CCE regarding his review of the source code. (*CCE* Litigation Pretrial Hearing, ECF 262 at 75:22-23 (Sept. 2, 2016).) Through his review of source code and other produced Apple documents, Dr. Jones determined how BSR functioned in the accused devices, including the iPhone 6s Plus, which is also at issue in this Lawsuit. (*CCE* Litigation Afternoon Trial Transcript, ECF 303 at 14:16-15:2, 19:1-24 (Sept. 7, 2016).)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Apple incorporates by reference its General Objections set forth above. Apple further objects to the terms "CCE Litigation," "how BSR functioned," "the source code," and "Apple products" because those terms are vague, ambiguous, overly broad, unduly burdensome, and/or not relevant to any party's claim or defense and not proportional to the needs of the case. Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party. Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case. Apple further objects to this request as inconsistent with the Court's denial of Wi-

Exhibit 9
Page 85

LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

## REQUEST FOR PRODUCTION NO. 57:

Expert report(s) of Dr. Nigel Jones and related exhibits.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 57:

Apple incorporates by reference its General Objections set forth above. Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party. Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case. Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

## REQUEST FOR PRODUCTION NO. 58:

Deposition testimony and sealed trial testimony of Dr. Anthony Acampora in the *CCE* Litigation, and related exhibits. Dr. Acampora testified on behalf of Apple regarding his opinion of noninfringement, including his analysis of BSR implementation, which is also at issue in this Lawsuit. (*CCE* Litigation Morning Trial Transcript, ECF 309 at 32:21-25, 40:13-41:25 (Sept. 13, 2016).)

## RESPONSE TO REQUEST FOR PRODUCTION NO. 58:

Apple incorporates by reference its General Objections set forth above. Apple further objects to the terms "CCE Litigation" and "BSR implementation" because those terms are vague, ambiguous, overly broad, unduly burdensome,

Exhibit 9
Page 86

and/or not relevant to any party's claim or defense and not proportional to the needs of the case.  Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party. Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.  Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

**REQUEST FOR PRODUCTION NO. 59:**

Expert report(s) of Dr. Anthony Acampora and related exhibits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Apple incorporates by reference its General Objections set forth above. Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party.  Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.  Apple further objects to this request as

Exhibit 9
Page 87

inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).

**REQUEST FOR PRODUCTION NO. 60:**

Sealed closing statement by Apple in the *CCE* Litigation. (*CCE* Litigation Morning Session, ECF 323 (Sept. 14, 2016).)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Apple incorporates by reference its General Objections set forth above. Apple further objects to the term "CCE Litigation" because that term is vague, ambiguous, overly broad, unduly burdensome, and/or not relevant to any party's claim or defense and not proportional to the needs of the case. Apple objects to the extent this request seeks confidential and proprietary information, where any purported marginal benefits of production are outweighed by the burden associated with producing such highly sensitive materials, and/or to the extent it seeks information subject to confidentiality and/or nondisclosure obligations Apple has undertaken with respect to any third party. Apple further objects to this request as overly broad and unduly burdensome and because it seeks information not relevant to any party's claim or defense and not proportional to the needs of the case, including at least because it purports to seek documents from unrelated litigation, and it seeks information not pertaining to the accused products and/or functionality in this case.

///

///

///

///

///

///

///

Exhibit 9
Page 88

       Apple further objects to this request as inconsistent with the Court's denial of Wi-LAN's motion to compel RFP number 17 (ECF No. 161 ¶ 4).


DATED:  October 2, 2017     By: <u>/s/ Ashlee N. Lin</u>
                                 Mark C. Scarsi
                                 mscarsi@mibank.com
                                 Ashlee N. Lin
                                 anlin@milbank.com
                                 Milbank, Tweed, Hadley & McCloy LLP
                                 2029 Century Park East, 33rd Floor
                                 Los Angeles, California 90067
                                 Telephone: (424) 386-4000
                                 Facsimile: (213) 629-5063

                                 *Attorneys for Plaintiff Apple Inc.*

Exhibit 9
Page 89

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was forwarded via electronic mail upon Defendants' counsel of record on October 2, 2017.

/s/ Ashlee N. Lin
Ashlee N. Lin

Exhibit 9
Page 90

# Exhibit 10

Exhibit 10
Page 91

## Warren Lipschitz

| | |
|---|---|
| **From:** | Dang, Nathaniel <NDang@milbank.com> |
| **Sent:** | Tuesday, October 03, 2017 7:19 PM |
| **To:** | Warren Lipschitz; WiLAN SDCAL |
| **Cc:** | Apple-WiLAN-DJ |
| **Subject:** | RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235) |

Warren,

Thank you for your email.  As made clear in Apple's responses, Apple disputes your assertion that the Court gave Wi-LAN permission to serve the requests at issue.  On the contrary, the Court **expressly denied** Wi-LAN's request seeking **these same documents** requested now.  At the August 30 hearing, the Court denied Wi-LAN's motion to compel as to RFP No. 17, including Wi-LAN's "narrowed" requests, which sought Apple's technical expert reports and deposition transcript and deposition transcripts and exhibits from Apple witnesses.  (See Hr'g Tr. at 43:24–44:17.)  All the Court permitted Wi-LAN to do was reserve a narrowly tailored request if certain specific documents from the CCE case become relevant.  The Court again **expressly** stated that Wi-LAN's request for all technical reports was absolutely inappropriate: "So **if it becomes relevant**, you can ask an appropriate request that isn't 'Give me everything from that case,' [] 'Give me every. . . expert report from that case.'" (*Id.* at 44:13-17.)

Despite this clear instruction from the Court, Wi-LAN has not made any further showing of relevance, nor has it further narrowed its request.  Rather, Wi-LAN's RFP Nos. 51-60 merely break apart the previously "narrowed" RFP No. 17 already found objectionable by the Court. Indeed, Wi-LAN still seeks all technical expert reports (and related deposition transcripts), but has requested them in eight separate document requests instead of one.  That does not transform the original objectionable request into an appropriate one.  Thus, Wi-LAN's RFP Nos. 51-60 are contrary to the Court's Order and objectionable for at least the same reasons the Court found RFP No. 17 objectionable.

If you still wish to meet and confer on the issue, we are available to meet and confer on October 6 at the same time we discuss Wi-LAN's Response to Interrogatory No. 11 at that time (unless Wi-LAN will agree to supplement its response before then).

Apple confirms that it will supplement its response to Interrogatory No. 8.

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Tuesday, October 3, 2017 3:23 PM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

Exhibit 10
Page 92

Please let me know when you are available to meet and confer this week regarding Apple's refusal to produce any documents in response to WiLAN's Third Set of RFPs.  The Court gave WiLAN permission to serve narrowed requests at the 8/30 hearing.  As explained in the requests themselves, each request relates to Apple testimony and argument in the *CCE* litigation regarding Apple's implementation of LTE Buffer Status Reports in the Accused Products.  Apple's implementation of buffer status reports in the Accused Products is relevant to infringement for the '723, '761, '145, and '020 patents.

Can you also please confirm that Apple still intends to supplement its response to interrogatory number 8 to identify responsive licenses that have now been produced?

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, October 02, 2017 8:53 PM
**To:** WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Counsel,

Please find attached Apple's Responses and Objections to Wi-LAN's Third Set of Requests for Production.

Best,
Nathaniel

_____

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 10
Page 93

# Exhibit 11

Exhibit 11
Page 94

**Warren Lipschitz**

---

| | |
|---|---|
| **From:** | Dang, Nathaniel <NDang@milbank.com> |
| **Sent:** | Friday, October 06, 2017 8:35 PM |
| **To:** | Warren Lipschitz; WiLAN SDCAL |
| **Cc:** | Apple-WiLAN-DJ |
| **Subject:** | RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235) |

Warren,

We maintain that RFP Nos. 51-60 are plainly objectionable including because they contravene the Court's express ruling.

Apple has already explained in detail why Wi-LAN's RFP No. 17 (even as "narrowed" by Wi-LAN) was not relevant, including that its purported relevance stems from only a single feature (the BSR functionality) implicated in both *CCE* and the present action (and which is implemented in only two of the currently accused products).  (Dkt. No. 146 at 17-19.)  The Court expressly agreed that RFP No. 17 was improper, stating that "it includes irrelevant information" (Hr'g Tr. at 43:22-23) and that Wi-LAN may re-serve narrowed requests only "if it becomes relevant."  (Hr'g Tr. at 44:13-17.)

RFP No. 17, as "narrowed" by Wi-LAN, sought certain categories of documents from the *CCE* action, including technical expert reports, deposition transcripts from Apple witnesses and technical experts, sealed pleadings, and related exhibits.  RFP Nos. 51-60 now merely restate RFP No. 17 as multiple requests seeking the same documents, in contravention of the Court's order.  (See Wi-LAN's Third Set of RFPs, seeking documents from the *CCE* case including technical expert reports and related exhibits, deposition and trial testimony of technical experts, and Apple's sealed closing statement.)

Although Wi-LAN purports to have "narrowed" its requests – to "Apple argument and testimony regarding BSR functionality" – RFP Nos. 51-60 are not so limited to the BSR functionality.  Rather, they seek the same broad categories of documents as RFP No. 17.  For example, RFP Nos. 52 and 53 seek the production of "Deposition testimony and sealed trial testimony" and "Expert report(s)" of Mr. Mark Frappier in the *CCE* case, and all related exhibits.  Further, Wi-LAN has failed to explain how RFP Nos. 51-60 are any more relevant than RFP No. 17.  Thus, the Court's express rejection of Wi-LAN's RFP No. 17 applies for the same reasons to RFP Nos. 51-60, as Wi-LAN has neither narrowed its request nor shown that it has become relevant.

In view of the Court's clear ruling and Wi-LAN's contravention thereof, we believe any further discussion of this issue to be futile.  However, if you still wish to meet and confer on the issue, we can be available on Monday, October 9, at any time between 10:00 a.m. and 12:00 p.m. PST or after 2:30 p.m. PST.  In that case, please be prepared to explain how Wi-LAN's various requests for expert reports, deposition trial testimony, and related exhibits are narrower and more relevant than its already rejected RFP No. 17.

Best,
Nathaniel

---

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Friday, October 6, 2017 10:29 AM

Exhibit 11
Page 95

**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

We disagree with your interpretation of the Court's ruling. Our understanding is that the Court denied WiLAN's motion because WiLAN's served requests were too broad. WiLAN asked the court if it could serve a narrower request and the Court said "You can serve another -- a new one, yeah." See Hr'g Tr. at 44:18-20. WiLAN has narrowed its requests to Apple argument and testimony regarding BSR functionality, which is undeniably at issue in this case.

Are you available to meet and confer regarding this issue on Monday? Please be prepared to explain why Apple's argument and testimony regarding BSR functionality is not relevant to this case.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Tuesday, October 03, 2017 7:19 PM
**To:** Warren Lipschitz; WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Warren,

Thank you for your email. As made clear in Apple's responses, Apple disputes your assertion that the Court gave Wi-LAN permission to serve the requests at issue. On the contrary, the Court *expressly denied* Wi-LAN's request seeking *these same documents* requested now. At the August 30 hearing, the Court denied Wi-LAN's motion to compel as to RFP No. 17, including Wi-LAN's "narrowed" requests, which sought Apple's technical expert reports and deposition transcript and deposition transcripts and exhibits from Apple witnesses. (See Hr'g Tr. at 43:24–44:17.) All the Court permitted Wi-LAN to do was reserve a narrowly tailored request if certain specific documents from the CCE case become relevant. The Court again *expressly* stated that Wi-LAN's request for all technical reports was absolutely inappropriate: "So *if it becomes relevant*, you can ask an appropriate request that isn't 'Give me everything from that case,' [] 'Give me every. . . expert report from that case.'" (*Id.* at 44:13-17.)

Despite this clear instruction from the Court, Wi-LAN has not made any further showing of relevance, nor has it further narrowed its request. Rather, Wi-LAN's RFP Nos. 51-60 merely break apart the previously "narrowed" RFP No. 17 already found objectionable by the Court. Indeed, Wi-LAN still seeks all technical expert reports (and related deposition transcripts), but requested them in eight separate document requests instead of one. That does not transform the original objectionable request into an appropriate one. Thus, Wi-LAN's RFP Nos. 51-60 are contrary to the Court's Order and objectionable for at least the same reasons the Court found RFP No. 17 objectionable.

If you still wish to meet and confer on the issue, we are available to meet and confer on October 6 at the same time we discuss Wi-LAN's Response to Interrogatory No. 11 at that time (unless Wi-LAN will agree to supplement its response before then).

Apple confirms that it will supplement its response to Interrogatory No. 8.

Best,
Nathaniel

_____

Exhibit 11
Page 96

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Tuesday, October 3, 2017 3:23 PM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

Please let me know when you are available to meet and confer this week regarding Apple's refusal to produce any documents in response to WiLAN's Third Set of RFPs.  The Court gave WiLAN permission to serve narrowed requests at the 8/30 hearing.  As explained in the requests themselves, each request relates to Apple testimony and argument in the *CCE* litigation regarding Apple's implementation of LTE Buffer Status Reports in the Accused Products.  Apple's implementation of buffer status reports in the Accused Products is relevant to infringement for the '723, '761, '145, and '020 patents.

Can you also please confirm that Apple still intends to supplement its response to interrogatory number 8 to identify responsive licenses that have now been produced?

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, October 02, 2017 8:53 PM
**To:** WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Counsel,

Please find attached Apple's Responses and Objections to Wi-LAN's Third Set of Requests for Production.

Best,
Nathaniel

_____

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com


==============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

3

Exhibit 11
Page 97

========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 11
Page 98

# Exhibit 12

Exhibit 12
Page 99

**Warren Lipschitz**

| | |
|---|---|
| **From:** | Dang, Nathaniel <NDang@milbank.com> |
| **Sent:** | Monday, October 09, 2017 5:15 PM |
| **To:** | Warren Lipschitz |
| **Cc:** | WiLAN SDCAL; Apple-WiLAN-DJ |
| **Subject:** | RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies |

Warren,

Thank you for meeting and conferring with us today. As discussed, we maintain that the Wi-LAN's RFP Nos. 40, 41 and Rog Nos. 11 and 13 seeking information and communications related to a 2007 Marketing Incentive Agreement are objectionable, including because they are overly burdensome and seek information that is neither relevant nor proportional to the needs of the case.

Thank you for confirming Wi-LAN withdraws RFP 42. Please note, however, Apple reserves all rights in connection with its expert reports, including the right to rebut arguments made by Wi-LAN, and confirms it will comply with all of its disclosure obligations in this regard.

Best,
Nathaniel

_____
Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Sunday, October 8, 2017 8:32 AM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

WiLAN hereby narrows RFP Nos. 40 and 41 to the 2007 Marketing Incentive Agreement between Apple and Qualcomm and to documents reflecting negotiations regarding and payments made pursuant to the provisions prohibiting Apple from using the WiMAX standard. With respect to Rog 11, WiLAN requests only that Apple identify an Apple employee knowledgeable about negotiations relating to the foregoing agreement, including the provisions prohibiting Apple from using the WiMAX standard. Please let me know whether Apple will produce this discovery. If not, we can discuss on the meet and confer Monday.

In light of Apple's objection, WiLAN hereby withdraws RFP 42, with the understanding that Apple will not challenge the possibility of payments made by Apple to carriers to remedy degraded performance on Apple's phones.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

Exhibit 12
Page 100

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, September 25, 2017 5:05 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

We are available for a call after 10 a.m. PST tomorrow.

Best,
Nathaniel

_____

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Monday, September 25, 2017 2:44 PM
**To:** Dang, Nathaniel
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

Thanks for your email.  Please let me know when you are available tomorrow morning to call the clerk to discuss our outstanding issues.  If I don't hear from you, I'll call the clerk at 2pm central to request a time for the parties to conference.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, September 25, 2017 2:34 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Dear Warren,

Thank you for your email.  To follow up on our call on Friday, please find below Apple's positions on the responses we discussed:

- RFP Nos. 40 and 41; Rog No. 11 – Apple maintains its objections, including on grounds that these requests seek information and documents that are not relevant and proportional to the needs of this case, as Apple has not entered into a license agreement with Qualcomm.
- Rog No. 12 – Apple will supplement its response to this interrogatory to provide citations to responsive documents and believes such a response is complete.  Apple does not agree that it is required to provide any additional narrative response.

Exhibit 12
Page 101

- <u>Rog No. 13</u> – Wi-LAN informed us on Friday of publicly available documents pertaining to a discussion between Apple and Qualcomm regarding the incorporation of WiMAX standard in Apple's products.  We are looking into this further and will provide a supplemental response if appropriate.
- <u>Rog No. 14</u> – Apple will supplement its response, but disagrees that a narrative response is required.
- <u>RFP No. 42</u> – Apple maintains its objections to this request, including that it seeks documents that are not relevant and proportional to the needs of this case.
- <u>RFP Nos. 43-47 and 50</u> – Apple confirms that it will produce relevant, non-privileged documents in its possession, custody, or control in response to the non-objectionable portions of these requests. If, during its review, Apple identifies such documents that it intends to withhold, Apple will notify Wi-LAN.

Best,
Nathaniel

_____

**Nathaniel T. Dang** | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Friday, September 22, 2017 10:02 AM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

Thanks for meeting with me today.  You were unable to provide Apple's position on supplementation on most of the issues, but said you would get back to us by Monday.  Given the 9/27 deadline for WiLAN's motion to compel, we intend to reach out to the clerk Monday afternoon at 3pm central to discuss WiLAN's motion, unless Apple's confirms before then that it will provide the requested supplementation.  My summary of the call below.

**Apple's Responses to WiLAN Discovery**
- Rog 11:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- Rog 12:  Apple will supplement its response to this interrogatory to provide citations to documents reflecting Apple's participation in both the WiMAX and LTE standards.  You said you will confirm by Monday whether Apple will (1) provide citations to documents reflecting Apple's research or testing relating to the development and R&D expenditures attributable to these standards,  and  (2) provide a narrative description regarding Apple's participation in the WiMAX and LTE standards.
- Rog 13:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- Rog 14:  Apple will supplement its response to provide the requested information.
- RFPs 40 and 41:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- RFP 42:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.

With respect to RFP Nos. 43, 44, 45, 46, 47, and 50, please let me know by Monday whether Apple is refusing to produce any responsive non-privileged documents.

**WiLAN Responses to Apple Discovery**

Exhibit 12
Page 102

We discussed Wi-LAN's responses to Apple's Discovery and the letter I sent you Monday. Specifically, we discussed Interrogatories 1, 2, 5, 6, 7, and 8. You agreed that WiLAN's citation to documents for Rog 2 is sufficient and Wi-LAN's response to Rog 6 is sufficient. At this point, I believe that Wi-LAN has addressed all of Apple's concerns. Please let me know if there are any outstanding issues you would like to discuss.


Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Thursday, September 21, 2017 10:46 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies


Warren,

Can you please also be prepared to discuss Wi-LAN's Objections and Responses to Apple's First Sets of Interrogatories and RFPs on our call tomorrow?

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Dang, Nathaniel
**Sent:** Thursday, September 21, 2017 9:32 AM
**To:** Warren Lipschitz <wlipschitz@mckoolsmith.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies


Warren,

10:30 a.m. central would work on our end.

Thanks,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Thursday, September 21, 2017 7:27 AM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Exhibit 12
Page 103

Nathaniel,

I have a meeting from 1130-130pm central, but am otherwise available.  Let me know what time is good for you.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Wednesday, September 20, 2017 8:12 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

Would noon central on Friday work?

Best,
Nathaniel

_____
Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Monday, September 18, 2017 6:59 PM
**To:** Gaspar, Christopher J. <CGaspar@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>; Lin, Ashlee <anlin@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Chris,

Thanks for your response.  Friday works, but please come prepared with Apple's positions on supplementation.  As you know, the court requires discovery motions to be filed within 30 days of objections, which is next Wednesday, 9/27.

Is 3pm central good?  Let's use this dial-in:  18662448528 passcode 445756.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Gaspar, Christopher J. [mailto:CGaspar@milbank.com]
**Sent:** Monday, September 18, 2017 4:54 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ; Lin, Ashlee
**Subject:** Re: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Exhibit 12
Page 104

Warren,

Thank you for the follow-up email.  You might not know, but I was in a deposition your colleague Kevin Schubert took on Thursday at the time of your letter.  I am giving it attention.  Can we talk on Friday after Kevin's second 30b6 deposition of Apple concerning custodians, documents, repositories, etc.?

