JOHN ALLCOCK (Bar No. 98895)
john.allcock@dlapiper.com
SEAN C. CUNNINGHAM (Bar No. 174931)
sean.cunningham@dlapiper.com
ERIN GIBSON (Bar No. 229305)
erin.gibson@dlapiper.com
ROBERT WILLIAMS (Bar No. 246990)
robert.williams@dlapiper.com
TIFFANY MILLER (Bar No. 246987)
tiffany.miller@dlapiper.com
JACOB ANDERSON (Bar No. 265768)
jacob.anderson@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

ROBERT BUERGI (Bar No. 242910)
robert.buergi@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2215
Telephone:  650.833.2000
Facsimile:  650.833.2001

MARK C. SCARSI (Bar No. 183926)
mscarsi@milbank.com
ASHLEE N. LIN (Bar No. 275267)
anlin@milbank.com
MILBANK, TWEED, HADLEY & MCCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Tel:  424.386.4000
Fax:  213.629.5063

CHRISTOPHER J. GASPAR (*admitted pro hac vice*)
cgaspar@milbank.com
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
Tel:  212.530.5000
Fax:  212.822.5019

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>Plaintiff,<br><br>v.<br><br>WI-LAN, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO.  3:14-cv-02235-DMS-BLM (lead case);<br>CASE NO.  3:14-cv-1507-DMS-BLM (consolidated)<br><br>**PLAINTIFF APPLE INC.'S OPPOSITION TO DEFENDANT WI-LAN, INC.'S MOTION TO COMPEL**<br><br>Dept: 13A<br>Judge:  Hon. Dana M. Sabraw<br>Magistrate Judge:  Hon. Barbara L. Major |

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................1

II. THE COURT SHOULD DENY WI-LAN'S MOTION TO COMPEL .........2

    A. Apple Should Not Be Required To Collect And Produce Qualcomm And Intel Documents Located On Restricted Qualcomm- And Intel-Controlled Websites. ..........................................2

    B. The Court Should Deny Wi-LAN's Renewed Request That Apple Produce Unrelated Litigation Documents From CCE v. Apple. ........................................................................................................7

    C. The Court Should Deny Wi-LAN's Motion To Compel Communications And Other Documents About A Different, Unrelated Industry Standard. ...................................................................9

III. CONCLUSION ...................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Carrillo v. Schneider Logistics, Inc.*,
  No. CV 11-8557, 2012 WL 4791614 (C.D. Cal. Oct. 5, 2012) ........................ 6, 7

*Finjan, Inc. v. Symantec Corp.*,
  No. 10-cv-593 (GMS), 2013 WL 5302560 (D. Del. Sept. 19, 2013),
  *aff'd*, 577 F. App'x 999 (Fed. Cir. 2014) .............................................................. 8

*Genentech, Inc. v. Trs. of Univ. of Pennsylvania*,
  No. C 10-2037 PSG, 2011 WL 5373759 (N.D. Cal. Nov. 7, 2011) ................. 5, 7

*Hambrecht Wine Grp., L.P. v. Millennium Imp. LLC*,
  No. C 05-04625 JW (HRL), 2006 WL 3302428 (N.D. Cal. Nov. 14,
  2006) ..................................................................................................................... 4

*Hardin v. Wal-Mart Stores, Inc.*,
  No. 1:08-cv-00617 AWI GSA, 2010 WL 3341897 (E.D. Cal. Aug.
  25, 2010), *report and recommendation adopted*, No. 1:08-CV-
  00617 AWI GS, 2010 WL 3745197 (E.D. Cal. Sept. 16, 2010) .......................... 8

*Matthew Enterprise, Inc. v. Chrysler Group LLC*,
  No. 13-cv-04236, 2015 WL 8482256 (N.D. Cal. Dec. 10, 2015) ........................ 7

*Rankine v. Roller Bearing Co. of Am., Inc.*,
  No. 12-CV-2065-IEG BLM, 2013 WL 1942199 (S.D. Cal. May 9,
  2013) ..................................................................................................................... 9

*Seabron v. Am. Family Mut. Ins. Co.*,
  No. 11-cv-01096-WJM-KMT, 2013 WL 2378576 (D. Colo. May
  30, 2013) ............................................................................................................... 9

*TetraVue, Inc. v. St. Paul Fire & Marine Insurance Co.*,
  No. 14-cv-2021-W (BLM), 2017 WL 1008788 (S.D. Cal. Mar. 15,
  2017) ..................................................................................................................... 6

