Allison H. Goddard (211098)
ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Defendant,*
*Wi-LAN Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO**

APPLE INC.,

*Plaintiff,*

v.

WI-LAN INC.,

*Defendant.*

---

WI-LAN INC.,

*Plaintiff,*

v.

APPLE INC.,

*Defendant.*

No. 3:14-cv-2235-DMS-BLM (Lead Case); Consolidated with 3:14-cv-01507-DMS-BLM
DEMAND FOR JURY TRIAL

**DEFENDANT WI-LAN INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL**

**Department: 13A**
**Judge: Hon. Dana M. Sabraw**
**Magistrate: Hon. Barbara L. Major**

REDACTED VERSION FOR PUBLIC FILING

**TABLE OF CONTENTS**

I. INTRODUCTION....................................................................................1

II. ARGUMENT ........................................................................................2

A. Apple Admits It Has Access to Qualcomm and Intel Documents, Does Not Dispute Those Documents Are Highly Relevant, and Does Not Show Production Would Be Burdensome........................................................................2

B. Apple's Documents From *CCE v. Apple* Are Relevant And Should Be Produced ..........................................................................................7

C. Apple Fails To Show That The Qualcomm Agreement Is Not Relevant........9

III. CONCLUSION....................................................................................10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Al Noaimi v. Zaid*,
283 F.R.D. 639 (D. Kan. 2012) ....................................................................6

*Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988) ....................................................................9

*Carrillo v. Schneider Logistics, Inc*,
No. CV 11-85557, 2012 WL 4791614, at *12 (C.D. Cal. Oct. 5, 2012.............................................................................................6

*Cellular Communications Equipment LLC v. Apple Inc. et al*,
No. 6:14-cv-251 (E.D. Tex.).............................................................passim

*Genentech, Inc. v. Trs. of Univ. of Pa.*,
No. C 10-2037 PSG, 2011 WL 5373579 (N.D. Cal. Nov. 7, 2011)......................4

*Guitron v. Wells Fargo Bank, N.A.*,
No. C 10-3461 CW (MEJ), 2011 U.S. Dist. LEXIS 103072, 2011 WL 4345191 (N.D. Cal. Sep. 13, 2011) ..................................................9

*In re Hanford Nuclear Reservation Litig.*,
534 F.3d 986 (9th Cir. 2008) ....................................................................9

*Ivy Hotel San Diego, LLC v. Houston Cas. Co.*,
No. 10cv2183-L (BGS), 2011 WL 4914941 (S.D. Cal. Oct. 17, 2011) .............................................................................................6

*Jackson v. ABC Nissan, Inc.*,
No. CIV 03-563-PHX-SMM, 2007 WL 274315 (D. Ariz. Jan. 29, 2007) .............................................................................................9

*Masimo Corp. v. Shenzhen Mindray Bio-Medical Elecs. Co.*,
No. SACV 12-02206-CJC, 2015 WL 12912331 (C.D. Cal. Apr. 17, 2015) .............................................................................................5

*Matthew Enterprises, Inc. v. Chrysler Group LLC*,
No. 13-CV-04236-BLF, 2015 WL 8482256 (N.D. Cal. Dec. 10, 2015) ..........................................................................................5, 6

*MediaTek, Inc. v. Sanyo Elec. Co.*,
No. 6:05-cv-323, 2006 WL 5709448 (E.D. Tex. Oct. 16, 2006) ....................4

*Pope v. Sav. Bank of Puget Sound*,
850 F.2d 1345 (9th Cir. 1988) ....................8

*Rankine v. Roller*,
No. 12-CV-2065-IEG (BLM), 2013 WL 1942199 (S.D. Cal. May 9, 2013) ....................8

*TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*,
No. 14-cv-2021-W (BLM), 2017 WL 1008788 (S.D. Cal. Mar. 15, 2017) ....................4, 6

*United States v. Ganadonegro*,
854 F. Supp. 2d 1088 (D.N.M. 2012) ....................9

*VirnetX, Inc. v. Apple Inc.*,
No. 14-MC-80013 RS (NC), 2014 WL 6979427 (N.D. Cal. Mar. 21, 2014) ....................5

