| | | |
|---|---|---|
| 1 | JOHN ALLCOCK (Bar No. 98895)<br>john.allcock@dlapiper.com | MARK C. SCARSI (Bar No. 183926) |
| 2 | SEAN C. CUNNINGHAM (Bar No. 174931)<br>sean.cunningham@dlapiper.com | mscarsi@milbank.com<br>ASHLEE N. LIN (Bar No. 275267) |
| 3 | ERIN GIBSON (Bar No. 229305)<br>erin.gibson@dlapiper.com | anlin@milbank.com |
| 4 | ROBERT WILLIAMS (Bar No. 246990)<br>robert.williams@dlapiper.com | MILBANK, TWEED, HADLEY & MCCLOY LLP |
| 5 | TIFFANY MILLER (Bar No. 246987)<br>tiffany.miller@dlapiper.com | 2029 Century Park East, 33rd Floor<br>Los Angeles, CA 90067 |
| 6 | JACOB ANDERSON (Bar No. 265768)<br>jacob.anderson@dlapiper.com | Tel: 424.386.4000<br>Fax: 213.629.5063 |
| 7 | DLA PIPER LLP (US)<br>401 B Street, Suite 1700 | CHRISTOPHER J. GASPAR |
| 8 | San Diego, California 92101-4297<br>Tel: 619.699.2700 | (*admitted pro hac vice*)<br>cgaspar@milbank.com |
| 9 | Fax: 619.699.2701 | MILBANK, TWEED, HADLEY & MCCLOY LLP |
| 10 | ROBERT BUERGI (Bar No. 242910)<br>robert.buergi@dlapiper.com | 28 Liberty Street<br>New York, NY 10005 |
| 11 | DLA PIPER LLP (US)<br>2000 University Avenue | Tel: 212.530.5000<br>Fax: 212.822.5019 |
| 12 | East Palo Alto, CA 94303-2215<br>Tel: 650.833.2000 | |
| 13 | Fax: 650.833.2001 | |

Attorneys for Plaintiff
APPLE INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>WI-LAN, INC.,<br><br>  Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 3:14-cv-02235-DMS-BLM (lead case);<br>CASE NO. 3:14-cv-1507-DMS-BLM (consolidated)<br><br>**APPLE INC.'S SUR-REPLY IN OPPOSITION TO DEFENDANT WI-LAN, INC.'S MOTION TO COMPEL**<br><br>Dept: 13A<br>Judge: Hon. Dana M. Sabraw<br>Magistrate Judge: Hon. Barbara L. Major |

The Stanwood declaration does not make relevant all (or even most) of the requested communications between Apple and third parties regarding the Mobile WiMAX standard—communications that indisputably happened many years after Mr. Stanwood filed the applications to which the asserted patents claim priority—or certain Apple agreements with Qualcomm.  The Court should deny Wi-LAN's broad request for these communications and agreements or, at a minimum, limit the scope of Wi-LAN's request, particularly because (a) the requested communications and agreements are irrelevant, and (b) Wi-LAN's ESI and Email requests already request "WiMAX" documents, so Wi-LAN is already getting any "WiMAX" documents and/or communications from 15 Apple custodians of its own choosing.  Thus, Wi-LAN does not need any additional searches or custodians.  However, to the extent the Court grants this portion of Wi-LAN's motion to compel, the Court should only permit Wi-LAN to serve one additional "WiMAX" ESI and email search term to one Apple custodian given the significant "WiMAX" discovery that Apple already has agreed to provide.

Wi-LAN claims that, because the Stanwood declaration identifies three purported links between the Fixed and Mobile WiMAX standards, then all Apple communications with third parties about the Mobile WiMAX standard—as well as Apple communications and agreements with Qualcomm—are discoverable.  Dkt. No. 189 at 9-10.  Mr. Stanwood does not contend that the asserted patents cover the entire Mobile WiMAX standard (they do not), nor does he assert that the accused products practice the Mobile WiMAX standard (they do not).  Nor could the asserted patents cover the entire Mobile WiMAX standard, since the Mobile WiMAX standard included new technologies for mobility (802.16e-2005) and did not even exist at the time of the claimed inventions.  Dkt. No. 183-9.  In fact, in Wi-LAN's previous lawsuit against Ericsson, Mr. Stanwood testified that "[w]e weren't really discussing using those [4G] terms at that point in time.  This was the early days of broadband wireless access."  Dkt. No. 198-3, Stanwood Depo. at 262:12-

16.[1]  Wi-LAN's attempt to dismiss this testimony as using "4G" only as a "marketing term" (Dkt. No. 201 at 4) is flatly contrary to Wi-LAN's substantive use of the term "4G" more than 60 times in its motion to compel.  Dkt. No. 179.  Mr. Stanwood also admitted that the Fixed WiMAX standard "dealt with the frequencies and the range above 10 gigahertz, which were line of sight, no multi-path, <u>better used for fixed systems than mobile systems</u>."  Stanwood Depo. at 281:13-282:5 (emphasis added).[2]  Thus, nothing in the Stanwood declaration supports the conclusion that all communications regarding Mobile WiMAX or Apple's agreements with Qualcomm are discoverable, and Mr. Stanwood's previous testimony demonstrates that these documents have nothing to do with his patents.

