UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>WI-LAN INC., et al.,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No.: 14cv2235-DMS (BLM)<br><br>**ORDER RE: DEFENDANT'S MOTION TO COMPEL**<br><br>**[ECF No. 179]** |

Presently before the Court is Defendant Wi-LAN Inc.'s ("Wi-LAN") motion to compel. ECF Nos. 179, 193 ("MTC"). Wi-LAN filed its motion on October 18, 2017 pursuant to the Court's briefing schedule [ECF No. 178]. Plaintiff Apple, Inc. ("Apple") timely opposed the motion [ECF No. 183 ("Oppo.")] and Wi-LAN filed its reply on November 1, 2017 [ECF Nos. 189, 197 ("Reply")]. On November 6, 2017, Apple filed an Ex Parte Motion to Strike New Stanwood Declaration Submitted with Wi-LAN's reply [ECF No. 198], and Wi-LAN opposed [ECF No. 201]. On November 13, 2017, the Court issued an Order denying Apple's request to strike Mr. Stanwood's declaration and the arguments made in Wi-LAN's reply brief that rely on or cite to that declaration, but granted Apple's alternative request to file a sur-reply. ECF No. 202. On

1

November 15, 2017, Apple timely filed its sur-reply ("Sur-Reply"). ECF No. 210. Having considered all of the briefing and supporting documents presented, and for the reasons set forth below, Wi-LAN's motion to compel is **GRANTED.**

## BACKGROUND

This litigation involves two consolidated cases – 13cv798-DMS (BLM), and 14cv2235-DMS (BLM). ECF No. 98. In the first case, Wi-LAN alleges Apple is infringing its United States Patents Number 8,311,040 ("the '040 Patent") and 8,315,640 ("the '640 Patent"). Apple filed the second case against Wi-Lan seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of Wi-LAN's United States Patents Numbers 8,457,145 (the '145 Patent"), 8,462,723 ("the '723 Patent"), 8,462,761 ("the '761 Patent"), 8,615, 020 ("the '020 Patent"), 8,537,757 ("the '757 Patent"), and 8,311,040 ("the '040 Patent"). ECF No. 136 [Third Amended Complaint ("TAC"). Four of the patents in the second case – the '145 Patent, the '723 Patent, the '761 Patent, and the '020 Patent – are related to the '640 Patent in the first case.

On May 11, 2017, this Court issued an "Amended Case Management Order Regulating Discovery and Other Pretrial Proceedings in a Patent Case." ECF No. 116 ("Amended CMC Order"). The Amended CMC Order requires substantial completion of document discovery, including electronically stored information ("ESI") by September 27, 2017, completion of all fact discovery by January 12, 2018, and completion of expert discovery by April 9, 2018. Id. at 2.

Wi-LAN filed the instant motion asking the Court to compel Apple's production of documents and information responsive to Wi-LAN's requests for production ("RFPs") and interrogatories, which Wi-LAN groups into three categories: "(1) technical documents and training materials that Apple was ordered to produce by September 22, 2017, which describe the operation of technology at issue in the accused 4G LTE products (RFPs 1-7, 11-16, and 18-20); (2) previous representations by Apple in the CCE litigation[1] regarding the operation of the same technology at issue in this lawsuit (RFP Nos. 51-60); and (3) an Apple/Qualcomm agreement and communications regarding 4G WiMAX which Apple itself asserts is relevant to

---

[1] Cellular Communications Equipment LLC v. Apple Inc. et al., No. 6:14-cv-251 (E.D. Tex.).

the instant dispute (Wi-LAN's RFP Nos. 40-41 and Wi-LAN Interrogatories Nos. 11 and 13)." ECF No. 179-1 at 4.  Apple responds that Wi-LAN is seeking information that is outside of Apple's possession, custody, or control (in the case of the Qualcomm and Intel repositories) or is irrelevant to the issues to be tried in this case (in the case of the CCE litigation materials and the communications about a different industry standard than the one at issue here). Oppo. at 5. Wi-LAN replies that with respect to the first category of documents,[2] Apple admits that it has access to the Qualcomm and Intel documents, does not dispute that those documents are highly relevant, and does not show that production would be burdensome. Reply at 7. Wi-LAN replies with respect to the second category of documents from the CCE litigation that the documents are relevant and should be produced. Id. at 11. Finally, with respect to the third category of documents, the Apple/Qualcomm Agreement and communications regarding 4G WiMAX, Wi-LAN replies that Apple fails to show that this information is not relevant. Id. at 13-14.

