Allison H. Goddard (211098)
  ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Plaintiff,
Wi-LAN Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO

| | |
|---|---|
| WI-LAN INC.,<br><br>*Plaintiff,*<br><br>vs.<br><br>APPLE INC.,<br><br>*Defendant.* | No. 3:14-cv-1507-DMS-BLM; (Lead Case No. 3:14-cv-2235-DMS-BLM)<br><br>**WI-LAN INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUPPLEMENTAL DAMAGES, ONGOING ROYALTY, AND PREJUDGMENT AND POST JUDGMENT INTEREST**<br><br>REDACTED FOR PUBLIC FILING<br>**Department: 13A**<br>**Judge: Hon. Dana M. Sabraw**<br>**Magistrate: Hon. Barbara L. Major**<br>**Hearing Date: November 30, 2018**<br>**Time: 1:30 pm** |

## **TABLE OF CONTENTS**

I. ONGOING ROYALTY .................................................................................................. 1

II. WI-LAN IS ENTITLED TO PREJUDGMENT INTEREST ...................................... 4

   A. Wi-LAN Should Be Awarded The California Statutory Interest Rate Of Seven Percent Per Annum ................................................................................... 4

   B. Application Of The T-Bill Rate Is Not Appropriate ......................................... 6

   C. In The Alternative, The Court Should Award Wi-LAN Prejudgment Interest At The Applicable Prime Rates, Compounded Quarterly .................. 10

III. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*A&L Tech. v. Resound Corp.*,
 No. C 93-00107 CW, 1995 WL 415146 (N.D. Cal. June 29, 1995) ..................... 9, 10

*Apple v. Samsung*,
 No. 12-cv-00630-LHK, ECF No. 1897-3 (N.D. Cal. May 23, 2014) ........................ 9

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
 No. CV-03-0597-PHX-MHM, 2009 WL 920300 (D. Ariz. Mar. 31,
 2009) ................................................................................................................... 6

*Brooktree Corp. v. Adv. Micro Devices, Inc.*,
 757 F.Supp. 1101 (S.D. Cal. 1990) ..................................................................... 8

*Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*,
 No. 07cv0894 DMS (DHB), ECF No. 1558 (S.D. Cal. July 27, 2012) ................. 5, 7

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
 No. 3:17-CV-01781-HZ, 2018 WL 1805102 (S.D. Cal. Apr. 17, 2018) ............... 7, 8

*Fractus, S.A. v. Samsung Elecs. Co., Ltd.*,
 No. 6:09-CV-203, 2013 WL 1136964 (E.D. Tex. Mar. 15, 2013) ............................ 3

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
 No. C 03-1431 SBA, 2008 WL 928535 (N.D. Cal. Apr. 4, 2008) .......................... 10

*Gen. Motors Corp. v. Devex Corp.*,
 461 U.S. 648 (1983) .......................................................................................... 6, 7

*In re Hayes Microcomputer Prod., Inc. Patent Litig.*,
 766 F.Supp. 818 (N.D. Cal. 1991) ....................................................................... 8

*KFx Medical Corp. v. Arthrex Inc.*,
 No. 11CV1698 DMS (BLM), 2014 WL 11961953 (S.D. Cal. Feb. 18,
 2014) ................................................................................................................. 5, 7

*Krippelz v. Ford Motor Co.*,
 670 F. Supp. 2d 815 (N.D. Ill. 2009) ................................................................... 7

*Laitram Corp. v. NEC Corp.*,
  115 F.3d 947 (Fed. Cir. 1997) ............................................................................................... 9

*Morpho Detection, Inc. v. Smiths Detection Inc.*,
  No. 2:11CV498, 2013 WL 5701522 (E.D. Va. Oct. 17, 2013) .................................... 9

*Paice LLC v. Toyota Motor Corp.*,
  504 F.3d 1293 (Fed. Cir. 2007) ............................................................................................. 3

*Paice LLC v. Toyota Motor Corp.*,
  609 F. Supp. 2d 520 (E.D. Tex. 2009) ................................................................................. 3

*Qualcomm Inc. v. Broadcom Corp.*,
  No. 05CV1958-B (BLM), 2007 WL 9677112 (S.D. Cal. Oct. 29, 2007) ............... 7, 8

