JOHN ALLCOCK (Bar No. 98895)
john.allcock@dlapiper.com
SEAN C. CUNNINGHAM (Bar No. 174931)
sean.cunningham@dlapiper.com
ERIN P. GIBSON (Bar No. 229305)
erin.gibson@dlapiper.com
ROB WILLIAMS (Bar No. 246990)
robert.williams@dlapiper.com
TIFFANY MILLER (Bar No. 246987)
tiffany.miller@dlapiper.com
JACOB ANDERSON (Bar No. 265768)
jacob.anderson@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, California 92101-4297
Tel:   619.699.2700
Fax:   619.699.2701

Attorneys for Defendant APPLE INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WI-LAN, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>APPLE INC.,<br><br>　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO.  3:14-CV-1507-DMS-BLM (CONSOLIDATED)<br><br>CASE NO. 3:14-CV-2235-DMS-BLM (LEAD CASE)<br><br>**APPLE INC.'S REPLY BRIEF IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(B) AND/OR MOTION FOR A NEW TRIAL**<br><br>▬▬▬▬▬<br><br>Date:　November 30, 2018<br>Time:　1:30 p.m.<br>Dept.:　13A<br>Judge:　Hon. Dana M. Sabraw |

# **TABLE OF CONTENTS**

**Page**

I. THE COURT SHOULD ORDER JMOL OR A NEW TRIAL ON LIABILITY. ...................................................................................................1

    A. Wi-LAN's Opposition Brief Confirms It Tried To Rewrite The Court's Claim Constructions At Trial. ...................................................1

    B. Wi-LAN's Other Liability Arguments Fail. ........................................3

II. THE COURT SHOULD ENTER JMOL OR GRANT A NEW TRIAL OR REMITTITUR ON DAMAGES ............................................................4

    A. Apple Properly Challenged Mr. Kennedy's "Infrastructure Costs" Analysis, Which He Admitted Was Flawed. ...........................4

    B. Wi-LAN Cannot Justify Disregarding The Smallest Salable Unit. .....5

    C. Wi-LAN Improperly Tried To Capture The Entire Alleged "Benefit" Of VoLTE, Which Wi-LAN Did Not Invent. .....................6

    D. Professor Prince's Survey Opinions Are Not A Proxy For Apportionment. ....................................................................................7

    E. Wi-LAN Cannot Defend Its Use Of The Unapportioned Samsung Licenses And Rate Sheets. ....................................................8

    F. Wi-LAN's MIA Arguments Fail. ......................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ........................................................................... 7, 8

*AstraZeneca AB v. Apotex Corp.*,
   782 F.3d 1324 (Fed. Cir. 2015) ................................................................................ 6

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015) ................................................................................ 9

*DataQuill Ltd. v. High Tech Comp. Corp.*,
   887 F. Supp. 2d 999 (S.D. Cal. 2011) ...................................................................... 9

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ................................................................................ 8

*GPNE Corp. v. Apple, Inc.*,
   12-cv-2885, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ..................................... 5

*Ironworks Patents, LLC v. Apple, Inc.*,
   255 F. Supp. 3d 513 (D. Del. 2017) ....................................................................... 10

*Kaist IP US LLC v. Samsung Elecs. Co., Ltd.*,
   No. 16-cv-1314, 2018 WL 2688185 (E.D. Tex. June 5, 2018) ................................ 6

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) .................................................................................... 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ................................................................................ 9

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
   No. 2:07-cv-565, 2011 WL 2417367 (E.D. Tex. June 14, 2011) .......................... 10

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007) ................................................................................ 3

*Power Integrations, Inc. v. Fairchild Semi. Int'l, Inc.*,
   904 F.3d 965 (Fed. Cir. 2018) .................................................................................. 5

DLA Piper LLP (US)
San Diego

WEST\284161835.3

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
   820 F.3d 419 (Fed. Cir. 2016) .............................................................................. 1

*Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd.*,
   No. 12-cv-11935, 2015 WL 6408118 (D. Mass. Oct. 23, 2015) ......................... 10

