# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., <br><br> Plaintiff, <br><br> vs. <br><br> WI-LAN, INC., <br><br> Defendant. <br> _____ <br><br> AND ALL RELATED COUNTERCLAIMS. | CASE NO. 14cv2235 DMS (BLM) <br><br> **ORDER (1) DENYING APPLE INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, (2) GRANTING APPLE INC.'S MOTION FOR A NEW TRIAL AND/OR REMITTITUR AND (3) DENYING WI-LAN'S MOTION FOR SUPPLEMENTAL DAMAGES, ONGOING ROYALTY, AND PREJUDGMENT AND POST JUDGMENT INTEREST** |

This case comes before the Court on Apple Inc.'s renewed motion for judgment as a matter of law and/or motion for a new trial and Wi-LAN's motion for supplemental damages, ongoing royalty, and prejudgment and post judgment interest. On November 30, 2018, the Court heard argument on the damages portion of Apple's motion. Ashley Moore appeared and argued for Wi-LAN, and Sean Cunningham appeared and argued for Apple. After reviewing the parties' briefs, the record, the relevant legal authority, and after hearing argument from counsel, the Court issues the following rulings:

/ / /

**I.**


## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Apple moves for judgment as a matter of law on the issue of infringement. "A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). In the Ninth Circuit, "'[j]udgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (quoting *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002)). "In other words, '[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor.'" *Id.* (quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005)). When considering a motion for judgment as a matter of law, the court must view the evidence "'in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party.'" *Id.* at 1205-06 (quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)).

Here, Apple raises a number of arguments in support of its motion for judgment as a matter of law on the issue of infringement. Several of these legal arguments were raised and rejected prior to trial, *e.g.*, the claim construction arguments. Apple has failed to show that the Court's previous rulings were in error, and thus those arguments do not warrant judgment as a matter of law in Apple's favor. On the evidentiary arguments, Apple has failed to show that no reasonable juror could have found for Wi-LAN, and thus those arguments also do not warrant judgment as a matter of law in

Apple's favor. Thus, the Court denies Apple's motion for judgment as a matter of law on the issue of infringement.[1]

## II.

## MOTION FOR NEW TRIAL OR REMITTITUR

Apple's motion for a new trial on damages is based on Federal Rule of Civil Procedure 59, which provides: "The court may, on motion, grant a new trial on all or some of the issues-and to any party-as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). "A trial court should grant a motion for a new trial if (1) the jury instructions were erroneous or inadequate, (2) the court made incorrect and prejudicial admissibility rulings, or (3) the verdict is contrary to the great weight of the evidence." *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004) (citations omitted).

As an alternative to a new trial on damages, Apple requests that the Court enter a conditional order of remittitur to a $10 million damages award. "'The Court has discretion to grant a remittitur, reducing the damages to the maximum authorized under the evidence, and then offer Plaintiffs the choice of accepting a remittitur (a reduction) of the award in lieu of a new trial on the issue of the damages only.'" *Coach, Inc. v. Celco Customs Services Co.*, No. CV 11-10787 MMM (FMOx), 2014 WL 12573411, at *23 n.128 (C.D. Cal. June 5, 2014) (quoting *Dixon v. City of Coeur d'Alene*, No. 2:10-cv-00078-LMB, 2012 WL 2923149, at *8 (D. Idaho July 18, 2012)).

/ / /

---

[1] Apple also moves for judgment as a matter of law of no damages on the ground Wi-LAN "failed to meet its burden of proving damages." (Mem. of P. & A. in Supp. of Apple's Mot. at 11.) At oral argument, Apple presented the Court with another option, namely entering judgment as a matter of law in the amount of $24 million in damages. That was the first mention of this option, and thus the Court declines to consider it here. Even if the Court considered it, however, Apple has failed to show there is sufficient evidence in the record for the Court to enter judgment as a matter of law in that amount. Furthermore, Apple's arguments on damages are directed more toward Wi-LAN's methodology, not a lack of evidence to support a damages award. Therefore, the Court addresses the issue of damages below under Apple's alternative motion for a new trial or remittitur.

In this case, the primary point of contention on the damages issue is apportionment.[2] Both sides agree that apportionment was required, but they disagree on the method for doing so. Apple apportioned by using the smallest salable patent practicing unit ("SSPPU"), which Apple argued was the baseband processor, while Wi-LAN used a "direct valuation" approach. Apple contends Wi-LAN's approach was riddled with legal and factual errors, and thus Apple is entitled to a new trial on damages or a remittitur to $10 million.

