SEAN C. CUNNINGHAM (Bar No. 174931)
sean.cunningham@dlapiper.com
ERIN GIBSON (Bar No. 229305)
erin.gibson@dlapiper.com
ROBERT WILLIAMS (Bar No. 246990)
robert.williams@dlapiper.com
TIFFANY MILLER (Bar No. 246987)
tiffany.miller@dlapiper.com
PETER MAGGIORE (Bar No. 292534)
peter.maggiore@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

ROBERT BUERGI (Bar No. 242910)
robert.buergi@dlapiper.com
AMY WALTERS (Bar No. 286022)
amy.walters@dlapiper.com
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2215
Tel: 650.833.2000
Fax: 650.833.2001

Attorneys for
APPLE INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>WI-LAN, INC.,<br><br>          Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 3:14-cv-02235-DMS-BLM (lead case);<br>CASE NO. 3:14-cv-1507-DMS-BLM (consolidated)<br><br>**DEFENDANT APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFF'S CASE PURSUANT TO FED. R. CIV. P. RULE 50(A)**<br><br>Dept.: 13A<br>Judge: Hon. Dana M. Sabraw<br>Magistrate Judge: Hon. Barbara L. Major |

# **TABLE OF CONTENTS**

                                                     **Page**

I. INTRODUCTION .................................................................................................. 1

II. LEGAL STANDARD FOR JMOL ....................................................................... 3

III. WI-LAN FAILED TO PROVE DAMAGES AS A MATTER OF LAW ............................................................................................................................ 4

    A. Wi-LAN Fails the Apportionment Requirement as a Matter of Law Because It Presented No Evidence Tethering Its Damages Claim to the Economic Footprint of the Invention in the Marketplace. ............................................................................................... 4

    B. Wi-LAN's Damages Evidence Is Not "Reliable and Tangible," But Instead Turns on the Application of an Impermissible Rule of Thumb to Non-Comparable Licenses. ................................................ 9

IV. CONCLUSION ..................................................................................................... 12

DLA Piper LLP (US)
San Diego

WEST\289092420.1

APPLE'S RULE 50(A) JMOL MOTION
3:14-CV-02235-DMS-BLM

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berry v. Bunnell*,
 39 F.3d 1056 (9th Cir. 1994) ................................................................................ 3

*Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*,
 809 F.3d 1295 (Fed. Cir. 2015) ............................................................................ 7

*DataQuill Ltd. v. High Tech Comput. Corp.*,
 887 F. Supp. 2d 999 (S.D. Cal. 2011) ................................................................ 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 (Fed. Cir. 2014) .......................................................................... 11

*Garretson v. Clark*,
 111 U.S. 120 (1884) ................................................................................ 1, 2, 4, 9, 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
 580 F.3d 1301 (Fed. Cir. 2009) .......................................................................... 11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 894 F.3d 1258 (Fed. Cir. 2018) ........................................................................ 7-9

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000) ............................................................................................ 3

*ResQNet.com Inc. v. Lansa Inc.*,
 594 F.3d 860 (Fed. Cir. 2010) ............................................................................. 1

*Uniloc USA, Inc. v. Microsoft Corp.*,
 632 F.3d 1292 (Fed. Cir. 2011) .......................................................................... 11

*United Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp., Inc.*,
 No. 07-cv-2172 AJB, 2012 WL 12845620 (S.D. Cal. Sept. 5, 2012) .................. 4

*VirnetX, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014) ..................................................................... 4, 10

**Other Authorities**

Fed. R. Civ. P. 50(a) ....................................................................................... 1, 3, 4

Pursuant to Fed. R. Civ. P. 50(a), Defendant Apple Inc. ("Apple") moves for judgment as a matter of law ("JMOL") that Wi-LAN did not present legally sufficient evidence to allow a reasonable jury to conclude that Wi-LAN is entitled to any damages at all, much less the $85 million it requests.

