1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

WI-LAN, INC.,

                             Plaintiff,

    vs.

APPLE, INC.,

                          Defendant.

CASE NO. 14cv2235 DMS (BLM)

JURY INSTRUCTIONS

DATED: _____1-22-20_____

DANA M. SABRAW
United States District Judge

14cv2235

INSTRUCTION NO. ___1___

## DUTY OF JURY

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

A copy of these instruction will be sent with you to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

INSTRUCTION NO. __2__

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1.     the sworn testimony of any witness;

2.     the exhibits that are admitted into evidence;

3.     any facts to which the lawyers have agreed; and

4.     any facts that I have instructed you to accept as proved.

INSTRUCTION NO. __3__

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not

evidence. You are to decide the case solely on the evidence received at the trial.

INSTRUCTION NO. ___4___

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

INSTRUCTION NO. __5__

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs

from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

INSTRUCTION NO. __*b*__

## EXPERT OPINION

You may hear testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

INSTRUCTION NO. __7__

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

INSTRUCTION NO. ___8___

### CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

INSTRUCTION NO. _____9_____

BURDEN OF PROOF-PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

INSTRUCTION NO. __10__

## SUMMARY OF CONTENTIONS

As you were previously told, Wi-LAN seeks money damages from Apple for infringing (or using) the asserted patents by making, importing, using, selling, and offering for sale products covered by claims 9, 26 and 27 of the '145 patent and claim 1 of the '757 patent. These are the asserted claims of the asserted patents. The products that have been found to infringe or to be covered by those patent claims are the iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone SE, iPhone 7 and iPhone 7 Plus.

Your job is to decide any money damages to be awarded to Wi-LAN to compensate it for Apple's infringement or use of the patents.

INSTRUCTION NO. \_\_\_11\_\_\_

## THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide damages. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding.

INSTRUCTION NO. 12

## CLAIM CONSTRUCTION FOR THE CASE

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide. These issues are yours to decide.

| Claim Term | Construction |
|---|---|
| subscriber unit / subscriber station ('145 and '757 patents) | "module that receives UL [uplink] bandwidth from a base station, and allocates the bandwidth across its user connections" |
| connections / uplink connections / connections established at the subscriber station ('145 and '757 patents) | "connections between the subscriber unit and its users" |
| queue(s) ('145 patent) | "structure(s) containing data to be transmitted" |

| | |
|---|---|
| Preamble: A subscriber unit for a wireless communication system, comprising: ('145 patent, claim 26) | The preamble of Claim 26 of the '145 patent is limiting |
| bandwidth ('145 and '757 patents) | "data-carrying capacity" |
| QoS ('145 patent) | "quality of service" |
| base unit ('145 patent) | "base station" |
| quality parameter ('757 patent) | "measurable indicator of wireless reception quality" |
| parameter value ('757 patent) | "value based on the quality parameter" |
| forward error correction technique ('757 patent) | "amount of error correction data that is transmitted in the downlink and/or uplink" |
| sub-frame map ('757 patent) | "data structures that may allocate bandwidth to subscriber station(s) and indicate the bandwidth allocated to subscriber unit(s) within a particular subframe" |

INSTRUCTION NO. __13__

## HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide.

INSTRUCTION NO. _13.1_

## INFRINGEMENT - KNOWLEDGE OF THE PATENT
## AND INTENT TO INFRINGE ARE IMMATERIAL

Apple has been found to infringe claims 9, 26 and 27 of the '145 patent claim 1 of the '757 patent.

Someone can infringe a patent without knowing of the patent or without knowing that what they are doing is an infringement of the patent. They also may infringe a patent even though they believe in good faith that what they are doing is not an infringement of any patent.

INSTRUCTION NO. _14_

## DAMAGES-INTRODUCTION

Because Apple has been found to infringe the asserted patents, you must consider what amount of damages to award to Wi-LAN. I will now instruct you about the measure of damages.