Regards,

Chris

Chris Gaspar
Milbank
(212) 530-5019
cgaspar@milbank.com

On Sep 18, 2017, at 5:08 PM, Warren Lipschitz <wlipschitz@mckoolsmith.com> wrote:

> Chris,
>
> Following up on the correspondence below.  Please let me know when you are available to meet and confer.
>
> Thanks,
>
> **Warren Lipschitz | Associate | McKool Smith**
> telephone: 214.978.4973
>
> ---
>
> **From:** Warren Lipschitz
> **Sent:** Thursday, September 14, 2017 4:48 PM
> **To:** 'Gaspar, Christopher J.'
> **Cc:** WiLAN SDCAL; Apple-WiLAN-DJ; Lin, Ashlee
> **Subject:** Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies
>
> Chris,
>
> Please see the attached correspondence.
>
> Regards,
>
> **Warren Lipschitz | Associate | McKool Smith**
> 300 Crescent Court, Suite 1500, Dallas, Texas 75201
> telephone: 214.978.4973
> fax: 214.978.4044
>
> NOTICE OF CONFIDENTIALITY:
>
> The information contained in and transmitted with this e-mail is SUBJECT TO THE ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL.  It is intended only for the individual or entity designated above.  You are hereby notified that any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the addressee designated above by the sender is unauthorized and strictly prohibited.  If you have received this e-mail in error, please notify the sender by reply immediately.  Any e-mail erroneously transmitted to you should be immediately destroyed.
>
>
> ============================================================
>
> This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that

Exhibit 12
Page 105

any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 12
Page 106

# Exhibit 13

Exhibit 13
Page 107

**John Yang**

| | |
|---|---|
| **From:** | Seth Hasenour |
| **Sent:** | Monday, October 09, 2017 6:19 PM |
| **To:** | Warren Lipschitz; Dang, Nathaniel |
| **Cc:** | WiLAN SDCAL; Apple-WiLAN-DJ |
| **Subject:** | RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235) |

Ashlee and Nathaniel,

Following up on our call today, regarding, RFP Nos. 51-60, we explained that we are willing to limit our requests to testimony or argument regarding Apple's use of BSR functionality, which is accused in this case.  We asked two questions and you said you would get back to us on both:

1) Is Apple willing to agree not to make any noninfringement arguments regarding bsr?  If so, we would be willing to withdraw these requests.

2) Does Apple have any proposals as to how Wi-LAN can narrow its requests so that Apple will produce argument and testimony regarding Apple's use of BSR?  If not, we agree the parties are at an impasse.

Regarding ROGs 11 and 13 and RFPs 40 and 41, you stated that Apple is standing on its objections.  Accordingly, we will raise these narrowed requests on the call with the Court.

As discussed, we can agree to postpone the call with the Court by a day or two if Apple needs additional time to consider our requests.

Regards,
Seth

**From:** Warren Lipschitz
**Sent:** Monday, October 09, 2017 3:45 PM
**To:** Dang, Nathaniel
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** Re: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Let's use this dial-in:  18662448528 passcode 445756

Sent from my iPhone

On Oct 9, 2017, at 4:31 PM, Dang, Nathaniel <NDang@milbank.com> wrote:

> Warren,
>
> Your email misses the point.  First, Wi-LAN's requests seek much more than information related to BSR functionality, which you acknowledge in indicating that the requests are "limited" to all documents that include any reference testimony or argument regarding BSR functionality.  We reiterate that the *CCE* case involved entirely different patents (4 out of 5 of which do not relate to BSR functionality at all), different accused technology, and ten accused products—only two of which are accused here.  Wi-LAN's request are entirely overbroad for at least these reasons.  Furthermore, Wi-LAN has wholly failed to explain how "testimony or argument" related to BSR functionality in this unrelated case would be at all relevant here.  First, BSR functionality is a single, limited feature that is not described in the patents-in-

1

Exhibit 13
Page 108

suit here, and only superficially referenced in Wi-LAN's infringement contentions as read on the VoLTE standard—not Apple's accused products.  Moreover, even if relevant, to the extent BSR functionality is implemented in Apple's products accused here (most of which were not even accused in the *CCE* case), information regarding that functionality is available via discovery in this case.  Wi-LAN has not provided any reason why it cannot obtain properly requested information from such discovery.

Lastly, Wi-LAN continues to fail to explain how such requests are not in direct contravention to Court's order on RFP No. 17.  The Court expressly denied Wi-LAN's request for all of Apple's technical expert reports, and deposition transcripts and exhibits for technical witnesses and Apple witnesses, yet Wi-LAN here again seeks all of Apple's technical expert reports and testimony (among other documents).   For at least these reasons, Apple maintains its objections and does not intend to produce documents in response to RFP Nos. 51-60.  We look forward to meeting and conferring at 2:30 pm PST.

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Saturday, October 7, 2017 1:29 PM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

For the reasons stated in my previous email, we disagree with your interpretation of the Court's ruling.  Further, it is our understanding that all of the requested documents include testimony or argument regarding Apple's use of BSR functionality, which you admit is accused in this case.  But for the avoidance of any doubt, we agree to limit each of these RFPs to documents that include testimony or argument regarding Apple's use of BSR functionality.

Judge Major's rules require the parties to meet and confer over the phone before raising disputes with the court.  We accept your offer to meet and confer Monday at 2:30PST.  Please confirm in advance of the call whether it is still Apple's position that it will not produce any documents in response to these requests.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Friday, October 06, 2017 8:35 PM
**To:** Warren Lipschitz; WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Warren,

Exhibit 13
Page 109

We maintain that RFP Nos. 51-60 are plainly objectionable including because they contravene the Court's express ruling.

Apple has already explained in detail why Wi-LAN's RFP No. 17 (even as "narrowed" by Wi-LAN) was not relevant, including that its purported relevance stems from only a single feature (the BSR functionality) implicated in both *CCE* and the present action (and which is implemented in only two of the currently accused products). (Dkt. No. 146 at 17-19.)  The Court expressly agreed that RFP No. 17 was improper, stating that "it includes irrelevant information" (Hr'g Tr. at 43:22-23) and that Wi-LAN may re-serve narrowed requests only "if it becomes relevant."   (Hr'g Tr. at 44:13-17.)

RFP No. 17, as "narrowed" by Wi-LAN, sought certain categories of documents from the *CCE* action, including technical expert reports, deposition transcripts from Apple witnesses and technical experts, sealed pleadings, and related exhibits.  RFP Nos. 51-60 now merely restate RFP No. 17 as multiple requests seeking the same documents, in contravention of the Court's order.  (See Wi-LAN's Third Set of RFPs, seeking documents from the *CCE* case including technical expert reports and related exhibits, deposition and trial testimony of technical experts, and Apple's sealed closing statement.)

Although Wi-LAN purports to have "narrowed" its requests – to "Apple argument and testimony regarding BSR functionality" – RFP Nos. 51-60 are not so limited to the BSR functionality.  Rather, they seek the same broad categories of documents as RFP No. 17.  For example, RFP Nos. 52 and 53 seek the production of "Deposition testimony and sealed trial testimony" and "Expert report(s)" of Mr. Mark Frappier in the *CCE* case, and all related exhibits.  Further, Wi-LAN has failed to explain how RFP Nos. 51-60 are any more relevant than RFP No. 17.  Thus, the Court's express rejection of Wi-LAN's RFP No. 17 applies for the same reasons to RFP Nos. 51-60, as Wi-LAN has neither narrowed its request nor shown that it has become relevant.

In view of the Court's clear ruling and Wi-LAN's contravention thereof, we believe any further discussion of this issue to be futile.  However, if you still wish to meet and confer on the issue, we can be available on Monday, October 9, at any time between 10:00 a.m. and 12:00 p.m. PST or after 2:30 p.m. PST.  In that case, please be prepared to explain how Wi-LAN's various requests for expert reports, deposition trial testimony, and related exhibits are narrower and more relevant than its already rejected RFP No. 17.

Best,
Nathaniel

_____
**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Friday, October 6, 2017 10:29 AM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

We disagree with your interpretation of the Court's ruling.  Our understanding is that the Court denied WiLAN's motion because WiLAN's served requests were too broad.  WiLAN asked the court if it could serve a narrower request and the Court said "You can serve another -- a new one, yeah."  See Hr'g Tr. at

Exhibit 13
Page 110

44:18-20. WiLAN has narrowed its requests to Apple argument and testimony regarding BSR functionality, which is undeniably at issue in this case.

Are you available to meet and confer regarding this issue on Monday?  Please be prepared to explain why Apple's argument and testimony regarding BSR functionality is not relevant to this case.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Tuesday, October 03, 2017 7:19 PM
**To:** Warren Lipschitz; WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Warren,

Thank you for your email.  As made clear in Apple's responses, Apple disputes your assertion that the Court gave Wi-LAN permission to serve the requests at issue.  On the contrary, the Court ***expressly denied*** Wi-LAN's request seeking ***these same documents*** requested now.  At the August 30 hearing, the Court denied Wi-LAN's motion to compel as to RFP No. 17, including Wi-LAN's "narrowed" requests, which sought Apple's technical expert reports and deposition transcript and deposition transcripts and exhibits from Apple witnesses.  (See Hr'g Tr. at 43:24–44:17.)  All the Court permitted Wi-LAN to do was reserve a narrowly tailored request if certain specific documents from the CCE case become relevant.  The Court again ***expressly*** stated that Wi-LAN's request for all technical reports was absolutely inappropriate: "So ***if it becomes relevant***, you can ask an appropriate request that isn't 'Give me everything from that case,' [] 'Give me every. . . expert report from that case.'"  (*Id.* at 44:13-17.)

Despite this clear instruction from the Court, Wi-LAN has not made any further showing of relevance, nor has it further narrowed its request.  Rather, Wi-LAN's RFP Nos. 51-60 merely break apart the previously "narrowed" RFP No. 17 already found objectionable by the Court. Indeed, Wi-LAN still seeks all technical expert reports (and related deposition transcripts), but has requested them in eight separate document requests instead of one.  That does not transform the original objectionable request into an appropriate one.  Thus, Wi-LAN's RFP Nos. 51-60 are contrary to the Court's Order and objectionable for at least the same reasons the Court found RFP No. 17 objectionable.

If you still wish to meet and confer on the issue, we are available to meet and confer on October 6 at the same time we discuss Wi-LAN's Response to Interrogatory No. 11 at that time (unless Wi-LAN will agree to supplement its response before then).

Apple confirms that it will supplement its response to Interrogatory No. 8.

Best,
Nathaniel

---

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

Exhibit 13
Page 111

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Tuesday, October 3, 2017 3:23 PM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)


Nathaniel,

Please let me know when you are available to meet and confer this week regarding Apple's refusal to produce any documents in response to WiLAN's Third Set of RFPs.  The Court gave WiLAN permission to serve narrowed requests at the 8/30 hearing.  As explained in the requests themselves, each request relates to Apple testimony and argument in the *CCE* litigation regarding Apple's implementation of LTE Buffer Status Reports in the Accused Products.  Apple's implementation of buffer status reports in the Accused Products is relevant to infringement for the '723, '761, '145, and '020 patents.

Can you also please confirm that Apple still intends to supplement its response to interrogatory number 8 to identify responsive licenses that have now been produced?

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, October 02, 2017 8:53 PM
**To:** WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)


Counsel,

Please find attached Apple's Responses and Objections to Wi-LAN's Third Set of Requests for Production.


Best,
Nathaniel

———————————————————————————
**Nathaniel T. Dang** | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com



=============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


=============================================================

Exhibit 13
Page 112

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 13
Page 113

# Exhibit 14

Exhibit 14
Page 114

**John Yang**

| | |
|---|---|
| **From:** | Dang, Nathaniel <NDang@milbank.com> |
| **Sent:** | Tuesday, October 10, 2017 5:07 PM |
| **To:** | Seth Hasenour; Warren Lipschitz |
| **Cc:** | WiLAN SDCAL; Apple-WiLAN-DJ |
| **Subject:** | RE: Apple Inc. v. Wi-Lan, Inc. (S.D. Cal. Case No. 3:14-cv-2235) |

Seth,

As we mentioned on our call yesterday, Apple's non-infringement positions will necessarily be responsive to any infringement theories advanced by Wi-LAN.  Apple is not willing at this time to waive any non-infringement argument regarding BSR or otherwise.

Further, we maintain that RFP Nos. 51-60 are objectionable, including at least because they contravene the Court's prior order and because Wi-LAN has failed to demonstrate that information sought, including attorney argument, from the *CCE* case are relevant or proportional to the needs of this case.  We do not see a way to properly narrow these requests, but are willing to consider any alternate proposal by Wi-LAN.

We will plan to talk to the clerk at 4:00 today unless we hear otherwise from Wi-LAN.  Please let us know what dial-in to use.

Best,
Nathaniel
_____

**Nathaniel T. Dang** | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Seth Hasenour [mailto:shasenour@McKoolSmith.com]
**Sent:** Monday, October 9, 2017 3:19 PM
**To:** Warren Lipschitz <wlipschitz@mckoolsmith.com>; Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-Lan, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Ashlee and Nathaniel,

Following up on our call today, regarding, RFP Nos. 51-60, we explained that we are willing to limit our requests to testimony or argument regarding Apple's use of BSR functionality, which is accused in this case.  We asked two questions and you said you would get back to us on both:

1) Is Apple willing to agree not to make any noninfringement arguments regarding bsr?  If so, we would be willing to withdraw these requests.

2) Does Apple have any proposals as to how Wi-LAN can narrow its requests so that Apple will produce argument and testimony regarding Apple's use of BSR?  If not, we agree the parties are at an impasse.

Regarding ROGs 11 and 13 and RFPs 40 and 41, you stated that Apple is standing on its objections.  Accordingly, we will raise these narrowed requests on the call with the Court.

1

Exhibit 14
Page 115

As discussed, we can agree to postpone the call with the Court by a day or two if Apple needs additional time to consider our requests.

Regards,
Seth

___

**From:** Warren Lipschitz
**Sent:** Monday, October 09, 2017 3:45 PM
**To:** Dang, Nathaniel
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** Re: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Let's use this dial-in:  18662448528 passcode 445756

Sent from my iPhone

On Oct 9, 2017, at 4:31 PM, Dang, Nathaniel <NDang@milbank.com> wrote:

> Warren,
>
> Your email misses the point.  First, Wi-LAN's requests seek much more than information related to BSR functionality, which you acknowledge in indicating that the requests are "limited" to <u>all</u> documents that <u>include</u> any reference testimony or argument regarding BSR functionality.  We reiterate that the *CCE* case involved entirely different patents (4 out of 5 of which do not relate to BSR functionality at all), different accused technology, and ten accused products—only two of which are accused here.  Wi-LAN's request are entirely overbroad for at least these reasons.  Furthermore, Wi-LAN has wholly failed to explain how "testimony or argument" related to BSR functionality in this unrelated case would be at all relevant here.  First, BSR functionality is a single, limited feature that is not described in the patents-in-suit here, and only superficially referenced in Wi-LAN's infringement contentions as read on the VoLTE standard—not Apple's accused products.  Moreover, even if relevant, to the extent BSR functionality is implemented in Apple's products accused here (most of which were not even accused in the *CCE* case), information regarding that functionality is available via discovery in this case.  Wi-LAN has not provided any reason why it cannot obtain properly requested information from such discovery.
>
> Lastly, Wi-LAN continues to fail to explain how such requests are not in direct contravention to Court's order on RFP No. 17.  The Court expressly denied Wi-LAN's request for all of Apple's technical expert reports, and deposition transcripts and exhibits for technical witnesses and Apple witnesses, yet Wi-LAN here again seeks all of Apple's technical expert reports and testimony (among other documents).   For at least these reasons, Apple maintains its objections and does not intend to produce documents in response to RFP Nos. 51-60.  We look forward to meeting and conferring at 2:30 pm PST.
>
> Best,
> Nathaniel
>
> _____
>
> **Nathaniel T. Dang | Milbank**
> 2029 Century Park East, 33rd Floor
> Los Angeles, CA 90067
> T: +1 424.386.4370 | F: +1 213.892.4270
> ndang@milbank.com | www.milbank.com

___

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Saturday, October 7, 2017 1:29 PM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>

Exhibit 14
Page 116

**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

For the reasons stated in my previous email, we disagree with your interpretation of the Court's ruling.  Further, it is our understanding that <u>all</u> of the requested documents include testimony or argument regarding Apple's use of BSR functionality, which you admit is accused in this case.  But for the avoidance of any doubt, we agree to limit each of these RFPs to documents that include testimony or argument regarding Apple's use of BSR functionality.

Judge Major's rules require the parties to meet and confer over the phone before raising disputes with the court.  We accept your offer to meet and confer Monday at 2:30PST.  Please confirm in advance of the call whether it is still Apple's position that it will not produce <u>any</u> documents in response to these requests.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Friday, October 06, 2017 8:35 PM
**To:** Warren Lipschitz; WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Warren,

We maintain that RFP Nos. 51-60 are plainly objectionable including because they contravene the Court's express ruling.

Apple has already explained in detail why Wi-LAN's RFP No. 17 (even as "narrowed" by Wi-LAN) was not relevant, including that its purported relevance stems from only a single feature (the BSR functionality) implicated in both *CCE* and the present action (and which is implemented in only two of the currently accused products).  (Dkt. No. 146 at 17-19.)  The Court expressly agreed that RFP No. 17 was improper, stating that "it includes irrelevant information" (Hr'g Tr. at 43:22-23) and that Wi-LAN may re-serve narrowed requests only "if it becomes relevant."   (Hr'g Tr. at 44:13-17.)

RFP No. 17, as "narrowed" by Wi-LAN, sought certain categories of documents from the *CCE* action, including technical expert reports, deposition transcripts from Apple witnesses and technical experts, sealed pleadings, and related exhibits.  RFP Nos. 51-60 now merely restate RFP No. 17 as multiple requests seeking the same documents, in contravention of the Court's order.  (See Wi-LAN's Third Set of RFPs, seeking documents from the *CCE* case including technical expert reports and related exhibits, deposition and trial testimony of technical experts, and Apple's sealed closing statement.)

Although Wi-LAN purports to have "narrowed" its requests – to "Apple argument and testimony regarding BSR functionality" – RFP Nos. 51-60 are not so limited to the BSR functionality.  Rather, they seek the same broad categories of documents as RFP No. 17.  For example, RFP Nos. 52 and 53 seek the production of "Deposition testimony and sealed trial testimony" and "Expert report(s)" of Mr. Mark Frappier in the *CCE* case, and all related exhibits.  Further, Wi-LAN has failed to explain how RFP Nos. 51-60 are any more relevant than RFP No. 17.  Thus, the Court's express rejection of Wi-LAN's RFP No. 17

3

Exhibit 14
Page 117

applies for the same reasons to RFP Nos. 51-60, as Wi-LAN has neither narrowed its request nor shown that it has become relevant.

In view of the Court's clear ruling and Wi-LAN's contravention thereof, we believe any further discussion of this issue to be futile.  However, if you still wish to meet and confer on the issue, we can be available on Monday, October 9, at any time between 10:00 a.m. and 12:00 p.m. PST or after 2:30 p.m. PST.  In that case, please be prepared to explain how Wi-LAN's various requests for expert reports, deposition trial testimony, and related exhibits are narrower and more relevant than its already rejected RFP No. 17.

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Friday, October 6, 2017 10:29 AM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

We disagree with your interpretation of the Court's ruling.  Our understanding is that the Court denied WiLAN's motion because WiLAN's served requests were too broad.  WiLAN asked the court if it could serve a narrower request and the Court said "You can serve another -- a new one, yeah."  See Hr'g Tr. at 44:18-20. WiLAN has narrowed its requests to Apple argument and testimony regarding BSR functionality, which is undeniably at issue in this case.

Are you available to meet and confer regarding this issue on Monday?  Please be prepared to explain why Apple's argument and testimony regarding BSR functionality is not relevant to this case.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Tuesday, October 03, 2017 7:19 PM
**To:** Warren Lipschitz; WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Warren,

Thank you for your email.  As made clear in Apple's responses, Apple disputes your assertion that the Court gave Wi-LAN permission to serve the requests at issue.  On the contrary, the Court **expressly denied** Wi-LAN's request seeking **these same documents** requested now.  At the August 30 hearing, the Court denied Wi-LAN's motion to compel as to RFP No. 17, including Wi-LAN's "narrowed" requests, which sought Apple's technical expert reports and deposition transcript and deposition transcripts and

Exhibit 14
Page 118

exhibits from Apple witnesses.  (See Hr'g Tr. at 43:24–44:17.)  All the Court permitted Wi-LAN to do was reserve a narrowly tailored request if certain specific documents from the CCE case become relevant.  The Court again *expressly* stated that Wi-LAN's request for all technical reports was absolutely inappropriate: "So *if it becomes relevant*, you can ask an appropriate request that isn't 'Give me everything from that case,' [] 'Give me every. . . expert report from that case.'"  (*Id.* at 44:13-17.)