*Wilson v. Hartford Ins. Co. of the Midwest*,
  No. C10-993RAJ, 2011 WL 2670199 (W.D. Wash. July 7, 2011) ...................... 8

# **TABLE OF AUTHORITIES**
## (continued)

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ................................................................................... 1, 9

Fed. R. Evid. 801(d)(2) ........................................................................................ 8

DLA PIPER LLP (US)
SAN DIEGO

WEST\278567227.2

-iii-
OPPOSITION TO MOTION TO COMPEL
3:14-CV-002235-DMS-BLM

## I. INTRODUCTION

Wi-LAN's motion to compel relies on mischaracterizations of the record and misstatements of the applicable law. In each instance, Wi-LAN is seeking information that is outside of Apple's possession, custody, or control (in the case of the Qualcomm and Intel repositories) or is irrelevant to the issues to be tried in this case (in the case of the *CCE v. Apple* materials and the communications about a different industry standard than the one at issue here). The Court therefore should deny Wi-LAN's motion in its entirety.

<u>First</u>, the Court should deny Wi-LAN's request that Apple produce certain Qualcomm and Intel documents on Qualcomm- and Intel-controlled websites, because those documents are not in Apple's possession, custody, or control and because Wi-LAN already has subpoenaed the correct parties, Qualcomm and Intel, for those very same documents. Wi-LAN claims these documents are on a "central repository for Apple engineers" (Mot. at 1), but Wi-LAN knows that is not true. These so-called "central repositories" actually are password-restricted Qualcomm and Intel websites. The fact that certain Apple engineers have access to these websites does not put Qualcomm's and Intel's documents in Apple's possession, custody, or control. Indeed, the most Wi-LAN can say is that certain Apple engineers have "access" to these documents, which is not the legal test.

<u>Second</u>, the Court should again deny Wi-LAN's overly broad requests for documents from the unrelated *CCE v. Apple* litigation, which involved different asserted patents. Wi-LAN tries to couch its requests as seeking "statements <u>Apple made</u> with respect to BSR in the *CCE* litigation" to "<u>hold Apple accountable</u> for its prior representations … ." Mot. at 2, 15, 16, emphasis added. But in truth, nine of Wi-LAN's ten requests seek statements made by individuals who did not or could not speak for Apple, including CCE's experts, Apple's retained experts and Apple's outside counsel. One request seeks testimony from an Apple employee in the *CCE* litigation, but Rule 30(b)(6) testimony is not a judicial admission and, even if it

were, it would bind Apple only in the litigation in which it was made. None of these individuals could have made admissions that bind Apple in this case (and its outside counsel's closing argument is not even evidence in the first place), so Wi-LAN's basis for seeking these unrelated litigation materials is meritless.

Third, the Court should deny Wi-LAN's motion to compel Apple's communications with Qualcomm (and others) about a different industry standard, the Mobile (4G) WiMAX standard, which has nothing to do with the asserted patents. The Mobile WiMAX standard was published in 2005, years after the priority date of the asserted patents. Wi-LAN's asserted patents concern the original IEEE 802.16 standard (now called "Fixed WiMAX"), which was created in the late 1990s and published in 2001. Wi-LAN's motion conflates the two different standards and argues that Apple's communications with Qualcomm about Mobile WiMAX are relevant to Wi-LAN's patents that purportedly relate to Fixed WiMAX. But Apple's communications about 2005-era Mobile WiMAX technology are irrelevant to whether the Fixed WiMAX standard was "mobile" (it was not) or was a commercial failure (it was). To demonstrate the lack of relevance of the Apple-Qualcomm agreement that mentions Mobile WiMAX, Apple is willing to produce it to Wi-LAN, so that portion of its motion to compel is moot.

## II.   THE COURT SHOULD DENY WI-LAN'S MOTION TO COMPEL

### A.   Apple Should Not Be Required To Collect And Produce Qualcomm And Intel Documents Located On Restricted Qualcomm- And Intel-Controlled Websites.