*Yates v. Ford Motor Co.*,
No. 5:12-CV-752-FL, 2015 WL 12851583 (E.D.N.C. June 16, 2015) ....................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ....................7

Fed. R. Civ. P. 26(b)(1) ....................7

Fed. R. Civ. P. 26 and 34 ....................7

Federal Rule of Evidence 703 ....................7

Federal Rule of Evidence 801(d)(2)(C) ....................8

# I. INTRODUCTION

First, Apple fails to justify its refusal to comply with this Court's order requiring Apple to produce highly relevant technical documents related to the Intel and Qualcomm processors that are responsive to Wi-LAN's RFPs. Apple admits it has access to the technical documents Wi-LAN seeks, does not show that production of those documents would be burdensome, and does not dispute that those documents are highly relevant—in fact, the website screenshots in Apple's Opposition ("Opp.") confirm the documents at issue are what Apple needs and uses to design its accused products with the Intel and Qualcomm processors. Yet without identifying any evidence that either Intel or Qualcomm have any objection whatsoever to production of these highly relevant documents, Apple maintains that it will not produce these documents and that Wi-LAN should instead unnecessarily burden Apple's non-party vendors. But there is no reason to burden a non-party for these documents when Apple can readily produce them, as further confirmed by Qualcomm's objection to Wi-LAN's subpoena that Apple should produce the documents. Apple's other vendor Intel has also indicated that it will not produce documents that Wi-LAN can obtain from Apple.

Second, Apple fails to justify its refusal to produce the discovery responsive to Wi-LAN's narrowed requests for transcripts and reports from the *Cellular Communications Equipment LLC v. Apple Inc. et al*, No. 6:14-cv-251 (E.D. Tex.) ("*CCE*") litigation regarding Apple's use of LTE buffer status reports ("BSR"). Apple does not argue that these litigation materials are irrelevant or burdensome to produce. Instead, Apple misdirects with red herrings, citing motions *in limine* and other evidentiary rulings and arguing that some of these materials might not be admissible at trial in their own right. But that is not the test for whether documents are discoverable and must be produced. Apple cannot dispute that the *CCE* materials related to BSR are highly relevant to this lawsuit, and Apple should be compelled to produce all relevant information responsive to Wi-LAN's narrowly targeted discovery requests.

Third, Apple fails to justify its refusal to produce discovery regarding the

agreement between Apple and Qualcomm. Apple's claim that the patents-in-suit do not relate to the 4G Mobile WiMAX standard is demonstrably false. Attached to this Reply is the Declaration of Kenneth Stanwood—Mr. Stanwood was a principal drafter of the original WiMAX standard, served as vice chair of the IEEE 802.16 committee when the 4G Mobile WiMAX amendment was developed, and is a named inventor on all six patents-in-suit. Mr. Stanwood explains that 4G Mobile WiMAX (IEEE 802.16e-2005) was not an entirely different standard from "fixed" WiMAX, as Apple argues, but rather an amendment that extended use of fixed WiMAX technology to mobile phones. Mr. Stanwood's declaration shows that the same excerpts using the patented technology in "fixed" WiMAX were carried over to and used by 4G Mobile WiMAX, which was the subject of the Qualcomm Agreement. The fact that Apple took payment from Qualcomm not to use 4G Mobile WiMAX contradicts Apple's argument that 4G WiMAX was technically inferior to 4G LTE. Apple should not be permitted to withhold this evidence from discovery.

Apple's failure to produce this technical documentation, *CCE* litigation documents, and Qualcomm Agreement that are the subject of Wi-LAN's motion is highly prejudicial. Apple's delay long past the September 27, 2017 deadline[1] for substantial completion of document discovery has significantly impeded Wi-LAN's progress in the case. Wi-LAN respectfully requests that the Court compel Apple to produce the requested discovery.