Mr. Stanwood is not the only one to have distinguished Fixed versus Mobile WiMAX.  Notably, Wi-LAN's own discovery requests define the "WiMAX Standard**s**" (plural) as "all releases of the IEEE 802.16 specifications, including but not limited to IEEE 802.16-2004, IEEE 802.16e-2005, and IEEE 802.16-2009, and IEEE802.16m."  Dkt. No. 179-2, Wi-LAN Ex. 15 at 128.  A book titled "WiMAX: Standards and Security" published in 2008 takes the same approach, stating that "[t]wo <u>very different families</u> of WiMAX systems exist <u>and should be treated separately</u>: fixed and mobile WiMAX."  Ex. K, emphasis added.  And the white

---

[1] Wi-LAN still refuses to produce the transcript from Mr. Stanwood's deposition and has recently stated it has no intention of doing so.  Ex. L, 11/14 Hollander Letter ("Per the Court's Amended Case Management Order, the allegations in your November 6 letter are untimely and improper.").  Wi-LAN claims it does not need to satisfy its basic discovery obligations because Apple did not ask Wi-LAN to produce additional documents or serve supplemental interrogatory responses within 30 days of Wi-LAN having served its initial responses, in which Wi-LAN <u>agreed to produce the relevant discovery</u>.  *See, e.g.*, Ex. M at RFP Nos. 39 and 84 (agreeing to produce relevant documents in response to Apple's requests for production directed to prior litigation materials and licenses).  Apple will be prepared to address this issue, including Wi-LAN's failure to engage in basic discovery it previously <u>agreed</u> to provide, at the November 27 hearing.

[2] This excerpt from the Stanwood deposition in the *Wi-LAN v. Ericsson* case does not appear in the excerpt submitted as Dkt. No. 198-3, but the quote appears in a publicly available expert report from that case.  *See* 2015 WL 12744173, at ¶ 89.

paper published in April 2009 by one of Wi-LAN's purported WiMAX licensees, Tranzeo Wireless Technologies, Inc., makes the distinction between the two standards even more clear:

> It is unfortunate that 802.16d fixed WiMAX and 802.16e mobile WiMAX share the same last name.  <u>There is virtually no relevant relationship between the two technologies</u>.  They are the broadband equivalent of apples and oranges.

Dkt. No. 198-4, "Fixed vs Mobile WiMAX:  An Apples to Oranges Comparison of Two Wireless Broadband Technologies," emphasis added.[3]  The Federal Communications Commission ("FCC") also distinguishes Fixed versus Mobile WiMAX:  "In fixed WiMAX networks, both the base stations and subscriber stations are stationary during use.  In mobile WiMAX networks, subscriber stations (mobile and portable devices) may move during operation." Dkt. No. 198-5, FCC Report, 233 FCC Rcd. 9615 (2008).

Wi-LAN attempts to discount this evidence that Fixed and Mobile WiMAX standards had different purposes and architectures, yet that evidence demonstrates that Wi-LAN's overbroad requests seek communications and agreements that have nothing to do with the claimed inventions or Wi-LAN's infringement claims. Mobile WiMAX (a) does not relate to the asserted patents—which claim priority to patent applications filed <u>years</u> before the Mobile WiMAX standard came into being—and (b) does not relate to the accused products, which do not practice either WiMAX standard and never have.  The Court therefore should deny Wi-LAN's request or, at a minimum, deny Wi-LAN's request for <u>all</u> communications related generically to "WiMAX Standards" and Apple agreements with Qualcomm, especially because Apple already has agreed to produce ESI and Email discovery

---

[3] Wi-LAN has not produced its license with Tranzeo either and stated on November 14 that it has no intention of doing so because it was responsive to requests for production to which Wi-LAN responded more than 30 days ago, in which Wi-LAN agreed to provide responsive licenses.  *See* Exs. L, M.

that hits on the term "WiMAX."[4]  To the extent the Court does not deny Wi-LAN's request in its entirety, the Court should only permit Wi-LAN to serve one additional "WiMAX" ESI and Email search term to one additional Apple custodian.

Dated:  November 15, 2017

DLA PIPER LLP (US)

By */s/ Sean C. Cunningham*
JOHN ALLCOCK
SEAN C. CUNNINGHAM
ERIN GIBSON
ROBERT BUERGI
ROBERT WILLIAMS
TIFFANY MILLER
JACOB ANDERSON

MILBANK, TWEED, HADLEY & MCCLOY LLP
Mark C. Scarsi
Ashlee N. Lin
Christopher J. Gaspar

Attorneys for Plaintiff
APPLE INC.

---

[4] Under the ESI Order, Wi-LAN was permitted to identify 15 ESI and email custodians and was permitted to identify 20 ESI search terms and 10 email search terms.  Dkt. No. 130.  Wi-LAN's ESI and email requests included "Wi-MAX" search terms, which Apple has agreed to run.  Ex. N, 11/10 Schubert Letter.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

                                        /s/ *Sean C. Cunningham*
                                        Sean C. Cunningham