## **LEGAL STANDARD**

> The scope of discovery under the Federal Rules of Civil Procedure is defined as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes.  See Hallet v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

---

[2] The first category of disputed documents are technical documents and training materials which Wi-LAN contends were provided to Apple by Qualcomm and Intel related to the operation of technology at issue in the accused 4G LTE products. Reply at 7; see also ECF No. 179-1 at 4.

information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the requirements of Rule 26. Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. July 17, 1995). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden on "clarifying, explaining, and supporting its objections." DIRECTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

## DISCUSSION

As noted above, Wi-LAN groups the disputed RFPs and Interrogatories into three categories: "(1) technical documents and training materials that Apple was ordered to produce by September 22, 2017, which describe the operation of technology at issue in the accused 4G LTE products (RFPs 1-7, 11-16, and 18-20); (2) previous representations by Apple in the CCE litigation[3] regarding the operation of the same technology at issue in this lawsuit (RFP Nos. 51-60); and (3) an Apple/Qualcomm agreement and communications regarding 4G WiMAX which Apple itself asserts is relevant to the instant dispute (Wi-LAN's RFP Nos. 40-41 and Wi-LAN Interrogatories Nos. 11 and 13)." ECF No. 179-1 at 4. The Court will address each category below.

**1.  Wi-LAN's Motion to Compel Discovery of Technical Documents and Training Materials that Wi-LAN Claims Apple was Ordered to Produce by September 22, 2017, Which Describe the Operation of the Technology at Issue in the Accused 4G LTE Products (RFPs 1-7, 11-16, and 18-20).**

In these requests, Wi-LAN seeks information from two repositories that Wi-LAN asserts it learned about on September 21, 2017 during a deposition of Apple's corporate witness, ▮

---

[3] Cellular Communications Equipment LLC v. Apple Inc. et al., No. 6:14-cv-251 (E.D. Tex.).

1  ███████. ECF No. 179-1 at 4, 7; ECF No. 193 at 4, 7. Wi-LAN contends that ██████
2  ████████████████████████████████████████████████████████████████████████████
3  ████████████████████████████████████████████████████████████████████████████
4  ████████████████████████████ ECF No. 179-1 at 13-14; ECF No. 193 at 13-14. Wi-LAN
5  contends that Apple's corporate witness, ████████, testified that ████████████████
6  ████████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████████
8  ██████████████████████████████████████████. Id.
9  　　　Wi-LAN argues that this category of documents is relevant because Apple ████
10 ████████████████████████████████████████████████████████████████████████████
11 █████████████████████████████████████████████████████████████████████████." ECF
12 No. 179-1 at 15; ECF No. 193 at 15. Wi-LAN also argues that Apple has "access" to these
13 documents because Apple's ████████████████████████████████████████████████████
14 ████████████████████████████████████████████████████████████████████████████
15 ██████████████████." No. 179-1 at 16; ECF No. 193 at 16. Wi-LAN further argues that
16 ████████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████████
18 ████████████████████████████████████████████████████████████████████████████
19 ██████████████." Id. (citing TetraVue, Inc. v. St. Paul Fire & Marine Ins. Co., No. 14-cv-2021-
20 W (BLM), 2017 WL 1008788, *4 (S.D. Cal. Mar. 15, 2017)). Wi-LAN's third argument with regard
21 to this category of documents is that "as a party in this action, Apple should produce the
22 documents from these repositories, not third parties Qualcomm or Intel." Id. (internal citations
23 and quotations omitted).
24 　　　Apple responds that the technical documents and training materials are not within Apple's
25 "possession, custody, or control" because they are Qualcomm and Intel documents. Oppo. at 6-
26 8. Apple argues that Wi-LAN has acknowledged that this category of documents are contained
27 in "Qualcomm and Intel repositories" and the fact that "a handful of Apple engineers have
28 restricted access to certain Qualcomm and Intel documents on these Qualcomm- and Intel-