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
  862 F.2d 1564 (Fed. Cir. 1988) ............................................................................................ 7

*U.S. Philips Corp. v. CDVIDEO Mfg., Inc., et al.*,
  No. CV 04-2456 GPS, ECF No. 74 (C.D. Cal. Feb. 22, 2006) .................................... 7

*U.S. Philips Corp. v. Media One CD Mfg., et al.*,
  No. CV 05-1501-JFW, ECF No. 93 (C.D. Cal. Apr. 26, 2006) ................................... 7

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
  939 F.2d 1540 (Fed. Cir. 1991) ......................................................................................... 7, 9

*VirnetX Inc. v. Apple Inc.*,
  No. 6:13-CV-211, 2014 WL 12672822 (E.D. Tex. Feb. 25, 2014) ............................ 3

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*,
  No. 2:04CV01971MCEEFB, 2009 WL 981843 (E.D. Cal. Apr. 13,
  2009) ............................................................................................................................................ 5

**STATUTES**

28 U.S.C. § 1961 .............................................................................................................................. 1

35 U.S.C. § 284 .............................................................................................................................. 8

35 U.S.C. § 289 .............................................................................................................................. 8

Wi-LAN submits this reply in support of its motion seeking: (1) an award of supplemental damages for Apple's sales of infringing iPhones for the period of August 1, 2018 through the date the final judgment is entered; (2) an ongoing royalty at $0.85; (3) an award of prejudgment interest based on the California statutory rate of seven percent per annum; and (4) an award of post-judgment interest pursuant to 28 U.S.C. § 1961. In light of the jury's verdict, Apple does not object to ▮▮▮▮▮ in damages for post-verdict Adjudicated Products, the calculation of post-judgment interest at the statutory rate, and Wi-LAN's entitlement to prejudgment interest on $145,100,000 in damages. The only two remaining issues in dispute are (I) the scope of Apple's proposed stipulation regarding an ongoing royalty for Unadjudicated Products and (II) the rate of prejudgment interest.[1]

## I. ONGOING ROYALTY

Apple has offered to enter into a stipulation regarding an ongoing royalty for Unadjudicated Products. Wi-LAN is working to achieve an agreement on the stipulation. Wi-LAN has, however, five issues with Apple's proposal. These issues are explained below, and Wi-LAN sent a revised proposal to Apple on November 15, 2018 addressing these issues. The revised proposal is attached as Exhibit 9. If the parties are able to execute the revised stipulation, we will immediately notify the Court. If the parties are unable to reach agreement on the stipulation, then the Court should grant the ongoing royalty as set forth in Wi-LAN's revised stipulation.

Wi-LAN's opening motion requested an ongoing royalty with respect to the Unadjudicated Products, as well as the basis for setting the rate at $0.85 per unit. (ECF No. 526 ("Mot.") at 2-6.) Apple's opposition did not present any legal or evidentiary support to contradict (1) Wi-LAN's assertion that the Unadjudicated Products are not more than colorably different from the Adjudicated Products with regard to infringement or (2) Mr. Kennedy's analysis concluding that an ongoing royalty of $0.85

---

[1] All Exhibits cited herein refer to the exhibits to the Declaration of Jonathan Yim.

per unit is appropriate for the Unadjudicated Products. Thus, Wi-LAN's revised stipulation addresses the following five issues with Apple's proposal.

First, Apple's proposal in paragraphs 1 and 2 would improperly exhaust Wi-LAN's entire patent portfolio with regard to the Unadjudicated Products. The Court's jurisdiction extends to only the patents in this lawsuit. Wi-LAN's revision accordingly modifies paragraphs 1 and 2 to apply to only the infringed '145 and '757 Patents.

Second, Apple's proposal in paragraph 2 would improperly deny Wi-LAN interest on the delayed ongoing royalty payments. Under the stipulation, the ongoing royalty obligation would not come into effect until after the entry of a final non-appealable judgment or order for which appeal has been exhausted. Wi-LAN is entitled to prejudgment interest on the royalty for the Unadjudicated Products from the time that they began being sold, over a year ago. The stipulation should provide for this element of damages. Wi-LAN's revision accordingly modifies paragraph 2 to allow for interest on the ongoing royalty as to the Unadjudicated Products.