*Versata Software Inc. v. SAP Am., Inc.*,
   No. 2:07-cv-153, 2011 WL 4017939 (E.D. Tex. Sept. 9, 2011) ............................ 7

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*,
   No. 10-cv-10578, 2016 WL 5956325 (E.D. Mich. Oct. 14, 2016) ....................... 8

DLA PIPER LLP (US)
SAN DIEGO

iii

APPLE'S POST-TRIAL REPLY BRIEF
3:14-cv-2235-DMS-BLM

WEST\284161835.3

# I. THE COURT SHOULD ORDER JMOL OR A NEW TRIAL ON LIABILITY.

## A. Wi-LAN's Opposition Brief Confirms It Tried To Rewrite The Court's Claim Constructions At Trial.

As it did at trial, Wi-LAN is trying to rewrite the Court's claim constructions to cover bandwidth allocation at a location other than "connections … between the subscriber unit and its users"; namely, "queues" that are indisputably inside the baseband processor. For at least five reasons, the Court should reject Wi-LAN's arguments and enter JMOL of noninfringement.

First, the testimony Wi-LAN cites confirms that its infringement case depends on its improper "allocation-across-queues" theory. Wi-LAN cites Dr. Madisetti's testimony that allocation across queues by itself satisfies the Court's claim construction: "a MAC that allocates bandwidth across these two queues … confirms that the Court's construction of a subscriber unit is met." Opp. at 4, citing Trial Tr. 282:22-283:1 (emphasis added); *see also* Trial Tr. 371:8-14. Wi-LAN never made its untimely "allocation-across-queues" argument during claim construction, and instead proposed constructions that require allocation across "user connections … between the subscriber unit and its users." Dkt. No. 203 at 5-8. Wi-LAN's new theory is flatly contrary to the Court's claim construction. Wi-LAN offered no proof of infringement at trial under the Court's actual claim construction.

Second, Wi-LAN's reference to the "allocating between the queues" limitation in claim 26 of the '145 patent (Opp. at 3) actually supports Apple's position. The "subscriber unit" limitation in claim 26 is a separate limitation that has a different meaning than the "allocating between the queues" limitation that appears later in the claim. *See SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 431 (Fed. Cir. 2016) ("Different claim terms are presumed to have different meanings."). Thus, claim 26 requires allocation across "connections" in the preamble and a different allocation "between the queues" later in the claim. Wi-LAN's proof at trial went to the second claimed allocation, not the first. Indeed,

in closing arguments Wi-LAN doubled-down on its effort to ignore the claim's preamble: "Now, Apple says the claim requires you to allocate the bandwidth over on the far left of that diagram where it says PCIe and i2s bus, not at the queues. But that's wrong. The claim tells you where to allocate the bandwidth and it specifically says, do it at the queues." Trial Tr. 1252:8-12 (emphasis added). This was and is an improper effort to rewrite the Court's construction.

Third, Wi-LAN is wrong that queues are part of the claimed "connections." Opp. at 3-4. Wi-LAN concedes the purported connections "are each located between the subscriber unit (baseband processor) and its users … and respectively go across two separate buses (namely the I2S bus and the PCIe bus)." Opp. at 2. Queues are not between the subscriber unit and its users, but instead are "structure(s) containing data to be transmitted" inside the baseband processor. *See* Dkt. No. 203 at 9. Dr. Madisetti's testimony confirms that queues and "connections" are different structures. Trial Tr. 371:8-14 ("[T]hese are the connections that come to the queues, and the allocation is done to those queues."). Because structures that receive data are not the same as connections that transmit data, allocation across queues is different from allocation across user connections.