The general rule of apportionment is that "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). As stated above, there is no dispute that apportionment was required in this case. Thus, Wi-LAN was required, as part of its reasonable royalty analysis, to "apportion[ ] between the infringing and non-infringing features of the product." *Id.* (citations omitted).

Here, the accused product was the iPhone, and thus Wi-LAN had the burden to apportion the infringing features of the iPhone from the noninfringing features. Generally, this kind of apportionment is accomplished by ensuring the royalty base is not "larger than the smallest salable unit embodying the patented invention." *Id.*[3] If the SSPPU "itself contains several non-infringing features[,]" the patentee must apportion further by "estimat[ing] what portion of that smallest salable unit is attributed

/ / /
/ / /
/ / /
/ / /

---

[2] To be sure, Apple raises other arguments, namely, that evidence of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ skewed the damages horizon, and that Wi-LAN improperly included millions of non-infringing iPhones in the royalty base. However, in light of the discussion below, the Court declines to address these other arguments.

[3] The Court notes the parties dispute what constitutes the SSPPU in this case. Apple argues it is the baseband processor while Wi-LAN asserts it is the iPhone. The Court need not resolve this issue here, however.

to the patented technology." *Id.* (citing *VirnetX, Inc. v. Cisco Systems, Inc.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014).[4]

Wi-LAN argues, however, that apportionment may be accomplished by other means, and that courts should allow "flexibility in arriving at apportionment." (Wi-LAN's Opp'n to Mot. at 15) (citations omitted). There is authority to support both of these arguments, *see Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), (stating party may "estimate the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives."); *Commonwealth Scientific and Indus. Research Org. v. Cisco Systems, Inc. ("CSIRO")*, 809 F.3d 1295 (Fed. Cir. 2015) (stating "adaptability" may be necessary in the apportionment analysis), but neither of these cases resolves the issues raised here. *CSIRO*, for instance, was a unique case wherein the parties engaged in actual license negotiations to the patent in suit. 809 F.3d at 1303. In determining a reasonable royalty, the district court used those negotiations "as a lower bound on a reasonable royalty," and the Federal Circuit affirmed that approach. *Id.* at 1304. This case does not present facts similar to those found in *CSIRO*, or facts that would necessarily call for flexibility or "adaptability" in apportionment. Nevertheless, the Court cannot say, as a matter of law, that Wi-LAN's failure to use the SSPPU in its reasonable royalty analysis requires either a new trial or remittitur on damages. Rather, whether Apple is entitled to that relief depends on whether the damages theory Wi-LAN did present to the jury was the product of a reliable methodology, and if so, whether that methodology was reliably applied to the facts of this case.

///

---

[4] In exceptional cases, the entire market value of the product may be used, but "'only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts.'" *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) (quoting *SynQor, Inc. v. Artesyn Tech., Inc.*, 709 F.3d 1365, 1383 (Fed. Cir. 2013)). There is no dispute that requirement is not met in this case, and that the entire market value rule, therefore, does not apply.

Wi-LAN described its methodology in this case as apportionment through "direct valuation." Notably, Wi-LAN fails to cite any other case in which this methodology has been used to apportion the value of a patented invention as part of a reasonable royalty analysis. Nevertheless, Wi-LAN engaged three experts who each analyzed different factors as part of this methodology.

First, Wi-LAN had Dr. Madisetti study "the incremental benefits of the patented technologies and quantif[y] those technical benefits for each patent group, by comparing the Accused Products with the next-best noninfringing alternatives[.]" (Mem. of P. & A. in Opp'n to Apple's Mot. to Exclude Certain Opinions of Vijay Madisetti, David Kennedy, and Jeffrey Prince, ECF No. 352 at 9.) After doing so, Dr. Madisetti opined that voice over LTE ("VOLTE") capability increased a phone's Mean Opinion Score ("MOS") by 2.3 points.[5] In reaching that opinion, Dr. Madisetti relied on a report by Signals Ahead, which tested Samsung phones, that compared VOLTE technology with non-VOLTE technology Skype. Dr. Madisetti also conducted his own tests of VOLTE and non-VOLTE technology using iPhones. Dr. Madisetti also opined that claim 9 of the '145 Patent provided benefits in the form of 16% faster uploads, and that claim 1 of the '757 Patent provided benefits in the form of 6% faster downloads.