## I.   INTRODUCTION

Wi-LAN bears the burden of proof on damages. The damages must be apportioned between the patented and unpatented features of the products at issue. But Wi-LAN presented no substantial evidence from which damages can be apportioned. JMOL of zero damages thus should be entered in Apple's favor.

The Supreme Court, the Federal Circuit, and this Court have held that apportionment by the patentee is always required, and its absence is never excused. Specifically, "[t]he patentee . . . must in every case give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (internal quotation marks omitted). In addition, "such evidence must be reliable and tangible, and not conjectural or speculative." *Id.* As a matter of law, Wi-LAN failed to meet both aspects of its burden of proof.

First, Wi-LAN offered no evidence tending to apportion damages between the patented and unpatented features for Apple's accused products. Apportionment means that "[t]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com Inc. v. Lansa Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Wi-LAN's damages expert, Mr. Kennedy, provided no evidence that supports the required nexus. When asked, "And this adjusted per phone rate of 45 cents per phone, does that reflect the value of the patented technology in your opinion?", Mr. Kennedy responded: "Yes. That's what I've tried to do with my adjustments, yes." Trial Transcript ("Tr.") at 246:25 to 247:4. But none of Mr. Kennedy's "adjustments" had anything to do with the value of the patented technology or the relative value of patented and unpatented features.

1    Rather, Mr. Kennedy's adjustments to the three licenses he considered
2    strictly concerned matters unrelated to the claimed invention's footprint in the
3    marketplace. Completely apart from whether it was proper to rely on these licenses
4    in the first place, this analysis was legally insufficient to support a damages award.
5    Mr. Kennedy's "adjustments" were based on: (1) the assumption of validity and
6    infringement, Tr. at 228:14-16; (2) a "subset discount" for a less-than-portfolio
7    license, Tr. at 228:17-19; (3) U.S. vs. worldwide royalty rates in general, Tr. at
8    228:20-23; (4) no "early adopter" discount, Tr. at 228:24 to 229:1; and (5) larger
9    sales volumes for Apple, Tr. at 229:2-3. *See also* Tr. at 229:4 to 247:4 (walking
10   through each of these five adjustments and concluding that a 45 cents per unit
11   royalty rate is appropriate). None of these adjustments relates in any way to the
12   value of the patented technology, much less the relative value of the patented and
13   unpatented features. Mr. Kennedy did not even try to tether the value of the
14   invention to the patent claims that were found infringed, to any technical evidence
15   about the invention's footprint, or to any economic analysis of the contribution of
16   the invention to the accused products in the marketplace.

17   In short, Mr. Kennedy offered nothing that satisfies—or even speaks to—the
18   apportionment requirement. Nor did any other witness fill this gap. As a result,
19   Wi-LAN has no substantial evidence of damages, and the case should not even be
20   submitted to the jury.

21   Second, even if Mr. Kennedy's testimony were viewed (incorrectly) as
22   "tending to . . . apportion," that evidence was not "reliable and tangible."
23   *Garretson*, 111 U.S. at 121. Wi-LAN instead started with three licenses that are not
24   remotely comparable to what Apple and Wi-LAN hypothetically would have
25   negotiated. Wi-LAN then derived from those non-comparable licenses a royalty
26   rate, mainly by applying an impermissible rule of thumb untethered from the
27   particular facts of this case. This is another independent reason why Wi-LAN fails
28   the apportionment test as a matter of law, and JMOL of no damages is required.

Consistent with Supreme Court and Federal Circuit precedent—not to mention this Court's prior orders in the case—this Court has decided to instruct the jury that "[t]he amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Apple's size or market position." Jury Instruction No. 17.1. Wi-LAN's burden was put into the trial record evidence that is legally sufficient to enable the jury to perform this task. Wi-LAN completely failed to meet this burden.

This alone should end the case. But if the Court sees a need to look any further, Wi-LAN has similarly failed to meet its additional burden to give the jury legally sufficient evidence to do another Court-assigned job: "[Y]ou must account for any differences between those licenses and the hypothetically negotiated license between Wi-LAN and Apple, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination." Jury Instruction No. 17. Each of these failures is an independent reason why a judgment of zero damages should be entered against Wi-LAN as a matter of law.