The damages you award must be adequate to compensate Wi-LAN for the infringement or use of the asserted patents. They are not meant to punish Apple. Your damages award should put Wi-LAN in approximately the same financial position that it would have been in had Apple not used Wi-LAN's patents.

Wi-LAN has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Wi-LAN establishes that it more likely than not suffered. While Wi-LAN is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Wi-LAN seeks a reasonable royalty. A reasonable royalty is defined as the money amount Wi-LAN and Apple would have agreed upon as a fee for use of the invention at the time prior to when infringement began. You must be careful to ensure that award is no more or no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Wi-LAN is entitled to recover no less than a reasonable royalty for each infringing sale.

INSTRUCTION NO. **15**

## REASONABLE ROYALTY-DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and one seeking to use the patent would have agreed to in a hypothetical negotiation taking place at a time prior to use of the patent. In considering this hypothetical negotiation, you should focus on what the expectations of Wi-LAN and Apple would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after Apple's use of the patents can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

INSTRUCTION NO. _16_

### REASONABLE ROYALTY-HYPOTHETICAL NEGOTIATION

In determining the royalty that would have resulted from the hypothetical negotiation you may consider the facts known and available at the time of the negotiation and the real world facts such as events and facts that occurred after the infringement began. Here are a list of factors you may consider, though not every factor may be helpful to you:

1)   the royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

2)   the rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

3)   the nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4)   the licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5)   the commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

6)     the effect of selling the patented specialty in promoting sales of other products

       of the licensee, the existing value of the invention to the licensor as a generator

       of sales of his nonpatented items, and the extent of such derivative or convoyed

       sales;

7)     the duration of the patent and the term of the license;

8)     the established profitability of the product made under the patents, its

       commercial success, and its current popularity;

9)     the utility and advantages of the patented property over the old modes or

       devices, if any, that had been used for working out similar results;

10)    the nature of the patented invention, the character of commercial embodiment

       of it as owned and produced by the licensor, and the benefits to those who have

       used the invention;

11)    the extent to which the infringer has made use of the invention and any

       evidence probative of that use;

12)    the portion of the realizable profits that should be credited to the invention as

       distinguished from nonpatented elements, the manufacturing process, business

       risks, or significant features or improvements added by the infringer;

13)    the opinion and testimony of qualified experts; and

14)    the amount that a licensor (such as the patentee) and a licensee (such as the

       infringer) would have agreed upon (at the time the infringement began) if both

had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee--who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention--would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

15) The value that the claimed invention contributes to the accused product.

16) The value that factors other than the claimed invention contribute to the accused product.

17) Comparable license agreements, such as those covering the use of the claimed invention or similar technology.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

INSTRUCTION NO. *17*

## REASONABLE ROYALTY-USE OF COMPARABLE LICENSE AGREEMENTS

When determining a reasonable royalty, you may consider evidence concerning

the amounts that other parties have paid for rights to the patents in question, or for

rights to similar technologies. A license agreement need not be perfectly comparable

to a hypothetical license that would be negotiated between Wi-LAN and Apple in

order for you to consider it. However, if your choose to rely upon evidence from any

other license agreements, you must account for any differences between those

licenses and the hypothetically negotiated license between Wi-LAN and Apple, in

terms of the technologies and economic circumstances of the contracting parties,

when you make your reasonable royalty determination.

INSTRUCTION NO. _17._

### REASONABLE ROYALTY - ATTRIBUTION/APPORTIONMENT

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Apple's size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

INSTRUCTION NO. _18_

## REASONABLE ROYALTY-NONINFRINGING ALTERNATIVES

You may also consider the impact of any available noninfringing alternatives to the asserted claims on the royalty negotiated in the hypothetical negotiation. In doing so, you may consider the value of any differences in benefits and costs between the noninfringing alternatives and the asserted claims.

INSTRUCTION NO. __19__

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

INSTRUCTION NO. 20

## COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through my law clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone-including the court-how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

INSTRUCTION NO. 21

## RETURN OF VERDICT

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.