Despite this clear instruction from the Court, Wi-LAN has not made any further showing of relevance, nor has it further narrowed its request.  Rather, Wi-LAN's RFP Nos. 51-60 merely break apart the previously "narrowed" RFP No. 17 already found objectionable by the Court. Indeed, Wi-LAN still seeks all technical expert reports (and related deposition transcripts), but has requested them in eight separate document requests instead of one.  That does not transform the original objectionable request into an appropriate one.  Thus, Wi-LAN's RFP Nos. 51-60 are contrary to the Court's Order and objectionable for at least the same reasons the Court found RFP No. 17 objectionable.

If you still wish to meet and confer on the issue, we are available to meet and confer on October 6 at the same time we discuss Wi-LAN's Response to Interrogatory No. 11 at that time (unless Wi-LAN will agree to supplement its response before then).

Apple confirms that it will supplement its response to Interrogatory No. 8.

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

_____

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Tuesday, October 3, 2017 3:23 PM
**To:** Dang, Nathaniel <NDang@milbank.com>; WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>
**Cc:** Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Nathaniel,

Please let me know when you are available to meet and confer this week regarding Apple's refusal to produce any documents in response to WiLAN's Third Set of RFPs.  The Court gave WiLAN permission to serve narrowed requests at the 8/30 hearing.  As explained in the requests themselves, each request relates to Apple testimony and argument in the *CCE* litigation regarding Apple's implementation of LTE Buffer Status Reports in the Accused Products.  Apple's implementation of buffer status reports in the Accused Products is relevant to infringement for the '723, '761, '145, and '020 patents.

Can you also please confirm that Apple still intends to supplement its response to interrogatory number 8 to identify responsive licenses that have now been produced?

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

Exhibit 14
Page 119

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, October 02, 2017 8:53 PM
**To:** WiLAN SDCAL
**Cc:** Apple-WiLAN-DJ
**Subject:** Apple Inc. v. Wi-LAN, Inc. (S.D. Cal. Case No. 3:14-cv-2235)

Counsel,

Please find attached Apple's Responses and Objections to Wi-LAN's Third Set of Requests for Production.

Best,
Nathaniel
_____

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

=========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


=========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


=========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


=========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 14
Page 120

==============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 14
Page 121

# Exhibit 15

Exhibit 15
Page 122



1  Allison H. Goddard (211098)
      ali@pattersonlawgroup.com
2  PATTERSON LAW GROUP
   402 West Broadway, 29th Floor
3  San Diego, CA  92101
   (619) 398-4760
4  (619) 756-6991 (facsimile)

5  *Attorneys for Defendant,*
   *WI-LAN INC.*

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10                    **SAN DIEGO**

11  APPLE INC.,                    )   CASE NO. 14cv2235 DMS (BLM)
                                   )
12                Plaintiff,       )
                                   )   **DEFENDANT'S SECOND SET OF**
13     vs.                         )   **REQUESTS FOR PRODUCTION**
                                   )   **(NOS. 40-50)**
14  WI-LAN, INC.,                  )
                                   )   Department: 13A
15                Defendant.       )   Judge: Hon. Dana M. Sabraw
                                   )   Magistrate Judge: Hon. Barbara L.
16                                 )   Major
                                   )
17                                 )
                                   )
18                                 )
                                   )
19  _____  )

20

21      Defendant Wi-LAN, Inc. ("Wi-LAN"), by and through their undersigned

22  counsel, hereby request, pursuant to Rule 26 and 34 of the Federal Rules of Civil

23  Procedure and Local Rule 26.1, that Plaintiff Apple Inc. ("Apple") produce each of

24  the following documents, which are in its possession, custody or control within 30

25  days from the date of service hereof and continuing on each date thereafter until

26  completed at the offices of McKool Smith, P.C., One Bryant Park, 47th Floor, New

27  York, New York 10036, or at such other reasonable time and place as counsel for the

28  respective parties may hereafter designate by agreement.

                            -1-

Exhibit 15
Page 123

## **DEFINITIONS**

1.      The Definitions, Rules and Instructions set forth in FED. R. CIV. P. 34(a) are incorporated herein by reference.

2.      "Apple" or "You" or "Your" shall mean Apple Inc., including any officers, directors, partners, associates, employees, staff members, agents, representatives, divisions, predecessors-in-interest, affiliated partnerships and/or corporations, or any other related entities, whether or not still in existence.

3.      "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

4.      "Agent" shall mean any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

5.      The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

6.      "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

7.      The terms "relating to," and "relate to" shall mean concerning, regarding, constituting, containing, dealing with, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, stating, summarizing, analyzing, supporting, or in any way pertaining to the subject matter of the relevant request.

8.      "And" and "or" shall each mean both the conjunctive and the disjunctive; "all" or "any" shall mean "any and all"; "including" shall mean "including without limitation." In construing these Requests, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders.

-2-

Exhibit 15
Page 124

9. The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Request information that might otherwise be construed as outside its scope.

10. "Document(s)" shall have the broadest possible meaning afforded under the Federal Rules of Civil Procedure and shall include, but is not limited to, any writing, recording, electronically stored information or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, diaries, source code, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings. For purposes of these requests, any document that contains a note, comment, addition, deletion, modification, translation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to identification. All references to documents include, but are not limited to any audio and/or visual materials.

11. The word "identify", when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

-3-

Exhibit 15
Page 125

12.     "Patents-in-Suit" shall mean U.S. Patent Nos. 8,457,145, 8462,723, 8,462,761, 8,537,757, 8,615,020, and 8,311,040.

13.     "3GPP LTE standard" shall mean Release 8 and all subsequent Releases of the Third Generation Partnership Project ("3GPP") standard, as available at: http://www.3gpp.org/Release-8.

14.     "LTE" means "Long Term Evolution," and refers to the technology defined by 3GPP Release 8 and subsequent Releases.

15.     "User Equipment" for purposes of the interrogatories only shall mean any device used by an end-user to communicate with a base station, including but not limited to a hand-held telephone, a laptop computer equipped with a mobile broadband adapter, or any other LTE-enabled end-user device.

16.     "VoLTE" shall mean Voice Over LTE.

17.     "VoLTE data" shall mean voice and control data, such as Session Initiation Protocol (SIP) data and Real-time Transport Protocol (RTP) data, related to a VoLTE call.

18.     "Application data" or "application data" shall mean non-VoLTE data related to various application services, such as video, email, and web browsing.

19.     "VoLTE Products" shall include User Equipment which are or have been designed, sold, manufactured, marketed or advertised by you as supporting the 3GPP LTE standard and VoLTE, including but not limited to the iPhone 7, iPhone 7 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 6, iPhone 6 Plus, as well as other products which are reasonably similar in structure and/or operation.

20.     "Date of first sale" with respect to a product means the date on which you first sold that product.

21.     "Lawsuit" shall refer to *Apple Inc. v. Wi-LAN, Inc.*, Civil Action No. 14cv2235 DMS (BLM) and/or *Wi-LAN, Inc. v. Apple, Inc.*, Civil Action No.

-4-

Exhibit 15
Page 126

14cv1507 DMS (BLM), which have been consolidated and are pending in the United States District Court for the Southern District of California.

22.     "Comply," "Compliance," and "Complies", with reference to a standard, specification or feature described in a standard or specification, refers to implementation or support of the functionality listed in that standard, specification or feature description.

23.     "3GPP Standard Specification Reference" shall refer individually and collectively to:

(a)     3GPP TS 36.300 V8.12.0 (2010-03) Technical Specification 3rd Generation Partnership Project; Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA) and Evolved Universal Terrestrial Radio Access Network (E-UTRAN); Overall description; Stage 2 (Release 8) [hereinafter, "TS 36.300"], including, but not limited to, sections 4.1, 6.1, 6.1.1, 6.2, Fig. 6-2, Fig. 6.2.2-1, 11, 11.1, 11.1.2, 11.2, 11.3, and 11.4.2.;

(b)     3GPP TS 36.321 V8.9.0 (2010-06) Technical Specification 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Medium Access Control (MAC) protocol specification (Release 8) [hereinafter, "TS 36.321"], including, but not limited to sections 4.4, Fig. 4.2.1-1, 5.4.1, 5.4.3.1 , 5.4.4, 5.4.5, and 6.1.3, 6.1.3.1, 6.1.2, 6.2.1, Fig. 6.1.2-1, Fig. 6.2.1-1, Table 6.2.1-1, and Table 6.2.1-2;

(c)     3GPP TS 36.322 V8.8.0 (2010-06) Technical Specification 3rd Generation Partnership Project; Evolved Universal Terrestrial Radio Access (EUTRA); Radio Link Control (RLC) protocol specification (Release 8), [hereinafter "TS 36.322"], including, but not limited to sections 4.2.1, 4.2.1.2.2; 4.2.1.3.2; Fig. 4.2.1-1; and 6; and

-5-

Exhibit 15
Page 127

(d)      3GPP TS 36.331 V8.17.0 (2012-06) Technical Specification 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Radio Resource Control (RRC) protocol specification (Release 8), [hereinafter "TS 36.331"], including, but not limited to sections 4.2.1 and 5.3.3, and 5.3.3.1.

24.      "WiMAX Standards" shall mean all releases of the IEEE 802.16 specifications, including but not limited to IEEE 802.16-2004, IEEE 802.16e-2005, and IEEE 802.16-2009, and IEEE802.16m.

25.      "4G Standards" shall mean the WiMAX Standards and LTE Standards.

-6-

Exhibit 15
Page 128

# **INSTRUCTIONS**

1.      In the event that more than one copy of a document exists, you shall produce the original and each non-identical copy of each document or other tangible thing requested herein which is in your possession, custody or control, or that of your agents, attorneys, accountants, employees or representatives.

2.      Each request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail.  If an objection pertains only to a portion of a request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the request, using your best efforts to do so.

3.      If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information:

(a)      the identity of the document, including the exact name and title of the document, the number of pages, attachments, or appendices to the document, and all  serial or identification numbers appearing on the document;

(b)      the nature of the privilege claimed (including work product);

(c)      if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(d)      the date of the document, electronically stored information or oral communication;

(e)      if a document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS   Excel Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

-7-

Exhibit 15
Page 129

(f)     if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

(g)     the general subject matter of the document, electronically stored information or oral communication; and

(h)     the number of the request for production to which the document relates.

4.     All requested documents produced to Wi-LAN shall be organized in accordance with FED. R. CIV. P. 34(b)(E).

5.     Pursuant to FED. R. CIV. P. 26(e), these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure.  If further responsive documents come into the possession or to the attention of you or your attorneys at any time during the course of this proceeding, such documents must be produced as required by the Federal Rules of Civil Procedure.

6.     To the extent that any document is produced in response to one of the following requests and is also responsive to a subsequent request, an additional copy of the document need not be supplied.

7.     If any documents referred to in your response were, but are no longer in your possession, custody, or control, state what disposition was made of them, and when.  If any documents referred to in your response to these interrogatories have been lost or destroyed, describe in detail the circumstances of such loss or destruction and identify each lost or destroyed document (and all files that contained such documents).

-8-

Exhibit 15
Page 130

# **REQUESTS FOR PRODUCTION**

40.    All agreements between Apple and Qualcomm relating to the 4G Standards, including but not limited to the "Business Cooperation and Patent Agreement," 2007 "Marketing Incentive Agreement," 2009 "Strategic Terms Agreement,"  2011 "Transition Agreement," "2013 Statement of Work," 2013 "Amended and Restated Strategic Terms Agreement," and all amendments and renewal agreements.

41.    Documents sufficient to show any negotiations and payments between Apple and Qualcomm relating to any agreements identified in Request for Production No. 40.

42.    All agreements between Apple and any wireless carrier in the United States, including but not limited to AT&T, Verizon, Sprint, and T-Mobile.

43.    Documents sufficient to show any communications between Apple and any third party, including but not limited to AT&T, Verizon, Sprint, T-Mobile, Intel, and Qualcomm, relating to the WiMAX Standards.

44.    Documents relating to Apple's participation in the development of the 4G Standards, including research, development, and testing relating to the 4G Standards, and Apple's contributions to the 4G Standards.

45.    Documents sufficient to show Apple's research, development, testing, decision-making, and conclusions regarding products supporting the WiMAX Standards (including but not limited to support for the WiMAX Standards by any of Apple's products and any comparisons to LTE).

46.    Documents   sufficient   to   show   any   coordination,   partnering, collaboration, or cooperation Apple has with Qualcomm and Intel related to the design, development, manufacture, integration, or testing of cellular chipsets (including baseband and RF) for Apple's products (including but not limited to the

-9-

Exhibit 15
Page 131

integration and interface of those chipsets in Apple's products and the source code related thereto).

47.    Documents relating to Qualcomm's "self-testing chipset technology and remote [] chipset testing method used by Apple," the source code related thereto, and a working implementation of the tester(s).

48.    All technical expert reports, deposition transcripts from technical experts, deposition transcripts from Apple witnesses, sealed pleadings, and pre-trial exhibit lists, including all exhibits attached thereto for each request, from *Adaptix, Inc. v. Apple Inc. et al*, Nos. 5:13-cv-1776, 5:13-cv-2023 (N.D. Cal.).

49.    Documents disclosing royalty rates for patents and/or patent portfolios including patents alleged to be essential to any of the 4G Standards.

50.    Documents describing Apple's licensing policies and strategies regarding patents practiced by or alleged to be practiced by products implementing the 4G Standards.

-10-

Exhibit 15
Page 132

Dated:     July 27, 2017                By:    */s/ Kevin Schubert*

Robert Cote
   rcote@mckoolsmith.com
Brett Cooper
   bcooper@mckoolsmith.com
Kevin Schubert
   kschubert@mckoolsmith.com
McKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY  10036
(212) 402-9400
(212) 402-9444 (facsimile)

Seth Hasenour
   shasenour@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX  78701
(512) 692-8700
(512) 692-8744 (facsimile)

Allison H. Goddard (211098)
   ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA  92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Defendant,*
*WI-LAN, INC.*

-11-

Exhibit 15
Page 133

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2017, I caused a copy of the foregoing **DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION (NOS. 40-50)** to be served by electronic mail on the following counsel of record for Plaintiff, Apple Inc.:

Mark C. Scarsi
    mscarsi@milbank.com
Ashlee N. Lin
    anlin@milbank.com
Katie Pierucci
    kpierucci@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019


Dated:        July 27, 2017

By:    */s/ Kevin Schubert*
Kevin Schubert
    kschubert@mckoolsmith.com
McKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY  10036
(212) 402-9400
(212) 402-9444 (facsimile)

*Attorneys for Defendant,*
*WI-LAN, INC.*

-12-

Exhibit 15
Page 134

# Exhibit 16

Exhibit 16
Page 135

1   Allison H. Goddard (211098)
        ali@pattersonlawgroup.com
2   PATTERSON LAW GROUP
    402 West Broadway, 29th Floor
3   San Diego, CA  92101
    (619) 398-4760
4   (619) 756-6991 (facsimile)

5   *Attorneys for Defendant,*
    *WI-LAN INC.*

6

7

8                 **UNITED STATES DISTRICT COURT**

9                **SOUTHERN DISTRICT OF CALIFORNIA**

10                         **SAN DIEGO**

11  APPLE INC.,                        )    CASE NO. 14cv2235 DMS (BLM)
                                       )
12                      Plaintiff,     )
                                       )    **DEFENDANT'S SECOND SET OF**
13       vs.                           )    **INTERROGATORIES (NOS. 11-15)**
                                       )
14  WI-LAN, INC.,                      )
                                       )    Department: 13A
15                      Defendant.     )    Judge: Hon. Dana M. Sabraw
                                       )    Magistrate Judge: Hon. Barbara L.
16                                     )    Major
                                       )
17                                     )
                                       )
18                                     )
                                       )
19  _____)

20

21       Defendant Wi-LAN, Inc. ("Wi-LAN") propounds the following second set of

22  interrogatories upon Plaintiff Apple Inc. ("Apple") and request that they be answered

23  separately, fully and under oath within thirty (30) days of service pursuant to Federal

24  Rule of Civil Procedure 33.

25

26

27

28

                                      -1-

Exhibit 16
Page 136

## **DEFINITIONS**

1.      The Definitions, Rules and Instructions set forth in S.D. CAL. LOCAL RULES 33.1 are incorporated herein by reference.

2.      "Apple" or "You" or "Your" shall mean Apple Inc., including any officers, directors, partners, associates, employees, staff members, agents, representatives, divisions, predecessors-in-interest, affiliated partnerships and/or corporations, or any other related entities, whether or not still in existence.

3.      "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

4.      "Agent" shall mean any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on behalf of another.

5.      The term "third party" or "third parties" refers to individuals or entities that are not a party to this action.

6.      "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

7.      The terms "relating to," and "relate to" shall mean concerning, regarding, constituting, containing, dealing with, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, stating, summarizing, analyzing, supporting, or in any way pertaining to the subject matter of the relevant request.

8.      "And" and "or" shall each mean both the conjunctive and the disjunctive; "all" or "any" shall mean "any and all"; "including" shall mean "including without limitation." In construing these Requests, the plural shall include the singular, the singular shall include the plural, and a masculine, feminine, or neuter term shall include all other genders.

-2-

Exhibit 16
Page 137

9.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses whenever necessary to bring within the scope of the Request information that might otherwise be construed as outside its scope.

10.    "Document(s)" shall have the broadest possible meaning afforded under the Federal Rules of Civil Procedure and shall include, but is not limited to, any writing, recording, electronically stored information or photograph in your actual or constructive possession, custody, care or control, which pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to: correspondence, memoranda, notes, messages, diaries, source code, minutes, books, reports, charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings. For purposes of these requests, any document that contains a note, comment, addition, deletion, modification, translation, or otherwise comprises a non-identical copy of another document shall be treated as a separate document subject to identification. All references to documents include, but are not limited to any audio and/or visual materials.

11.    The word "identify", when used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other.

-3-

Exhibit 16
Page 138

12.     "Patents-in-Suit" shall mean U.S. Patent Nos. 8,457,145, 8462,723, 8,462,761, 8,537,757, 8,615,020, and 8,311,040.

13.     "3GPP LTE standard" shall mean Release 8 and all subsequent Releases of the Third Generation Partnership Project ("3GPP") standard, as available at: http://www.3gpp.org/Release-8.

14.     "LTE" shall mean "Long Term Evolution," and refers to the technology defined by 3GPP Release 8 and subsequent Releases.

15.     "User Equipment" for purposes of the interrogatories only shall mean any device used to communicate with a base station, including but not limited to a hand-held telephone, a laptop computer equipped with a mobile broadband adapter, or any other LTE-enabled end-user device.

16.     "VoLTE" shall mean Voice Over LTE.

17.     "VoLTE data" shall mean voice and control data, such as Session Initiation Protocol (SIP) and Real-time Transport Protocol (RTP) data, related to a VoLTE call.

18.     "Application data" or "application data" shall mean non-VoLTE data related to various application services, such as video, email, and web browsing.

19.     "VoLTE Products" shall include User Equipment which are or have been designed, sold, manufactured, marketed or advertised by you as supporting the 3GPP LTE standard and VoLTE, including but not limited to the iPhone 7, iPhone 7 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 6, iPhone 6 Plus, as well as other products which are reasonably similar in structure and/or operation.

20.     "Date of first sale" with respect to a product shall mean the date on which you first sold that product.

21.     "Lawsuit" shall refer to *Apple Inc. v. Wi-LAN, Inc.*, Civil Action No. 14cv2235 DMS (BLM) and/or *Wi-LAN, Inc. v. Apple, Inc.*, Civil Action No.

-4-

Exhibit 16
Page 139

14cv1507 DMS (BLM), which have been consolidated and are pending in the United States District Court for the Southern District of California.

22.     "Comply," "Compliance," and "Complies", with reference to a standard, specification or feature described in a standard or specification, shall refer to implementation or support of the functionality listed in that standard, specification or feature description.