Wi-LAN cannot establish that the requested Qualcomm and Intel documents are in Apple's possession, custody, or control. The most Wi-LAN can say is that certain Apple engineers have "access" to the documents on Qualcomm- and Intel-controlled websites.[1] That is not the legal test. Apple has no more possession,

---

[1] The Qualcomm website at issue is https://createpoint.qti.qualcomm.com/dashboard/public/productkit#public/product-kit/search. The "cdmatech.com" link identified during the deposition of Apple's witness now directs the user to www.qualcomm.com/company/about. The Intel website at issue is https://mobilecommunicationsportal.intel.com, and directs the

1  custody, or control over these documents than it does for the publicly available
2  documents on Qualcomm's and Intel's website, or anywhere else on the internet for
3  that matter.  Recognizing this fact, Wi-LAN already has subpoenaed Qualcomm
4  and Intel for these same documents.  But despite this, Wi-LAN proposes that
5  multiple Apple engineers spend hours searching through these Qualcomm- and
6  Intel-controlled websites for Qualcomm and Intel documents concerning the
7  chipsets the two companies sell to Apple, and then to comply with any
8  confidentiality or notice obligations that Qualcomm or Intel have placed on the
9  documents.  For several reasons, the Court should deny Wi-LAN's requested relief.

10      <u>First</u>, Wi-LAN's claim that the requested Qualcomm and Intel documents are
11  located on "central" and "readily available" repositories (Mot. at 1) is false.  As
12  evidenced by the screenshot excerpts below, there is nothing "central" or "readily
13  available" about the Qualcomm and Intel websites that contain these documents:



24  Ex. A to Declaration of Jacob Anderson ("Anderson Decl."),
25  https://mobilecommunicationsportal.intel.com (last accessed October 24, 2017).
26  /////
27  /////
28  user to Intel's "Resource & Design Center for Development with Intel."



Ex. B, https://createpoint.qti.qualcomm.com/dashboard/public/productkit#public/product-kit/search (last accessed October 24, 2017); *see also* Ex C, Rough Deposition Transcript of Sree Ram Kodali at 86:24-87:11, 120:13-24.[2] In fact, as Wi-LAN later acknowledges, these are "Qualcomm and Intel repositories." Mot. at 4. Moreover, Qualcomm and Intel are arms-length commercial suppliers of Apple, not affiliates or subsidiaries. That a handful of Apple engineers have restricted access to certain Qualcomm and Intel documents on these Qualcomm- and Intel-controlled websites is insufficient. *See* Ex. C, Kodali Depo. at 86:24-87:11, 120:13-24.

Second, Wi-LAN conflates "access" to these third-party documents with "possession, custody, or control" of them. But mere "access" is not the legal test. *See Hambrecht Wine Grp., L.P. v. Millennium Imp. LLC*, No. C 05-04625 JW (HRL), 2006 WL 3302428, at *2 (N.D. Cal. Nov. 14, 2006) ("When a court is confronted with separate legal entities, 'proof of theoretical control is insufficient; a showing of actual control is required.' The 'access' alleged by plaintiff is not the

---

[2] Apple's witness referred to these websites as "shared" because they are used to share documents with external developers. Ex. C, Kodali Depo. at 182:4-6. However, Mr. Kodali explained that the websites are Qualcomm and Intel websites. *Id.* at 179:24-180:4 ("Mobile communication central.com, again in their website").

same as the 'possession, custody, or control' required by the Federal Rules of Civil Procedure.") (citations omitted). If it were, Wi-LAN could demand that Apple "access" and produce all of the publicly available Qualcomm and Intel documents anywhere on Qualcomm's or Intel's public-facing websites—obviously an unreasonable and legally unsupported request. The fact that the requested Qualcomm and Intel documents are on non-public websites does not place those documents in Apple's possession, custody, or control any more than Qualcomm and Intel documents on Qualcomm and Intel's public websites. And the fact that a handful of Apple engineers can access third-party documents on third-party websites in connection with their work (Ex. C, Kodali Depo. at 86:24-87:11, 120:13-24) does not give Apple the legal right to obtain those documents for this litigation.

Indeed, the "Intel Terms of Use" prevents those Apple engineers from (1) distributing materials obtained on the website, and (2) "facilitat[ing] the use of this site or any Materials in connection with any infringement analysis concerning Intel® products." Ex. D, https://www-ssl.intel.com/content/www/us/en/legal/terms-of-use.html (last accessed October 24, 2017). The "Terms of Use" on the Qualcomm website similarly prohibits the transmission or distribution of materials provided on the website. Ex. E, https://www.qualcomm.com/site/terms-of-use (last accessed October 25, 2017). Rather than addressing this point, Wi-LAN offers nothing more than speculation about what Apple could do with these third-party documents. *Genentech, Inc. v. Trs. of Univ. of Pennsylvania*, No. C 10-2037 PSG, 2011 WL 5373759, at *3 (N.D. Cal. Nov. 7, 2011) ("Penn similarly has not demonstrated that Genentech has the broad legal right to demand documents from Roche … . More importantly, Penn offers no evidence that Roche is obliged to hand over materials when requested.").