## II. ARGUMENT

### A. Apple Admits It Has Access to Qualcomm and Intel Documents, Does Not Dispute Those Documents Are Highly Relevant, and Does Not Show Production Would Be Burdensome

The technical documents and training materials provided to Apple by Qualcomm

[1] The technical documents related to the Intel and Qualcomm processors are responsive to RFPs 1-7, 11-16, and 18-20, and should already have been produced by September 22, 2017 per Court order. (ECF No. 161 ¶ 2.); (*see* Mot. Ex. 7, ECF No. 181-1, at 1.)

and Intel related to the processors that implement portions of the accused 4G LTE functionality are among the most relevant evidence in this case because they explain how relevant components of Apple's products work. The Court ordered Apple to produce these documents by September 22, 2017. (ECF No. 161 at 2.) Apple does not dispute that its engineers can obtain the documents from the Qualcomm and Intel websites or that the documents are highly relevant to the case. Yet Apple does not even claim to have attempted to contact Qualcomm or Intel regarding these documents. Instead, Apple argues that Wi-LAN should instead obtain the documents from the component suppliers themselves, despite the fact that those component suppliers are not a party to this case and Qualcomm has objected that Wi-LAN should first obtain documents from Apple. (Opp. at 6.) As explained below, Apple's four arguments are meritless, and Apple should be compelled to produce these documents.

First, Apple's website screenshots directly refute Apple's argument that the Qualcomm and Intel repositories are neither "central" nor "readily available." (Opp. at 3.) The Intel screenshot explains how one can "sign in for a streamlined experience" and access "documentation, software and tools ***you need to design with Intel processors***." (*Id.*) A few seconds of signing in with a username and password do not make a website any less "readily available" particularly when Intel promises a "streamlined experience" on the other side. And when a single website allows access to documentation, software, and tools for the relevant Intel processor, it is indisputably a "central" repository. The Qualcomm screenshot also evidences a readily available central repository. (Opp. at 4.) It explains that it is Qualcomm's "portal for giving you the resources, tool and support ***you need to create a device based on our products***"—in short, all the documentation Apple needed and used in designing the relevant 4G LTE functionality into its iPhone. (*Id.*) Moreover, an Apple engineer testified that [REDACTED] At bottom, Apple cannot credibly dispute that the relevant documents are readily available to its

engineers through the Intel and Qualcomm websites.

Apple provides no facts to support its complaint that searching these repositories would be unduly burdensome, and even taking its unsupported statement that "multiple Apple engineers" would "spend hours" searching through these repositories (Opp. at 3) as true, it does not establish undue burden, particularly given that these materials are amongst the most relevant evidence in the case.

Second, Apple illogically suggests that while it may have "access" to the third-party documents Wi-LAN seeks, the documents are not within Apple's possession, custody, or control. However, Apple's engineer testified that [REDACTED] [REDACTED] Apple's ability to download documents from the Intel and Qualcomm repositories confirms that Apple has possession, custody, or control of the documentation.

Documents from the Intel and Qualcomm repositories are deemed within Apple's possession, custody, or control if Apple "has the legal right to obtain the documents on demand." *TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 14-cv-2021-W (BLM), 2017 WL 1008788, at *4 (S.D. Cal. Mar. 15, 2017). Apple cites no case law to support the proposition that Intel and Qualcomm's terms of use prevent Apple from disclosing critical technical documentation under a protective order in a lawsuit. *See MediaTek, Inc. v. Sanyo Elec. Co.*, No. 6:05-cv-323, 2006 WL 5709448, at *3 (E.D. Tex. Oct. 16, 2006) (granting plaintiff's motion to compel on the grounds that the protective order was sufficient to protect third-party documents, despite defendant's position that such documents "may be covered by third-party confidentiality agreements"). Nor has Apple submitted any declaration or evidence showing that Intel or Qualcomm have any objection whatsoever to Apple producing these documents pursuant to the protective order in this litigation. Apple relies solely on *Genentech, Inc. v. Trs. of Univ. of Pa.*, No. C 10-2037 PSG, 2011 WL 5373579, at *3 (N.D. Cal. Nov. 7, 2011), where one party asked another party to formally request information from a third party pursuant to an agreement. But unlike *Genentech*, Apple has direct access to

the Intel and Qualcomm repositories and can obtain the requested documents without any request to Intel or Qualcomm, or any involvement from them at all. The facts here more resemble those in *Matthew Enterprise, Inc. v. Chrysler Group LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *4 (N.D. Cal. Dec. 10, 2015), where the court found that a party must produce documents in a third-party database to which the party had access. *See also Masimo Corp. v. Shenzhen Mindray Bio-Med. Elecs. Co.*, No. SACV 12-02206-CJC, 2015 WL 12912331, at *1, n.1 (C.D. Cal. Apr. 17, 2015) (acknowledging *Genentech* but nonetheless granting a motion to compel where a third party was contractually obligated to deliver the documents upon request).[2]