controlled websites is insufficient." Id. at 8 (internal citation omitted). Apple further argues that it does not have "access" to these documents because "the fact that a handful of Apple engineers can access third-party documents on third-party websites in connection with their work does not give Apple the legal right to obtain those documents for this litigation." Id. at 9 (emphasis in original) (internal citation omitted).  Apple cites to Qualcomm's and Intel's terms of use which Apple claims prohibit it from transmitting or distributing the materials. Id. Apple notes that Wi-LAN has served subpoenas on Qualcomm and Intel seeking these same documents. Id. at 9-10. Finally, Apple argues that the case relied on by Wi-LAN, Tetravue, Inc., No. 14-cv-2021-W (BLM), 2017 WL 1008788, at *3, does not apply here because that case involved requests for party (not third-party) documents that were in the physical possession of a third party. Id. at 10.

Wi-LAN replies that "Apple admits that it has access to Qualcomm and Intel Documents, does not dispute those documents are highly relevant, and does not show production would be burdensome." Reply at 6.  Wi-LAN further argues that the Court ordered Apple to produce these documents by September 22, 2017 (ECF No. 161 at 2). Id. at 7.

**A. <u>Analysis</u>**

Initially, the Court notes that the technical documents and training materials described herein are relevant, and were the subject of Wi-LAN's previous Motion to Compel [ECF No. 133] and a Court Order.[4] ECF No. 161, at 2.  Notably, Apple does not dispute that this category of documents is relevant. Oppo.

Further, the Court finds that Apple has possession, custody and control of the technical documents and training materials in the Qualcomm and Intel repositories because Apple's engineer testified that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. ECF No. 193-1 at 23. The Federal Rules of Civil Procedure require a responding party to produce all responsive items

---

[4] The Court's August 31, 2017 Order required counsel for Wi-LAN and counsel for Apple to "meet and confer on or before September 5, 2017 to discuss compliance with RFP numbers 1-7, 11-16, 18-20, 25-29, 34-35, and 37-38." ECF No. 161, at 2.  Apple was ordered to "produce documents responsive to these RFPs, independent from any searches performed pursuant to the Electronically Stored Information ("ESI") Order, on or before September 22, 2017. Id.

in "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Here, the fact that Apple's engineers can access and ▇▇▇▇ the requested documents in the Qualcomm and Intel repositories establish that Apple has possession, custody or control of these documents. TetraVue, Inc., No. 14-cv-2021-W (BLM), 2017 WL 1008788, at *4. Apple's attempt to distinguish Tetravue on the basis that it involves requests for party (as opposed to third-party) documents fails. Oppo. at 10. Tetravue clearly provides that "documents are deemed to be within the possession, custody or control of a party and subject to a request for production if the party has actual possession, custody or control or has the legal right to obtain the documents on demand." 2017 WL 1008788, at *4 (internal citations and quotations omitted).

The Court acknowledges that Wi-LAN has outstanding subpoenas to Qualcomm and Intel seeking the same or overlapping technical documents and training materials as it is seeking from Apple in these requests. However, the Court's decision is guided by both Rule 45, which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the court must limit discovery if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i). As a party to this case, case law dictates that Apple bear the burden of production, rather than a third-party. See, e.g., VirnetX, Inc. v. Apple Inc., No. 14-MC-80013 RS (NC), 2014 WL 6979427, at *4 (N.D. Cal. Mar. 21 2014) (finding that documents should be obtained directly from Apple to minimize burden on a non-party). Qualcomm has objected to Wi-LAN's request for these documents on the grounds that the documents should be obtained directly from Apple. Reply at 5. Further, Wi-LAN represents that it has agreed with Qualcomm and Intel that it will not seek common documents which can be obtained from Apple, the party in this case, indicating that Qualcomm and Intel have no objection to Apple producing the requested documents. Id. at 9.