Third, Apple's proposal in paragraph 3 improperly expands the scope of the Court's summary judgment ruling. ████████████

████████████
████████████
████████████
████████████
████████████
████████████
████████████
████████████
████████████
████████

Fourth, Apple's proposal in paragraph 4 would improperly force Wi-LAN to add the Unadjudicated Products to any retrial regarding the Adjudicated Products. Because

no discovery was taken for the Unadjudicated Products, a trial including the Unadjudicated Products would require new discovery, expert reports, and other pretrial proceedings, all of which would complicate and delay the retrial of any discrete issue potentially ordered by this Court or the Federal Circuit. Without knowing the extent of matters subject to retrial, if any, it would be imprudent to stipulate to the inclusion of the Unadjudicated Products in any retrial of the instant case. Wi-LAN's revision accordingly strikes paragraph 4.

Finally, Apple's paragraph 5 lacks the terms that direct when Apple must provide accountings and payment on the ongoing royalty obligation for the Unadjudicated Products. Wi-LAN's revision to this paragraph specifies the times when Apple must provide an accounting for past and future sales and for payment per those accountings.

As of the filing of this reply, Wi-LAN has not received a response from Apple regarding Wi-LAN's revisions. Should the parties not come to agreement, the Court has the power to order ongoing royalties to compensate for future infringement. *See, e.g.*, *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007); *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 520, 640 (E.D. Tex. 2009); *VirnetX Inc. v. Apple Inc.*, No. 6:13-CV-211, 2014 WL 12672822, at *1 (E.D. Tex. Feb. 25, 2014).[2, 3]

---

[2] When new products are released with the same infringing functionality, it is not immediately clear how those claims should be managed in an existing lawsuit. Wi-LAN promptly wrote to Apple when the iPhone 8 and X models were released in the fall of 2017 to inquire how Apple would propose to handle Wi-LAN's infringement claims against those new products. (*See* Ex. 10 (Nov. 3, 2017 Hasenour email to Anderson).) The parties deferred those claims and thus excluded the iPhone 8 and X models from the proceedings through trial and verdict. As was the case in *Fractus, S.A. v. Samsung Elecs. Co., Ltd.*, No. 6:09-CV-203, 2013 WL 1136964 (E.D. Tex. Mar. 15, 2013), Apple "will continue to release new smartphones which Fractus will invariably argue are not 'colorably different' from the adjudicated models," and the Court may prefer to decline at this time to order an ongoing royalty on Unadjudicated Products without prejudice to filing a new lawsuit on those products. *Id.* at *2 ("To avoid continually revisiting this issue in this case, the Court denied Fractus' request to include the additional unadjudicated phones in the ongoing royalty analysis without prejudice to Fractus filing a separate action involving these products.").

## II. WI-LAN IS ENTITLED TO PREJUDGMENT INTEREST

Apple does not dispute Wi-LAN's entitlement to an award of prejudgment interest on the jury's award of $145,100,000. The parties' dispute concerns only the appropriate rate for prejudgment interest. Wi-LAN seeks an award of prejudgment interest of seven percent per annum pursuant to the California statutory rate. (Mot. at 7.) Alternatively, Wi-LAN seeks an award of prejudgment interest at the applicable prime rates during the period of infringement, compounded quarterly. (Mot. at 7, 12; (ECF No. 526-1 ("Kennedy Decl.") ¶ 12, Exs. F.3, H.)

In opposition, Apple argues that Wi-LAN is only entitled to prejudgment interest at a rate no higher than the one-year Treasury Constant Maturity Rate (the "T-Bill rate"). (Opp. at 1.) Apple does not address Wi-LAN's alternative request for application of the prime rate. Nor does Apple address Wi-LAN's request that any award of prejudgment interest at a rate below the California statutory rate should be compounded quarterly.