Fourth, Wi-LAN's "allocation-across-queues" theory is a repackaging of its failed argument in the -798 case. Wi-LAN's claim that queues and logical channels "are not synonyms" (Opp. at 4, n.5) is contrary to Dr. Madisetti's admission that "logical channels are a name for the queues." Trial Tr. 308:19-21. Wi-LAN tries to distinguish the -798 decision because the logical channels/queues in the baseband processor receive data from two purported connections, rather than one. Opp. at 4. But in both cases, Wi-LAN pointed to bandwidth allocation that allegedly occurs in the same location—at the logical channels or queues inside the baseband processor. *See* -798 Case, ECF No. 199, Wi-LAN's MSJ Opp. at 20. Those are not the claimed "connections." -798 Case, ECF No. 278 at 9 ("[T]he logical channels exist in the baseband processor only, and thus do not satisfy the Court's construction of 'UL

2

connection'"). The number of buses transmitting data to the baseband processor does not transform allocation across queues into allocation across user connections.

Fifth, Wi-LAN's "substantial evidence" arguments, based on three snippets of testimony (Opp. at 4), fail to support the verdict. The first excerpt confirms Wi-LAN relied on its "allocation-across-queues" theory at trial: "you have the queues, you have the allocation of bandwidth to each of these queues 60, 20, and 20." Trial Tr. 285:16-17. The second excerpt does the same thing: "they actually do the allocation of the bandwidth to these queues." *Id.* 283:7-8. The third excerpt confirms Dr. Madisetti applied an erroneous construction of "connections": "The connection is between the user and the queues." *Id.* 385:22-23 (emphasis added). That is not the Court's construction. *See* Dkt. No. 203 at 8.[1] Thus, Wi-LAN failed to offer substantial evidence that the baseband processor allocates bandwidth across connections "between the subscriber unit and its users."

### B. Wi-LAN's Other Liability Arguments Fail.

Wi-LAN's other liability arguments fail for the reasons stated in Apple's opening brief. For example, contrary to Wi-LAN's assertion, allocation to "users" is part of every asserted claim based on the Court's constructions of "subscriber unit" and "connections." Dkt. No. 203 at 5-8. Thus, Apple is not "impos[ing] a new claim construction on JMOL," but rather seeks to hold Wi-LAN to the actual claim constructions. As to divided infringement, Wi-LAN argues the claimed inventions do not extend beyond the subscriber unit which, according to Wi-LAN, is the baseband processor. Opp. at 8-9. On the contrary, the asserted claims as construed explicitly recite a base station that Apple does not use or control. Wi-

---

[1] Dr. Madisetti's conclusory testimony that the accused products infringe under the Court's constructions (Opp. at 3, citing Trial Tr. 280:21-289:13, 396:23-397:5) also is not substantial evidence, particularly because he did not apply the Court's claim construction. *See PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1351, 1355 (Fed. Cir. 2007) (expert testimony "in conclusory terms" is not "substantial evidence in support of [plaintiff's] theory of infringement").

1  LAN's argument also is inconsistent with Wi-LAN's damages theory rejecting the
2  "subscriber unit" as the proper damages base. As to Sprint iPhones and iPhones as
3  sold by Apple, Wi-LAN treats the Court's statement that "placement of a VoLTE
4  call is not required for a finding of infringement" as determinative (Opp. at 10), but
5  it is not. Apple's noninfringement argument is not based on the "placement of a
6  VoLTE call," but rather is based on the absence of a "VoLTE connection," which is
7  required for Wi-LAN's infringement theory. As to DOE, Wi-LAN asserted DOE
8  infringement claims in the Final Pretrial Order yet failed to offer evidence in support
9  of those claims at trial, so the Court should grant JMOL on those claims.[2]