Professor Prince then took Dr. Madisetti's "benefits" opinions and assigned each of those purported benefits a monetary value through the use of his "willingness to pay" survey. Through that survey, Professor Prince determined the value of VOLTE technology was in the range of $69-$121, the value of increased upload speed was between $1.90 and $3.65, and the value of increased download speed was between $2.44 and $4.02.

Mr. Kennedy then took Dr. Madisetti's "benefits" opinions and Professor's Prince's valuations of those benefits to arrive at a reasonable royalty figure of $145

---

[5] During opening statement, Wi-LAN's counsel described VOLTE as the process of "sending voice calls over the current 4G or LTE networks which transmits the call, not through the telephone company but over the internet." (Trial Tr. at 14, July 23, 2018, ECF No. 452.)

million. That figure was based on a royalty rate of 85 cents per unit (iPhone), multiplied by the number of iPhones sold during the period of infringement (170.7 million). Mr. Kennedy explained his royalty rate by reference to Professor Prince's valuation numbers. He specifically relied on the low end valuation for the upload and download speeds ($1.90 and $2.44, respectively), but apportioned only 1% of the upper end valuation of VOLTE ($121) to Wi-LAN for a total valuation of that technology of $1.22. Mr. Kennedy used these valuations to argue the reasonableness of his 85 cents per unit royalty rate. Mr. Kennedy also used the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to show the reasonableness of his 85 cent royalty rate. He also relied on Wi-LAN's license agreement with Samsung, which provided for a lump sum payment of ▮▮▮▮▮▮▮▮▮▮ to Wi-LAN, as further support for the reasonableness of his ultimate damages figure. When asked why he did not use the SSPPU as his royalty base, particularly the baseband processor, Mr. Kennedy stated that was not required because Dr. Madisetti and Professor Prince valued the patented technology. In essence, he testified that he apportioned the patented features of the iPhone through Dr. Madisetti's and Professor Prince's "direct valuation" of those features.

The problem with this approach, however, specifically as it relates to claim 26 of the '145 Patent, was that Dr. Madisetti's starting point was VOLTE, not the patented technology. This, despite the testimony of Mr. Stanwood, one of the inventors of the '145 Patent, who stated he did not invent VOLTE. (Trial Tr. at 187:14-16, July 24, 2018, ECF No. 514.)

Apple argues Wi-LAN's use of VOLTE as a starting point overstated the footprint of the invention, and that the expert testimony incorporating that argument was therefore inadmissible. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (stating "trial court must carefully tie proof of damages to the claimed invention's footprint in the market place.") Wi-LAN disputes that it drew a connection between the patented technology and VOLTE and therefore overstated the footprint of

the invention. (Wi-LAN's Opp'n to Apple's Mot. at 18.) However, its arguments and the evidence presented at trial refute that contention.

First, Wi-LAN used VOLTE to prove infringement of claim 26 of the '145 Patent. (Trial Tr. at 614, July 26, 2018, ECF No. 506 ("Q: ... A VOLTE to VOLTE call, that is the technology that's enabled by the '145 Patent? A: Yes.").) Although that may have been appropriate, taking that theory and simply importing it into the damages case was not.

Second, Wi-LAN does not dispute that to determine the benefits of the invention claimed in the '145 Patent, Dr. Madisetti relied primarily on a Signals Ahead test of voice call quality *using VOLTE* compared to voice call quality *using Skype*. It is undisputed this test did not mention the '145 Patent or equate its benefits with the voice call quality of VOLTE, but Dr. Madisetti drew that connection anyway. Relying on that unproven connection, Dr. Madisetti then extrapolated from the Signals Ahead test that the benefit of the invention claimed in the '145 Patent was a 2.3 unit increase to the MOS score. (*See* Trial Tr. at 266-67, July 24, 2018, ECF No. 514 ("Q: So using the patented invention, the mean opinion score, the MOS, is almost twice as good as with Skype, the alternative? A: It's actually 2.3 MOS units, so the quality is quite significant. It could be even more than twice."); *id.* at 267 (Professor Madisetti stating he did his own study of "the benefits of VOLTE over Skype" using iPhones).