## II.   LEGAL STANDARD FOR JMOL

Fed. R. Civ. P. 50(a) provides for the grant of JMOL at the close of a plaintiff's case if a "reasonable jury would not have a legally sufficient evidentiary basis to find" for the plaintiff. JMOL "is proper when the evidence permits only one reasonable conclusion. The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994). The JMOL standard "mirrors" the summary judgment standard, "such that the inquiry under each is the same." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation omitted). "[T]o defeat a Rule 50 motion, the nonmoving party must come forward with more than a scintilla of evidence, and do

1  more than rely on conclusory, self-serving, and speculative testimony." *United*
2  *Nat'l Maint., Inc. v. San Diego Convention Ctr. Corp., Inc.*, No. 07-cv-2172 AJB,
3  2012 WL 12845620, at *2 (S.D. Cal. Sept. 5, 2012) (internal quotations omitted).

### III. WI-LAN FAILED TO PROVE DAMAGES AS A MATTER OF LAW

**A.   Wi-LAN Fails the Apportionment Requirement as a Matter of Law Because It Presented No Evidence Tethering Its Damages Claim to the Economic Footprint of the Invention in the Marketplace.**

To survive a Rule 50(a) motion, Wi-LAN needed to "give evidence tending to separate or apportion . . . the patentee's damages between the patented feature and the unpatented features." *Garretson*, 111 U.S. at 121 (internal quotation marks omitted); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology."). Consistent with this precedent, this Court has decided to instruct the jury that "[y]ou must be careful to ensure that award is no more or no less than the value of the patented invention." Jury Instruction No. 14 (emphasis added). The Court likewise has decided to instruct the jury that "[t]he amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Apple's size or market position." Jury Instruction No. 17.1; *see also id.* ("In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology.") (emphasis added).

Despite bearing the burden of proof on damages, Wi-LAN failed to provide substantial evidence that would allow the jury to perform the required apportionment. There is no dispute that iPhones have functionality well beyond the broad categories of functionality at issue in this case, even if one focused on just their baseband chips. As to those categories, we know from Wi-LAN admissions

and prior court rulings that Wi-LAN did not invent the entirety of LTE, VoLTE, adaptive modulation, or bandwidth allocation. Tr. at 101:13 to 103:13. At most, its patents allegedly made some contribution to one or more of those areas, and it is therefore incumbent upon Wi-LAN to provide the jury with record evidence from which it might apportion value among patented and unpatented aspects. Wi-LAN utterly failed to do so.

Rather, through its damages expert Mr. Kennedy, Wi-LAN simply offered a series of "adjustments" to the baseline royalty rate it took from the three licenses on which it relied. Setting aside for now the problems with Wi-LAN's reliance on the Doro, Unnecto, and Vertu licenses in the first place (addressed in the next section), none of Wi-LAN's adjustments has any nexus to the value of the patented technology. Nor are any of these adjustments useful in apportioning the economic contribution of the patented features from that of the many unpatented features of the accused products. Wi-LAN therefore has not supplied any tools with which the jurors can do the job that this Court would assign to them. As a result, a pre-verdict JMOL of no damages is warranted.

Wi-LAN did not provide any apportionment evidence through its fact witnesses or its technical witness, Dr. Madisetti. They spoke nary a word that tends to apportion the value of the features covered by the asserted patent claims from the value of the many unpatented features of the accused products. That task presumably would be left to Mr. Kennedy. Yet Mr. Kennedy's turn to speak came and went likewise without any evidence of the "value attributable to the patented technology." Jury Instruction No. 17.1.

Instead, after discussing the three licenses on which its damages case hinges, Wi-LAN's counsel asked Mr. Kennedy: "And this adjusted per phone rate of 45 cents per phone, does that reflect the value of the patented technology in your opinion?" Tr. at 246:25 to 247:2. Mr. Kennedy responded: "Yes. That's what I've tried to do with my adjustments, yes." Tr. at 247:3 to 247:4. But none of Mr.