23.     "3GPP Standard Specification Reference" shall refer individually and collectively to:

(a)     3GPP TS 36.300 V8.12.0 (2010-03) Technical Specification 3rd Generation Partnership Project; Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA) and Evolved Universal Terrestrial Radio Access Network (E-UTRAN); Overall description; Stage 2 (Release 8) [hereinafter, "TS 36.300"], including, but not limited to, sections 4.1, 6.1, 6.1.1, 6.2, Fig. 6-2, Fig. 6.2.2-1, 11, 11.1, 11.1.2, 11.2, 11.3, and 11.4.2.;

(b)     3GPP TS 36.321 V8.9.0 (2010-06) Technical Specification 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Medium Access Control (MAC) protocol specification (Release 8) [hereinafter, "TS 36.321"], including, but not limited to sections 4.4, Fig. 4.2.1-1, 5.4.1, 5.4.3.1 , 5.4.4, 5.4.5, and 6.1.3, 6.1.3.1, 6.1.2, 6.2.1, Fig. 6.1.2-1, Fig. 6.2.1-1, Table 6.2.1-1, and Table 6.2.1-2;

(c)     3GPP TS 36.322 V8.8.0 (2010-06) Technical Specification 3rd Generation Partnership Project; Evolved Universal Terrestrial Radio Access (EUTRA); Radio Link Control (RLC) protocol specification (Release 8), [hereinafter "TS 36.322"], including, but not limited to sections 4.2.1, 4.2.1.2.2; 4.2.1.3.2; Fig. 4.2.1-1; and 6; and

-5-

Exhibit 16
Page 140

(d)     3GPP TS 36.331 V8.17.0 (2012-06) Technical Specification 3rd Generation Partnership Project; Technical Specification Group Radio Access Network; Evolved Universal Terrestrial Radio Access (E-UTRA); Radio Resource Control (RRC) protocol specification (Release 8), [hereinafter "TS 36.331"], including, but not limited to sections 4.2.1 and 5.3.3, and 5.3.3.1.

24.    "WiMAX Standards" shall mean all releases of the IEEE 802.16 specifications, including but not limited to IEEE 802.16-2004, IEEE 802.16e-2005, and IEEE 802.16-2009, and IEEE802.16m.

25.    "4G Standards" shall mean the WiMAX Standards and LTE Standards.

-6-

Exhibit 16
Page 141

# **INSTRUCTIONS**

For the following interrogatories, the information sought is that which is current to the date of your response.

1.      Each request shall be answered fully unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the request, using your best efforts to do so.

2.      If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information, unless divulging the information would disclose the privileged information:

(a)      the identity of the document, including the exact name and title of the document, the number of pages, attachments, or appendices to the document, and all  serial or identification numbers appearing on the document;

(b)      the nature of the privilege claimed (including work product);

(c)      if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(d)      the date of the document, electronically stored information or oral communication;

(e)      if a document: its type (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word or MS  Excel Spreadsheet), and the custodian, location, and such other information sufficient to identify the material for a subpoena duces tecum or a production request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

-7-

Exhibit 16
Page 142

(f)     if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

(g)     the general subject matter of the document, electronically stored information or oral communication; and

(h)     the number of the request for production to which the document relates.

3.     All requested documents produced to Wi-LAN shall be organized in accordance with FED. R. CIV. P. 34(b)(E).

4.     Pursuant to FED. R. CIV. P. 26(e), these requests are deemed to be continuing in nature to the full extent required by the Federal Rules of Civil Procedure. If further responsive documents come into the possession or to the attention of you or your attorneys at any time during the course of this proceeding, such documents must be produced as required by the Federal Rules of Civil Procedure.

5.     To the extent that any document is produced in response to one of the following requests and is also responsive to a subsequent request, an additional copy of the document need not be supplied.

6.     If any documents referred to in your response to these interrogatories were, but are no longer in your possession, custody, or control, state what disposition was made of them, and when. If any documents referred to in your response to these interrogatories have been lost or destroyed, describe in detail the circumstances of such loss or destruction and identify each lost or destroyed document (and all files that contained such documents).

-8-

Exhibit 16
Page 143

# INTERROGATORIES

## INTERROGATORY NO. 11:

Describe in detail any agreements between Qualcomm and Apple relating to the 4G Standards, including but not limited to the "Business Cooperation and Patent Agreement," 2007 "Marketing Incentive Agreement," 2009 "Strategic Terms Agreement,"  2011 "Transition Agreement," "2013 Statement of Work," 2013 "Amended and Restated Strategic Terms Agreement," including a description of the negotiations that led to such agreements, an identification of all persons involved in such negotiations, any payments made or received by either party subject to such agreements, and the Bates number of all documents sufficient to show such negotiations, payments, and final terms of each such agreement, including any supporting or associated documentation or agreements.

## INTERROGATORY NO. 12:

Describe in detail Apple's participation in the development of the 4G Standards, including an identification of all Apple employees or consultants (past or present) who have attended 4G standards meetings on behalf of Apple, a description of any research and/or testing performed by Apple relating to the development of the 4G Standards, and any contributions made by Apple to the 4G Standards including an identification of all Apple employees who made such contributions and to which 4G standard, an identification of your research and development expenditures attributable to the development of the 4G Standards, and the Bates numbers of all documents reflecting Apple's participation, contributions, research, and/or testing relating to the development of the 4G Standards.

## INTERROGATORY NO. 13:

Describe in detail any communications between Apple and any third party, including but not limited to AT&T, Verizon, Sprint, T-Mobile, Intel, and Qualcomm, regarding the WiMAX Standards, including any communications regarding the

-9-

Exhibit 16
Page 144

decision whether to use the LTE Standards or WiMAX standards in Apple's products or any third party's products, identification of all Apple products that used the WiMAX standards, and identification of all persons involved in such communications, the circumstances surrounding each communication, and the Bates number of all documents reflecting each communication.

**INTERROGATORY NO. 14:**

Describe in detail any coordination, partnering, collaboration, or cooperation between Apple and Qualcomm and Intel related to the design, development, manufacture, integration, or testing of 4G Standards chipsets (including baseband and RF) for Apple's products (including but not limited to the integration and interface of those chipsets in Apple's products and the source code related thereto), including identifying all persons involved in such activities, the circumstances surrounding each activity, and the Bates numbers of any documents reflecting such activities.

**INTERROGATORY NO. 15:**

Identify all royalty rates for 4G Standards patent portfolios Apple is aware of, including identification of the number of patents and/or characteristics of the patent portfolio subject to such royalty rates, any analysis performed by Apple relating to a comparisons of such royalty rates and patent portfolios to each other, any such royalty rates offered to Apple, the number of patents discussed in negotiations regarding said royalty rates offered to Apple, the three persons at Apple most knowledgeable regarding royalty rates for 4G Standards patent portfolios, and the Bates numbers of all documents reflecting the same.

-10-

Exhibit 16
Page 145

1

Dated:        July 27, 2017              By:    _/s/ Kevin Schubert_

2
Robert Cote
    rcote@mckoolsmith.com

3
Brett Cooper
    bcooper@mckoolsmith.com

4
Kevin Schubert
    kschubert@mckoolsmith.com

5
McKOOL SMITH, P.C.
One Bryant Park, 47th Floor

6
New York, NY  10036
(212) 402-9400

7
(212) 402-9444 (facsimile)

8
Seth Hasenour
    shasenour@mckoolsmith.com

9
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700

10
Austin, TX  78701
(512) 692-8700

11
(512) 692-8744 (facsimile)

12
Allison H. Goddard (211098)
    ali@pattersonlawgroup.com

13
PATTERSON LAW GROUP
402 West Broadway, 29th Floor

14
San Diego, CA  92101
(619) 398-4760

15
(619) 756-6991 (facsimile)

16
_Attorneys for Defendant,_
_WI-LAN, INC._

17

18

19

20

21

22

23

24

25

26

27

28

-11-

Exhibit 16
Page 146

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2017, I caused a copy of the foregoing **DEFENDANT'S SECOND SET OF INTERROGATORIES (NOS. 11-15)** to be served by electronic mail on the following counsel of record for Plaintiff, Apple Inc.:

> Mark C. Scarsi
>     mscarsi@milbank.com
> Ashlee N. Lin
>     anlin@milbank.com
> Katie Pierucci
>     kpierucci@milbank.com
> MILBANK, TWEED, HADLEY & McCLOY LLP
> 2029 Century Park East, 33rd Floor
> Los Angeles, CA 90067-3019

Dated:      July 27, 2017

                              By:    */s/ Kevin Schubert*
                              Kevin Schubert
                                kschubert@mckoolsmith.com
                              McKOOL SMITH, P.C.
                              One Bryant Park, 47th Floor
                              New York, NY  10036
                              (212) 402-9400
                              (212) 402-9444 (facsimile)

                              *Attorneys for Defendant,*
                              *WI-LAN, INC.*

-12-

Exhibit 16
Page 147

# Exhibit 17

Exhibit 17
Page 148

Juanita R. Brooks (SBN 75934)
brooks@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone:   (619) 678-5070
Facsimile:    (619) 678-5099

Ruffin B. Cordell (DC Bar No. 445801; <u>pro hac vice</u> pending)
cordell@fr.com
Lauren A. Degnan (DC Bar No. 452421; <u>pro hac vice</u> pending)
degnan@fr.com
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone:   (202) 783-5070
Facsimile:    (202) 783-2331

William A. Isaacson (DC Bar No. 414788; <u>pro hac vice</u> pending)
wisaacson@bsfllp.com
Karen L. Dunn (DC Bar No. 1002520; <u>pro hac vice</u> pending)
kdunn@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
1401 New York Avenue, N.W.
Washington, DC 20005
Telephone:   (202) 237-2727
Facsimile:    (202) 237-6131

[*Additional counsel identified on signature page*]

<u>Attorneys for Plaintiff Apple Inc.</u>

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., | Case No. **'17 CV 0108 GPC NLS** |
| Plaintiff, | **REDACTED COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |
| vs. | |
| QUALCOMM INCORPORATED, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Case 3:14-cv-02235-DMS-BLM Document 179-2 Filed 10/18/17 PageID.6624 Page 108 of
201
Case 3:17-cv-00108-GPC-MDD Document 1-1 Filed 01/20/17 PageID.29 Page 29 of 164

competition in the interim. Even today, Qualcomm is actively engaging with network carriers in the United States, attempting to persuade them not to support or sell Apple devices with Intel chipsets.

96.   Although Qualcomm refused to characterize its payments to Apple as "rebates" on the license fee, and insisted on titling these payments with descriptions like ███████████ and ███████████ these titles were window-dressing. Apple was under little to no obligation to use many of these funds for any particular purpose. Instead, the sole purpose of these payments was to reduce Apple's royalty burden in exchange for exclusivity.

97.   Qualcomm has refused to call these payments "rebates" on the license fee because it knows that the license fee it charges the CMs does not comply with its promise to license its patents on FRAND terms.

98.   These rebates are provided for by contracts between the parties. Through these contracts, Qualcomm extracted additional terms and conditions from Apple.

99.   The parties' Business Cooperation and Patent Agreement ("BCPA"), for example, expressly calculates a series of quarterly payments to Apple ("BCP Payments"), as a cap on the royalties that Apple pays to Qualcomm, setting the amount of the payment at a lump sum that effectively reduced Apple's per-device royalty payment to ██ per iPhone and ██ per iPad. [**Exhibit A**, BCPA §§ 7–8.]

100. The rebates reduced, but by no means eliminated, Apple's overpayment of royalties to Qualcomm. Taken together, these rebates reduced the effective royalty burden on Apple to around ████ per iPhone and iPad through 2016. This represents an amount that is still significantly larger than the royalty Apple pays for ████████████████████—licenses that collectively represent a far greater percentage of the patents declared as essential to the cellular standard. Under every conceivable test, this royalty fails to meet the definition of FRAND. It

**APPLE INC.'S COMPLAINT**                    CASE NO.

Exhibit 17
Page 150

1    unjustifiably enriches Qualcomm at the expense of Apple and Apple's customers.

2        101. In general, the BCPA, effective January 1, 2013, provided certain

3 incentives to Apple in exchange for specifically defined business cooperation, and

4 provided Qualcomm certain rights to Apple's patents. The BCPA expired on

5 December 31, 2016, and is attached hereto as **Exhibit A**.

6        102. Under the BCPA, Apple agreed to cooperate with Qualcomm in two

7 limited ways: (1) Apple agreed to use certain technological standards (CDMA,

8 CDMA2000, WCDMA, and FYX) in the iPhone and iPad, and (2) the parties

9 agreed to meet semiannually to discuss new technologies that may be mutually

10 beneficial. [**Exhibit A,** BCPA § 3.] The parties did not agree to any broader

11 definition of cooperation.

12        103. In addition, in exchange for these BCP Payments, Qualcomm severely

13 restricted Apple's ability to sue or induce certain kinds of lawsuits or enforcement

14 actions against Qualcomm. Specifically, Qualcomm required Apple to agree that its

15 obligations to pay applied



23 [**Exhibit A**, BCPA § 7, second paragraph.]

24        104. Qualcomm insisted on these restrictions because it knows its business

25 model is vulnerable to legal challenges based on, among other claims, lack of

26 FRAND terms and patent exhaustion.

27        105. Apple objected to this term during negotiations. At the time the contract

28 was entered into, Qualcomm had leverage over Apple because of Qualcomm's

26

**APPLE INC.'S COMPLAINT**            CASE NO.

Exhibit 17
Page 151

Case 3:17-cv-02335-DMS-BLM Document 179-2 Filed 10/19/17 PageID.6626 Page 110 of
201
Case 3:17-cv-00108-GPC-MDD Document 1-2 Filed 01/20/17 PageID.152 Page 110 of
201

market power in chipsets and its ability to disrupt Apple's supply of chipsets, thus
preventing Apple from challenging Qualcomm on these grounds in any event.

106. Despite the BCPA's restrictions, the contract recognized Apple's
responsibility to respond freely to a request or inquiry from a governmental entity.
That carve-out provision states:



[**Exhibit A**, BCPA § 7, third paragraph.]

107. Qualcomm has since acknowledged that it was not the intent of the
BCPA to "dissuade Apple from providing truthful, factual responses to inquiries
from government agencies or to interfere with any government agency's gathering
of information."

108. Among other agreements, Qualcomm and Apple have also entered into
the following contracts:

109. The 2007 Marketing Incentive Agreement ("MIA") capped Apple's
royalties for UMTS chipsets, payable at that time on purchases of Infineon's
chipsets. In exchange, Apple was obliged to refrain from marketing wireless
devices implementing a competing wireless communication standard, WiMAX.
Qualcomm forced Apple to renounce WiMAX just as WiMAX was gaining traction
in the marketplace. Qualcomm acted to eliminate the competitive threat posed by
WiMAX by ensuring that Apple would not market wireless devices with WiMAX

27

**APPLE INC.'S COMPLAINT**

CASE NO.

Exhibit 17
Page 152

technology. The MIA is attached hereto as **Exhibit B**.

110. The 2009 Strategic Terms Agreement ("STA") addresses the process by which Qualcomm supplies chipsets and associated software to Apple. It also restricts Apple's ability to sue Qualcomm for patent infringement concerning Qualcomm chipsets. While Apple generally negotiates firm supply commitments with its component vendors, Qualcomm refused to provide Apple such a commitment, instead arbitrarily capping its liability for failure to supply, and reserving for itself the ability to terminate its obligation to supply chipsets to Apple's CMs. Qualcomm's unilateral right to terminate supply of chipsets to Apple's CMs was retained in the Amended and Restated Strategic Terms Agreement ("ASTA"), effective February 28, 2013. The STA and the ASTA are attached hereto as **Exhibits C and D**, respectively.

111. The 2011 Transition Agreement ("TA") provided for the extension of the royalty relief embodied in the MIA to CDMA-compliant iPhones, contingent upon Apple's agreement to use Qualcomm's baseband processor chipsets exclusively. This royalty relief was disguised by Qualcomm as a marketing payment paid pursuant to the TA. As part of that agreement, Apple could not initiate any action or litigation against Qualcomm for intellectual-property infringement. The TA is attached hereto as **Exhibit E**.

112. Under the First Amendment to Transition Agreement ("FATA"), effective January 1, 2013, Qualcomm was obliged to make various payments to Apple in exchange for Apple's exclusive use of Qualcomm baseband processor chipsets. As with the TA, a portion of the payments made by Qualcomm pursuant to that FATA were understood by the parties to be a form of royalty relief, conditioned on Apple's agreement to deal with Qualcomm exclusively. The FATA is attached hereto as **Exhibit F**.

113. None of the above agreements directly addresses a license to the

Case 3:14-cv-02235-DMS-BLM Document 179-2 Filed 10/18/17 PageID.6628 Page 112 of
201
Case 3:14-cv-00335-CVC-MDD Document 179-1 Filed 01/20/15 PageID.404 Page 112 of 104

## TABLE OF EXHIBITS

| Exhibit No. | Pages |
|:---:|:---:|
| A | 1-17 |
| B | 18-29 |
| C | 30-46 |
| D | 47-66 |
| E | 67-71 |
| F | 72-79 |
| G | 80-88 |
| H | 89-106 |
| I | 107-133 |
| J | 134-140 |
| K | 141-156 |
| L | 157-174 |
| M | 175-188 |
| N | 189-219 |
| O | 220-229 |

APPLE INC.'S COMPLAINT

CASE NO. ___

Exhibit 17
Page 154

# Exhibit 18

Exhibit 18
Page 155

# MᴄKᴏᴏʟ Sᴍɪᴛʜ

Warren Lipschitz
Direct Dial: (214) 978-4973
wlipschitz@mckoolsmith.com

300 Crescent Court
Suite 1500
Dallas, TX 75201

Telephone: (214) 978-4000
Facsimile: (214) 978-4044

September 14, 2017

Christopher J. Gaspar, Esq.
Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY US 10005-1413
cgaspar@milbank.com

> RE:   *Apple Inc. v. Wi-LAN, Inc.* - Apple's Deficient Responses to Interrogatories 11-14 and Failure to Produce Documents Responsive to Requests for Production Nos. 40-50

Dear Christopher:

I write regarding Apple's deficient responses to Wi-LAN Interrogatories Nos. 11-15 and Apple's failure to produce documents responsive to Wi-LAN's Requests for Production Nos. 40-50. If Apple fails to provide the requested information and documents, Wi-LAN will be forced to file a motion to compel.

## **Interrogatories**

Interrogatory No. 11 requests information regarding Apple's agreements with Qualcomm. Apple's refusal to respond to this interrogatory is improper. These agreements are relevant to the value of the accused technology, as they describe, for example, royalties Apple pays to Qualcomm relating to the LTE chips used in the accused products, Apple's decision whether to use WiMAX or LTE in the accused products, and the process by which Qualcomm supplies LTE chips to Apple. *See, e.g.*, Case 3:17-cv-00108-GPC-MDD, Dkt. 1, ¶¶99, 109, 110. These agreements are also potentially relevant to Apple's knowledge of infringement, as they describe Apple's participation in the design, installation, and testing of the chips used in Apple's products.

Interrogatory No. 12 requests information regarding Apple's participation in the development of the 4G standards. Apple's participation in these standard setting bodies is relevant to Apple's knowledge of infringement and argument that the patents-in-suit relate to WiMAX, but not LTE. Apple must identify all contributions made by Apple employees to WiMAX or LTE and the names of the contributors, describe Apple's research or testing relating to the development of these standards, identify Apple's R&D expenditures attributable to these standards, and identify any documents relating to the same.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC**

September 14, 2017
Page 2

Interrogatory No. 13 requests information regarding Apple's communications with third parties regarding the WiMAX standard. Apple stated that it is "willing to meet and confer" with Wi-LAN regarding this request, but provided no substantive response. Wi-LAN is willing to narrow this request to communications between Apple and any third party regarding Apple or the third party's decision whether to use or not use the WiMAX standard.

Interrogatory No. 14 requests information regarding coordination between Apple and its chipset suppliers related to the design, development, manufacture, integration, or testing of LTE chipsets. This request is relevant to Apple's knowledge of infringement and of the operation of the LTE chipsets. Apple's identification of chipset model numbers and the name of a single employee with relevant knowledge is insufficient. Apple failed to provide any information about Apple's coordination and activities with its chipset suppliers related to the LTE chipsets.

**Requests for Production**

RFP No. 40 and 41 request documents relating to Apple's agreements with Qualcomm relating to the use of Qualcomm LTE chipsets in the accused products. Apple's identification of the cost of Qualcomm chipsets is insufficient. The requested documents are relevant to the value of the accused technology, as they describe, for example, royalties Apple pays to Qualcomm relating to the LTE chips used in the accused products, Apple's decision whether to use WiMAX or LTE in the accused products, and the process by which Qualcomm supplies LTE chips to Apple. *See, e.g.*, Case 3:17-cv-00108-GPC-MDD, Dkt. 1, ¶¶99, 109, 110. These agreements are also potentially relevant to Apple's knowledge of infringement, as they describe Apple's participation in the design, installation, and testing of the chips used in Apple's products.