Third, Wi-LAN already has served subpoenas on Qualcomm and Intel seeking these same documents, among many other categories. On May 25, 2017,

just two days after serving its first set of document requests on Apple, Wi-LAN served a subpoena on Qualcomm requesting production of 15 categories of documents, including requests that would trigger production of documents on the Qualcomm repository. Ex. F, Subpoena to Qualcomm. Wi-LAN suggests Qualcomm objected to producing its own documents on its own website in response to Wi-LAN's subpoena (Mot. at 14), but Wi-LAN never raised that objection with the Court.[3] Qualcomm's unresolved objection does not justify an order requiring Apple to search Qualcomm's website for Qualcomm documents about its own chipsets. On October 16, Wi-LAN served a subpoena on Intel requesting production of 20 categories of documents, including the Intel documents hosted on the Intel repository. Ex. G, Subpoena to Intel. Wi-LAN claims it requested the documents from Intel "out of an abundance of caution" (Mot. at 14 n.5), but Wi-LAN ignores that it served 19 other document requests on Intel, many of which also would cover documents posted on the Intel repository. Ex. G, Subpoena to Intel. Wi-LAN obviously understands it must "go to the source" for the Qualcomm and Intel documents it needs to try to support its infringement contentions.

Fourth, the decisions that Wi-LAN cites do not apply because they involved requests for party documents (as opposed to third-party documents) in the physical possession of a third party. In *TetraVue, Inc. v. St. Paul Fire & Marine Insurance Co.*, the moving party requested the responding party's prior litigation documents in the physical possession of the responding party's prior litigation counsel. No. 14-cv-2021-W (BLM), 2017 WL 1008788, at *3 (S.D. Cal. Mar. 15, 2017). Here, Wi-LAN does not contend that the requested documents are Apple documents, because they are not. In *Carrillo v. Schneider Logistics, Inc.*, the company with

---

[3] Qualcomm's response actually states that "Qualcomm will meet and confer with Wi-LAN in order to narrow the scope of this request and identify the relevant, non-privileged information, if any, sought by Wi-LAN that cannot be obtained from Apple." Dkt. No. 179-2 at 138 (Ex. 21, Page 180). Wi-LAN offers no account of that meet-and-confer, including whether Qualcomm stated that the disputed documents could or should be obtained from Apple.

1  physical possession of the requested videotapes stated that the responding party "is
2  the rightful owner of such videotapes."  No. CV 11-8557, 2012 WL 4791614, at
3  *12 (C.D. Cal. Oct. 5, 2012).  Wi-LAN offers no such statement from Qualcomm
4  or Intel here.  Finally, in *Matthew Enterprise, Inc. v. Chrysler Group LLC*, the
5  requested documents were part of the responding party's own "customer
6  communications database" maintained by an outside vendor.  No. 13-cv-04236,
7  2015 WL 8482256, at *3-4 (N.D. Cal. Dec. 10, 2015).  The district court
8  distinguished these party documents from additional documents in the personal
9  email accounts of party employees.  *Id.* at *4.  With respect to the personal email
10 account documents, the court held the moving party did not identify anything that
11 "create[d] a legal right for Stevens Creek to take back any such information now
12 stored in personal accounts."  *Id.*  The Court should similarly deny Wi-LAN's
13 request that Apple order its employees with access to Qualcomm and Intel websites
14 to search those websites for Qualcomm and Intel documents about Qualcomm and
15 Intel chipsets, particularly when there is no evidence that Apple has the legal right
16 to produce any such third-party documents in this case.[4]

**B.  The Court Should Deny Wi-LAN's Renewed Request That Apple Produce Unrelated Litigation Documents From *CCE v. Apple*.**