Third, Wi-LAN's subpoenas to Qualcomm and Intel do not relieve Apple of its obligation to comply with discovery requests. As the party to this case, Apple should produce the documents before imposing a burden on a non-party. *See VirnetX, Inc. v. Apple Inc.*, No. 14-MC-80013 RS (NC), 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21, 2014) (finding that documents should be obtained directly from Apple to minimize burden on a non-party). In fact, Qualcomm has objected to Wi-LAN's request for these documents on the grounds that the documents should be obtained directly from Apple.[3] (Mot. at 13–14.) Wi-LAN is entitled to obtain these documents from someone, and the burden should first fall on Apple, the party to this case.

Fourth, Apple's attempts to distinguish Wi-LAN's case law fall flat—Apple misreads Wi-LAN's cases and does not provide any contrary case law of its own. (Opp.

---

[2] Apple's argument that Wi-LAN should not be allowed to demand that Apple "produce all of the publicly available Qualcomm and Intel documents anywhere on Qualcomm's or Intel's public-facing websites" is a red herring. (Opp. at 5.) Of course such public-facing websites would be available to Wi-LAN and there would be no reason for Wi-LAN to compel Apple to produce them. In contrast, the documents at issue here are not publicly available.

[3] Wi-LAN served requests for documents common to Apple and either Qualcomm or Intel in case one of these entities no longer has these documents. In discussions with Qualcomm and Intel, Wi-LAN has agreed that it will not seek common documents where they can be obtained from Apple, the party in this case.

at 6–7.) The court's broad observation in *TetraVue* that "[d]ocuments are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control *or has the legal right to obtain the documents on demand*," 2017 WL 1008788, at *4 (emphasis added), is "well-established case law" that "courts have universally held" to be true. *Al Noaimi v. Zaid*, 283 F.R.D. 639, 641 (D. Kan. 2012) (citations omitted); *see, e.g.*, *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10cv2183-L (BGS), 2011 WL 4914941, at *9 (S.D. Cal. Oct. 17, 2011). This principle applies here to Apple and Apple has this legal right to obtain the requested documents on demand. (Mot. Ex. 3, ECF No. 181-1, at 121:9–11.)

Contrary to Apple's assertion, *Carrillo v. Schneider Logistics, Inc.*, in fact confirms that ownership of the documents is not the critical issue. No. CV 11-85557, 2012 WL 4791614, at *12 (C.D. Cal. Oct. 5, 2012). In *Carrillo*, the court's analysis turned on the fact that the defendant "can request" the videotapes and had "a legal right to obtain" copies of the videotapes. The non-party's *belief* that the defendant owned the videotapes was not determinative, as the court did not state definitively whether the defendant actually owned the videotapes yet nonetheless granted a motion to compel the production of the videotapes. *Id*.

Finally, for *Matthew Enterprise, Inc. v. Chrysler Group LLC*, Apple misdirects its focus on a different part of the opinion concerning documents held in employees' personal email accounts. 2015 WL 8482256, at *3-4. Wi-LAN does not seek employees' personal email accounts, which are typically kept private from employers. Rather, Wi-LAN seeks critical documentation Apple needed to design its products, and the documentation is legally available to Apple through a readily available central repository, just like the outside vendor's database in *Matthew*. Thus, Wi-LAN's authority confirms that Apple should be compelled to produce the relevant documents.

### B. Apple's Documents From *CCE v. Apple* Are Relevant And Should Be Produced

Apple cannot justify its failure to produce relevant discovery responsive to Wi-LAN's narrow requests related to the *CCE* litigation. Apple concedes that the requested materials from the *CCE* litigation include relevant testimony regarding Apple's use of 4G LTE BSR functionality in the products accused in this case. Apple's only excuse for not producing the materials is that they include statements not made by Apple or statements that might not be admissible at trial. But whether or not the materials are admissible at trial is irrelevant. "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Because the documents from *CCE* are relevant and narrowly targeted, they must be produced regardless of whether they will ultimately be admissible at trial.