Accordingly, Wi-LAN's motion to compel technical documents and training materials ▇▇▇▇ responsive to Wi-LAN's RFPs 1-7, 11-16, and 18-20 is **GRANTED**.

2. **Wi-LAN's Motion to Compel Documents Relating to the CCE Litigation (RFPs 51-60).**

In these requests, Wi-LAN seeks discovery relating to argument and testimony from the CCE litigation regarding Apple's use of the LTE buffer status reports ("BSR"). ECF No. 179-1 at 4-5. Specifically, Wi-LAN seeks "(1) expert reports and testimony (and related exhibits) of specifically identified witnesses that Wi-LAN determined, based on publicly available information, to have testified regarding Apple's use of BSR in the CCE litigation, and (2) Apple's closing argument regarding BSR." Id. at 10. Wi-LAN notes that it sought a broader set of discovery relating to the CCE litigation in a previous motion to compel, and the Court ruled that Wi-LAN's requests were too broad. Id. at 8; ECF No. 161, at 2, ¶ 4. During the hearing held on Wi-LAN's previous motion to compel, the Court ruled that it was inappropriate to ask for "any and all documents coming out of another litigation," but allowed Wi-LAN to ask for specific documents. ECF No. 162, at 43:14-23.

Wi-LAN argues that the discovery it seeks in the narrowed request for CCE litigation documents is relevant and should be produced.

> Apple's use of BSR is highly relevant to this lawsuit, as Apple infringes four of the six patents-in-suit because of its use of BSR. Despite Wi-LAN's express identification of BSR in its infringement contentions, Apple refuses production of any documents reflecting the representations Apple made regarding BSR in the CCE litigation. Wi-LAN, in an effort to resolve this issue, offered to withdraw its requests if Apple agreed not to make any non-infringement arguments regarding its use of BSR. Apple refused. Apple cannot have it both ways. If Apple wants to reserve the right to make non-infringement arguments regarding BSR, then BSR is relevant to his lawsuit and the jury should be permitted to see any inconsistent positions Apple took in the CCE case regarding its use of BSR technology.

ECF No. 179-1 at 5.

Apple responds that the Court should deny "Wi-LAN's renewed request that Apple produce unrelated litigation documents from CCE v. Apple." Oppo. at 11. Apple's entire argument is based on whether the requested CCE litigation documents are admissible. Oppo. at 11-13. Apple argues that the requested documents include statements not made by Apple or statements

that might not be admissible at trial. Id.; see, e.g., Oppo. at 11-12 ("The problem with Wi-LAN's argument is that nine of its ten requests seek statements that Apple never made, and the tenth request seeks testimony from an Apple witness that cannot as a matter of law be used as a judicial admission in this litigation."). Notably, Apple does not argue that the requested CCE litigation documents are not relevant. Oppo. Wi-LAN argues in its reply "whether or not the materials are admissible at trial is irrelevant." Reply at 11.

Wi-LAN is correct. "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26, information that is relevant, proportional to the needs of the case, and not unduly burdensome "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Here, the requests are narrowly tailored and seek undisputedly relevant documents.[5] The fact that they may not be admissible at trial is irrelevant to the pending discovery requests.