### A. Wi-LAN Should Be Awarded The California Statutory Interest Rate Of Seven Percent Per Annum

In its opening brief, Wi-LAN established that an award of prejudgment interest at the California statutory rate is appropriate. (Mot. at 6-11.) Such an award is appropriate because, *inter alia*, Wi-LAN's typical interest rates for unpaid royalty payments are commensurate with, and often exceed, seven percent interest. (*Id.* at 8-9; Kennedy Decl. Exs. I.1, I.2.) Wi-LAN also showed that its lending practices and weighted average cost of capital ("WACC") justify an award of prejudgment interest at the California statutory rate. (*Id.* at 10; Kennedy Decl. ¶¶ 9, 11, Ex. G.)

Apple misstates the law when it asserts that the "license agreement penalties are irrelevant to the prejudgment rate issue." (Opp. at 9.) As Wi-LAN explained (Mot. at

---

[3] Apple agrees that that the Court may order an ongoing royalty notwithstanding the parties' inability to reach agreement on the stipulation. (ECF No. 534 ("Opp.") at 3 ("Apple's willingness to enter into such a stipulation is subject to the following conditions, which the Court should order if Wi-LAN will not stipulate").)

8), courts have relied on the fact that a patentee's "rate charged for past-due payments was ten percent" in awarding prejudgment interest at the California statutory rate. *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, No. 2:04CV01971MCEEFB, 2009 WL 981843, at *7 (E.D. Cal. Apr. 13, 2009) (holding "that the California statutory rate for liquidated amounts, which is seven percent and falls in the mid-range of those rates charged for timely and past-due royalty payments, will adequately compensate Plaintiff for the instant infringement."). Indeed, the Court's opinions in *Carl Zeiss Vision Int'l GmbH v. Signet Armorlite, Inc.*, No. 07cv0894 DMS (DHB), ECF1558 (S.D. Cal. July 27, 2012) and *KFx Medical Corp. v. Arthrex Inc.*, No. 11CV1698 DMS (BLM), 2014 WL 11961953, at *1 (S.D. Cal. Feb. 18, 2014) awarded the 7% California statutory rate because "the statutory interest rate of seven percent is more likely to put KFx in the position it would have been in had Arthnex entered a reasonable royalty agreement . . ." As Wi-LAN has shown, the royalty agreements typically entered into by both parties have specified interest on late payments of greater than 7%, justifying an award of prejudgment interest at the statutory rate. (Mot. at 8-9; Kennedy Decl. Ex. I.1.)

Apple is also incorrect that evidence of the late fees assessed to its licensees is "irrelevant" because "they are punitive rather than compensatory provisions." (Opp. at 9.) The license agreements themselves eschew any punitive language and instead specify the interest terms for any late fees assessed, as discussed in *Wordtech*. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ As in *Wordtech*, these rates are informative when determining the appropriate interest rate and compensate for lateness rather than punish.

Further, Wi-LAN's lending practices and WACC provide helpful benchmarks for determining the appropriate interest rate. (Mot. at 10.) The purpose of prejudgment interest is "to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen.*

*Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983).  As courts have noted, "no one would make a longterm, voluntary loan [to an infringer] at the T–Bill rate."  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, No. CV-03-0597-PHX-MHM, 2009 WL 920300, at *2-3 (D. Ariz. Mar. 31, 2009), *opinion vacated in part on other grounds on reconsideration*, 682 F.3d 1003 (Fed. Cir. 2012) (awarding Arizona state statutory rate of 10% because "given the historically low rate of return on the T–Bill, the Court finds that the equities d[id] not justify using the T–Bill rate.").  Wi-LAN's loan to Montebello Technologies LLC was negotiated at arms-length and collateralized by a general security agreement, making the 15% interest (compounded annually) a helpful data point in determining what interest rate Wi-LAN would have required from Apple for its unsecured loan during the period of infringement.  (Mot. at 10.)  Additionally, Wi-LAN's WACC—which represents Wi-LAN's general cost of obtaining debt and equity financing in the absence of the royalties it would have received from Apple—exceeded the California statutory rate during the relevant period.  (*Id.*; Kennedy Decl. ¶¶ 9, 11, 12, Ex. G.)  For these reasons, Wi-LAN's evidence amply supports an award of prejudgment interest at the California statutory rate.[4]

### B.   Application Of The T-Bill Rate Is Not Appropriate

Apple contends that "Wi-LAN is not entitled to prejudgment interest at a higher rate than the typical T-Bill rate because it offered no evidence that it was forced to