**II.   THE COURT SHOULD ENTER JMOL OR GRANT A NEW TRIAL OR REMITTITUR ON DAMAGES.**

   **A.   Apple Properly Challenged Mr. Kennedy's "Infrastructure Costs" Analysis, Which He Admitted Was Flawed.**

Contrary to Wi-LAN's argument, Apple challenged Dr. Madisetti's "LTE benefits" opinions (*see* Mot. at 17-18), which were the only technical basis for Mr. Kennedy's "infrastructure costs" opinions (Trial Tr. 627:4-9). And Wi-LAN has no answer for Mr. Kennedy's admission that his infrastructure cost analysis—*i.e.*, that Apple would pay the network carriers over a billion dollars to improve infrastructure absent the alleged benefits of the claimed inventions—was not economically feasible. Trial Tr. 629:18-19 ("not that Apple would go write a check to AT&T or Verizon"); *id*. 628:16 ("It's just not economically feasible to do."). Mr. Kennedy even conceded the parties would not have agreed to his infrastructure cost analysis: "[s]o obviously, Apple would not be arguing for this as an alternative, but Wi-LAN would be pointing it out to Apple, hey, here's one thing you could do, <u>but you really can't</u>." *Id.* 628:13-16 (emphasis added). Wi-LAN also ignores that Dr. Madisetti's

---

[2] Apple rests on its opening brief and arguments during the claim construction proceedings regarding the correct constructions of "subscriber unit" and "connections." Mot. at 6-8. Contrary to Wi-LAN's argument (Opp. at 6-8), these claim construction arguments support Apple's request for a new trial.

"LTE-only benefits" are improper because the Federal Circuit ruled that LTE-only iPhones do not infringe.  Mot. at 17-18.  Kennedy's "infrastructure costs" analysis thus does not support the verdict.

### B. Wi-LAN Cannot Justify Disregarding The Smallest Salable Unit.

Wi-LAN does not address Apple's factual showing that the $10-20 baseband processor is the smallest salable unit.  *See* Opp. at 14-17.  Thus, because "the parties do not dispute any facts underlying the smallest salable patent-practicing unit determination," the Court should hold that "the baseband processor is the proper smallest salable patent-practicing unit."  *GPNE Corp. v. Apple, Inc.*, 12-cv-2885, 2014 WL 1494247, at *13 (N.D. Cal. Apr. 16, 2014); *see LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("It is generally required that royalties be based … on the 'smallest salable patent-practicing unit'").  Wi-LAN cannot justify a damages base that is six to 12 times larger than the smallest salable unit—*i.e.*, $121.37 per unit (Wi-LAN's position) versus $10-20 per unit (baseband processor cost).  That Wi-LAN's "direct valuation" calculation dwarfs the cost of the smallest salable unit confirms that Wi-LAN did not apportion its damages base.

Wi-LAN mischaracterizes the smallest salable unit as "only an evidentiary tool" that it can disregard because it "did not present the jury with Apple's overall revenues."  Opp. at 16.  That is not the law.  Wi-LAN ignores the more important consideration that the smallest salable unit helps value asserted patents and mitigates the "considerable risk that the patentee will be improperly compensated for non-infringing components of that product."  *LaserDynamics*, 694 F.3d at 67.  This risk is precisely why the Federal Circuit requires that "the royalty base should not be larger than the smallest salable unit embodying the patented invention."  *Power Integrations, Inc. v. Fairchild Semi. Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018).  Wi-LAN ignores the *LaserDynamics* and *Power Integrations* decisions, and instead cites an Eastern District of Texas opinion that misapplies Federal Circuit precedent.  *See* Opp. at 16 (quoting *Kaist IP US LLC v. Samsung Elecs. Co., Ltd.*, No. 16-cv-

1314, 2018 WL 2688185, at *3 (E.D. Tex. June 5, 2018)).

Wi-LAN's reliance on *AstraZeneca AB v. Apotex Corp.* is misplaced, because the patent claims in that case were drawn to the entire accused product. 782 F.3d 1324, 1338-40 (Fed. Cir. 2015) (rejecting defendant's "invitation to remove the conventional elements from the overall value of the combination apparatus"). In contrast, Wi-LAN's patent claims are drawn to a "subscriber unit" or "subscriber station," which Wi-LAN contends is the baseband processor, not the entire accused iPhone. Trial Tr., 166:4-6, 383:25-384:1, 442:2-4, 680:19-683:3; Opp. at 9.

In short, Wi-LAN's rejection of the smallest salable unit in favor of a royalty base that is six to 12 times larger than the value of that smallest salable unit violates Federal Circuit precedent. Wi-LAN's attempt to backstop its failure to use the smallest salable unit by pointing to Kennedy's 99/1 percent profit allocation (Opp. at 18) does not fix the problem, because Wi-LAN started its damages analysis at the wrong place—the value of the entire iPhone.