Third, Wi-LAN's counsel also drew this connection in questions to their witnesses. (*See id.* at 271-72 ("Q: Apple's use of these three inventions in the patent claims in the accused iPhones, do they improve the iPhone as a whole for voice and cellular data? A: Yes. Q: Better voice and higher speeds? A: Yes."); Trial Tr. at 381, July 25, 2018, ECF No. 493 ("Q: At a high level, what are [the technical benefits of using the inventions in the accused product]? A: You get great quality from the VOLTE, that is 2.3 MOS better."); Trial Tr. at 614, July 26, 2018, ECF No. 506 ("Q: ... A VOLTE to VOLTE call, that is the technology that's enabled by the '145 Patent?

/ / /

A: Yes."). *See also* Rep. Tr. at 6, Nov. 30, 2018, ECF No. 547 (Wi-LAN's counsel stating "the 2.3 MOS score is still specific to the patented technology.")

These opinions and evidence were without factual basis. Indeed, they contradicted the testimony of Mr. Stanwood that he did not invent VOLTE, and the testimony of Mr. Kennedy that the '145 patented technology was "related to" VOLTE, not equivalent to it. (Trial Tr. at 686:10-12, July 26, 2018, ECF No. 506.) (*See also id.* at 686:13-24 (acknowledging "there are other pieces of value, lots of little pieces of value that go into VOLTE"); Trial Tr. at 14, July 23, 2018, ECF No. 452 ("VOLTE has a lot of components to it. It uses LTE networks, it uses the internet. It has a lot of different components that a lot of different people and companies invented. When you see how complex it is you will see that all had to come together.") Wi-LAN's assertion that Dr. Madisetti's "benefits" opinion was limited to the patented technology is also contradicted by Mr. Kennedy's subsequent apportionment of only 1% of VOLTE call quality to Wi-LAN. Mr. Kennedy stated he allocated 1% of this value to Wi-LAN and 99% of the value to Apple using a profit sharing analysis, "even though that's – all 121 of that is created by the Wi-LAN technology[.]" (Trial Tr. at 623:10-25, July 26, 2018, ECF No. 506.) Had Dr. Madisetti's opinion been limited to the "benefits" of the patented invention, there would have been no need for Mr. Kennedy to further apportion any value of VOLTE to Wi-LAN. That "benefit" should have been accounted for by Dr. Madisetti.[6]

Absent a sufficient factual basis, Dr. Madisetti's opinion about the "benefits" of claim 26 of the '145 Patent should not have been presented to the jury. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012) (stating "new trial is required because the jury's verdict was based on expert opinion that finds no support in the facts in the record.") And since Dr. Madisetti's opinions were the basis for Professor Prince's opinions and Mr. Kennedy's opinions, those

---

[6] Mr. Kennedy did not apply a similar "profit sharing" deduction to the other two valuations, which further raises concerns about the reliability, perhaps, arbitrariness, of his opinions.

opinions also should have been excluded. *See Gbarabe v. Chevron Corp.*, No. 14-CV-00173-SI, 2017 WL 956628, at *17 (N.D. Cal. Mar. 13, 2017) (stating it would be "inappropriate" for expert to rely on another expert's "flawed and speculative report.")[7] Accordingly, the Court grants Apple's request for a conditional remittitur of $10 million. In the event Wi-LAN does not accept this remittitur, the Court grants Apple's motion for a new trial on damages.[8]

### III.
### CONCLUSION AND ORDER

For the reasons set forth above, the Court denies Apple's motion for judgment as a matter of law on the issue of infringement or damages, and denies Wi-LAN's motion for supplemental damages, ongoing royalty and prejudgment and post judgment interest. The Court grants Apple's motion for a conditional remittitur to $10 million, and orders the parties to appear for a settlement conference before Judge Major on **January 14, 2019**, at **10:30 a.m.** In the event Wi-LAN accepts the remittitur, a Notice of Acceptance of Remittitur must be filed by **January 18, 2019**. In the event Wi-LAN does not accept the remittitur, the Court grants Apple's motion for a new trial on damages, and will set a telephonic status conference with counsel to discuss dates.

**IT IS SO ORDERED**.

DATED: January 3, 2019

HON. DANA M. SABRAW
United States District Judge

---

[7] The Federal Rules of Evidence permit an expert to rely upon the opinions developed by another expert for the purpose of litigation if the expert independently verifies the underlying expert's work. *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011). However, there is no evidence Professor Prince or Mr. Kennedy independently verified Dr. Madisetti's "benefits" opinions in this case.

[8] In light of this ruling, the Court denies Wi-LAN's motion for supplemental damages, ongoing royalty and prejudgment and post judgment interest.