Kennedy's "adjustments" had anything to do with the value of the patented technology or the relative value of patented and unpatented features.

Rather, Mr. Kennedy's adjustments to the three licenses he considered strictly concerned matters unrelated to the claimed invention's footprint in the marketplace. This analysis was legally insufficient to support a damages award, and Wi-LAN has no other evidence to fill this gaping hole. Mr. Kennedy's "adjustments" were based on: (1) the assumption of validity and infringement, Tr. at 228:14-16; (2) a "subset discount" for a less-than-portfolio license, Tr. at 228:17-19; (3) U.S. vs. worldwide royalty rates in general, Tr. at 228:20-23; (4) no "early adopter" discount, Tr. at 228:24 to 229:1; and (5) larger sales volumes for Apple, Tr. at 229:2-3. *See also* Tr. at 229:4 to 247:4 (walking through each of these five adjustments and concluding that a 45 cents per unit royalty rate is appropriate). None of these adjustments relates in any way to the value of the patented technology, much less the relative value of the patented and unpatented features:

(1) The assumption of validity and infringement is a background premise of the hypothetical negotiation. It says nothing about the differences between the patented and unpatented features, nor how to apportion economic value between the two.

(2) Mr. Kennedy's purported 25% "subset discount" for a less-than-portfolio license—which suffers from its own legal defects discussed in the next section—is completely untethered from the value of the patented invention and the relative economic contributions of the patented and unpatented features. In fact, Wi-LAN has admitted that this is just a rule of thumb it supposedly would apply in *blunderbuss* fashion to <u>any</u> subset of patents within its portfolio—regardless of the economic footprint of the patented invention or any other relevant facts.

(3) Mr. Kennedy's generic premise about the difference between worldwide and United States royalty rates in license agreements bears no relationship to the value of the patented technology or the relative economic contributions of patented

and unpatented features here.  This premise relates simply to the geographic scope of the license that is being hypothetically negotiated.

(4) Mr. Kennedy's so-called "early adopter discount" also has no connection to the particular technology at issue or its economic footprint in the marketplace. Rather, it is just another generic premise, this one relating to the timing of the hypothetical negotiation.

(5) Finally, Mr. Kennedy's consideration of sales volumes is also completely irrespective of the particular technology, accused products, and relative economic contributions of patented and unpatented features.  Rather, this "adjustment" relates only to whether the volume of sales is large or small—regardless of what it is that is being sold and how much the patented invention might contribute to its value.

And that is all.  Mr. Kennedy offered no testimony or other evidence that would allow the jury to measure the economic footprint of Wi-LAN's patented invention.  Nor did he provide any evidence that would enable the jury to size up the accused products and apportion out the economic value attributable to unpatented features and factors.  Faced with an obligation to apportion, Wi-LAN never even made it to the starting line.  As a result, it would be improper for its damages claim to go to the jury.

This alone is enough to warrant JMOL in Apple's favor.  But Wi-LAN's failure of proof is further compounded by its improper use of the value of the entire iPhone as its royalty base and rejection of the baseband processor as the smallest salable unit ("SSU").  "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components . . . ." *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302-1303 (Fed. Cir. 2015) ("CSIRO").  "[W]here multicomponent products are accused of infringement, the royalty base should not be larger than the smallest salable unit embodying the patented invention." *Power