RFP No. 42 requests agreements between Apple and the wireless providers. Apple's refusal to provide these agreements is improper, as these agreements reflect payments and terms relating to the use of LTE in the accused products and thus are relevant to the value of the patented technology. Wi-LAN is willing to narrow this request to any indemnity agreements between Apple and any wireless carriers.

Apple stated that it would produce documents responsive to the 'non-objectionable portions" of RFP Nos. 43, 44, 45, 46, 47, and 50. Please be prepared to discuss on the meet and confer the extent to which Apple is refusing to produce documents responsive to these requests and provide a date certain by which Apple will produce these documents.

\* \* \*

Please let me know times you are available to meet and confer on Friday September 15, 2017 and Monday September 18, 2017.

Regards,

*/s/ Warren Lipschitz*

Warren Lipschitz

WL:wl

Exhibit 18
Page 157

# Exhibit 19

Exhibit 19
Page 158

## John Yang

| | |
|---|---|
| **From:** | Warren Lipschitz |
| **Sent:** | Friday, September 22, 2017 1:02 PM |
| **To:** | 'Dang, Nathaniel' |
| **Cc:** | WiLAN SDCAL; Apple-WiLAN-DJ |
| **Subject:** | RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies |

Nathaniel,

Thanks for meeting with me today.  You were unable to provide Apple's position on supplementation on most of the issues, but said you would get back to us by Monday.  Given the 9/27 deadline for WiLAN's motion to compel, we intend to reach out to the clerk Monday afternoon at 3pm central to discuss WiLAN's motion, unless Apple's confirms before then that it will provide the requested supplementation.  My summary of the call below.

**Apple's Responses to WiLAN Discovery**
- Rog 11:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- Rog 12:  Apple will supplement its response to this interrogatory to provide citations to documents reflecting Apple's participation in both the WiMAX and LTE standards.  You said you will confirm by Monday whether Apple will (1) provide citations to documents reflecting Apple's research or testing relating to the development and R&D expenditures attributable to these standards,  and  (2) provide a narrative description regarding Apple's participation in the WiMAX and LTE standards.
- Rog 13:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- Rog 14:  Apple will supplement its response to provide the requested information.
- RFPs 40 and 41:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- RFP 42:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.

With respect to RFP Nos. 43, 44, 45, 46, 47, and 50, please let me know by Monday whether Apple is refusing to produce any responsive non-privileged documents.

**WiLAN Responses to Apple Discovery**
We discussed Wi-LAN's responses to Apple's Discovery and the letter I sent you Monday.  Specifically, we discussed Interrogatories 1, 2, 5, 6, 7, and 8.  You agreed that WiLAN's citation to documents for Rog 2 is sufficient and Wi-LAN's response to Rog 6 is sufficient.  At this point, I believe that Wi-LAN has addressed all of Apple's concerns.  Please let me know if there are any outstanding issues you would like to discuss.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Thursday, September 21, 2017 10:46 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Exhibit 19
Page 159

Warren,

Can you please also be prepared to discuss Wi-LAN's Objections and Responses to Apple's First Sets of Interrogatories and RFPs on our call tomorrow?

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Dang, Nathaniel
**Sent:** Thursday, September 21, 2017 9:32 AM
**To:** Warren Lipschitz <wlipschitz@mckoolsmith.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

10:30 a.m. central would work on our end.

Thanks,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Thursday, September 21, 2017 7:27 AM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

I have a meeting from 1130-130pm central, but am otherwise available.  Let me know what time is good for you.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Wednesday, September 20, 2017 8:12 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Exhibit 19
Page 160

Warren,

Would noon central on Friday work?

Best,
Nathaniel

_____

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Monday, September 18, 2017 6:59 PM
**To:** Gaspar, Christopher J. <CGaspar@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>; Lin, Ashlee <anlin@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Chris,

Thanks for your response.  Friday works, but please come prepared with Apple's positions on supplementation.  As you know, the court requires discovery motions to be filed within 30 days of objections, which is next Wednesday, 9/27.

Is 3pm central good?  Let's use this dial-in:  18662448528 passcode 445756.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Gaspar, Christopher J. [mailto:CGaspar@milbank.com]
**Sent:** Monday, September 18, 2017 4:54 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ; Lin, Ashlee
**Subject:** Re: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

Thank you for the follow-up email.  You might not know, but I was in a deposition your colleague Kevin Schubert took on Thursday at the time of your letter.  I am giving it attention.  Can we talk on Friday after Kevin's second 30b6 deposition of Apple concerning custodians, documents, repositories, etc.?

Regards,

Chris

Chris Gaspar
Milbank
(212) 530-5019
cgaspar@milbank.com

Exhibit 19
Page 161

On Sep 18, 2017, at 5:08 PM, Warren Lipschitz <wlipschitz@mckoolsmith.com> wrote:

Chris,

Following up on the correspondence below.  Please let me know when you are available to meet and confer.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Warren Lipschitz
**Sent:** Thursday, September 14, 2017 4:48 PM
**To:** 'Gaspar, Christopher J.'
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ; Lin, Ashlee
**Subject:** Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Chris,

Please see the attached correspondence.

Regards,

**Warren Lipschitz | Associate | McKool Smith**
300 Crescent Court, Suite 1500, Dallas, Texas 75201
telephone: 214.978.4973
fax: 214.978.4044

NOTICE OF CONFIDENTIALITY:

The information contained in and transmitted with this e-mail is SUBJECT TO THE ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL.  It is intended only for the individual or entity designated above.  You are hereby notified that any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the addressee designated above by the sender is unauthorized and strictly prohibited.  If you have received this e-mail in error, please notify the sender by reply immediately.  Any e-mail erroneously transmitted to you should be immediately destroyed.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that

Exhibit 19
Page 162

any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 19
Page 163

# Exhibit 20

Exhibit 20
Page 164

## Warren Lipschitz

| | |
|---|---|
| **From:** | Warren Lipschitz |
| **Sent:** | Sunday, October 08, 2017 10:32 AM |
| **To:** | 'Dang, Nathaniel' |
| **Cc:** | WiLAN SDCAL; Apple-WiLAN-DJ |
| **Subject:** | RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies |

Nathaniel,

WiLAN hereby narrows RFP Nos. 40 and 41 to the 2007 Marketing Incentive Agreement between Apple and Qualcomm and to documents reflecting negotiations regarding and payments made pursuant to the provisions prohibiting Apple from using the WiMAX standard.  With respect to Rog 11, WiLAN requests only that Apple identify an Apple employee knowledgeable about negotiations relating to the foregoing agreement, including the provisions prohibiting Apple from using the WiMAX standard.  Please let me know whether Apple will produce this discovery.  If not, we can discuss on the meet and confer Monday.

In light of Apple's objection, WiLAN hereby withdraws RFP 42, with the understanding that Apple will not challenge the possibility of payments made by Apple to carriers to remedy degraded performance on Apple's phones.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, September 25, 2017 5:05 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

We are available for a call after 10 a.m. PST tomorrow.

Best,
Nathaniel

_____
**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Monday, September 25, 2017 2:44 PM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

1

Exhibit 20
Page 165

Thanks for your email.  Please let me know when you are available tomorrow morning to call the clerk to discuss our outstanding issues.  If I don't hear from you, I'll call the clerk at 2pm central to request a time for the parties to conference.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Monday, September 25, 2017 2:34 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Dear Warren,

Thank you for your email.  To follow up on our call on Friday, please find below Apple's positions on the responses we discussed:

- RFP Nos. 40 and 41; Rog No. 11 – Apple maintains its objections, including on grounds that these requests seek information and documents that are not relevant and proportional to the needs of this case, as Apple has not entered into a license agreement with Qualcomm.
- Rog No. 12 – Apple will supplement its response to this interrogatory to provide citations to responsive documents and believes such a response is complete.  Apple does not agree that it is required to provide any additional narrative response.
- Rog No. 13 – Wi-LAN informed us on Friday of publicly available documents pertaining to a discussion between Apple and Qualcomm regarding the incorporation of WiMAX standard in Apple's products.  We are looking into this further and will provide a supplemental response if appropriate.
- Rog No. 14 – Apple will supplement its response, but disagrees that a narrative response is required.
- RFP No. 42 – Apple maintains its objections to this request, including that it seeks documents that are not relevant and proportional to the needs of this case.
- RFP Nos. 43-47 and 50 – Apple confirms that it will produce relevant, non-privileged documents in its possession, custody, or control in response to the non-objectionable portions of these requests. If, during its review, Apple identifies such documents that it intends to withhold, Apple will notify Wi-LAN.

Best,
Nathaniel
_____

**Nathaniel T. Dang | Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Friday, September 22, 2017 10:02 AM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

Exhibit 20
Page 166

Thanks for meeting with me today.  You were unable to provide Apple's position on supplementation on most of the issues, but said you would get back to us by Monday.  Given the 9/27 deadline for WiLAN's motion to compel, we intend to reach out to the clerk Monday afternoon at 3pm central to discuss WiLAN's motion, unless Apple's confirms before then that it will provide the requested supplementation.  My summary of the call below.

**Apple's Responses to WiLAN Discovery**
- Rog 11:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- Rog 12:  Apple will supplement its response to this interrogatory to provide citations to documents reflecting Apple's participation in both the WiMAX and LTE standards.  You said you will confirm by Monday whether Apple will (1) provide citations to documents reflecting Apple's research or testing relating to the development and R&D expenditures attributable to these standards,  and  (2) provide a narrative description regarding Apple's participation in the WiMAX and LTE standards.
- Rog 13:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- Rog 14:  Apple will supplement its response to provide the requested information.
- RFPs 40 and 41:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.
- RFP 42:  You were unable to provide Apple's position on supplementation, but committed to providing Apple's position by Monday.

With respect to RFP Nos. 43, 44, 45, 46, 47, and 50, please let me know by Monday whether Apple is refusing to produce any responsive non-privileged documents.

**WiLAN Responses to Apple Discovery**
We discussed Wi-LAN's responses to Apple's Discovery and the letter I sent you Monday.  Specifically, we discussed Interrogatories 1, 2, 5, 6, 7, and 8.  You agreed that WiLAN's citation to documents for Rog 2 is sufficient and Wi-LAN's response to Rog 6 is sufficient.  At this point, I believe that Wi-LAN has addressed all of Apple's concerns.  Please let me know if there are any outstanding issues you would like to discuss.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

---

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Thursday, September 21, 2017 10:46 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

Can you please also be prepared to discuss Wi-LAN's Objections and Responses to Apple's First Sets of Interrogatories and RFPs on our call tomorrow?

Best,
Nathaniel

---

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067

Exhibit 20
Page 167

T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

---

**From:** Dang, Nathaniel
**Sent:** Thursday, September 21, 2017 9:32 AM
**To:** Warren Lipschitz <wlipschitz@mckoolsmith.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

10:30 a.m. central would work on our end.

Thanks,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Thursday, September 21, 2017 7:27 AM
**To:** Dang, Nathaniel <NDang@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Nathaniel,

I have a meeting from 1130-130pm central, but am otherwise available.  Let me know what time is good for you.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Dang, Nathaniel [mailto:NDang@milbank.com]
**Sent:** Wednesday, September 20, 2017 8:12 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

Would noon central on Friday work?

Best,
Nathaniel

_____

Nathaniel T. Dang | **Milbank**
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
T: +1 424.386.4370 | F: +1 213.892.4270
ndang@milbank.com | www.milbank.com

Exhibit 20
Page 168

**From:** Warren Lipschitz [mailto:wlipschitz@mckoolsmith.com]
**Sent:** Monday, September 18, 2017 6:59 PM
**To:** Gaspar, Christopher J. <CGaspar@milbank.com>
**Cc:** WiLAN SDCAL <WiLAN_SDCAL@McKoolSmith.com>; Apple-WiLAN-DJ <Apple-WiLAN-DJ@milbank.com>; Lin, Ashlee <anlin@milbank.com>
**Subject:** RE: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Chris,

Thanks for your response.  Friday works, but please come prepared with Apple's positions on supplementation.  As you know, the court requires discovery motions to be filed within 30 days of objections, which is next Wednesday, 9/27.

Is 3pm central good?  Let's use this dial-in:  18662448528 passcode 445756.

Thanks,

**Warren Lipschitz | Associate | McKool Smith**
telephone: 214.978.4973

**From:** Gaspar, Christopher J. [mailto:CGaspar@milbank.com]
**Sent:** Monday, September 18, 2017 4:54 PM
**To:** Warren Lipschitz
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ; Lin, Ashlee
**Subject:** Re: Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Warren,

Thank you for the follow-up email.  You might not know, but I was in a deposition your colleague Kevin Schubert took on Thursday at the time of your letter.  I am giving it attention.  Can we talk on Friday after Kevin's second 30b6 deposition of Apple concerning custodians, documents, repositories, etc.?

Regards,

Chris

Chris Gaspar
Milbank
(212) 530-5019
cgaspar@milbank.com

On Sep 18, 2017, at 5:08 PM, Warren Lipschitz <wlipschitz@mckoolsmith.com> wrote:

> Chris,
>
> Following up on the correspondence below.  Please let me know when you are available to meet and confer.
>
> Thanks,
>
> **Warren Lipschitz | Associate | McKool Smith**
> telephone: 214.978.4973

Exhibit 20
Page 169

**From:** Warren Lipschitz
**Sent:** Thursday, September 14, 2017 4:48 PM
**To:** 'Gaspar, Christopher J.'
**Cc:** WiLAN SDCAL; Apple-WiLAN-DJ; Lin, Ashlee
**Subject:** Apple/Wi-LAN - Correspondence Regarding Apple Discovery Deficiencies

Chris,

Please see the attached correspondence.

Regards,

**Warren Lipschitz | Associate | McKool Smith**
300 Crescent Court, Suite 1500, Dallas, Texas 75201
telephone: 214.978.4973
fax: 214.978.4044

NOTICE OF CONFIDENTIALITY:

The information contained in and transmitted with this e-mail is SUBJECT TO THE ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL. It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the addressee designated above by the sender is unauthorized and strictly prohibited. If you have received this e-mail in error, please notify the sender by reply immediately. Any e-mail erroneously transmitted to you should be immediately destroyed.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==========================================================

Exhibit 20
Page 170

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

Exhibit 20
Page 171

# Exhibit 21

Exhibit 21
Page 172

DAVID KAYS, ESQ. (SBN 120798)
DONN WASLIF, ESQ. (SBN 164538)
FREEDA Y. LUGO, ESQ. (SBN 244913)
MORGAN FRANICH FREDKIN SIAMAS & KAYS LLP
333 W. San Carlos Street, Suite 1050
San Jose, California  95110-2735
Telephone: (408) 288-8288
Facsimile:  (408) 288-8325

Attorneys for Non-Party
*QUALCOMM INCORPORATED*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Apple Inc., | Case No. 3:14-cv-02235 |
| Plaintiff, | |
| vs. | |
| WI-LAN, Inc., *et al.* | **NON-PARTY QUALCOMM INCORPORATED'S RESPONSES AND OBJECTIONS TO WI-LAN, INC.'S  SUBPOENAS** |
| Defendants. | |

## PRELIMINARY STATEMENT

Qualcomm Incorporated ("Qualcomm"), a non-party to this dispute, provides the following objections and responses to WI-LAN, Inc.'s ("Wi-LAN") Subpoena to Testify at a Deposition in a Civil Action ("Deposition Subpoena") and Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Document Subpoena," together, the "Subpoenas").

The following objections and responses are based solely on the information that is presently available and specifically known to Qualcomm.

Qualcomm reserves the right to supplement the following objections and responses, and to change any and all answers herein as additional information is ascertained from Wi-LAN as to the scope and relevance of Wi-LAN's deposition topics and document requests, as analyses are made of relevant information sought by the Subpoenas, and legal research

Exhibit 21
Page 173

is completed.

Qualcomm's objections and responses are made without in any way waiving or intending to waive, but, on the contrary, preserving and intending to preserve:

1.   All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the response or subject matter thereof, in any subsequent proceeding in or the trial of this or any other action;

2.   The right to object on any ground to the use of said objections and responses, or the subject matter thereof, in any subsequent proceeding in or in the trial of this or any other action; and

3.   The right to object on any ground at any time to other discovery procedures involving or relating to the subject matter of the Subpoenas.

## **GENERAL OBJECTIONS**

Qualcomm sets forth its General Objections to Wi-LAN's Subpoenas.  These General Objections apply to each and every deposition topic and document request (collectively, the "Requests") set forth herein whether or not they are specifically set forth in the objections and responses to each of the Requests.

1.   Qualcomm objects to the Requests to the extent they attempt to impose obligations upon Qualcomm, a non-party, beyond those imposed or authorized by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of the Southern District of California, and any and all other applicable rules (the "Rules").

2.   Qualcomm objects to the Requests to the extent they seek disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection.  Qualcomm hereby asserts all such applicable privileges, immunities, and protections, and excludes privileged, immune, and protected information from its responses to these requests.  Any disclosure of privileged, immune, or protected documents and things is inadvertent and shall not be deemed a waiver of any privilege, immunity, or protection.

Exhibit 21
Page 174

3.      Qualcomm objects to the Requests to the extent they purport to require Qualcomm to produce a witness or all responsive documents by a date certain.  Subject to all of the objections stated herein, Qualcomm will not produce a witness for deposition or documents until it is reasonably practicable to do so.

4.      Qualcomm objects to the Requests to the extent they seek information protected by constitutional, statutory and/or common law rights to personal privacy and confidentiality.

5.      Qualcomm objects to the Requests to the extent they seek information that is not relevant to any party's claims or defense or not proportional to the needs of the case.

6.      Qualcomm objects to the Requests to the extent they are unreasonably vague, overly broad, repetitious, unduly burdensome, or require the disclosure of information beyond the scope of permissible discovery as allowed, defined, clarified, agreed to, or limited by the Rules.

7.      Qualcomm objects to the Requests as imposing undue expense on a non-party to this dispute, and as unduly burdensome and irrelevant to this litigation, especially to the extent they may purport to require search and production from electronic mail systems.

8.      Qualcomm objects to the Requests to the extent they call for information, either electronically stored or stored in hard copy that is not readily accessible.

9.      Qualcomm objects to the Requests to the extent they call for information within the public domain or not in the possession, custody, or control of Qualcomm.

10.    Qualcomm objects to the Requests to the extent they call for information already in the possession, custody or control of the parties to this dispute, or information that is publicly available.

11.    Qualcomm objects to the Requests to the extent they call for information that has not first been sought from the parties to this dispute.

12.    Qualcomm objects to the Requests to the extent they call for information that is equally available from the parties to this dispute.

13.    Qualcomm objects to the Requests to the extent that they seek the disclosure of

Exhibit 21
Page 175

information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties.

14.   Qualcomm objects to the Requests to the extent that they seek the disclosure of confidential information that is not relevant to this case, including, but not limited to, confidential business information, proprietary and/or competitively sensitive information, and trade secrets.

15.   Qualcomm objects to the Requests to the extent they call for information or documentation concerning products that are sold outside the United States, or which have not been commercialized, or which have not been sold to any of the defendants to this action.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.   Qualcomm objects to the terms "Wi-LAN" and "Defendant," as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "Wi-LAN, Inc., Wi-LAN USA, Inc., WiLAN Labs, and any affiliates, divisions, subsidiaries, predecessors-in-interest, or successors-in-interest, and any employees, representatives, directors, agents, or attorneys acting on its behalf," all of which are themselves vague, ambiguous, unduly burdensome and overly broad, and which would require Qualcomm to have knowledge of matters beyond its custody and control.

2.   Qualcomm objects to the terms "Qualcomm," "you," and "your" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "Qualcomm Incorporated, including without limitation any divisions, departments, parents, predecessors (whether acquired by merger, consolidation, or other means), successors, subsidiaries (whether wholly or partially owned), affiliates, entities under common control, joint ventures, and other organizations or operating units, and each of their present and former officers, directors, agents, controlling shareholder(s), or employees and all persons (natural or legal) who act, have acted, purport to act, or have purported to act, on its behalf," all of which are themselves vague, ambiguous, unduly burdensome and overly broad, and which would require Qualcomm to have knowledge of matters beyond its

Exhibit 21
Page 176

custody and control.

3.     Qualcomm objects to the term "Apple" as vague, ambiguous and overly broad. For example, it includes in the definition other terms such as "Apple Inc." and includes any officers, directors, partners, associates, employees, staff members, agents, representatives, attorneys, foreign or domestic subsidiaries, parents, affiliates, divisions, successors, predecessors and any other related entities," all of which are themselves vague, ambiguous, unduly burdensome and overly broad, and which would require Qualcomm to have knowledge of matters beyond its custody and control.

4.     Qualcomm objects to the term "Document(s)" as vague, ambiguous, overly broad, and unduly burdensome to the extent these terms purport to impose obligations on Qualcomm beyond the requirements of the Rules.   Qualcomm will respond to these requests in accordance with the Rules.