19 Wi-LAN's renewed request for materials from the unrelated *CCE v. Apple*
20 litigation is based on a false premise—namely, Wi-LAN claims it is seeking
21 statements that "Apple made" in that unrelated case to "hold Apple accountable for
22 its prior representations … ."  *See* Mot. at 2, 15, 16.  The problem with Wi-LAN's
23 argument is that nine of its ten requests seek statements that Apple never made, and

---

[4] Even if the Court orders Apple to produce responsive Qualcomm and Intel documents on the Qualcomm and Intel repositories, Apple requests the Court deny Wi-LAN's broader request at the conclusion of Wi-LAN's argument that the Court order Apple to "provide a complete production of documents responsive to Wi-LAN's RFPs 1-7, 11-16, and 18-20." Mot. at 14.  Wi-LAN's motion only concerns the Qualcomm and Intel repository documents and makes no showing that a "complete production of documents responsive" to these 16 requests for production is proportional to the discovery needs in this case.

the tenth request seeks testimony from an Apple witness that cannot as a matter of law be used a judicial admission in this litigation.

Four of Wi-LAN's ten requests seek statements from CCE's experts, not Apple witnesses. Dkt. No. 179-2 at 28-29 (Ex. 8, Pages 70-71), RFP Nos. 54, 55, 56, 57 (seeking testimony and expert reports of Michael Caloyannides and Nigel Jones, CCE's technical experts). Obviously, CCE's expert reports and testimony has nothing to do with any representations Apple made, and Wi-LAN has no other justification for seeking these materials.

Another four of its requests seek testimony and expert reports from Apple's retained experts in the *CCE* litigation. *See id.*, RFP Nos. 52-53 and 58-59. However, statements by expert witnesses are not party admissions, so Wi-LAN cannot use these materials as "representations" Apple made in that unrelated litigation. *Wilson v. Hartford Ins. Co. of the Midwest*, No. C10-993RAJ, 2011 WL 2670199, at *2 (W.D. Wash. July 7, 2011) ("Mr. Wilson is mistaken in his belief that a party's expert's report is equivalent to a party's admission within the meaning of Fed. R. Evid. 801(d)(2). An expert is expected to form her own opinions, not the opinions of the party who hired her."); *Hardin v. Wal-Mart Stores, Inc.,* No. 1:08-cv-00617 AWI GSA, 2010 WL 3341897, at *6 (E.D. Cal. Aug. 25, 2010) ("[O]pinions or reports of experts retained in other cases involving the same defendant are not relevant to *this* action."), *report and recommendation adopted*, No. 1:08-CV-00617 AWI GS, 2010 WL 3745197 (E.D. Cal. Sept. 16, 2010).

The ninth disputed request seeks Apple's closing argument from the *CCE* case. *See* Dkt. No. 179-2 at 28-29 (Ex. 8, Pages 70-71), RFP No. 60. Closing arguments are not evidence, nor are they binding party admissions. *Finjan, Inc. v. Symantec Corp.*, No. 10-cv-593 (GMS), 2013 WL 5302560, at *25 (D. Del. Sept. 19, 2013) ("[W]ith regard to Finjan's assertion that Sophos made its statement 'admitting infringement' to support its invalidity argument, attorney argument is not evidence and the jury properly did not consider the statement as evidence in reaching

its verdict."), *aff'd*, 577 F. App'x 999 (Fed. Cir. 2014).  Because Wi-LAN's stated interest in these materials is to "hold Apple accountable," a closing argument in an unrelated case will not accomplish that goal under any reading of the law.

The tenth disputed request seeks Rule 30(b)(6) and trial testimony from an Apple witness in the *CCE* case.  Dkt. No. 179-2 at 28 (Ex. 8, Page 70), RFP No. 51.  However, the law is settled that "Rule 30(b)(6) depositions produce evidence, not judicial admissions." *Seabron v. Am. Family Mut. Ins. Co.*, No. 11-cv-01096-WJM-KMT, 2013 WL 2378576, at *2 (D. Colo. May 30, 2013).  Moreover, "even if Rule 30(b)(6) testimony were akin to an admission, such admission is applicable only in the case in which it is made."  *Id.*; *see also Rankine v. Roller Bearing Co. of Am., Inc.*, No. 12-CV-2065-IEG BLM, 2013 WL 1942199, at *3 (S.D. Cal. May 9, 2013) (A "judicial admission binds only in the litigation in which it is made.") (citations omitted).  Thus, Wi-LAN cannot "hold Apple accountable" with non-binding testimony from an unrelated litigation.  The Court should again deny Wi-LAN's motion to compel materials from the *CCE* litigation.