Apple's opposition and the numerous evidentiary rulings it cites are directed not to the relevance of the material Wi-LAN seeks but rather its admissibility at trial. Under Rule 26, information that is relevant, proportional to the needs of the case, and not unduly burdensome "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Of the five cases Apple cites (Opp. at 8-9), none relate to discoverability, but rather only admissibility. Apple may argue against the admissibility of this evidence at a later stage in this case, but it is improper to import the many Federal Rules of Evidence into this determination governed by Federal Rules of Civil Procedure 26 and 34.[4]

Buffer status reports ("BSR") are a central issue in both this lawsuit and the *CCE* lawsuit, and all of Wi-LAN's requests are relevant. First, Wi-LAN's requests for statements from Apple's experts are relevant because they analyze in detail Apple's use of BSR functionality and point to other evidence and representations by Apple that

[4] For example, otherwise inadmissible evidence may be the basis for an expert opinion under Federal Rule of Evidence 703 if experts in the field would reasonably rely on those kinds of facts in forming an opinion on the subject.

explain Apple's use of BSR functionality. CCE's expert reports and testimony are relevant for the same reasons, particularly if they point to Apple BSR documentation that Apple's experts and fact witnesses chose not to identify or testify about. "[P]rior inconsistent statements given in a prior proceeding under oath may come in as substantive evidence." *Pope v. Sav. Bank of Puget Sound*, 850 F.2d 1345, 1356 (9th Cir. 1988). Even the testimony of a party's expert at a prior trial is considered "an admission of a party opponent under Federal Rule of Evidence 801(d)(2)(C)." *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008). Apple's closing arguments from *CCE* explain Apple's prior views on its use of BSR. While it is true that "opening statements and closing arguments" from a previous trial "are not evidence as a general matter," a party may nonetheless "use an opponent's closing statements from a prior proceeding as an admission by party opponent" at trial. *United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1121 (D.N.M. 2012); *cf. Jackson v. ABC Nissan, Inc.*, No. CIV 03-563-PHX-SMM, 2007 WL 274315, at *2 (D. Ariz. Jan. 29, 2007) (finding deposition testimony of a party's employee from a prior lawsuit admissible because it contained relevant admissions by a party opponent).

Finally, Apple does not dispute the admissibility of its witness's prior 30(b)(6) deposition and trial testimony, instead arguing that it is not a "judicial admission." (Opp. at 9.) "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Rankine v. Roller*, No. 12-CV-2065-IEG (BLM), 2013 WL 1942199, at *3 (S.D. Cal. May 9, 2013) (citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). Whether or not this testimony is a "judicial admission" is irrelevant because the testimony is still admissible and discoverable. Wi-LAN is entitled to obtain this evidence to test whether Apple is taking inconsistent positions in this case.[5]

---

[5] At the very least, this discovery is relevant for impeachment. *See Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 12851583 at *3 (E.D.N.C. June 16, 2015) (allowing subpoena of individuals who "have admitted in other litigation" statements

**C. Apple Fails To Show That The Qualcomm Agreement Is Not Relevant**

Apple cannot justify its refusal to produce discovery regarding the agreement between Apple and Qualcomm. Citing no evidence, Apple incorrectly argues that the 2001-era WiMAX standard is materially different than the 2005-era WiMAX standard—an argument Apple raised for the first time in its Opposition and that Apple also pressed during the October 30 *Markman* hearing. (Opp. at 10.) However, Mr. Stanwood's declaration cites incontrovertible evidence that the patented technologies were originally included in the 2001 "fixed" version of WiMAX and then carried over to 4G Mobile WiMAX, which was the subject of the Qualcomm Agreement. (*See* Ex. 1.) Thus, Qualcomm's agreement to pay Apple not to use 4G WiMAX satisfies Rule 26's relevance standard as discovery that directly contradicts one of Apple's key defenses: that the patents-in-suit are limited to fixed technology and that 4G WiMAX failed in the marketplace because of its inferior technology.