Accordingly, Wi-LAN's motion to compel RFP Nos. 51-60 is **GRANTED.**

**3.   Wi-LAN's Motion to Compel Discovery Regarding the Qualcomm Agreement with Apple (RFP Nos. 40-41 and Interrogatory No. 11).**

In these requests, Wi-LAN seeks the following discovery: (1) the single Qualcomm Agreement in which Apple agreed not to use the 4G Wi-MAX standard in exchange for payment (RFP No. 40); (2) negotiations for the particular provisions in that Qualcomm Agreement and payments made pursuant to the same (RFP No. 41); and (3) the identification of a single Apple employee knowledgeable about the particular provisions of the Qualcomm Agreement (Interrogatory No. 11). ECF No. 179-1 at 11 (citing Ex. 20). Wi-LAN argues that this evidence is "critical to rebut Apple's theme in this case: that the patents-in-suit are 4G WiMAX patents, and that 4G WiMAX was technically inferior to 4G LTE and incompatible with mobile communication."

---

[5] Wi-LAN seeks: "(1) expert reports and testimony (and related exhibits) of specifically identified witnesses that Wi-LAN determined, based on publicly available information to have testified regarding Apple's use of BSR in the CCE litigation, and (2) Apple's closing argument regarding BSR." ECF No. 179-1 at 10.

1   ECF No. 179-1 at 19-20; see also Reply at 14. Wi-LAN further argues that "the mere existence
2   of the Qualcomm Agreement contradicts [Apple's arguments relating to the fixed Wi-MAX
3   standard versus the 4G WiMAX standard]." Id. Wi-LAN also argues that producing the Qualcomm
4   Agreement and corresponding negotiations and payments will impose no burden on Apple, as it
5   has already identified these documents in litigation against Qualcomm, in which the same
6   provisions within the same Agreement are at issue. Id. at 20. (citing Ex. 17). Finally, Wi-LAN
7   argues that it will withdraw the requested discovery on this issue "if Apple stipulates that it will
8   not present any evidence, argument, or testimony that Wi-LAN's patent claims are limited or
9   only related to WiMAX." ECF No. 179-1 at 21.

10         Apple responds that the requested discovery relates to a different industry standard than
11   the one at issue in this case and argues that "Wi-LAN's motion tries to conflate the 2001-era
12   Fixed WiMAX standard with the different, 2005-era Mobile (4G) WiMAX standard." Oppo. at 13.
13   In sum, Apple argues that Wi-LAN is not entitled to communications and related documents
14   about a different, much later industry standard than the one at issue in this case. Id. Apple
15   contends that Wi-LAN is "confusing the two standards—the earlier fixed standard, to which the
16   asserted patents purportedly relate, and the later mobile standard mentioned in the Marketing
17   Incentive Agreement between Apple and Qualcomm." Id. at 14-15. Notwithstanding these
18   arguments, Apple states in a footnote that "it is willing to produce the [Qualcomm] Agreement
19   in the interest of mooting that portion of the dispute and demonstrating the lack of relevance of
20   the Agreement to this litigation." Oppo. at 15. However, it appears that Apple still refuses to
21   produce discovery about the negotiations for the particular provisions in that Qualcomm
22   Agreement and payments made pursuant to the same, and the identification of a single Apple
23   employee knowledgeable about the particular provisions of the Qualcomm Agreement.

24         Wi-LAN replies that Apple incorrectly argues that the 2001-era WiMAX standard is
25   materially different than the 2005-era WiMAX standard and contends that this is an argument
26   raised for the first time in its Opposition and during the October 30 Markman hearing. Reply at

13. Wi-LAN cites to Mr. Stanwood's[6] declaration, filed in connection with its reply, in support of the argument that "the patented technologies were originally included in the 2001 'fixed' version of WiMAX and then carried over to 4G Mobile WiMAX, which was the subject of the Qualcomm Agreement." Id. (citing Ex. 1). Thus, Wi-LAN argues that "Qualcomm's agreement to pay Apple not to use 4G WiMAX satisfies Rule 26's relevance standard as discovery that directly contradicts one of Apple's key defenses: that the patents-in-suit are limited to fixed technology and that 4G WiMAX failed in the marketplace because of its inferior technology." Id. Wi-LAN further notes that notwithstanding Apple's concession to produce the Qualcomm Agreement, it has not yet done so. Reply at 14.