---

[4] Apple fails to cite any support for the proposition that the magnitude of the interest award is relevant to the Court's task.  (Opp. at 5.)  ███████████████████████████████████████████████████████████████████████████████████████ And Apple's complaint that it will be "unfairly penalized . . . because the primary delay in this case was the two-year stay pending Wi-LAN's unsuccessful appeal" is also unfounded.  (Opp. at 5.)  The stay was granted at *Apple's request* and opposed by Wi-LAN (ECF No. 107).  In any event, courts routinely grant interest during the period of a stay—even where the *patentee* sought the stay.  *See, e.g.*, *Krippelz v. Ford Motor Co.*, 670 F. Supp. 2d 815, 819-20 (N.D. Ill. 2009) (awarding prejudgment interest where "Plaintiff sought the stay").

borrow money as a result of the alleged infringement."[5]  (Opp. at 6.)  That is not a requirement.  The Federal Circuit has held that "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate."  *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988) (same).  Courts in this District, and other California district courts, award prejudgment interest at the statutory rate without requiring evidence that the patentee borrowed money at rates above the T-Bill rate (let alone prime rate) as a result of the infringement.  *See, e.g.*, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 3:17-CV-01781-HZ, 2018 WL 1805102, at *2 (S.D. Cal. Apr. 17, 2018); *Qualcomm Inc. v. Broadcom Corp.*, No. 05CV1958-B (BLM), 2007 WL 9677112, at *9 (S.D. Cal. Oct. 29, 2007), *report and recommendation adopted*, 2007 WL 4351017 (S.D. Cal. Dec. 11, 2007); *U.S. Philips Corp. v. Media One CD Mfg., et al.*, No. CV 05-1501-JFW (CTx), ECF No. 93 (C.D. Cal. Apr. 26, 2006); *U.S. Philips Corp. v. CDVIDEO Mfg., Inc., et al.*, No. CV 04-2456 GPS (RNBx), ECF No. 74 (C.D. Cal. Feb. 22, 2006); *Brooktree Corp. v. Adv. Micro Devices, Inc.*, 757 F.Supp. 1101, 1103 (S.D. Cal. 1990).

Indeed, California courts have suggested that the statutory rate is the norm,

---

[5] Apple argues that "WI-LAN offered no evidence that it incurred significant litigation expenses in this case, likely because of 'success fee' arrangements with litigation law firms."  (Opp. at 8.)  ███████████████████████████████████████████████████████████████████████████████████████████  As the Supreme Court in *General Motors* noted, "an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement."  461 U.S. at 655; *see Carl Zeiss*, 2012 U.S. Dist. LEXIS 105928, at *7-8; *KFx*, 2014 WL 11961953, at *1.  Interest at 7% will put Wi-LAN closer to the position it would have been in had it not had to share the jury's reasonable royalty award.

requiring a showing as to why a court should "*depart* from the California statutory interest rate of seven (7) percent." *In re Hayes Microcomputer Prod., Inc. Patent Litig.*, 766 F.Supp. 818, 824 (N.D. Cal. 1991) (emphasis added); *see also Brooktree*, 757 F. Supp. at 1103 (awarding California statutory rate where patentee had "given no reason why a *higher* rate should be used") (emphasis added).[6]  Further, in *Qualcomm*, the patentee merely "request[ed] that the Court assess pre-judgment interest at such interest rate as the Court deems fair." No. 05CV1958-B (BLM), ECF No. 625-1, at 23. In the absence of any affirmative evidence of borrowing, the Court noted that "several courts have found it appropriate to base prejudgment interest in patent cases on the state statutory rate" and that "[t]his Court agrees that the state rate is an appropriate guideline." 2007 WL 9677112, at *9. Apple fails to address *Hayes*, *Brooktree*, or *Qualcomm* in its opposition.[7,8]

Further, Apple's statement that "courts use Treasury instruments to set the prejudgment interest rate . . . four times more often than they use a state statutory rate" (Opp. at 6) is unhelpful as this is national data, with widely varying state statutory rates, some of which are no better than the prime rate and others far higher than California's 7%. Indeed, Apple's source, the Kerr and Troxel treatise, reports that more than 60% of federal district judges have specified at least the prime rate or higher, while less than