### C. Wi-LAN Improperly Tried To Capture The Entire Alleged "Benefit" Of VoLTE, Which Wi-LAN Did Not Invent.

Wi-LAN does not dispute Mr. Stanwood did not invent all of the alleged call quality benefits of VoLTE. Instead, Wi-LAN contends Dr. Madisetti's VoLTE call quality benefit opinions were limited to VoLTE call quality during "background loading." Opp. at 18. This is a distinction without a difference, and it contradicts Dr. Madisetti's testimony equating the patent's "benefits" with VoLTE call quality: "[y]ou get great call quality from the VoLTE, that is 2.3 MOS better." Trial Tr. 381:4-5. Wi-LAN also cites no evidence that the 2.3 MOS score difference under "background loading" conditions is attributable solely to Stanwood's alleged inventions, because there is no such evidence. Wi-LAN's failure to apportion is highlighted by the fact that Dr. Madisetti opined that the '761 patent also contributed to the 2.3 MOS score difference (Dkt. No. 352, Wi-LAN Opp., Ex. 3, pp. 112-116), yet his opinions did not change at all after that patent dropped out of

the case. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 n.5 (Fed. Cir. 2014) ("Motorola did not adjust its 40%-50% rate when the '559 patent dropped out of the case on summary judgment, further suggesting that the rate was never tied to the specific patents at issue."). Instead, Dr. Madisetti credited the <u>entire</u> 2.3 MOS score difference to two claims and failed to account for any other contributions to VoLTE call quality. Thus, Madisetti did not apportion his "MOS score" analysis at all.

Wi-LAN's brief exposes the infirmities in Dr. Madisetti's benefits opinions. Wi-LAN states that "[c]omparing the accused products' VoLTE capability with the next-best NIA (Skype) … demonstrates the 'incremental value that the patented invention adds to the end product.'" Opp. at 18. Wi-LAN also claims Dr. Madisetti measured the "incremental benefit" of the '145 patent claims "by comparing the infringing capabilities of the accused products to the next-best NIA: Skype." Opp. at 17. Dr. Madisetti did no such thing. He did not measure anything relating to the "<u>accused products'</u> VoLTE capability"; rather, he plucked two measurements of a Samsung phone out of a third-party report, without determining whether the Samsung phone practiced the '145 patent claims or even had similar VoLTE call quality compared to an iPhone. *See Versata Software Inc. v. SAP Am., Inc.*, No. 2:07-cv-153, 2011 WL 4017939, at *4 (E.D. Tex. Sept. 9, 2011) ("[A]t no time does any expert attempt to apportion the contribution of the patented invention to [defendant's] product."). Dr. Madisetti could not have reliably examined the "incremental benefit" of the asserted claims without concluding that the Samsung device actually practiced those claims. He admittedly did not do this.

### D. Professor Prince's Survey Opinions Are Not A Proxy For Apportionment.

Wi-LAN cites no authority approving use of conjoint surveys as a proxy for apportionment, because the authority supports Apple's position that, while useful for some purposes, conjoint surveys are not a proxy for apportionment. *See, e.g.*, *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 WL

5956325, at *6 (E.D. Mich. Oct. 14, 2016) (conjoint survey "did not attempt to determine a real world price for the four patented features, and did not endeavor to … determine the value of the four patented features relative to the multitude of non-patented features in the accused devices"). In fact, Prince made the same admission as Visteon's expert that "[i]t is important to recognize that these values do not represent the actual amounts consumers would be willing [to] pay for the inclusion of the patented features in a competitive market." *Compare Visteon with* Trial Tr. 607:4-5 ("I don't even believe we should be comparing these to price"), 578:19-579:4 (price and willingness-to-pay are "two separate ideas"). Prince even disagreed with the idea of adding up the value of the unpatented features to determine the relative value of the patented versus unpatented features. *See id*. But that is the definition of apportionment. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018). Wi-LAN also ran afoul of *Apple v. Motorola*, where the Federal Circuit found the expert "attempted to isolate the value of these similar features by valuing other, non-claimed features of the Trackpad and subtracting this value." 757 F.3d at 1318. Wi-LAN did no such thing, leaving unfulfilled its pre-trial promise to apportion "by subtracting Professor Prince's results from the accused iPhone profit—leaving behind only the value of the unaccused features." Dkt. No. 352, Wi-LAN Daubert Opp., at 18-19.