1  *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 894 F.3d 1258, 1270 (Fed.
2  Cir. 2018).
3      In granting summary judgment of non-infringement based on the inclusion of
4  licensed Intel chipsets in iPhones, this Court has already acknowledged that the
5  chipset containing the baseband processor is the SSU. ECF No. 401 at 9-11. Even
6  Wi-LAN's former CEO, Jim Skippen, implicitly acknowledged this fact by
7  testifying that the Intel license covered and licensed iPhones with an Intel chipset.
8  *See* Tr. at 197:9-24. Yet, Wi-LAN and Mr. Kennedy ignored this Court's findings
9  and chose to present a damages case based on the entire iPhone value.
10     Despite these contrary facts, Mr. Kennedy ignored the baseband processor as
11 the SSU, "reject[ing] the notion" that this fundamental damages principle is
12 applicable. *Id.* at 309:17 to 310:1 ("Q: You didn't consider the smallest salable
13 unit in your analysis[?] . . . A: I did not testify on direct about that, no. Q: In fact,
14 sir, you reject the notion that the smallest salable unit is the baseband chip that
15 Qualcomm supplies to Apple. You have said that. A: Yeah. I disagree that that is
16 the smallest salable unit . . . ."). Neither does Mr. Kennedy perform an
17 apportionment down to the patented technology—he admits as much. *Id.* at
18 313:13-16 ("Q: And you have said that you don't have sufficient information to be
19 able to parse out the relative contributions of those other features. That's your
20 testimony. A: That's correct."). This is all the more troubling because he agrees
21 that the processors are salable, are sold, and are smaller units than the iPhone. *Id.* at
22 312:5 to 312:20 ("Q: so the baseband chip is small, salable, and a unit, right? A:
23 Disconnecting all of those words, that is true that they are, small, and they are
24 salable, and they are units. . . ."). And he agrees that Apple "shouldn't be paying
25 for technology that goes beyond the scope of the smallest salable unit." *Id.* at
26 312:25 to 313:7 ("Q: They shouldn't be paying for technology that goes beyond
27 the scope of the smallest salable unit, whatever it is, right? A: Right. If the
28 smallest salable unit is all -- is in the application processor and the baseband

processor and the antenna and other component's . . . if you were going to look at it that way that is where their technology resides and they shouldn't pay for technology they don't own."). Mr. Kennedy failed to apply longstanding Federal Circuit law requiring apportionment based on the SSU, and the jury should not be allowed to consider such testimony. *See Power Integrations, Inc.*, 894 F.3d at 1270.

For its damages claim to even be submitted to the jury, Wi-LAN was required to, at a minimum: (1) identify and calculate damages from the smallest saleable patent practicing unit (here, the baseband processor); (2) further apportion to identify the value of VoLTE among the other features of the baseband processor; and (3) further apportion to separate out the unpatented aspects of VoLTE—including, most notably, Apple's own patented and valuable contributions to VoLTE. Wi-LAN did they opposite by hand-waving about the supposed "footprint" of the invention. *See* Tr. at 293:24-25 (" . . . It relates to VoLTE, it is a portion of VoLTE."). Mr. Kennedy did none of those things, and his testimony therefore cannot constitute substantial evidence supporting a damages award in this case. Wi-LAN in fact presented no evidence at all that would permit the jury to apportion between the patented and unpatented features of the accused products. JMOL of no damages should therefore be entered.

**B.  Wi-LAN's Damages Evidence Is Not "Reliable and Tangible," But Instead Turns on the Application of an Impermissible Rule of Thumb to Non-Comparable Licenses.**

Even if Wi-LAN's evidence were viewed (incorrectly) as meeting the first requirement of "tending to . . . apportion," it still fails the second requirement because its evidence not "reliable and tangible" for this task. *Garretson*, 111 U.S. at 121. In addition to the above instructions on apportionment, this Court has decided to instruct the jury that "you must account for any differences between those licenses and the hypothetically negotiated license between Wi-LAN and

Apple, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination." Jury Instruction No. 17:. All the evidence that Wi-LAN has given the jury on this subject is, at best, unreliable and speculative and therefore legally insufficient to perform this task. This is another independent reason why JMOL of no damages is warranted.

Mr. Kennedy's opinions are unreliable and untethered to the facts of this case for several reasons. For one thing, the three licenses on which he relies are too far afield from the economic circumstances of the hypothetical negotiation between Wi-LAN and Apple. Among other things, Mr. Kennedy fails to account for the broader range of technologies covered by these licenses than the two-patent hypothetical license to Apple, whether the asserted patents had any particular value to the licensees, and whether licenses to these low-volume, specialty phone manufacturers would have any relevance at all to a licensee like Apple.