5.     Qualcomm objects to the term "identify" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "used in reference to a document (including electronically stored information), means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (e.g., letter or memorandum) and, if electronically stored information, the software application used to create it (e.g., MS Word, MS Excel Spreadsheet, etc.); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; and (6) the relationship of the author and addressee to each other," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

6.     Qualcomm objects to the term "3GPP LTE standard" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "Release 8 and all subsequent Releases of the Third Generation Partnership Project ('3GPP') standard, as available   at:   http://www.3gpp.org/Release-8,"   all   of   which   are   themselves   vague,

Exhibit 21
Page 177

ambiguous, unduly burdensome and overly broad.

7.      Qualcomm objects to the term "LTE" as vague, ambiguous and overly broad. For example, it includes in the definition other terms such as "'Long Term Evolution,' and refers to the technology defined by 3GPP Release 8 and subsequent Releases" all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

8.      Qualcomm objects to the terms "Comply," "Compliance," and "Complies" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "reference to a standard, specification, or feature described in a standard or specification, refers to implementation or support of the functionality listed in that standard, specification, or feature description," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

9.      Qualcomm objects to the term "Apple VoLTE Product(s)," as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "those products marketed by Apple as complying with the 3GPP 4G LTE standard for Voice over LTE, and shall specifically refer to at least the following products: iPhone 7, iPhone 7 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 6, and iPhone 6 Plus," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

10.     Qualcomm objects to the term "Select Qualcomm Chipset(s)" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "any of the following chipsets: MDM9625M, MDM9635M, MDM9645M, and any other chipset sold by Qualcomm to Apple for use in an Apple VoLTE Product that provides LTE capability," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

11.     Qualcomm objects to the term "Communication" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "including its usual and customary meaning, any transmission, conveyance, or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral, or other means, including but not limited to electronic

Exhibit 21
Page 178

communications and electronic mail," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

12.   Qualcomm objects to the term "VoLTE data" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "voice and control data, such as Session Initiation Protocol (SIP) and Real-time Transport Protocol (RTP) data, related to a VoLTE call," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

13.   Qualcomm objects to the term "Application data" as vague, ambiguous and overly broad.  For example, it includes in the definition other terms such as "non-VoLTE data related to various application services, such as video, email, and web browsing," all of which are themselves vague, ambiguous, unduly burdensome and overly broad.

14.   Qualcomm further objects to paragraphs 8-10 of the Definitions, and paragraphs 1-3 of the Instructions, (1) as vague, ambiguous and overly broad to the extent they rely on any of the other vague, ambiguous and overly broad terms objected to herein; and (2) as overly broad and unduly burdensome to the extent they purport to impose obligations on Qualcomm beyond those required by the Rules.  Qualcomm will respond to these requests in accordance with the Rules.

## SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

Source code relating to the design, structure, function, operation, configuration, and/or modification of each of the Select Qualcomm Chipsets, including the source code for hardware design and specification language descriptions, such as HDL, VHDL, iHDL, or RTL, and the source code for higher software programming design languages, such as C and C++ programming languages.

### RESPONSE TO DOCUMENT REQUEST NO. 1:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome,

Exhibit 21
Page 179

vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Source code relating to the design, structure, function, operation, configuration, and/or modification," "of each of the Select Qualcomm Chipsets," "including the source code for hardware design and specification language descriptions," "such as HDL, VHDL, iHDL, or RTL," "and the source code for higher software programming design languages" and "such as C and C++ programming languages," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.  Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 2:

Technical specifications, data sheets, design documents, presentations, user guides, and user manuals of each of the Select Qualcomm Chipsets.

Exhibit 21
Page 180

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Technical specifications, data sheets, design documents, presentations, user guides, and user manuals" and "of each of the Select Qualcomm Chipsets," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties.  Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.  Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows:

Exhibit 21
Page 181

Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

**DOCUMENT REQUEST NO. 3:**

Documents and communications exchanged between Qualcomm and Apple concerning the design or development of any Select Qualcomm Chipset.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous. Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm. Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications exchanged between Qualcomm and Apple" and "concerning the design or development of any Select Qualcomm Chipset," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in

Exhibit 21
Page 182

Qualcomm's possession, custody or control.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.  Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

**DOCUMENT REQUEST NO. 4:**

Documents and communications exchanged between Qualcomm and Apple concerning Apple's technical or business requirements with respect to any Select Qualcomm Chipset.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications exchanged between Qualcomm and Apple," "concerning Apple's technical or business requirements" and "with respect to any Select Qualcomm Chipset," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege,

Exhibit 21
Page 183

immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 5:

Documents and communications, internal to Qualcomm or exchanged with Apple, regarding how VoLTE data and application data are communicated between an application processor, or other component, to the Select Qualcomm Chipsets.

## RESPONSE TO DOCUMENT REQUEST NO. 5:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous. Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm. Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and

Exhibit 21
Page 184

communications," "internal to Qualcomm or exchanged with Apple," "regarding how VoLTE data and application data are communicated between an application processor, or other component" and "to the Select Qualcomm Chipsets," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 6:

Marketing documents concerning the Select Qualcomm Chipsets, including the benefits, advantages, or importance of VoLTE functionality and/or differences between the Select Qualcomm Chipsets and chipsets that do not support VoLTE.

Exhibit 21
Page 185

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous. Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm. Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Marketing documents concerning the Select Qualcomm Chipsets," "including the benefits, advantages, or importance of VoLTE functionality" and "and/or differences between the Select Qualcomm Chipsets and chipsets that do not support VoLTE," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to

Exhibit 21
Page 186

Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

**DOCUMENT REQUEST NO. 7:**

Agreements of any kind between Qualcomm and Apple that relate to indemnity.

**RESPONSE TO DOCUMENT REQUEST NO. 7:**

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous. Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm. Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Agreements of any kind" and "between Qualcomm and Apple that relate to indemnity," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

Exhibit 21
Page 187

**DOCUMENT REQUEST NO. 8:**

Documents and communications showing any payment Qualcomm has made and/or any obligation Qualcomm has to pay to or on behalf of Apple for any portion of the litigation costs, attorney fees, or damages recovered in the Lawsuit and any related correspondence and agreements or covenants obligating Qualcomm to make such payments.

**RESPONSE TO DOCUMENT REQUEST NO. 8:**

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous. Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm. Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications showing any payment Qualcomm has made," "and/or any obligation Qualcomm has to pay to or on behalf of Apple," "for any portion of the litigation costs, attorney fees, or damages," "recovered in the Lawsuit" and "any related correspondence and agreements or covenants obligating Qualcomm to make such payments," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Exhibit 21
Page 188

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will not produce documents in response to this request.

## DOCUMENT REQUEST NO. 9:

Documents and communications internal to Qualcomm or between Qualcomm and any other entity, including Apple, concerning the Patents-in-Suit, this Lawsuit, or Wi-LAN.

## RESPONSE TO DOCUMENT REQUEST NO. 9:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications internal to Qualcomm," "or between Qualcomm and any other entity, including Apple" and "concerning the Patents-in-Suit, this Lawsuit, or Wi-LAN," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Exhibit 21
Page 189

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 10:

Documents and communications exchanged between Qualcomm and Apple regarding the LTE standard or its implementation, including all Qualcomm University documents.

## RESPONSE TO DOCUMENT REQUEST NO. 10:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications exchanged between Qualcomm and Apple," "regarding the LTE standard or its implementation" and "including all Qualcomm University documents," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Exhibit 21
Page 190

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 11:

Documents and communications, internal to Qualcomm or exchanged with Apple, regarding how each Select Qualcomm Chipset organizes data into Logical Channel Groups, prepares and transmits Scheduling Requests, prepares and transmits Buffer Status Reports, receives PDCCH grants, assigns Prioritized Bit Rates, and performs Logical Channel Prioritization.

## RESPONSE TO DOCUMENT REQUEST NO. 11:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications," "internal to Qualcomm or exchanged with Apple," "regarding how each Select Qualcomm Chipset organizes data into Logical Channel Groups," "prepares and transmits Scheduling Requests," "prepares and transmits Buffer Status Reports," "receives PDCCH grants," "assigns Prioritized Bit Rates," and "performs Logical Channel Prioritization," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it requires Qualcomm to make legal conclusions as to the meaning of terms in the referenced standards or expert determinations, and then undertake an analysis to apply

Exhibit 21
Page 191

those legal conclusions and opinions to Qualcomm's chips, as improper, unreasonable, and overly burdensome. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties.  Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.  Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

**DOCUMENT REQUEST NO. 12:**

Documents and communications, internal to Qualcomm or exchanged with Apple, regarding how each Select Qualcomm Chipset is configured to segment and/or concatenate RLC SDUs, form RLC PDUs from RLC SDUs, include RLC Headers in RLC PDUs, and populate the Extension Part of RLC PDU Headers when more than one data element is present in the RLC PDU.

**RESPONSE TO DOCUMENT REQUEST NO. 12:**

In addition to its Preliminary Statement, General Objections, and Objections to

Exhibit 21
Page 192

Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications," "internal to Qualcomm or exchanged with Apple," "regarding how each Select Qualcomm Chipset is configured to segment and/or concatenate RLC SDUs," "form RLC PDUs from RLC SDUs," "include RLC Headers in RLC PDUs" and "populate the Extension Part of RLC PDU Headers when more than one data element is present in the RLC PDU," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it requires Qualcomm to make legal conclusions as to the meaning of terms in the referenced standards or expert determinations, and then undertake an analysis to apply those legal conclusions and opinions to Qualcomm's chips, as improper, unreasonable, and overly burdensome. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties.  Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all,

Exhibit 21
Page 193

from Apple.   Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 13:

Documents and communications, internal to Qualcomm or exchanged with Apple, regarding how each Select Qualcomm Chipset determines and reports the Channel Quality Indicator.

## RESPONSE TO DOCUMENT REQUEST NO. 13:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.   Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.   Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "Documents and communications," "internal to Qualcomm or exchanged with Apple," "regarding how each Select Qualcomm Chipset determines and reports the Channel Quality Indicator," as vague, ambiguous, overly broad, and imposing undue burden and expense.   Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it requires Qualcomm to make legal conclusions as to the meaning of terms in the referenced standards or expert determinations, and then undertake an analysis to apply those legal conclusions and opinions to Qualcomm's chips, as improper, unreasonable, and overly burdensome. Qualcomm objects to this request to the extent it seeks disclosure of

Exhibit 21
Page 194

information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. To the extent it gets produced in this case, Qualcomm's source code itself is not only sufficient to show, but is the definitive evidence of, the functionality of Qualcomm's chips and thus, the production of additional documents related thereto would be unreasonable and overly burdensome. Qualcomm also objects to this request to the extent it seeks the disclosure of information that Qualcomm is not permitted to disclose pursuant to confidentiality obligations or agreements with non-parties.  Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.  Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 14:

All licenses and any amendments, supplements, or extensions thereto regarding the Apple VoLTE products, as well as all documentation, including correspondence, relating to payment or nonpayment of royalties thereunder.

## RESPONSE TO DOCUMENT REQUEST NO. 14:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm.  Qualcomm also objects to this request to the

Exhibit 21
Page 195

extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case. Qualcomm objects to the terms "All licenses," "and any amendments, supplements, or extensions thereto," "regarding the Apple VoLTE products," "as well as all documentation, including correspondence" and "relating to payment or nonpayment of royalties thereunder," as vague, ambiguous, overly broad, and imposing undue burden and expense. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection. Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple. Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple.

## DOCUMENT REQUEST NO. 15:

Documents relating to the documents produced pursuant to requests for production 7, 8, and 14, including communications exchanged with counterparties.

## RESPONSE TO DOCUMENT REQUEST NO. 15:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this request on the grounds that it is woefully over broad, unduly burdensome, vague, and ambiguous. Qualcomm objects to this request on the ground that it imposes undue burden and expense on Qualcomm. Qualcomm also objects to this request to the extent that it calls for information that is not relevant to any party's claim or defense or

Exhibit 21
Page 196

proportional to the needs of the case. Qualcomm objects to the terms "Documents relating to the documents," "produced pursuant to requests for production 7, 8, and 14" and "including communications exchanged with counterparties," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this request to the extent it lacks foundation or assumes facts that are not in evidence. Qualcomm objects to this request to the extent it calls for information concerning products that are sold outside the United States. Qualcomm objects to this request to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection.  Qualcomm also objects to this request to the extent it calls for information within the public domain or information not in Qualcomm's possession, custody or control.  Qualcomm objects to this request to the extent it seeks information from non-party Qualcomm that should be obtained, if at all, from Apple.  Qualcomm further objects to the extent this request seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will not produce documents in response to this request.

## SPECIFIC OBJECTIONS AND RESPONSES TO DEPOSITION TOPICS

### DEPOSITION TOPIC NO. 1:

Authentication of any document, including but not limited to source code, or communication produced by Qualcomm and testimony confirming that each such document or communication is made and/or kept in the ordinary course of business.

### RESPONSE TO DEPOSITION TOPIC NO. 1:

In addition to its Preliminary Statement, General Objections, and Objections to Definitions and Instructions, which are hereby incorporated by reference, Qualcomm objects to this topic on the grounds that it is overly broad, unduly burdensome, vague, and ambiguous.  Qualcomm objects to this topic on the ground that it imposes undue burden

Exhibit 21
Page 197

and expense on Qualcomm.  Qualcomm also objects to this topic to the extent that it calls for information that is not relevant to any party's claim or defense or proportional to the needs of the case.  Qualcomm objects to the terms "Authentication of any document, including but not limited to source code, or communication produced by Qualcomm" and "testimony confirming that each such document or communication is made and/or kept in the ordinary course of business," as vague, ambiguous, overly broad, and imposing undue burden and expense.  Qualcomm objects to this topic to the extent it seeks disclosure of information that is protected by the work product doctrine, the attorney-client privilege, joint-defense or common-interest privilege, or any other applicable privilege, immunity, or protection.  Qualcomm further objects to the extent this topic seeks confidential, proprietary, and/or private information.

Subject to the foregoing Preliminary Statement, General Objections, Objections to Definitions and Instructions, and Specific Objections, Qualcomm responds as follows: Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this topic and identify the relevant, non-privileged information, if any, sought by Wi-LAN.

Dated:  June 9, 2017                    MORGAN FRANICH FREDKIN SIAMAS &
                                        KAYS LLP


                                        By: _____
                                             DONN WASLIF, ESQ.
                                             Attorneys for Non-Party
                                             QUALCOMM, INCORPORATED

Exhibit 21
Page 198

Re:     *Apple Inc. v. WI-LAN, Inc., et al.*
        Case No. 3:14-cv-2235

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I am over the age of eighteen years and not a party to the within action.  My business address is 333 W. San Carlos Street, Suite 1050, San Jose, California 95110.  On the date indicated below, I served in the manner indicated below the following document(s):

### NON-PARTY QUALCOMM INCORPORATED'S RESPONSES AND OBJECTIONS TO WI-LAN, INC.'S SUBPOENAS

| X | **BY ELECTRONIC MAIL** to the person at the electronic notification addresses listed as follows: kschubert@mckoolsmith.com |
| --- | --- |

Kevin Schubert
McKool Smith, PC
One Bryant Park
47th Floor
New York, NY 10036
Tel:  (212) 4029423
e-mail:  kschubert@mckoolsmith.com

Executed on **June 9, 2017,** at San Jose, California.  I certify that the foregoing is true and correct.

_____
DONN WASLIF

Exhibit 21
Page 199

# Exhibit 22

Exhibit 22
Page 200

Mark C. Scarsi (SBN 183926)
mscarsi@milbank.com
Ashlee N. Lin (SBN 275267)
anlin@milbank.com
MILBANK, TWEED, HADLEY & McCLOY LLP
2029 Century Park E, 33rd Floor
Los Angeles, California 90067
Telephone:  (424) 386-4000
Facsimile:   (213) 629-5063

*Attorneys for Plaintiff Apple Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>  Plaintiff,<br><br>v.<br><br>WI-LAN, INC.,<br><br>  Defendant.<br>_____<br><br>AND RELATED COUNTERCLAIMS | No. 3:14-cv-2235-DMS-BLM (lead case);<br><br>No. 3:14A-cv-1507-DMS-BLM (consolidated)<br><br>**PLAINTIFF APPLE INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT WI-LAN, INC.**<br><br>Department: 13A<br>Judge: Hon. Dana M. Sabraw<br>Magistrate: Hon. Barbara L. Major<br><br>Complaint filed: June 19, 2014 |

**PROPOUNDING PARTY:**      Plaintiff, APPLE INC.

**RESPONDING PARTY:**      Defendant, WI-LAN, INC.

**SET NUMBER:**      One (1)

Exhibit 22
Page 201

Pursuant to Rule 34 of the Federal Rules of Civil Procedure of the United States District Court, Southern District of California, Plaintiff Apple Inc. ("Apple") hereby requests that Defendant Wi-LAN, Inc. ("Wi-LAN") produce for inspection and copying the documents and things requested below at the law offices of Milbank, Tweed, Hadley & McCloy, LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067.

## DEFINITIONS

1.     As used herein, the term "Wi-LAN" shall mean Defendant Wi-LAN Inc., and all of its present and former directors, officers, partners, members, managers, employees, agents, representatives, attorneys, successors, predecessors, assigns, divisions, departments, parents, subsidiaries, affiliates and/or all other individuals or entities acting for and/or on their behalf.

2.     As used herein, "You" or "Your" means Wi-LAN as defined in these Definitions.

3.     The term "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

4.     The term "Document" is defined broadly to give the full scope of that term as contemplated by Rule 34 of the Federal Rules of Civil Procedure, and shall include, but not be limited to, the original (or a copy when the original is not available) and each non-identical copy (including those which are non-identical by reason of notations markings) or any and all other written, printed, typed, punched, taped, or graphic matter or recorded or tangible thing, of whatever description, however produced or reproduced, and shall include all attachments to and enclosures with any requested item, to which they are attached or with which they are enclosed, and each draft thereof.  The term Document includes for example, but is not limited to: correspondence, telegrams, memoranda, communications, minutes or records of meetings and conferences, lists of persons attending

1

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 202

meetings or conferences, summaries, records of conversations, drafts, notes, notebooks, logs, invention records and disclosures, translations, drawings, graphs, charts, photographs, sound recordings, images, data compilations, computer records or printouts, specifications, reports, opinions, summaries, agreements, forecasts, plan drawings, mask works, engineering drawings, expressions or statements of policy, consultations, brochures, pamphlets, advertisements, publications, circulars, trade letters, press releases, drafts of any documents, revisions of drafts of any documents, whether printed, recorded, written by hand, stored in some tangible medium of expression from which the information can be retrieved, perceived or understood.

5.     The phrase "Electronically Stored Information" is defined broadly to give the full scope of that term as contemplated by Rule 34 of the Federal Rules of Civil Procedure, and refers to all computer or electronically stored or generated data and information, and shall include all attachments to and enclosures with any requested item, to which they are attached or with which they are enclosed, and all drafts thereof.  Electronically stored information includes information stored in any format and on any storage media, including for example, but not limited to: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable or removable.  The format of Electronically Stored Information includes for example, but is not limited to: word-processing documents; electronic spreadsheets; electronic presentation documents; e-mail messages; image files; sound files; material or information stored in databases, or accessible from databases, of whatever description.  Electronically stored information includes all associated metadata that is routinely maintained or saved, which includes for example, but is not limited to: document title or name; file name; date and time of creation; date and time of last edit; identity of author; identity of owner; identities of editors; identities of recipients; changes; history of

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-cv-02235-DMS-BLM
Exhibit 22
Page 203

changes; e-mail header information; and e-mail routing information.

Electronically stored information includes for example, but is not limited to: correspondence, telegrams, memoranda, communications, minutes or records of meetings and conferences, lists of persons attending meetings or conferences, summaries, records of conversations, drafts, notes, logs, invention records and disclosures, translations, drawings, graphs, charts, photographs, sound recordings, images, data compilations, computer records or printouts, specifications, reports, opinions, summaries, agreements, forecasts, plan drawings, mask works, engineering drawings, expressions or statements of policy, consultations, brochures, pamphlets, advertisements, publications, circulars, trade letters, press releases, drafts of any documents, and revisions of drafts of any documents.

6.     The term "Thing" shall have the broadest meaning prescribed in Rule 34 of the Federal Rules of Civil Procedure, and refers to any tangible object, other than Documents or Electronically Stored Information, and includes physical objects of every kind and manner including, but not limited to: prototypes, models, and specimens.