### C. The Court Should Deny Wi-LAN's Motion To Compel Communications And Other Documents About A Different, Unrelated Industry Standard.

Finally, the Court should deny Wi-LAN's effort to obtain communications and related documents between Qualcomm and Apple about a <u>different</u> industry standard than the one at issue in this case.  Wi-LAN's motion tries to conflate the 2001-era Fixed WiMAX standard with the different, 2005-era Mobile (4G) WiMAX standard.  Wi-LAN even tries to pretend that its patents are "4G WiMAX patents" (*see* Mot. at 16), but that is not even arguably true.  The asserted patents claim priority to patent filings in 1999 and 2000, when the Fixed WiMAX standard was being developed.  The 4G Mobile WiMAX standard was not released until 2005, so Wi-LAN's 1999-era patents cannot possibly relate to that standard.  With this misstatement exposed, Wi-LAN has no basis for seeking communications and related documents about a different, much later industry standard.

1    The IEEE has published various WiMAX standards as versions of 802.16. Ex. H, "IEEE 802.16 WiMAX standards," available at: http://www.radio-electronics.com/info/wireless/wimax/ieee-802-16-standards.php. Early versions of WiMAX developed in the late 1990s, when the asserted patents were purportedly invented, have come to be known as "Fixed WiMAX," because they did not support the use of WiMAX with mobile devices. *Id.* Several years later, IEEE published 802.16e-2005, which came to be known as "Mobile WiMAX," because it supported the use of mobile devices. *Id.* The Mobile WiMAX standard is not mentioned or described in the asserted patents, and for good reason—the standard did not exist when the applicants filed for their patents. Thus, any communications between Apple and Qualcomm (or anyone else) about the Mobile WiMAX standard has nothing to do with Wi-LAN's patents or the commercial failure of the Fixed WiMAX standard. And the capabilities and perceptions of Mobile WiMAX have nothing to do with the Fixed WiMAX standard either.

Once it is clear Wi-LAN is trying to conflate two different standards from two different technological eras, its relevance arguments collapse. For instance, Wi-LAN claims "[t]his evidence is critical to rebut Apple's theme in this case: that the patents-in-suit are 4G WiMAX patents." Mot. at 16. But obviously that is not Apple's "theme"—if anything, the asserted patents are Fixed WiMAX patents, not "4G WiMAX patents." Wi-LAN also claims "Apple should not be allowed to argue to the jury that the patents-in-suit (via 4G WiMAX) are fundamentally incompatible with 4G LTE … ." Mot. at 17. But again, Apple does not contend the asserted patents are "4G WiMAX" patents, because they are not. Wi-LAN also claims that "[i]f 4G WiMAX were a fixed standard that could not support mobile communication, there would be no reason for Qualcomm to pay Apple not to market 4G WiMAX products … ." *Id.* Wi-LAN is once again confusing the two standards—the earlier fixed standard, to which the asserted patents purportedly relate, and the later mobile standard mentioned in the Marketing Incentive

Agreement between Apple and Qualcomm.[5] Wi-LAN is correct that Apple and Qualcomm would have no reason to discuss the earlier Fixed WiMAX standard. Thus, Wi-LAN has no basis for seeking any communications or related documents about the Mobile (4G) WiMAX standard, and the Court should deny this portion of Wi-LAN's motion.

## III. CONCLUSION

For the foregoing reasons, the Court should deny Wi-LAN's motion to compel in its entirety.

Dated: October 25, 2017

DLA PIPER LLP (US)

By */s/ Sean C. Cunningham*
JOHN ALLCOCK
SEAN C. CUNNINGHAM
ERIN GIBSON
ROBERT BUERGI
ROBERT WILLIAMS
TIFFANY MILLER
JACOB ANDERSON
AMY WALTERS

Mark C. Scarsi
Ashlee N. Lin
MILBANK, TWEED, HADLEY & MCCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067

Christopher J. Gaspar
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005

Attorneys for Plaintiff
APPLE INC.

---

[5] Although this Agreement is irrelevant for the same reasons as the requested communications, Apple is willing to produce the Agreement in the interest of mooting that portion of the dispute and demonstrating the lack of relevance of the Agreement to this litigation.

# CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

                     /s/ *Sean C. Cunningham*
                     Sean C. Cunningham