Mr. Stanwood served as Vice-Chair of the IEEE 802.16 committee during development of Mobile WiMAX. (Ex. 1 ¶ 6.) Mr. Stanwood's declaration explains that while the original version of WiMAX was aimed at providing wireless broadband in "fixed" or stationary deployments (e.g., providing wireless broadband access to the workers in an office building), the standard evolved to support mobile deployments (e.g., cellular telephones). (*Id.* ¶ 8.) 4G Mobile WiMAX (IEEE 802.16e-2005) was not a stand-alone standard nor did it replace the fixed WiMAX standard; it was an amendment that extended use of fixed WiMAX technology to mobile phones. (*Id.* ¶ 12.) Mr. Stanwood's declaration shows that the 4G Mobile WiMAX amendment (IEEE 802.16e-2005) did not remove the patented technology, and thus continued to use the patented technology. (*Id.* ¶¶ 16, 20, 25, 30.) Mr. Stanwood's declaration also shows that the same excerpts using the patented technology were later included in the 2009

---

that "may be relevant for impeachment purposes"); *Guitron v. Wells Fargo Bank, N.A.*, No. C 10-3461 CW (MEJ), 2011 WL 4345191, at *3 (N.D. Cal. Sep. 13, 2011) (allowing subpoena of personnel records that "could be relevant for impeachment purposes").

version of 4G Mobile WiMAX, IEEE 802.16-2009. (*Id.* ¶¶ 21, 26, 31.) Finally, Mr. Stanwood's declaration shows that the portions of 4G Mobile WiMAX using the patents-in-suit were intended for both fixed and mobile deployments, i.e., were intended for use in cellular phones. (*Id.* ¶ 14.)

Apple does not dispute these facts showing the contributions of the patents-in-suit to 4G Mobile WiMAX and yet continues to deny this conclusion without any factual support. Apple's unsupported attorney say-so that the patents-in-suit do not relate to 4G Mobile WiMAX is Apple's sole justification for its refusal to produce materials relating to the Qualcomm Agreement, which persuaded Apple to drop 4G Mobile WiMAX in favor of the emergent LTE standard. Though Apple states it will produce the Qualcomm Agreement, it has not yet done so. Apple also still refuses to produce the negotiations and payments relating to the Qualcomm Agreement. Such information is relevant to Apple's defenses because, during negotiations, Apple may have told Qualcomm that it intended to use 4G WiMAX or made other statements regarding the technical comparability between 4G LTE and 4G WiMAX. The payments are similarly relevant to show the extent to which Apple valued its use of 4G WiMAX. If Apple demanded that Qualcomm pay millions of dollars for Apple not to use 4G WiMAX, it would contradict Apple's argument that it did not use 4G WiMAX because it was technically inferior to 4G LTE. Notably, Apple did not argue that collecting these documents would be unduly burdensome.[6]

Thus, Wi-LAN respectfully requests that the Court grant Wi-LAN's motion to compel Apple to produce the Qualcomm Agreement, related negotiations, payments, and to compel Apple to respond to interrogatory No. 13.

## III. CONCLUSION

Wi-LAN requests that the Court grant its Motion in its entirety.

---

[6] Wi-LAN reiterates that it will agree to withdraw its requests under this Section (II(C)) if Apple stipulates that it will not present any evidence, argument, or testimony that Wi-LAN's patent claims are limited or only related to WiMAX.

Dated: November 1, 2017

Respectfully submitted,

By: */s/ Allison H. Goddard*

Allison H. Goddard (211098)
ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

Robert Cote
rcote@mckoolsmith.com
Brett Cooper
bcooper@mckoolsmith.com
Kevin Schubert
kschubert@mckoolsmith.com
McKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, NY 10036
(212) 402-9400
(212) 402-9444 (facsimile)

Seth Hasenour
shasenour@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
(512) 692-8700
(512) 692-8744 (facsimile)

*Attorneys for Defendant, Wi-LAN Inc.*

**PROOF OF SERVICE**

I hereby certify that on November 1, 2017, I caused a copy of this pleading to be delivered via electronic mail on the counsel of record.

Dated: November 1, 2017

By: */s/ Allison Goddard*

Allison H. Goddard (211098)
ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Defendant, Wi-LAN Inc.*