Apple responds in its sur-reply that the Court should deny the requested discovery regarding the Qualcomm Agreement with Apple because "(a) the requested communications and agreements are irrelevant, and (b) Wi-LAN's ESI and Email requests already request 'WIMAX' documents and/or communications from 15 Apple custodians of its own choosing. Thus, Wi-LAN does not need any additional searches or custodians." Sur-Reply at 2. Alternatively, Apple requests that the Court limit the scope of Wi-LAN's request to allow Wi-LAN to serve one additional "'WIMAX' ESI and email search term to one Apple custodian" because Apple claims it has already agreed to provide "significant 'WIMAX' discovery."[7] Id.

The Court agrees with Wi-LAN. The requests at issue are narrowly tailored and seek documents and information relevant to one of Apple's defenses in this litigation, whether the 2001-era Fixed WiMAX standard is different than the 2005-era Mobile (4G) WiMAX standard. In fact, Wi-LAN notes in its briefing that it "will agree to withdraw its requests under this Section (II(C)) if Apple stipulates that it will not present any evidence, argument, or testimony that Wi-

---

[6] Mr. Stanwood served as Vice-Chair of the IEEE 802.16 committee during the development of Mobile WiMAX. Reply at 13 (citing Ex. 1 ¶ 6).

[7] Apple claims that it "has agreed to produce ESI and Email discovery that hits on the term 'WiMAX.' Under the ESI Order, Wi-LAN was permitted to identify 15 ESI and email custodians and was permitted to identify 20 ESI search terms and 10 email search terms. Dkt. No. 130. Wi-LAN's ESI and email request included 'Wi-MAX' search terms, which Apple has agreed to run. Ex. N., 11/10 Schubert Letter." Sur-Reply at 5.

LAN's patent claims are limited or only related to WiMAX." Reply at 10. Apple does not even acknowledge Wi-LAN's proposal in its sur-reply. Sur-Reply. Instead, in the Sur-Reply, Apple focuses on the "significant 'WiMAX' discovery that Apple has already agreed to provide" and makes an arbitrary alternative suggestion to the Court of permitting Wi-LAN to serve one additional WiMAX ESI and email search term to one additional Apple custodian. Sur-Reply at 2. Notably, Apple does not argue that collecting these documents would be unduly burdensome.

Accordingly, Wi-LAN's motion to compel RFP Nos. 40-41 and Interrogatory No. 11 is **GRANTED**.

**4.    Wi-LAN's Motion to Compel Discovery Interrogatory No. 13.**

In this request, Wi-LAN seeks communications between Apple and any third party regarding Apple's or the third party's decision whether to use the 4G WiMAX standard. ECF No. 179-1 at 21. Wi-LAN argues that this discovery is relevant because "[i]f Apple attempted to convince others to use 4G LTE over 4G WiMAX for non-technical reasons, that would further undercut Apple's argument that 4G WiMAX was technically inferior to 4G LTE and incompatible with mobile communication in products such as the accused iPhones." Id.

Apple does not make a specific argument with respect to this Interrogatory in its opposition or sur-reply, but generally argues against the production of any communications/documents about a "different, unrelated industry standard." Oppo. at 13; Sur-Reply at 4 (". . . Fixed and Mobile WiMAX standards had different purposes and architectures, yet that evidence demonstrates that Wi-LAN's overbroad requests seek communications and agreements that have nothing to do with the claimed inventions or Wi-LAN's infringement claims."). For the reasons set forth above, the Court agrees with Wi-LAN on this issue. Accordingly, Wi-LAN's motion to compel Interrogatory No. 13 is **GRANTED**.

/ / /
/ / /
/ / /
/ / /
/ / /

Apple is **ORDERED** to produce all documents and information subject to this Order on or before **December 4, 2017**.

**IT IS SO ORDERED.**

Dated:  11/28/2017

Hon. Barbara L. Major
United States Magistrate Judge