---

[6] Indeed, in *In re Hayes*, the patentee sought a rate *above* the statutory rate based on evidence that the patentee "actually borrowed funds at a higher rate during the relevant time period." 766 F.Supp. at 824. The court defaulted to the California statutory rate, explaining that the evidence of borrowing "is too speculative, as large corporations, particularly in research-and-development intensive industries, borrow funds for all sorts of reasons." *Id.* Evidence of borrowing thus is not dispositive, and the Court can award the California statutory rate in the absence of borrowing at above the rate. *See id.*

[7] Apple also ignores the award of the statutory rate in *Carl Zeiss* and *Wordtech*.

[8] Apple attempts to distinguish *Columbia Sportswear* (Opp. at 7) because it "involved compensation for infringement of a design patent" where a "patentee is entitled to 'recover an infringer's 'total profit' made from the infringement." (*Id.*) But Apple omits the court's reasoning that prejudgment interest is equally applicable to damages awards pursuant to 35 U.S.C. §§ 284 and 289. 2018 WL 1805102, at *1.

40% have used the T-Bill rate urged by Apple. It further reports that California federal courts award the 7% statutory rate as frequently as the T-Bill rate. (Ex. 12.)

As Apple itself has argued when it was a plaintiff, the "T-Bill rate represents a rate that is grossly inadequate to address the true economic harm that [the infringer]'s delay has imposed." *Apple v. Samsung*, No. 12-cv-00630-LHK, ECF No. 1897-3, at 30 (N.D. Cal. May 23, 2014).[9] Apple argued further: "There is no reason that Samsung should reap the advantage of what is effectively a loan from Apple with minimal interest for three years." *Id.* Wi-LAN agrees that the T-Bill rate is inadequate to compensate a prevailing patentee. Courts have similarly rejected an infringer's insistence that a court apply T-Bill rates, finding that the rates are too low to adequately compensate the patentee. *See, e.g.*, *Morpho Detection, Inc. v. Smiths Detection Inc.*, No. 2:11CV498, 2013 WL 5701522, at *1 fn. 2 (E.D. Va. Oct. 17, 2013) (noting that the "Treasury Bill rate is the cost of raising funds by the Government, and thus does not generally reflect a corporation's loss of use of money over time" and "would deprive [patentee] of virtually any prejudgment interest award"); *A&L Tech. v. Resound Corp.*, No. C 93-00107 CW, 1995 WL 415146, at *5 (N.D. Cal. June 29, 1995) (noting T-Bill rate "assume[s]that the hypothetical loan to [infringer] was risk-free.").

Finally, while Apple points to Wi-LAN's financial health as somehow being indicative of the fact that it was not "harmed by Apple's alleged infringement" (Opp. at

---

[9] Apple's reliance on an award of the T-Bill rate in *Apple v. Samsung*, *Presidio II*, and others are unhelpful here. (Opp. at 5-7.) These cases rely a Federal Circuit affirmance of a decision to award the T-Bill rate. *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997). In finding no error, the Federal Circuit noted that "the district court found that there was no evidence that Laitram borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of NEC's infringement." *Id.* The Federal Circuit did not, however, hold whether these factors considered by the district court are required in every case. Indeed, the Federal Circuit's opinions in *Uniroyal*, 939 F.2d at 1545, and *Studiengesellschaft Kohle* suggest the opposite—there is no "rule requiring . . . an affirmative demonstration, i.e., proof of borrowing at or above" a rate for a court to award prejudgment interest at that rate. 862 F.2d 1579-80.

7), Wi-LAN's financial health during the period of infringement does little to demonstrate what interest rate would be appropriate for its over four-year unsecured loan to Apple. And similarly Apple's ability to borrow at rates similar to the T-Bill rate over the period of infringement is unhelpful. Unlike Apple's lenders, Wi-LAN is not a financial institution in the business of loaning $145.1M to other companies with essentially no interest. On the contrary, when Wi-LAN has exhibited an ability to issue a loan, it has done so with a considerable interest rate (as, for example, demonstrated by its loan to Montebello (Mot. at 10)). For these reasons, the Court should apply the California statutory rate of seven percent interest per annum to fully compensate Wi-LAN for the lost use of its money during the period of infringement.