### E. Wi-LAN Cannot Defend Its Use Of The Unapportioned Samsung Licenses And Rate Sheets.

Wi-LAN's defense of the unapportioned Samsung licenses fails. First, ▮▮▮ ▮▮▮ ▮▮▮ Trial Tr. 660:3. Second, Kennedy did not

1  calculate an implied royalty rate for the Samsung licenses or the amount attributable
2  to the asserted patents, leaving the ▇▇▇▇▇▇▇▇▇▇ "not apportioned to
3  anything specific." *See* Trial Tr. 696:1-9, 692:11-18.  Because Kennedy did not
4  calculate any implied royalty rate for the Samsung licenses or adjust them by even
5  one dollar, he failed to "begin[] with rates from comparable licenses and then
6  'account[s] for differences in the technologies and economic circumstances of the
7  contracting parties.'" *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys.,*
8  *Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015). ▇▇▇▇▇▇▇▇▇▇▇▇
9  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
10 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
12 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
14 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
15 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
16 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
19 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
20 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
21 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23     Wi-LAN's defense of its rate sheets also fails.  Wi-LAN's claim that Kennedy
24 made "adjustments" to the $0.85 rate (Opp. at 23) is belied by the fact that he chose
25 that precise amount as his final rate, then testified that "I don't think they would
26 have gone below that." Trial Tr. 671:20-672:3.  Wi-LAN also ignores the cases that
27 reject the use of rate sheets (Mot. at 22) and instead cites irrelevant decisions. *See*
28 *Ironworks Patents, LLC v. Apple, Inc.*, 255 F. Supp. 3d 513, 530 (D. Del. 2017)

1  (mentioning "standard term sheet" with no analysis); *Trustees of Boston Univ. v.*
2  *Everlight Elecs. Co., Ltd.*, No. 12-cv-11935, 2015 WL 6408118, at *2 (D. Mass.
3  Oct. 23, 2015) (interpreting actual license agreement); *Mondis Tech., Ltd. v. LG*
4  *Elecs., Inc.*, No. 2:07-cv-565, 2011 WL 2417367, at *7 (E.D. Tex. June 14, 2011)
5  (discussing "real-world standard rates"). ████████████████████
6  ████████████████████████████████████████
7  ████████████████████████████████████████
8  ████████████████████████████████████████
9  ████████████████████████████████████████
10 ███████████████████████████████████████
11 ████████████████████████████████████████
12 ██████████████████████████████████[4]

13  **F.  Wi-LAN's MIA Arguments Fail.**

14  ████████████████████████████████████
15 ████████████████████████████████████████
16 ████████████████████████████████████████
17 ████████████████████████████████████████
18 ██████████████████████████████████████
19 ████████████████████████████████████
20 ██████████████████████████████████████
21 ██████████████████████████████████████
22 ████████████████████

23  /////
24  /////
25  /////

---

[4] Apple preserved its objections to Wi-LAN's use of the Samsung licenses and the Wi-LAN rate sheets by filing written objections during trial. Dkt. No. 462 at 2, 5; Dkt. No. 455 at 1.

| | |
|---|---|
| Dated:  November 20, 2018 | DLA PIPER LLP (US) |
| | By: */s/ Sean C. Cunningham* |
| |     John Allcock |
| |     Sean C. Cunningham |
| |     Erin P. Gibson |
| |     Rob Williams |
| |     Tiffany Miller |
| |     Jacob Anderson |
| | Attorneys for Defendant Apple Inc. |

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

      /s/ *Sean C. Cunningham*
      Sean C. Cunningham