In addition, Mr. Kennedy improperly assumes the four claims at issue are worth an arbitrary 75 percent of Wi-LAN's entire portfolio. This assumption is not tied to any analysis of the patent claims or their value. Rather, he admits the same 75 percent rule would apply to <u>any</u> subset of Wi-LAN patents; it does not matter how many or which ones. *See* 329:17 to 330:18. The only requirement is that the subset be less than the entire portfolio. He then boosts his number back up by 20 percent supposedly to account for the assumption of infringement and validity— making the four claims worth 90 percent of the entire portfolio—arriving at 45 cents per unit ($85 million) that Apple supposedly would have agreed to pay Wi-LAN. This purported "subset discount" is not any sort of analysis of the relative value of the four asserted claims versus the thousands of claims licensed to Doro, Unnecto, and Vertu. Wi-LAN acknowledged these companies were licensed to Bluetooth, CDMA, HSPA, LTE, and Wi-Fi patents that Wi-LAN saw value in. Tr. at 203:3 to 205:19; 325:24 to 326:12. Wi-LAN presented no evidence quantifying the extent to which the asserted claims are more or less valuable than any others in

Wi-LAN's portfolio. The "subset discount" is not even a numerical comparison of the number of licensed claims versus the number of claims asserted in this case. In short, the "subset discount" is not a reliable or otherwise legally sufficient tool for apportionment.

Mr. Kennedy's arbitrary "subset discount" (1) starts with a "portfolio license rate," and (2) applies to any licensee and any subset of Wi-LAN patents—not the asserted patents. His opinion therefore hinges on a "rule of thumb" similar to ones the Federal Circuit has repeatedly excluded. *See, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (rejecting 25% rule of thumb as a "fundamentally flawed tool for determining a baseline reasonable royalty in a hypothetical negotiation"); *VirnetX*, 767 F.3d at 1333 (rejecting "Nash Bargaining Solution" 50 percent rule of thumb, holding use of arbitrary rule not tied to facts of the case is "unjustified by evidence about the particular facts of the case").

In sum, Mr. Kennedy was required to "present evidence sufficient to allow the jury to weigh the economic value of the patented feature against the economic value of the features and services covered by" the Doro, Unnecto, and Vertu licenses. *DataQuill Ltd. v. High Tech Comput. Corp.*, 887 F. Supp. 2d 999, 1021-25 (S.D. Cal. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) (portfolio license was "radically different from the hypothetical agreement under consideration for the [asserted] patent"); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227-28 (Fed. Cir. 2014) (comparable license analysis must involve apportionment). Mr. Kennedy did nothing of the sort, so his opinions are not substantial evidence that can support a damages award here. And Wi-LAN has no other evidence with which this essential task can be performed. In addition to its most fundamental failure to supply any evidence that tends to apportion, the unreliability and fact-agnostic character of Wi-LAN's damages case is another independent reason for JMOL of no damages.

## IV. CONCLUSION

Wi-LAN needs substantial evidence of damages to even get this case to the jury. This means that Wi-LAN—like patentees "in every case," *Garretson*, 111 U.S. at 121—must present evidence sufficient to enable the jury to apportion between the patented and unpatented features of the accused product. Wi-LAN presented no evidence that might meet this standard. All its evidence instead is untethered to the economic footprint of the patented invention in the marketplace. JMOL of zero damages therefore should be entered.

Dated: January 22, 2020

DLA PIPER LLP (US)

By */s/ Sean C. Cunningham*
   SEAN C. CUNNINGHAM
   ERIN GIBSON
   ROBERT BUERGI
   TIFFANY MILLER
   AMY H. WALTERS
   PETER MAGGIORE

Attorneys for Defendant
APPLE INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

                                          /s/ *Sean C. Cunningham*
                                        Sean C. Cunningham