7.     The term "Person" means any natural person or any business, legal or governmental entity or association.

8.     The term "Concerning" means relating to, referring to, describing, evidencing or constituting.

9.     The term "Any," "All," and "Each" shall be construed as all and each.

10.     The connectives "And," and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

11.     The use of the singular form of any word includes the plural and vice versa.

12.     The use of the masculine or feminine form of any word when used in reference to any person shall include any person included in the definition of "PERSON" as set forth herein.

13.     The terms "Suit," "Action" and "Lawsuit" means the above-entitled and captioned civil lawsuit.

14.     The terms "Infringement," "Infringing," "Infringe," "Infringed," and "Infringes" mean direct infringement, contributory infringement, induced infringement, literal infringement and/or infringement under the doctrine of equivalents.

15.     "Patents-in-Suit" shall mean U.S. Patent Nos. 8,457,145; 8,462,723; 8,537,757; 8,615,020; 8,462,761; 8,311,040.

16.     The term "Related Patent" means any and all patents issuing from any foreign or U.S. Patent Application (i) that serves or could serve as a priority document leading directly or indirectly to any of the Patents-in-Suit; (ii) for which any of the Patents-in-Suit could serve directly or indirectly as a priority document; or (iii) that claims or may claim priority to any foreign or U.S. Patent Application that serves or could serve as a priority document leading directly or indirectly to any of the Patents-in-Suit.

17.     The phrase "Accused Products" means any devices or processes that are alleged to infringe any of the Patents-in-Suit.

18.     The phrase "Prior Art" means all Documents, Electronically Stored Information, Things, activities, and products that constitute, describe, suggest, disclose, anticipate, render obvious, refer to, or relate to the subject matter described or claimed in any of the Patents-in-Suit prior to the filing date of such patent, and includes those categories of information set forth in 35 U.S.C. §§ 102 and 103.

4

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 205

## **INSTRUCTIONS**

These Requests for Production of Documents, Electronically Stored Information, and Things shall be deemed to seek Documents, Electronically Stored Information and Things in existence as of the date of service thereof and to the full extent of the Federal Rules of Civil Procedure.  These requests are of a continuing nature and You are required to file and serve supplemental responses promptly if You obtain further or different information after the date of Your initial answer and before this case is completed.

1.      These requests shall apply to all Documents, Electronically Stored Information and Things in Your possession, custody or control at the present time or that come into Your possession, custody or control.  If You know of the existence, past or present, of any Documents, Electronically Stored Information or Things requested below, but are unable to produce such Documents, Electronically Stored Information or Things because they are not presently in Your possession, custody or control, You shall so state and shall Identify such Documents, Electronically Stored Information or Things, and the Person who has possession, custody or control of the Documents, Electronically Stored Information or Things.

2.      If no Documents, Electronically Stored Information or Things are responsive to a particular request, You are to state that no responsive Documents, Electronically Stored Information or Things exist.

3.      For any responsive Documents, Electronically Stored Information or Things that have been lost, destroyed or withheld from production based on any ground, You shall provide a written statement setting forth:

(i)      the identity of the Document, Electronically Stored Information or Things;

(ii)     the nature of the Document, Electronically Stored Information or Thing (e.g., letter, memorandum, chart);

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 206

(iii)   the identity of the Person(s) who received copies of the Document, Electronically Stored Information or Thing;

(iv)   the date of the Document, Electronically Stored Information or Thing;

(v)   a brief description of the subject matter of the Document, Electronically Stored Information or Thing; and

(vi)   the circumstances of the loss or destruction of the Document, Electronically Stored Information or Thing and any fact, statute, rule or decision upon which You rely in withholding the Document, Electronically Stored Information or Thing.

4.   If You decline to produce any Document, Electronically Stored Information or Thing or part thereof based on a claim of privilege or any other claim, provide a "privilege log" which identifies each Document, Electronically Stored Information or Thing separately and specifies for each Document, Electronically Stored Information or Thing at least the following:

(i)   the date;

(ii)   the sender(s) identified by position and entity with which they are employed or associated and, if any sender is an attorney, a statement so stating;

(iii)   the recipient(s), including copy recipients, identified by position and entity with which they are employed or associated and, if any recipient is an attorney, a statement so stating;

(iv)   the general subject matter of the Document, Electronically Stored Information or Thing;

(v)   the portion(s) of the Document, Electronically Stored Information or Thing as to which privilege is claimed; and

(vi)   the type of privilege asserted.

6

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 207

5.      All Documents, Electronically Stored Information and Things requested are to be produced in the same file or other organizational environment in which they are maintained.  For example, a Document, Electronically Stored Information or Thing that is part of a file, docket, or other grouping, should be physically produced together with all other Documents, Electronically Stored Information or Things from said file, docket or grouping, in the same order or manner of arrangement as the original.  Alternatively, as to each Document, Electronically Stored Information and Thing produced in response hereto, You shall Identify the request for production in response to which the Document, Electronically Stored Information or Thing is being produced.

6.      All Electronically Stored Information shall be produced in the form in which it is kept in the usual course of business, or in a reasonable usable form.  A reasonably usable form is a form that is reasonably usable in and of itself, or a form that is reasonably usable with software that is in general commercial use, or a form that is reasonably usable together with provided instructions and/or programs necessary to search, retrieve, access, display or print such information.  Where Electronically Stored Information is produced in a form other than in the form in which it is kept in the usual course of business, any difference in usability or searchability from the form in which it is kept in the usual course of business shall not be significant.  Where Electronically Stored Information is produced in the form in which it is kept in the usual course of business and it is not reasonably useable in that form, then all software, instructions, or tools necessary to make the information reasonably useable must also be provided or identified.  To the extent that identical information is available as both a Document and as Electronically Stored Information or in multiple forms of Electronically Stored Information, You need only produce the Electronically Stored Information in one reasonably useable form.

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 208

7.     No part of a request may be left unanswered merely because You assert an objection to another part of that request.

8.     Your responses must be in accord with the Federal Rules of Civil Procedure, the Local Rules of the Southern District of California, and the instructions and definitions contained herein.

## **REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**     All Documents, Electronically Stored Information, and Things relating to Your allegations of direct infringement.

**REQUEST NO. 2:**     All Documents, Electronically Stored Information, and Things relating to Your allegations of indirect infringement.

**REQUEST NO. 3:**     All Documents, Electronically Stored Information, and Things relating to Your allegations of willful infringement.

**REQUEST NO. 4:**     All Documents, Electronically Stored Information, and Things relating to Your pre-suit investigation of Apple products, including both Accused Products and products that are not accused in this Lawsuit.

**REQUEST NO. 5:**     All Documents, Electronically Stored Information, and Things concerning Your complaints in this action, including all Documents, Electronically Stored Information and Things identified in or used or relied upon in the preparation of Your complaints.

**REQUEST NO. 6:**     All Documents, Electronically Stored Information, and Things relating to any assertion by You of Infringement of any Patent-in-Suit by any third party or third-party product.

**REQUEST NO. 7:**     All Communications between You and any third party regarding any of the Patents-in-Suit.

**REQUEST NO. 8:**     All Communication between You and the named inventors of any of the Patents-in-Suit.

8

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 209

**REQUEST NO. 9:**        All Communications between You and Ensemble Communications.

**REQUEST NO. 10:**        All Documents, Electronically Stored Information, and Things relating to the alleged conception, reduction to practice, and/or diligence to reduce to practice any of the alleged inventions disclosed or claimed in any of the Patents-in-Suit.

**REQUEST NO. 11:**        All Documents, Electronically Stored Information, and Things relating to Your business models and/or business strategies.

**REQUEST NO. 12:**        All Documents, Electronically Stored Information, and Things relating to Your corporate and ownership structure.

**REQUEST NO. 13:**        All Documents, Electronically Stored Information, and Things relating to Your revenue sources.

**REQUEST NO. 14:**        All Documents, Electronically Stored Information, and Things relating to Your revenue generated from licensing.

**REQUEST NO. 15:**        All Documents, Electronically Stored Information, and Things, relating to Your revenue generated from any of the Patents-in-Suit.

**REQUEST NO. 16:**        All Documents, Electronically Stored Information, and Things relating to Your interests and rights in any of the Patents-in-Suit.

**REQUEST NO. 17:**        All Documents, Electronically Stored Information, and Things relating to the rights or interests of any third party in any of the Patents-in-Suit.

**REQUEST NO. 18:**        All Documents, Electronically Stored Information, and Things in any way relating to any agreement or license related to any of the Patents-in-Suit.

**REQUEST NO. 19:**        All Documents, Electronically Stored Information, and Things in any way relating to any proposed agreement or license related to any of the Patents-in-Suit.

**REQUEST NO. 20:** All Documents, Electronically Stored Information, and Things in any way relating to any sale or offer to sale relating to any of the Patents-in-Suit.

**REQUEST NO. 21:** All Documents, Electronically Stored Information, and Things in any way relating to any agreement or license related to technology You contend is comparable to the technology disclosed in any of the Patents-in-Suit.

**REQUEST NO. 22:** All Documents, Electronically Stored Information, and Things in any way relating to any disclosure or declaration of any of the Patents-in-Suit to any standard setting organization, including 3GPP.

**REQUEST NO. 23:** All Documents, Electronically Stored Information, and Things relating to Your membership in any standard setting organization, including 3GPP.

**REQUEST NO. 24:** All Documents, Electronically Stored Information, and Things relating to Your processes and practices for determining whether or not patents are essentially or potentially essential to practicing a standard or proposed standard.

**REQUEST NO. 25:** All Documents, Electronically Stored Information, and Things relating to Your licensing practices and policies.

**REQUEST NO. 26:** All Documents, Electronically Stored Information, and Things relating to any valuation of any of the Patents-in-Suit, whether performed by You or any third party.

**REQUEST NO. 27:** All Documents, Electronically Stored Information, and Things relating to the marking (or lack thereof) of products or product literature with the numbers of any of the Patents-in-Suit.

**REQUEST NO. 28:** All Documents, Electronically Stored Information, and Things relating any publications, public disclosures, public uses, and/or sales of any technology You contend is claimed in any of the Patents-in-Suit.

**REQUEST NO. 29:**      All Documents, Electronically Stored Information, and Things relating any alleged secondary indicia of nonobviousness related to any of the Patents-in-Suit.

**REQUEST NO. 30:**      Documents, Electronically Stored Information, and Things relating to any litigation-related marketing and expenses, including any spending related to enforcement of any of the Patents-in-Suit.

**REQUEST NO. 31:**      All Documents, Electronically Stored Information, and Things concerning the ownership, title, transfer and/or assignment of any of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 32:**      All Documents, Electronically Stored Information, and Things concerning Your purchase or acquisition of the Patents-in-Suit.

**REQUEST NO. 33:**      All Documents, Electronically Stored Information, and Things concerning the validity or invalidity of any of the Patents-in-Suit, including any Documents, Electronically Stored Information, or Things You sent to, or You received from, third parties.

**REQUEST NO. 34:**      All Documents, Electronically Stored Information, and Things concerning the enforceability or unenforceability of any of the Patents-in-Suit, including any Documents, Electronically Stored Information, or Things You sent to, or You received from, third parties.

**REQUEST NO. 35:**      All Prior Art concerning any alleged invention disclosed or claimed in any of the Patent-in-Suit whether You contend it is cumulative or non-cumulative.

**REQUEST NO. 36:**      All Documents, Electronically Stored Information, and Things, whether published or unpublished, authored, co-authored, edited, or revised by any named inventor of any of the Patents-in-Suit, his agents, or any other Person, that concern or relate in any way to the subject matter recited in any claim of any of the Patents-in-Suit.

11

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 212

**REQUEST NO. 37:**      All of Your Documents, Electronically Stored Information, and Things describing or relating to Apple.

**REQUEST NO. 38:**      All of Your Communications with Apple related to any assertion of Infringement.

**REQUEST NO. 39:**      All Documents, Electronically Stored Information, and Things concerning or relating to any foreign or U.S. litigation, opposition proceeding, interference, reexamination, reissue proceeding, nullity proceeding, revocation proceeding, arbitration, conflict or dispute involving any of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 40:**      All Documents, Electronically Stored Information, and Things concerning or relating to the first written description of any subject matter of any of the Patents-in-Suit.

**REQUEST NO. 41:**      All Documents, Electronically Stored Information, and Things concerning or relating to the best mode of any subject matter of any of the Patents-in-Suit.

**REQUEST NO. 42:**      All Documents, Electronically Stored Information, and Things concerning or relating to any decisions, deliberations, or discussions regarding whether a reissue or reexamination application should be filed for any of the Patents-in-Suit.

**REQUEST NO. 43:**      All Documents, Electronically Stored Information, and Things concerning or relating to any Prior Art to any of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 44:**      All Documents, Electronically Stored Information, and Things concerning or relating to searching, gathering, collecting, or describing of any Prior Art cited, or considered but not cited, to the U.S. Patent and Trademark Office or to any foreign patent office in any of the Patents-in-Suit or any Related Patent.

12

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 213

**REQUEST NO. 45:**      All Documents, Electronically Stored Information, and Things concerning or relating to any Prior Art to any of the Patents-in-Suit that was identified to You or your counsel by any third party.

**REQUEST NO. 46:**      All Documents, Electronically Stored Information, and Things concerning or relating to any comparison between any Prior Art and the subject matter claimed in any of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 47:**      All Documents, Electronically Stored Information, and Things concerning or relating to any searches for Prior Art performed by or for You with respect to any of the Patents-in-Suit.

**REQUEST NO. 48:**      All Documents, Electronically Stored Information, and Things concerning or relating to the construction, meaning, or interpretation of any limitation or element of any claim of any of the Patents-in-Suit.

**REQUEST NO. 49:**      All Documents, Electronically Stored Information, and Things concerning or relating to any presentation, letter, or communication made to any accused infringer of any of the Patents-in-Suit, including all Documents, Electronically Stored Information, and Things regarding the construction, meaning, or interpretation of any limitation or element of any claim of any of the Patents-in-Suit.

**REQUEST NO. 50:**      All Documents, Electronically Stored Information, and Things concerning or relating to any product or method You allege to be covered by any claim of any of the Patents-in-Suit, including but not limited to any embodiment disclosed in any of the Patents-in-Suit.

**REQUEST NO. 51:**      All Documents, Electronically Stored Information, and Things concerning or relating to any strategies or efforts to market or license the Patent-in-Suit, including but not limited to marketing studies, memoranda, material, brochures, pamphlets, circulars, press releases, sell sheets, and promotional materials.

13

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 214

**REQUEST NO. 52:**      All Documents, Electronically Stored Information, and Things concerning or relating to any valuation of any of the Patents-in-Suit, including but not limited to information for determining a royalty rate for purposes of licensing or tax accounting.

**REQUEST NO. 53:**      All Documents, Electronically Stored Information, and Things concerning or relating to any royalties paid by or received by You for any of the Patents-in-Suit.

**REQUEST NO. 54:**      All Documents, Electronically Stored Information, and Things concerning or relating to any licenses to any of the Patents-in-Suit, including any license agreement, any communication between You and anyone concerning a license to any of the Patents-in-Suit, and any person's consideration, analysis, or recommendation regarding whether or not to take a license from You under the Patent-in-Suit.

**REQUEST NO. 55:**      All Documents, Electronically Stored Information, and Things concerning or relating to any resolution or settlement of an Infringement allegation of any of the Patents-in-Suit, including any resolution or settlement for monetary value or non-monetary value either given or received by You.

**REQUEST NO. 56:**      All Documents, Electronically Stored Information, and Things concerning or relating to any agreement by which You gained any revenue, whether monetary or non-monetary, from any of the Patents-in-Suit.

**REQUEST NO. 57:**      All Documents, Electronically Stored Information, and Things concerning or relating to any product made by You or process used by You that includes any technology covered by any claim of any of the Patents-in-Suit.

**REQUEST NO. 58:**      All Documents, Electronically Stored Information, and Things concerning or relating to communications You has had with anyone about Apple, any of Apple's products, or this Lawsuit.

**REQUEST NO. 59:**     All Documents, Electronically Stored Information, and Things concerning or relating to any analysis or testing of products or methods used, made, sold, offered for sale, or imported by Apple that You contend infringes any claim of any of the Patents-in-Suit.

**REQUEST NO. 60:**     Documents, Electronically Stored Information, and Things sufficient to identify any non-party that You allege directly infringes any of the Patents-in-Suit using an Apple product, when and where said alleged infringement occurred, or any additional acts, circumstances, events, and facts that concern, support, refute, or undermine any allegation that Apple has contributorily infringed or has induced others to directly infringe any of the Patents-in-Suit.

**REQUEST NO. 61:**     All Documents, Electronically Stored Information, and Things concerning or relating to seminars, speeches, presentations, lectures, or talks given by any person employed or retained by, affiliated with, or under authority or grant from You or any licensee of any of the Patents-in-Suit regarding any of the Patents-in-Suit or any Related Patent or any subject matter claimed or described therein.

**REQUEST NO. 62:**     All Documents, Electronically Stored Information, and Things concerning or relating to any presentation, meeting, or request for a presentation or meeting, the purpose of which was, at least in part, to discuss any of the Patents-in-Suit.

**REQUEST NO. 63:**     All Documents, Electronically Stored Information, and Things concerning or relating to any papers, articles, publications, or public statements by any person employed or retained by, affiliated with, or under authority or grant from You regarding any of the Patents-in-Suit or the subject matter claimed or described therein.

**REQUEST NO. 64:**     All Documents, Electronically Stored Information, and Things concerning or relating to any instance in which You analyzed, reviewed,

inspected, tested, observed, or conducted an element-by-element comparison of any claim of any of the Patents-in-Suit to any product or process made, used, sold, offered for sale, or imported other than by Apple.

**REQUEST NO. 65:**      All of Your indemnification agreements, hold harmless agreements, and shared defense agreements that encompass any of the Patents-in-Suit.

**REQUEST NO. 66:**      All Documents, Electronically Stored Information, and Things that describe, refer to or relate to the level of schooling, expertise, or relevant technical skill of a person having ordinary skill in the art relevant to the use or practice of the alleged invention or inventions claimed in any of the Patents-in-Suit as of the date of invention and as of the filing date.

**REQUEST NO. 67:**      All Documents, Electronically Stored Information, and Things that describe, refer to or relate to any opinion, whether oral or written provided to You regarding patentability, unpatentability, infringement, noninfringement, validity, invalidity, enforceability or unenforceability of any of the Patents-in-Suit.

**REQUEST NO. 68:**      All Documents, Electronically Stored Information, and Things supplied to, supplied by, reviewed by, considered by or relied on by any of Your testifying or non-testifying experts in connection with this Lawsuit.

**REQUEST NO. 69:**      All Documents, Electronically Stored Information, and Things documenting, referring to, mentioning, or capturing conversations any of Your testifying or non-testifying experts had with others in connection with this Lawsuit.

**REQUEST NO. 70:**      All Documents, Electronically Stored Information, and Things that may be used as exhibits at trial or during any hearing, or in connection with any motion in this Lawsuit.

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 217

**REQUEST NO. 71:**     All Documents, Electronically Stored Information, and Things related or referring to any retention or destruction policy for documents or electronically stored information.

**REQUEST NO. 72:**     All Documents, Electronically Stored Information, and Things that refer or relate to any licenses or license negotiations related to any of the Patents-in-Suit and/or any Related Patent.

**REQUEST NO. 73:**     All Documents, Electronically Stored Information, and Things concerning any royalties paid by or received by You for any of the Patents-in-Suit and/or for any Related Patent.

**REQUEST NO. 74:**     All Documents, Electronically Stored Information, and Things that refer or relate to any royalties paid by You or received by You for patents, trade secrets, or technical know-how related to or involving any of the Patents-in-Suit and/or any Related Patent.

**REQUEST NO. 75:**     All Documents, Electronically Stored Information, and Things that refer or relate to any royalties paid by You or received by You concerning any product or method that You allege to be covered wholly or partially by any claim of any of the Patents-in-Suit, including, but not limited to, any embodiment disclosed in any of the Patents-in-Suit.

**REQUEST NO. 76:**     All Documents, Electronically Stored Information, and Things concerning Your policy regarding licensing of patented technology.

**REQUEST NO. 77:**     All Documents, Electronically Stored Information, and Things concerning Your financial performance (actual and projected) including, but not limited to monthly, quarterly, and annual audited and unaudited financial statements, detailing revenue, costs and expenses, operating income and loss, interest expense, depreciation and amortization, gross and net profit or loss, cash flow, return on investment, and the profits earned or losses suffered by You.