### C. In The Alternative, The Court Should Award Wi-LAN Prejudgment Interest At The Applicable Prime Rates, Compounded Quarterly

Should the Court decline to apply the California statutory rate, Wi-LAN should be awarded prejudgment interest at the prime rate. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2008 WL 928535, at *3-4 (N.D. Cal. Apr. 4, 2008); *A&L Tech.*, 1995 WL 415146, at *5 ("Unlike the Treasury bill rate, the prime rate does not assume that the hypothetical loan to [the infringer] was risk-free, but rather only that [infringer] was credit-worthy."). In cases where the evidence is "inconclusive", courts have found that "the prime rate more nearly approximates the position [the patentee] would have been in." *A&L Tech.*, 1995 WL 415416, at *5. Wi-LAN's extensive evidence of ███████████████████████████████████, its loan to Montebello, and its WACC (Mot. at 8-10) is not "inconclusive" and demonstrates that the California statutory rate is reasonable, but in any case Wi-LAN should be compensated with prejudgment interest at least at the applicable prime rates, compounded quarterly. Apple's opposition does not address the applicable prime rates.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Wi-LAN's motion and enter the parties' stipulation as modified in Exhibit 9.

| | | |
|---|---|---|
| 1 | Dated:  November 20, 2018 | Respectfully, |
| 2 | | |
| 3 | | By: */s/Allison Goddard* |
| 4 | | Allison H. Goddard (211098) |
| | | ali@pattersonlawgroup.com |
| 5 | | PATTERSON LAW GROUP |
| | | 402 West Broadway, 29th Floor |
| 6 | | San Diego, CA 92101 |
| 7 | | (619) 398-4760 |
| | | (619) 756-6991 (facsimile) |
| 8 | | |
| 9 | | Mike McKool |
| | | mmckool@mckoolsmith.com |
| 10 | | Ashley N. Moore |
| 11 | | amoore@mckoolsmith.com |
| | | Warren Lipschitz |
| 12 | | wlipschitz@mckoolsmith.com |
| 13 | | McKOOL SMITH, P.C. |
| | | 300 Crescent Court, Suite 1500 |
| 14 | | Dallas, TX 75201 |
| 15 | | (214) 978-4000 |
| | | (214) 978-4044 (facsimile) |
| 16 | | |
| 17 | | Brett Cooper |
| | | bcooper@mckoolsmith.com |
| 18 | | Jonathan Yim |
| 19 | | jyim@mckoolsmith.com |
| | | Kevin Schubert |
| 20 | | kschubert@mckoolsmith.com |
| 21 | | Drew B. Hollander |
| | | dhollander@mckoolsmith.com |
| 22 | | Christopher McNett |
| 23 | | cmcnett@mckool.com |
| | | McKOOL SMITH, P.C. |
| 24 | | One Bryant Park, 47th Floor |
| 25 | | New York, NY 10036 |
| | | (212) 402-9400 |
| 26 | | (212) 402-9444 (facsimile) |
| 27 | | |
| 28 | | Steven J. Pollinger |

|   |   |
|---|---|
| 1 | spollinger@mckoolsmith.com |
| 2 | Seth Hasenour |
|   | shasenour@mckoolsmith.com |
| 3 | MCKOOL SMITH, P.C. |
|   | 300 W. 6th Street, Suite 1700 |
| 4 | Austin, TX 78701 |
| 5 | (512) 692-8700 |
|   | (512) 692-8744 (facsimile) |

*Attorneys for Wi-LAN Inc.*

# PROOF OF SERVICE

I hereby certify that on November 20, 2018, I caused a copy of this pleading to be delivered via CM/ECF on the counsel of record.

Dated: November 20, 2018

By: */s/ Allison Goddard*
Allison H. Goddard (211098)
 ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 West Broadway, 29th Floor
 San Diego, CA 92101
(619) 398-4760
(619) 756-6991 (facsimile)

*Attorneys for Plaintiff,
Wi-LAN Inc.*