17

APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 218

**REQUEST NO. 78:**      All Documents, Electronically Stored Information, and Things concerning (a) any allegedly established industry royalty rate for any product, service, method, or combination thereof comparable to any commercial embodiment of the subject matter claimed in any of the Patents-in-Suit, (b) any license agreements, including the royalty rate(s) and any other economic consideration charged by You for any of the Patents-in-Suit, (c) any license agreements, including the royalty rate(s) and any other economic consideration charged by You for any other patents, or (d) any license agreements, including royalty rates paid by You to third parties for patent licenses.

**REQUEST NO. 79:**      All Documents, Electronically Stored Information, and Things concerning what You contend are reasonable royalties for the use of any of the Patents-in-Suit, and all documents, electronically stored information, and things reflecting how You determined such royalties.

**REQUEST NO. 80:**      All Documents, Electronically Stored Information, and Things concerning or sufficient to determine the profits, if any, You allege You would have made but for the availability of the Accused Products.

**REQUEST NO. 81:**      Any Documents, Electronically Stored Information, or Things concerning alleged damages analyses conducted by You with regard to alleged Infringement of any of the Patents-in-Suit by (a) Apple or (b) any third parties.

**REQUEST NO. 82:**      All Documents, Electronically Stored Information, or Things concerning business plans, strategic planning, and organizational reviews for business segments and product lines that include products that You allege to be covered wholly or partially by any claim of any of the Patents-in-Suit, including, but not limited to, any embodiment disclosed in any of the Patents-in-Suit.

**REQUEST NO. 83:**     All Documents, Electronically Stored Information, and Things referred to or relied upon by You in answering any Interrogatories propounded by Apple onto You.

**REQUEST NO. 84:**     All licenses between You and any third party relating in any way to technology similar to any inventions claimed in the Patents-in-Suit or any other cellular communications technology.

**REQUEST NO. 85:**     All licenses between any of Your subsidiaries and any third party relating in any way to technology similar to any inventions claimed in the Patents-in-Suit or any other cellular communications technology.

DATED:  July 26, 2017          By: /s/ Mark C. Scarsi
                               Mark C. Scarsi
                               mscarsi@mibank.com
                               Ashlee N. Lin
                               anlin@milbank.com
                               Milbank, Tweed, Hadley & McCloy LLP
                               2029 Century Park East, 33rd Floor
                               Los Angeles, California 90067
                               Telephone: (424) 386-4000
                               Facsimile: (213) 629-5063

                               *Attorneys for Plaintiff Apple Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was forwarded via electronic mail upon Defendants' counsel of record on July 26, 2017.

<u>/s/ Ashlee N. Lin</u>
Ashlee N. Lin

20
APPLE'S FIRST SET OF REQUESTS FOR PRODUCTION TO WI-LAN, INC.
3:14-CV-02235-DMS-BLM

Exhibit 22
Page 221

# Exhibit 23

Exhibit 23
Page 222

Case 3:14-cv-02851-DMS-BLM Document 179-2 Filed 09/18/17 PageID.6607 Page 181 of
Case 6:14-cv-00251-KNM Document 501 Filed 09/16/16 Page 1 of 143 PageID #: 11454
201

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                       TYLER DIVISION

 3

    CELLULAR COMMUNICATIONS       )
 4  EQUIPMENT, LLC
                                  )    DOCKET NO. 6:14cv251
 5
        -vs-                      )
 6                                     Tyler, Texas
                                  )    1:28 p.m.
 7  APPLE INC., ET AL                  September 6, 2016

 8

 9                       TRANSCRIPT OF TRIAL
                         AFTERNOON SESSION
               BEFORE THE HONORABLE K. NICOLE MITCHELL,
10                UNITED STATES MAGISTRATE JUDGE

11                  A P P E A R A N C E S

12  FOR THE PLAINTIFF:

13  MR. BRADLEY W. CALDWELL
    MR. JOHN AUSTIN CURRY
14  CALDWELL CASSADY & CURRY
    2101 Cedar Springs Rd., Suite 1000
15  Dallas, Texas 75201

16  MR. EDWARD R. NELSON III
    NELSON BUMGARDNER PC
17  3131 West 7th Street, Suite 300
    Fort Worth, Texas 76107
18
    MR. J. WESLEY HILL
19  WARD, SMITH & HILL PLLC
    1507 Bill Owens Parkway
20  Longview, Texas 75604

21
    COURT REPORTER:     MS. CHRISTINA L. BICKHAM, CRR, RMR
22                      FEDERAL OFFICIAL COURT REPORTER
                        300 Willow, Ste. 221
23                      Beaumont, Texas 77701

24
    Proceedings taken by Machine Stenotype; transcript was
25  produced by a Computer.
```

Exhibit 23
Page 223

      1    jump from thing to thing to thing, and so I get into -- into

      2    that.

      3            Now that you've seen a little bit about me, let's

      4    talk about this case and about Apple.

      5            So this is an early picture of Apple, back when the

      6    founders, Steve Jobs up on the left, and Steve Wozniak down

      7    on the right, were still working on early versions of the

      8    Apple computer, what built the company from a garage into

      9    what it is today, a company that has an amazing line of

     10    products.  And we'll see some of those, some like the iPhone

     11    and some like the iPad.  Amazing products.

     12            Now, I've got to tell you.  I would love to stand

     13    here and visit with y'all about the amazing technologies that

     14    Apple built, the things that they invented and put in these

     15    devices to make them what they are, and distinctive and so

     16    successful.

     17            But that, Ladies and Gentlemen, is not what this

     18    case is about.  This case is about choosing between short and

     19    long buffer status reports.  That's what this case is about.

     20    Now, buffer status reports, that's a technology that Apple

     21    does not make.  It's a technology that Apple buys from

     22    Qualcomm on this chip right here that you see on the screen,

     23    circled in blue.

     24            Now, this chip has a lot of technology on it.  See,

     25    what it does is it's put into the iPhone and into the iPad.

Exhibit 23
Page 224

```
 1    redirect.  We'll see.  But it's fine if they stay overnight.

 2              THE COURT:  All right.  Thank you all.  I'll see

 3    you in the morning.  We will be in recess.

 4              (Court adjourned.)

 5

 6                       CERTIFICATION

 7              IT IS HEREBY CERTIFIED that the foregoing is a

 8    true and correct transcript from the stenographic notes of

 9    the proceedings in the above-entitled matter to the best of

10    our abilities.

11

12

13    /s/_____
      CHRISTINE BICKHAM, CRR, RMR          September 6, 2016
14    Official Court Reporter

15

16    /s/_____
      SHEA SLOAN, CSR, RPR
17    Official Court Reporter

18

19

20

21

22

23

24

25
```

Exhibit 23
Page 225

# Exhibit 24

Exhibit 24
Page 226

# 8,462,723 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 1e.  transmitting a bandwidth request within the amount of UL bandwidth, the bandwidth request specifying a requested amount of UL bandwidth pertaining to at least a queue at the subscriber unit. | **5.4.5    Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-   UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>-   *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 227

# 8,462,723 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 6d.  transmitting a bandwidth request within the amount of UL bandwidth, the bandwidth request specifying a requested amount of UL bandwidth pertaining to at least one of a plurality of connections established at the subscriber unit; and | **5.4.5     Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-   UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>-   *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 228

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 1b. transmitting from the subscriber station a bandwidth request which identifies an amount of data awaiting transmission; | **5.4.5    Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>- *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>A MAC PDU shall contain at most one MAC BSR control element, even when multiple events trigger a BSR by the time a BSR can be transmitted in which case the Regular BSR and the Periodic BSR shall have precedence over the padding BSR.<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 229

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 5. The method of claim 1, wherein the bandwidth request is transmitted by the subscriber station within UL bandwidth already allocated to the subscriber station for UL traffic. | **5.4.5   Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>- *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>A MAC PDU shall contain at most one MAC BSR control element, even when multiple events trigger a BSR by the time a BSR can be transmitted in which case the Regular BSR and the Periodic BSR shall have precedence over the padding BSR.<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 230

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 6. The method of claim 1, wherein the bandwidth request is transmitted by the subscriber station within the payload of a packet carrying UL traffic. | The Accused Instrumentalities satisfy the limitation "wherein the bandwidth request is transmitted by the subscriber station within the payload of a packet carrying UL traffic" and literally infringe this element.<br><br>More specifically, the Accused Instrumentalities transmit the bandwidth request, for example a BSR, within the payload of a packet carrying UL traffic.<br><br>### 6.1.3    MAC Control Elements<br><br>#### 6.1.3.1    Buffer Status Report MAC Control Elements<br><br>Buffer Status Report (BSR) MAC control elements consist of either:<br><br>- Short BSR and Truncated BSR format: one LCG ID field and one corresponding Buffer Size field (figure 6.1.3.1-1); or<br><br>- Long BSR format: four Buffer Size fields, corresponding to LCG IDs #0 through #3 (figure 6.1.3.1-2).<br><br>The BSR formats are identified by MAC PDU subheaders with LCIDs as specified in table 6.2.1-2.<br><br>The fields LCG ID and Buffer Size are defined as follow:<br><br>- LCG ID: The Logical Channel Group ID field identifies the group of logical channel(s) which buffer status is being reported. The length of the field is 2 bits;<br><br>- Buffer Size: The Buffer Size field identifies the total amount of data available across all logical channels of a logical channel group after the MAC PDU has been built. The amount of data is indicated in number of bytes. It shall include all data that is available for transmission in the RLC layer and in the PDCP layer; the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively. The size of the RLC and MAC headers are not considered in the buffer size computation. The length of this field is 6 bits. The values taken by the Buffer Size field are shown in Table 6.1.3.1-1.<br><br>TS 36.321 page 32 |

Exhibit 24
Page 231

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 7. The method of claim 1, wherein the bandwidth request is transmitted by the subscriber station by stealing UL bandwidth allocated to the subscriber station for UL traffic. | The Accused Instrumentalities satisfy the limitation "wherein the bandwidth request is transmitted by the subscriber station by stealing UL bandwidth allocated to the subscriber station for UL traffic" and literally infringe this element.<br><br>More specifically, the Accused Instrumentalities transmit the bandwidth request, for example a BSR, by stealing UL bandwidth allocated to the subscriber station for UL traffic.<br><br>## 6.1.3    MAC Control Elements<br><br>### 6.1.3.1      Buffer Status Report MAC Control Elements<br><br>Buffer Status Report (BSR) MAC control elements consist of either:<br><br>- Short BSR and Truncated BSR format: one LCG ID field and one corresponding Buffer Size field (figure 6.1.3.1-1); or<br><br>- Long BSR format: four Buffer Size fields, corresponding to LCG IDs #0 through #3 (figure 6.1.3.1-2).<br><br>The BSR formats are identified by MAC PDU subheaders with LCIDs as specified in table 6.2.1-2.<br><br>The fields LCG ID and Buffer Size are defined as follow:<br><br>- LCG ID: The Logical Channel Group ID field identifies the group of logical channel(s) which buffer status is being reported. The length of the field is 2 bits;<br><br>- Buffer Size: The Buffer Size field identifies the total amount of data available across all logical channels of a logical channel group after the MAC PDU has been built. The amount of data is indicated in number of bytes. It shall include all data that is available for transmission in the RLC layer and in the PDCP layer; the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively.  The size of the RLC and MAC headers are not considered in the buffer size computation. The length of this field is 6 bits. The values taken by the Buffer Size field are shown in Table 6.1.3.1-1.<br><br>TS 36.321 page 32 |

41

Exhibit 24<br>Page 232

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 8. The method of claim 1, wherein the bandwidth request is transmitted by the subscriber station within UL bandwidth specifically allocated to the subscriber station for the bandwidth request. | The Accused Instrumentalities satisfy the limitation "wherein the bandwidth request is transmitted by the subscriber station within UL bandwidth specifically allocated to the subscriber station for the bandwidth request" and literally infringe this element. More specifically, the Accused Instrumentalities transmit the bandwidth request, for example a BSR, within UL bandwidth specifically allocated to the subscriber station for the bandwidth request. <br><br> 6.1.3    MAC Control Elements <br><br> 6.1.3.1      Buffer Status Report MAC Control Elements <br><br> Buffer Status Report (BSR) MAC control elements consist of either: <br><br> -   Short BSR and Truncated BSR format: one LCG ID field and one corresponding Buffer Size field (figure 6.1.3.1-1); or <br><br> -   Long BSR format: four Buffer Size fields, corresponding to LCG IDs #0 through #3 (figure 6.1.3.1-2). <br><br> The BSR formats are identified by MAC PDU subheaders with LCIDs as specified in table 6.2.1-2. <br><br> The fields LCG ID and Buffer Size are defined as follow: <br><br> -   LCG ID: The Logical Channel Group ID field identifies the group of logical channel(s) which buffer status is being reported. The length of the field is 2 bits; <br><br> -   Buffer Size: The Buffer Size field identifies the total amount of data available across all logical channels of a logical channel group after the MAC PDU has been built. The amount of data is indicated in number of bytes. It shall include all data that is available for transmission in the RLC layer and in the PDCP layer; the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively.  The size of the RLC and MAC headers are not considered in the buffer size computation. The length of this field is 6 bits. The values taken by the Buffer Size field are shown in Table 6.1.3.1-1. <br><br> TS 36.321 page 32 |

43

Exhibit 24
Page 233

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 16b.     a)     transmitting from the subscriber station a bandwidth request; | The Accused Instrumentalities perform the limitation "transmitting from the subscriber station a bandwidth request" and literally infringe this element.<br><br>The Accused Instrumentalities transmit a bandwidth request, for example through a Buffer Status Report (BSR) or a Scheduling Request (SR).<br><br>### 6.1.3    MAC Control Elements<br><br>#### 6.1.3.1      Buffer Status Report MAC Control Elements<br><br>Buffer Status Report (BSR) MAC control elements consist of either:<br><br>- Short BSR and Truncated BSR format: one LCG ID field and one corresponding Buffer Size field (figure 6.1.3.1-1); or<br><br>- Long BSR format: four Buffer Size fields, corresponding to LCG IDs #0 through #3 (figure 6.1.3.1-2).<br><br>The BSR formats are identified by MAC PDU subheaders with LCIDs as specified in table 6.2.1-2.<br><br>The fields LCG ID and Buffer Size are defined as follow:<br><br>- LCG ID: The Logical Channel Group ID field identifies the group of logical channel(s) which buffer status is being reported. The length of the field is 2 bits;<br><br>- Buffer Size: The Buffer Size field identifies the total amount of data available across all logical channels of a logical channel group after the MAC PDU has been built. The amount of data is indicated in number of bytes. It shall include all data that is available for transmission in the RLC layer and in the PDCP layer; the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively.  The size of the RLC and MAC headers are not considered in the buffer size computation. The length of this field is 6 bits. The values taken by the Buffer Size field are shown in Table 6.1.3.1-1.<br><br>TS 36.321 page 32 |

Exhibit 24
Page 234

# 8,462,761 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 20. The method claim 16, wherein the bandwidth request identifies an amount of data awaiting transmission. | ### 5.4.5    Buffer Status Reporting<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-  UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-  UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>-  *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-  *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>A MAC PDU shall contain at most one MAC BSR control element, even when multiple events trigger a BSR by the time a BSR can be transmitted in which case the Regular BSR and the Periodic BSR shall have precedence over the padding BSR.<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 235

# 8,457,145 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 1d.  periodically, on expiration of the value in the timer, transmitting a bandwidth request indicating an amount of bandwidth required for transmitting the data from the queue. | The Accused Instrumentalities perform the limitation "periodically, on expiration of the value in the timer, transmitting a bandwidth request indicating an amount of bandwidth required for transmitting the data from the queue" and literally infringe this element.<br><br>More specifically, upon the expiration of the periodic or retransmit BSR timer, the Accused Instrumentalities, which include a baseband processor, send a periodic or robustness BSR which indicates an amount of bandwidth required for transmitting the data from the queue.<br><br>### 5.4.5    Buffer Status Reporting<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there |

Exhibit 24
Page 236

# 8,457,145 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 9d. periodically, on expiration of the value of the timer, transmit a bandwidth request indicating an amount of bandwidth required for transmitting the data from the queue. | The Accused Instrumentalities include a media access (MAC) module configured to "periodically, on expiration of the value of the timer, transmit a bandwidth request indicating an amount of bandwidth required for transmitting the data from the queue" and literally infringe this element.<br><br>More specifically, upon the expiration of the periodic or retransmit BSR timer, the Accused Instrumentalities, which include a baseband processor, send a periodic or robustness BSR which indicates an amount of bandwidth required for transmitting the data from the queue.<br><br>### 5.4.5    Buffer Status Reporting<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>- *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 237

# 8,457,145 Patent Infringement Chart

| **(Elements)** | **Evidence** |
|---|---|
| 14c.  b) determining a bandwidth amount requirement based on user traffic and transmitting a bandwidth request with the bandwidth amount requirement when the first timer expires; | **5.4.5    Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-   UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>-   *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 238

# 8,457,145 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 26c.  a media access control (MAC) element capable of transmitting an uplink (UL) bandwidth request based on the logical state of the queues during a bandwidth request opportunity, and | The Accused Instrumentalities comprise "a media access control (MAC) element capable of transmitting an uplink (UL) bandwidth request based on the logical state of the queues during a bandwidth request opportunity" and literally infringe this element.<br><br>More specifically, the Accused Instrumentalities send, for example, a BSR, as well as an SR, to request bandwidth required for transmitting data from the queues.<br><br>## 5.4.5    Buffer Status Reporting<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-    UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there |

Exhibit 24
Page 239

# 8,615,020 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 1e.  generate the bandwidth request indicative of the required amount of UL bandwidth, | **5.4.5     Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>-   UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>-   *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>-   *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 240

# 8,615,020 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 16c.  provide a bandwidth request indicative of a required amount of UL bandwidth pertaining to a specified connection established at the subscriber station, | **5.4.5     Buffer Status Reporting**<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>    is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below to as "Padding BSR";<br><br>- *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below to as "Regular BSR";<br><br>- *periodicBSR-Timer* expires, in which case the BSR is referred below to as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 241

# 8,615,020 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 23. A subscriber station as claimed in claim 16, wherein the MAC module is further configured to insert the bandwidth request within bandwidth already allocated to UL traffic. | The Accused Instrumentalities include "wherein the MAC module is further configured to insert the bandwidth request within bandwidth already allocated to UL traffic" and literally infringe this element.<br><br>More specifically, the Accused Instrumentalities, which include a baseband processor, utilize, for example, a BSR inserted within bandwidth already allocated to UL traffic.<br><br>### 5.4.5    Buffer Status Reporting<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>  is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below as "Regular BSR";<br><br>- UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below as "Padding BSR";<br><br>- *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below as "Regular BSR";<br><br>- *periodicBSR-Timer* expires, in which case the BSR is referred below as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 242

# 8,615,020 Patent Infringement Chart

| (Elements) | Evidence |
|---|---|
| 24. A subscriber station as claimed in claim 16, wherein the bandwidth request has a specified structure for identification by the base station. | The Accused Instrumentalities include "wherein the bandwidth request has a specified structure for identification by the base station" and literally infringe this element.<br><br>More specifically, the Accused Instrumentalities, which include a baseband processor, utilize, for example, a BSR that has a specified structure for identification by the base station.<br><br>### 5.4.5    Buffer Status Reporting<br><br>The Buffer Status reporting procedure is used to provide the serving eNB with information about the amount of data available for transmission in the UL buffers of the UE. RRC controls BSR reporting by configuring the two timers *periodicBSR-Timer* and *retxBSR-Timer* and by, for each logical channel, optionally signalling *logicalChannelGroup* which allocates the logical channel to an LCG [8].<br><br>For the Buffer Status reporting procedure, the UE shall consider all radio bearers which are not suspended and may consider radio bearers which are suspended.<br><br>A Buffer Status Report (BSR) shall be triggered if any of the following events occur:<br><br>- UL data, for a logical channel which belongs to a LCG, becomes available for transmission in the RLC entity or in the PDCP entity (the definition of what data shall be considered as available for transmission is specified in [3] and [4] respectively) and either the data belongs to a logical channel with higher priority than the priorities of the logical channels which belong to any LCG and for which data is already available for transmission, or there<br><br>is no data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below as "Regular BSR";<br><br>- UL resources are allocated and number of padding bits is equal to or larger than the size of the Buffer Status Report MAC control element plus its subheader, in which case the BSR is referred below as "Padding BSR";<br><br>- *retxBSR-Timer* expires and the UE has data available for transmission for any of the logical channels which belong to a LCG, in which case the BSR is referred below as "Regular BSR";<br><br>- *periodicBSR-Timer* expires, in which case the BSR is referred below as "Periodic BSR".<br><br>TS 36.321 pages 25 and 26 |

Exhibit 24
Page 243